EXHIBIT A

DATE FILED: April 27, 2024 10:00 AM
FILING ID: 26C67C6DC6CE6
CASE NUMBER: 2024CV30375

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br><br>4000 Justice Way Ste. 2009<br>Castle Rock, CO 80109 | |
| **PLAINTIFF:** KIMBERLY SEGURA, on behalf of herself and all others similarly situated,<br><br>v.<br><br>**DEFENDANT**: AVENUE5 RESIDENTIAL, LLC, a Delaware limited liability company. | |
| | ▲ **COURT USE ONLY** ▲ |
| *Attorneys for Plaintiff*:<br><br>Jason Legg (#42946)<br>CADIZ LAW, LLC<br>501 S. Cherry St., Ste. 1100<br>Denver, CO 80246<br>720.330.2800<br>jason@cadizlawfirm.com<br><br>*Additional counsel appear on signature page* | **Case Number:**<br><br>**Div.:** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Kimberly Segura ("Plaintiff" or "Segura"), individually and on behalf of all others similarly situated, by and through her attorneys, files this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Avenue5 Residential, LLC ("Avenue5" or "Defendant") seeking to: (1) stop Defendant's practice of charging its tenants unlawful and inflated "junk fees" in addition to advertised monthly rents; (2) stop Defendant's practice of charging tenants fees beyond those explicitly included in the lease agreements; (3) stop its practice of initiating evictions based on tenant's failure to pay late fees in addition to overdue rent; (4) put an end to Defendant's practice of charging excessive and inaccurate late-fees in violation of Colorado law, and (5) obtain damages and other redress for those injured by Defendant's conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## INTRODUCTION

1.       This case is about how Avenue5, a Seattle-based property management company that manages over 600 properties nationwide, forces thousands of Colorado tenants to pay inflated and unfair fees that make it even harder for families to afford housing in the State.

1

2.      Avenue5's business strategy has unfortunately become the norm. That is, over the past several years, powerful and deep-pocketed corporations have sought to grow their profits by packing their contracts with hidden and misleading charges—known as "junk fees"—that increase the costs of daily life for working people.

3.      Junk fees inflate prices and undermine fair competition in the rental housing market, which should involve corporations competing openly over the true price of goods. Instead, across the nation, consumers have grown accustomed to seeing their costs increase due to inflated and hidden fees that are often not disclosed until the very end of a transaction. Frequently, these hidden fees are disclosed so late (if at all) that consumers cannot realistically go elsewhere, giving the consumer no choice but to bear these deceptive and unfair fees if they want to purchase concert tickets, banking services, utilities, or any number of other goods or services.

4.      Late disclosure of junk fees is particularly problematic in apartment rental contracts, where tenants may not learn of the fees (or see a copy of their lease) until shortly before move-in, after they have given notice to a prior landlord or invested significant moving expenses.

5.      In Avenue5's case, rental junk fees operate like a hidden tax on tenants who have no choice but to pay contrived fees if they want to stay in a home or rent a new one. Avenue5's junk fees do not provide tenants with any special benefits or services beyond the ordinary costs of doing business that Avenue5 is required to bear as a landlord. In other words, these junk fees serve no legitimate purpose other than to increase Avenue5's profits and inflate its bottom line.

6.      To date, Avenue5 has attempted to avoid scrutiny and accountability for these practices by hiding its fees, understating the true costs of housing, and taking advantage of the extreme power imbalance inherent in the landlord-tenant relationship, because tenants rely on their landlords for housing, and especially acute in the relationship between renters and deep-pocketed property management companies like Avenue5.

7.      Avenue5's junk fees have devastating consequences. They can unexpectedly increase renters' monthly expenditures beyond advertised rent costs, making rental housing even more unaffordable and undermining the financial stability of families across Colorado. While a renter may be able to manage and plan for high rents if they know about them in advance, the addition of an array of mandatory fees for "ancillary services" can unexpectedly push renters well beyond their means.

8.      The belated disclosure of these fees—when they are disclosed at all—also undermines fair competition. Prospective tenants cannot meaningfully compare prices for apartment rentals when significant portions of the monthly rent are disguised as add-on fees. This may lead tenants to pay more than they otherwise would have for monthly rent, even when they can ill-afford the difference in price.

9.      This case challenges several of Avenue5's hidden junk fees, which it imposes on tenants across Colorado, including Valet Trash Fees, Pest Control Fees, and Territorial Fees (collectively the "Challenged Fees").

10.     The Challenged Fees are hidden from tenants, never meaningfully disclosed as part of the advertised rent. Though not included in the advertised rent, these junk fees are part of the real "rent" tenants must pay—that is, part of the mandatory, monthly cost to stay in an Avenue5 apartment. Tenants have no opportunity to seek alternative third-party service providers that may offer the same services at a lower cost. Instead, they are forced to accept these clandestine fees if they want to rent from Avenue5.

11.     The fees are also deceitful, grossly inflated beyond the actual cost of any services provided by Avuenue5. The true purpose of Avenue5's junk fees is to provide an additional, pretextual profit center for Avenue5's bottom line. Even where a particular fee seems small, the cumulative effect of collecting these fees monthly from tens of thousands of tenants results in substantial, unearned profits for Avenue5.

12.     Additionally, in many cases, the Challenged Fees—specifically the Pest Control Fees and Valet Trash Fees—defy public policy by improperly shifting Avenue5's cost of complying with the warranty of habitability onto its tenants and, in the case of the Valet Trash Fees, charging for a service proscribed by the International Fire Code broadly adopted in the jurisdictions in Colorado where Avenue5 operates. *See* **Ex. A - Arvada Fire Protection District Valet Trash Service Letter**. Through its junk fees, then, Avenue5 seeks to force tenants to pay extra, beyond their advertised rental payments, for services that Avenue5 either must provide as a matter of law or are broadly disallowed by law.

13.     In addition to the Challenged Fees, Plaintiff brings this case to put an end to Avenue5's practice of charging and collecting fees that were not agreed to in the lease agreements. That is, Avenue5 systematically double billed Plaintiff and the class members for trash services— once for a flat fee service and again based on a per occupancy formula—and also charged Plaintiff and the class members a "Territorial Fee". Neither fee was included in Avenue5's form lease agreement.

14.     Finally, when tenants fall behind on rental payments—often as a result of the stacking effect of the hidden junk fees detailed above—Avenue5 charges late fees that exceed the amounts agreed to in its lease agreements.

15.     After tenants fail to pay the late fees, Avenue5 then initiates court processes to evict them based, at least in part, on the failure to pay late fees. Such conduct violates Colorado law.

16.     For all these reasons, Avenue5's billing practices are deceptive, unfair, and unconscionable in violation of the Colorado Consumer Protection Act. In addition to that, many of the hidden fees and charges are not agreed to in the lease agreements and in certain cases run afoul of Colorado law. Finally, by imposing them, Avenue violates the covenant of good faith and fair dealing and the duty of accurate billing, and Avenue has been unjustly enriched through such misconduct.

## PARTIES

17.     Plaintiff Kimberly Segura was a resident and citizen of the State of Colorado at all times relevant to this action. She leased Apartment Number 11-101, at 18301 East Cottonwood Drive Parker, Colorado 80138 (the "Montane") from May 7, 2021, to August 31, 2022.

18.     Defendant Avenue5 Residential LLC is a property management firm headquartered at 901 5th Ave Ste 3000, Seattle, WA 98164. At all times relevant, Avenue5 acted as the property manager for all properties where the Challenged Fees were charged, and Avenue5 charged and collected the Challenged Fees across all its Colorado residential properties.

19.     Avenue5 has over 600 properties and 120,000 units under management nationwide.[1] On information and belief, Defendant Avenue5 uses the same Form Lease at every location it owns and/or manages.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Defendant pursuant to C.R.S. § 13-1-124(1)(a) because Defendant transact business in the State of Colorado.

21.     The Court also has jurisdiction over Defendant pursuant to C.R.S. § 13-1-124(1)(c) because Defendant owns, uses, or possesses real property situated in the State of Colorado.

22.     Venue is proper in Douglas County. The Montane apartment complex is located in Douglas County. Because Defendant is not a resident of Colorado, however, actions on a consumer contract may be tried in any county in which the defendant may be found in this state, or in the county designated in the complaint. *See* C.R.C.P. 98(c)(3)(B).

## COMMON FACTUAL ALLEGATIONS

### I.     The Scope of Avenue5's Junk Fee Scheme

23.     Avenue5 manages thirty-three apartment properties in Colorado and is one of the largest managers of residential multi-unit properties in the state.

24.     On information and belief, all of Avenue5's Colorado properties are subject to the same Form Lease terms and policies. (*See* Form Lease, true and accurate copies of which are attached hereto as **Group Ex. B**.) This Form Lease is based on a template provided by the National Apartment Association and the Colorado Apartment Association.

25.     The Form Lease is dense, consists largely of boilerplate terms, and is non-negotiable.

26.     Irrespective of the particular Avenue5 property in Colorado, the Form Lease has

---

[1] https://www.linkedin.com/company/avenue5-residential/

substantively identical language and provisions, in the body of the contract as well as in incorporated form addenda, with respect to key terms like the charging for Pest Control, Valet Trash, and Territorial Fees.

27.     The Form Lease also has substantively identical provisions regarding rent, security deposits, landlord obligations and duties, tenant obligations, force majeure, and a host of other terms.

28.     As a result of this standardized language, all Avenue5 tenants are subject to essentially identical lease terms no matter the Avenue5 property where they happen to reside in Colorado.

29.     The Form Lease was ultimately approved of and presented by Defendant on a take-it-or-leave-it basis.

30.     Similarly, Avenue5 assesses and seeks to collect Pest Control Fees, Valet Trash Fees, and Territorial Fees in the same unlawful manner with respect to all its Colorado tenants.

31.     Avenue5 charges every tenant a Pest Control Fee, typically $3-$5 per month.

32.     Avenue5 charges every tenant Valet Trash Fees, typically $25 per month. This is in addition to a mandatory $10 Trash service fee already paid by tenants.

33.     Avenue5 charges every tenant "Territorial Fees," typically $33.23 per month.

34.     Defendant itself or through agents pursues the Challenged Fees through collections actions, including evictions, before and after tenants have vacated.

35.     Plaintiff was charged the Challenged Fees.

36.     Plaintiff and class members paid the Challenged Fees to protect their interests in their leaseholds.

**II.     Avenue5's pricing structure and disclosure practices are deceptive because they misrepresent the total cost of rental housing at Avenue5's properties.**

37.     Avenue5 misrepresents the total costs of its rental units by omitting the Challenged Fees from advertised rent prices and by ultimately disclosing some of the fees in the lease agreement separately from the base rent price, and failing to disclose the "Territorial" Fee at all.

38.     The Challenged Fee amounts are not included in the advertised rental amount despite the fact the Form Lease states, "All payment obligations under this Lease Contract shall constitute rent under this Lease Contract." (*See* **Ex. B, pg. 2**.)

39.     In fact, the Challenged Fees are not disclosed until *after* the tenants have already spent hundreds of dollars (or more) on non-refundable fees to apply for and secure the unit and

other sunk costs like moving expenses.

40.     Despite containing a list of fees and charges, Defendant's standard "Welcome Home" letters, which it provides to tenants and applicants upon their application for a rental unit do not disclose the Challenged Fees except for the Pest Control Fee. Rather, tenants are not informed of all of the Challenged Fees until they are presented with the Form Lease, which is well after they have already expended considerable amounts to initiate the rental process, including non-refundable application fees, administrative fees, security deposits, pet deposits, and at least the first month's rent. At that point in the process, it would be impossible to find alternative housing to avoid the Challenged Fees. Even still, the Territorial Fee is not included in the Form Lease.

41.     This practice of gradually disclosing additional costs throughout the consumer's rental process (known as "drip pricing") is deceptive, unfair, and unavoidable for Avenue5's tenants.

42.     Even upon disclosure, Avenue5 continues to disclose the Challenged Fees *separately* from the monthly rent charge, as part of the lengthy Form Lease, which typically spans over 40 pages in length.

### III.   Avenue5 misrepresents the services provided in exchange for the payment of monthly rents, instead imposing costs for services through its junk fees.

43.     Through the imposition of junk fees, Avenue5 misrepresents the characteristics and identity of the product and services received for the payment of monthly rents.

44.     By advertising rental housing in exchange for a monthly rent amount, Avenue5 represents that tenants will receive a suitable dwelling place in exchange for the payment of monthly rent.

45.     However, tenants later learn that they will not receive a suitable dwelling place without additional purchases in the form of additional mandatory fees.

46.     Avenue5 continues to misrepresent the characteristics and identity of the product and services received in exchange for the payment of monthly rent.

### IV.   Avenue5 uses the Challenged Fees as a profit center, misrepresenting their nature and purpose.

47.     Avenue5 obfuscates the nature and purpose of the Challenged Fees, including the nature of the service tenants purportedly receive in exchange for the fees and the actual cost of any service provided.

48.     The Challenged Fees operate as profit centers instead of serving any legitimate purpose. That is, the amounts charged to tenants vastly exceed Avenue5's monthly costs and

simply act to pad Avenue5's bottom lines.

49.     On information and belief, the amounts charged by Avenue5 for the Challenged Fees grossly exceed the costs it incurs for providing the supposed services.

50.     Pest Control "services" are discussed several times throughout the lengthy Form Lease.

51.     First, in the standard Form Lease's "Pest Control Addendum," paragraph 7 explains that the Landlord *may* provide "regularly scheduled pest control services" but makes no mention of any fee or cost charged to the tenant unless the tenant's individual unit requires treatment.

52.     Second, in Avenue5's "Community Policies, Rules and Regulations Addendum," paragraph 8 explains that Avenue5 *may* have extermination operations conducted in apartment homes "several times a year and as needed to prevent insect infestation".

53.     Third, in the standard Form Lease's "Utility and Services Addendum", Avenue5 advises tenants of the monthly rate actually charged to them for "Pest Control," typically $3.00 per month.

54.     The Utility and Services Addendum fails to disclose whether Pest Control services will actually be provided.

55.     On information and belief, Defendant's cost for pest control is significantly lower than $3 per unit per month.

56.     On information and belief, Defendant charges tenants for pest control services even if pest control services are not provided during a given month.

57.     Similarly, on information and belief, Avenue5's costs for Valet Trash services are significantly lower than $25 per unit per month.

58.     A valet trash service will pick up trash deposited in a hallway outside a tenant's apartment and bring that trash to the dumpster at the apartment.

59.     This fee is portrayed as a "service" in Avenue5 leases despite the fact that it is mandatory, runs afoul of the broadly adopted International Fire Code, and a tenant might not choose the service if provided the option.

60.     Valet trash service providers typically charge their landlord clients $8 to $12.50 per unit per month for the service.

61.     By forcing tenants to pay for valet trash services and by charging $25 per month for the mandatory "service," Avenue5 creates a tidy, pretextual profit center that is nowhere in the advertised rent. Via this hidden fee, Avenue5 is able to increase its profits by up to $15 per unit per month (if not more)—a substantial and unfair windfall.

62.     Similarly, Avenue5's "Territorial Fees" exceed to its actual costs and were not agreed to.

63.     To start, nowhere in the original Form Lease does it discuss a "Territorial Fee" or disclose the amount to be billed by Avenue5.

64.     In Plaintiff's form lease renewal's "Utility and Services Addendum", Avenue5 advises residents that it will charge and "Additional Territorial fee of $33.23 per month". (*See* Form Renewal Lease, true and accurate copies of which are attached hereto as **Group Ex. C**.) But nowhere does Avenue5 explain what the "territorial" fees are intended to cover. And it is unclear what "services" tenants receive in exchange for these fees.

65.     Avenue5's deceptive advertising, pricing structure, and inflation of its fees all harm Colorado consumers. Consumers are unable to truly compare the cost of different apartments and are financially harmed when they must pay fees they did not expect (and may be unable to afford). And consumers are also harmed by Avenue5's mandatory, inflated fees which tenants have no opportunity to negotiate and which may balloon in Avenue5's sole discretion.

## V.     Avenue5 improperly shifts the cost of compliance with the warranty of habitability onto its tenants.

66.     Colorado's Warranty of Habitability law requires that landlords provide:

(VII) Common areas and areas under the control of the landlord that are kept reasonably clean, sanitary, and free from all accumulations of debris, filth, rubbish, and garbage and that have appropriate extermination in response to the infestation of rodents or vermin; [and]

(VIII) Appropriate extermination in response to the infestation of rodents or vermin throughout a residential premises….

C.R.S., § 38-12-505(1)(b)(VII)-(IX).

67.     With very narrow exceptions limited to single family homes, *see e.g.* C.R.S. § 38-12-506, Colorado's warranty of habitability law prohibits any waiver or modification of its terms, including shifting landlord duties onto tenants. *See* C.R.S., §§ 38-12-503(5).

68.     Despite obligating landlords to provide common areas free of debris and rubbish and appropriate response to any infestation of rodents and vermin, Avenue5—through the mandatory use of its non-negotiable Form Lease agreements and attendant policies—pushes the cost of compliance onto its tenants through the imposition of monthly Pest Control Fees and Valet Trash Fees. It charges these amounts beyond rental payments, which should afford tenants the bare minimum that Avenue5 must provide under the law.

69.     The Pest Control Fees and Valet Trash Fees are void and unlawful because they

8

improperly seek to modify the warranty of habitability by, *inter alia*, shifting the burden of compliance with the Warranty of Habitability onto tenants.

70.     These charges deceptively and unfairly mislead consumers into believing that these costs are assessed for services they are provided in addition to the habitable dwelling places received in exchange for payment of their monthly rent.

## VI.     Avenue5 charges and collects late-fees in excess of the amounts stated in its lease agreements from tenants who fall behind on payments and initiates evictions when tenants fail to pay the late-fees.

71.     To curb excessive rental late-fees, the Colorado legislature enacted Colo. Rev. Stat. Ann. § 38-12-105. The Act provides that a landlord may not charge a tenant a late fee unless the rent payment is last by at least seven days. And where a late fee is permitted, the landlord may only assess a late fee of either (1) fifty dollars or (2) five percent of the amount of the past due rent payment, whichever is greater. Colo. Rev. Stat. Ann. § 38-12-105(b). However, no late fee may be charged unless the fee is disclosed in the rental agreement. Colo. Rev. Stat. Ann. § 38-12-105(c)

72.     Avenue5 fails to comply with § 38-12-105(b). Despite agreeing to charge a $75 flat fee for any late payments in its Form Lease, Avenue5 routinely charged tenants fees in excess of the agreed-to amount.

73.     In Plaintiff's case, Avenue5 charged her excessive late fees on eleven occasions between August 2021 and June 2022. Plaintiff made at least six requests for the late fees to be corrected, which they were on all but one occasion. Despite being repeatedly notified of its unlawful billing practices, Avenue5 continued to charge excessive late fees.

74.     Furthermore, even when it corrects the unlawful fees, Avenue5 fails to pay tenants the statutorily required $50 penalty. *See* Colo. Rev. Stat. Ann. § 38-12-105(3).

75.     Added to this, when tenants fail to pay late fees, Avenue5 then initiates eviction proceedings and demands that tenants pay both the past due rent and late fees as a prerequisite to termination the eviction process. Colorado law specifically prohibits landlords, such as Avenue5, from initiating a court process for the removal or exclusion of a tenant from a dwelling based on their failure to pay one or more law fees. *See* Colo. Rev. Stat. Ann. § 38-12-105(1)(d).

76.     Plaintiff anticipates the need to amend her Complaint following a period of discovery concerning Avenue5's other standard practices and charges.

## FACTS SPECIFIC TO NAMED PLAINTIFF KIMBERLY SEGURA

77.     Plaintiff Segura had a lease with Avenue5 at the Montane for apartment number 11-101. (*See* **Ex. B**.)

78.     Segura's Form Lease with Avenue5 is dated May 3, 2021, and was set to run May

7, 2021, to August 6, 2022. (*See* **Ex. B**.)

79.     Segura renewed her lease with Avenue5 for another year on August 8, 2022, and the lease term was set to run August 7, 2022, to August 6, 2023. (*See* **Ex. C**.)

80.     As part of the lease renewal, Avenue5 switched its trash billing method from a flat fee to a per-occupant formula. (*See id.*, at pg. 11.) Notwithstanding this change, Avenue5 assessed the per occupancy trash fee and the $10 flat trash fee between October 2022 and December 2022.

81.     Segura was assessed the following challenged fees during her tenancy:

| **Challenged Fees** | **Amount Charged** |
| :---: | :---: |
| Pest Control Fees | $114.42 |
| Valet Trash Fees | $647.58 |
| Territorial Fees | $93.26 |

82.     Segura paid the Challenged Fees during her tenancy. She did so to protect her interest in her leasehold.

83.     Segura's Form Lease with Avenue5 specifies that if a rent payment is more than three days past due, she would be charged a flat rate $75 late fee. (*See* **Ex. B**, pg. 1.)

84.     After falling behind on her rental payments, Segura was charged late fees on the following occasions.

85.     Between August 2021 and February 2022, Segura was charged five excessive late fees; in total, Sergura paid more than $300 than she was contractually obligated to pay. After Plaintiff notified Avenue5 of its incorrect fees in February, Avenue5 corrected these amounts.

86.     In March 2022, Avenue5 charged Segura a $85.85 late fee. She again notified Avenue5 of the incorrect fee, and Avenue5 corrected the amount.

87.     In April 2022, Avenue5 charged Segura a $85.85 late fee. She again notified Avenue5 of the incorrect fee, and Avenue5 corrected the amount.

88.     In May 2022, Avenue5 charged Segura a $85.85 late fee. She once again notified Avenue5 of the incorrect fee, but Avenue5 never corrected this late fee.

89.     Avenue5 also initiated numerous eviction proceedings against Segura when she failed to pay late fees. Indeed, on November 8, 2021, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Demands for Rent or Possession, attached as Group **Ex. D**.) Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to

pay, at least in part, the late fees.

90.     On December 6, 2021, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

91.     On April 6, 2022, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

92.     On June 8, 2022, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

93.     In or around November 2022, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

94.     On February 6, 2023, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

## <u>CLASS ACTION ALLEGATIONS</u>

95.     Plaintiff brings this action in accordance with Colorado Rule of Civil Procedure 23 on behalf of herself and the Classes defined as follows:

**Junk Fee Class:** All persons who: (1) leased a residential rental unit in Colorado from Avenue5, (2) using Avenue5's Form Lease, and (3) were assessed any of the Challenged Fees within the relevant statute of limitations.

**Unauthorized Fee Class**: All persons who: (1) leased a residential rental unit in Colorado from Avenue5, (2) using Avenue5's Form Lease, (3) were assessed any of the Unauthorized Fees within the relevant statute of limitations; and (4) where the Form Lease did not disclose the Unauthorized Fees.

**Excessive Late Fee Class**: All persons who: (1) leased a residential rental unit in Colorado from Avenue5, (2) using Avenue5's Form Lease, and (3) were assessed late fees in excess of the amount stated in the Form Lease within the relevant statute of limitations.

**Eviction Class**: All persons who: (1) leased a residential rental unit in Colorado from Avenue5, (2) were assessed late fees; (3) where Avenue5 filed an eviction proceeding within the relevant statute of limitations; and (4) demanded payment of any late fee as a prerequisite to avoid or terminate the eviction process.

96.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's principals, subsidiaries, parents, successors, predecessors, contractors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons.

97.     Plaintiff anticipates the need to amend the class definition following a period of appropriate class-based discovery.

98.     **Numerosity:** The exact number of class members is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant has charged the unlawful fees to thousands of tenants who fall into the Classes as defined. The number of class members and class membership can be identified through entirely objective criteria, including Defendant's business records and tenant payment ledgers.

99.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes were assessed the same allegedly unlawful charges and sustained the same legal injuries and damages arising out of Defendant's uniform wrongful conduct. If Plaintiff has an entitlement to relief, so do the rest of the class members.

100.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions, including class actions against landlords and class actions seeking damages and declaratory relief arising out of form lease agreements. Neither Plaintiff nor her counsel has any interest in conflict with or antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

101.    **Commonality and Predominance:** There are questions of law and fact common to the claims of Plaintiff and the Classes, and those questions will drive the litigation and predominate over any questions that may affect individual members of the Classes. Common questions for the Class include, but are not necessarily limited to, the following:

(a)     Whether Defendant's Pest Control Fees and Valet Trash Fees unlawfully shift its statutory obligations onto tenants;

(b)     Whether the Challenged Fees are unlawful profit centers;

(c)     Whether the Challenged Fees should have been disclosed prior to the presentation of the Form Lease;

(d)     Whether the Unauthorized Fees were disclosed at any point;

(e)     Whether Defendant systematically charged late fees in excess of the amount authorized by its Form Lease;

(f)     Whether Defendant acted knowingly when performing any unlawful, unfair, and deceptive conduct and whether such conduct carries a significant public impact so as to violate the CCPA;

(g)     Whether the Classes are entitled to injunctive relief and/or declaratory relief;

(h)     Whether the Classes are entitled to damages; and

(g)     Whether the Classes are entitled to other relief including reimbursement of costs, reasonable attorneys fees, and pre- and post-judgment interest.

102.    **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Classes so as to render certification of the Classes for declaratory relief appropriate under Rule 23(b)(2).

103.    **Superiority & Manageability:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small when compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a certified class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Separate lawsuits pose a risk of contradictory decisions on key legal and factual issues impacting every Class member. Also, there are no pending governmental actions against Defendant for the same conduct, and any such action would be less preferable to Class Members who have a vested interest in seeing the case pursued in a way that maximizes the class's recovery.

**FIRST CAUSE OF ACTION**
**Violation of the Colorado Consumer Protection Act ("CCPA")**
**C.R.S. § 6-1-101 *et seq*.**
**(On Behalf of Plaintiff and the Junk Fee Class)**

104.    Plaintiff restates and re-alleges each of the foregoing allegations as if set forth fully herein.

105.    Under the Colorado Consumer Protection Act "a person engages in a deceptive trade practice when, among other acts, in the course of the person's business, vocation, or occupation, the person":

(i) Advertises goods, services, or property with intent not to sell them as advertised;

(*l*) Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions;

(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;

(rrr) Either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

C.R.S. § 6-1-105.

106.    In violation of these subsections, Defendant knowingly or recklessly engaged in unfair, deceptive, and unconscionable acts and practices.

### Unfair and Deceptive Conduct

107.    Defendant knowingly or recklessly acted in unfair acts and practices by shifting the burden of complying with its statutory obligations under Colorado's Warranty of Habitability Statute by charging tenants for Pest Control and Valet Trash services, imposing and charging for the Valet Trash service in jurisdictions and properties in which it doing so is proscribed by local law, and grossly inflating the amounts charged to tenants in relation to its actual costs for the Challenged Fees so as to turn the Challenged Fees into additional profit centers.

108.    Defendant knowingly or recklessly engaged in unfair and deceptive conduct by advertising rents lower than the actual monthly rent and by failing to disclose the monthly Challenged Fees before presenting tenants with their leases for execution—often shortly before move-in, after significant sums have been expended to secure the rental, and at a time when it would be impractical for tenants to find alternative housing.

### Unconscionable Acts – The Imposition of the Challenged Fees Was Procedurally and Substantively Unconscionable.

109.    Defendant has also acted unconscionably. Procedurally, the Form Lease is non-negotiable and largely presented on a take-it-or-leave-it basis. It is provided to prospective tenants for review *after* they have already paid hundreds of dollars in application fees, administrative fees, and potentially additional amounts, like the first month's rent, any pro-rated rent, and any security deposit(s). The Form Lease itself routinely exceeds 45-pages in length, and the Challenged Fees

are buried within dense text written in "legalese."

110.    Substantively, the Form Lease purports to allow the assessment of fees that are unlawful and grossly exceed any actual costs for which they are nominally being imposed. Defendant here passes the burden onto tenants as well as the costs by charging monthly fees for services they are required by law to provide. For Valet Trash, contrary to both the warranty of habitability statute and broadly adopted versions of the international fire code, tenants are actually required to place trash in common area hallways. Under the warranty of habitability statute, "any agreement waiving or modifying the warranty of habitability shall be void as contrary to public policy." C.R.S. § 38-12-503(5). The Form Lease seeks to modify the warranty here and, as such, is void.

111.    Moreover, these charges grossly exceed Defendant's actual costs and simply amount to additional rent. Valet Trash vendors typically charge $10 or $12.50 per unit each month. By charging tenants $25 per month, Defendant is able to add an additional $12.50 - $15 in rent per unit every month. It is unknown what the pest control costs are, but they are likely far lower than $3 or $5 per unit per month. Assessing such mark-ups is particularly one-sided because they are not disclosed before the Form Lease is presented and prospective tenants have already invested hundreds (if not thousands) of dollars pursuing the unit. Furthermore, Defendant's separate monthly fee to cover its billing costs is inflated and exceeds any actual costs and is an after-the-fact hidden profit center.

### Substantial and Significant Public Impact

112.    To the extent required by Colorado law, Plaintiff alleges that Defendant's unlawful conduct and other violations of the CCPA set forth above significantly impacts the public.

113.    The number of consumers directly affected by the challenged practices is significant and growing. These fees are charged for each tenant of Avenue5's thirty-three properties; each of these properties may have had many tenants who paid the fees over months or years. The number of Colorado consumers who paid these deceptive and unfair fees is certainly in the hundreds of thousands—and may be in the millions.

114.    These consumers are often substantially less sophisticated than Avenue5. They certainly have less bargaining power. Avenue5 holds all the cards, and all the power in the consumer transaction—particularly when the fees are disclosed long after the consumer has invested significant time and money to secure the apartment.

115.    In addition, Avenue5 is a large corporate property management company in Colorado. Its practices of charging junk fees significantly impact how others behave in the market. Colorado renters face an affordability crisis, and the Challenged Fees make leasing less affordable for tens of thousands of Coloradans.

116.    The volume of deceptive advertising is also significant—every time Avenue5 lists an apartment or sends a renewal letter it falsely advertises the price of the apartment's monthly

15

rent. Each of these advertisements tells the public important facts which are untrue.

***Class Relief Sought***

117.   Defendant has engaged in or caused others to engage in the deceptive trade practices set forth above, and Plaintiff and the Class members are consumers or potential consumers of Defendant's rental units.

118.   Pursuant to C.R.S. § 6-1-113(2.9), Plaintiff seeks on behalf of herself and the Class, all actual damages suffered as a result of the deceptive trade practices in amounts to be proven at trial, injunctive relief allowed by law, and an award of reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Unauthorized Fee Class)

119.   Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

120.   Plaintiff and the Unauthorized Fee Class had contracts with Avenue5—their Form Lease agreements or Form Renewal Lease agreements. (*See* **Exs. B-C**.)

121.   The lease agreements contained substantially the same terms.

122.   Plaintiff and the class members performed under their lease agreements.

123.   Defendant sought to impose unlawful Territorial Fees and Flat Trash Fees (hereafter "Unauthorized Fees")—which were not included in the Form Lease agreements.

124.   With respect to the Territorial Fees, such amounts breach the express terms of the Form Lease Agreements. That is, despite no "Territorial Fees" being included under the terms of the original Form Lease, Avenue5 demanded and received $93.26 payments from Plaintiff between July 2021 and September 1, 2021 for such fees.

125.   With respect to the Flat Trash Fees, as part of Plaintiff's lease renewal, Avenue5 switched its trash billing method from a flat fee to a per-occupant formula. (*See* **Ex. C**, at pg. 11.) Notwithstanding this change, Avenue5 assessed the per occupancy trash fee and the $10 flat trash fee between October 2022 and December 2022. The imposition of the flat trash fee is a breach of the express terms of the lease renewal agreements.

126.   On information and belief, Defendant charged these same unauthorized fees to other class members as well.

127.   The Unauthorized Fees are not part of the agreed-upon utility costs that were imposed by the form lease agreements.

128.     On information and belief, Defendant actively seeks to collect such unlawful sums.

129.     As an actual and proximate result of Avenue5's breaches, Plaintiff and the Unauthorized Charge Class Members have suffered actual damages in amounts to be proven at trial.

130.     Plaintiff, on behalf of herself and the Unauthorized Fee Class, seeks actual damages to be proven at trial, injunctive and declaratory relief, an award of attorneys fees and costs, pre- and post-judgment interest, and such additional amounts as the Court deems necessary, reasonable, and just.

**THIRD CAUSE OF ACTION**
**Violation of Colo. Rev. Stat. Ann. § 38-12-105,** *et seq*
**(On Behalf of Plaintiff and the Excessive Late Fee Class)**

131.     Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

132.     A "Landlord" means "the owner, manager, lessor, or sublessor of a residential premises." Colo. Rev. Stat. Ann. § 38-12-502(5). Defendants own, manage, and lease the Property, and are thus "Landlord[s]" as "Landlord" as defined by Colo. Rev. Stat. Ann. § 38-12-102(2).

133.     A "Tenant" means "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." Colo. Rev. Stat. Ann. § 38-12-502(9). Plaintiff is one of the residents listed in the lease agreements with Defendant and is therefore a "Tenant" as defined by Colo. Rev. Stat. Ann. § 38-12-102(7).

134.     Colo. Rev. Stat. Ann. § 38-12-102(3) defines a "Late fee" as "a monetary sum that a landlord charges a tenant or home owner as a result of the tenant's or home owner's failure to timely pay rent and that is determined pursuant to a rental agreement between the landlord and the tenant or home owner."

135.     Under Colo. Rev. Stat. Ann. § 38-12-105, a landlord may not charge a tenant a late fee unless the rent payment is late by at least seven days. After seven days of delinquency, the landlord may only assess a late fee of either (1) fifty dollars or (2) five percent of the amount of the past due rent payment, whichever is greater. Colo. Rev. Stat. Ann. § 38-12-105(1)(b).

136.     However, no late fee may be charged unless the fee is disclosed in the rental agreement. Colo. Rev. Stat. Ann. § 38-12-105(1)(c).

137.     A landlord who violates § 38-12-105(1) "has seven days to cure the violation", which begins when the landlord receives written or electronic notice of the violation. Colo. Rev. Stat. Ann. § 38-12-105(4).

138.     Regardless of whether the landlord cures the violation, they are required to pay the aggrieved tenant "a penalty in the amount of fifty dollars for each violation." Colo. Rev. Stat. Ann.

§ 38-12-105(3).

139.    Avenue5 fails to comply with § 38-12-105(1). Despite agreeing to charge a $75 flat fee for any late payments in its Form Lease, Avenue5 routinely charged tenants fees in excess of the agreed-to amount.

140.    Furthermore, even when it corrects the unlawful fees, Avenue5 fails to pay tenants the statutorily required $50 penalty. *See* Colo. Rev. Stat. Ann. § 38-12-105(3).

141.    In Plaintiff's case, Avenue5 charged her excessive late fees on ten occasions between August 2021 and May 2022. Plaintiff made at least four requests for the late fees to be corrected. Avenue5 corrected nine of the ten late fee charges.

142.    On May 9, 2022, Plaintiff was assessed a late fee in the amount of $85.85.

143.    On May 11, 2022, Plaintiff notified Avenue5 that the late fee exceeded the amount stated in the Form Lease agreement. Despite receiving notice, Avenue5 did not correct the incorrect late fee, nor did it pay Plaintiff the $50 penalty as required by Colo. Rev. Stat. Ann. § 38-12-105(3).

144.    Even for the occasions that Avenue5 did correct the excessive late fees, Avenue5 never paid Plaintiff the $50 penalty.

145.    Despite being repeatedly notified of its unlawful billing practices, Avenue5 continued to charge excessive late fees.

146.    As a result, Plaintiff, on behalf of herself and the Excessive Late Fee Class, seeks an award of actual damages, a penalty of $50 for each violation as provided under Colo. Rev. Stat. Ann. § 38-12-105(3), a penalty of at least $150 but not more than $1,000 for each violation as provided under Colo. Rev. Stat. Ann. § 38-12-105(5)(b), together with costs and reasonable attorneys' fees, and for such additional relief as the Court deems necessary, reasonable, and just.

## FOURTH CAUSE OF ACTION
### Violation of Colo. Rev. Stat. Ann. § 38-12-105, *et seq*
### (On Behalf of Plaintiff and the Eviction Class)

147.    Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

148.    A "Landlord" means "the owner, manager, lessor, or sublessor of a residential premises." Colo. Rev. Stat. Ann. § 38-12-502(5). Defendants own, manage, and lease the Property, and are thus "Landlord[s]" as "Landlord" as defined by Colo. Rev. Stat. Ann. § 38-12-102(2).

149.    A "Tenant" means "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." Colo. Rev. Stat. Ann. § 38-12-502(9). Plaintiff is one of the

residents listed in the lease agreements with Defendant and is therefore a "Tenant" as defined by Colo. Rev. Stat. Ann. § 38-12-102(7).

150.    Colo. Rev. Stat. Ann. § 38-12-102(3) defines a "Late fee" as "a monetary sum that a landlord charges a tenant or home owner as a result of the tenant's or home owner's failure to timely pay rent and that is determined pursuant to a rental agreement between the landlord and the tenant or home owner."

151.    Under Colo. Rev. Stat. Ann. § 38-12-105, a landlord may not "Remove or exclude a tenant from a dwelling or initiate a court process for the removal or exclusion of a tenant from a dwelling because the tenant fails to pay one or more late fees to the landlord." Colo. Rev. Stat. Ann. § 38-12-105(1)(d).

152.    A landlord who violates § 38-12-105(1) "has seven days to cure the violation", which begins when the landlord receives written or electronic notice of the violation. Colo. Rev. Stat. Ann. § 38-12-105(4).

153.    Regardless of whether the landlord cures the violation, they are required to pay the aggrieved tenant "a penalty in the amount of fifty dollars for each violation." Colo. Rev. Stat. Ann. § 38-12-105(3).

154.    On November 8, 2021, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Demands for Rent or Possession, attached as Group Ex. D.) Avenue5 assessed a late fee of $85.85 on November 9, 2021. Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

155.    On December 6, 2021, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Avenue5 assessed a late fee of $85.85 on December 9, 2021. Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

156.    On April 6, 2022, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Avenue5 assessed a late fee of $85.85 on April 9, 2022, which was corrected to $75 on April 13, 2022. Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

157.    On June 8, 2022, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Avenue5 assessed a late fee of $85.85 on June 9, 2022, which was corrected to $75 the same day. Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

158.    In or around November 2022, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. Avenue5 assessed a late fee of $95.30 on November 9, 2022. Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

159.     On February 6, 2023, Avenue5 demanded payment of past-due rent and late fees to avoid an eviction lawsuit. (*See* Group Ex. D.) Avenue5 assessed a late fee of $95.30 on February 9, 2023. Thereafter, Avenue filed an eviction court proceeding due to Segura's failure to pay, at least in part, the late fees.

160.     As a result, Plaintiff, on behalf of herself and the Eviction Class, seeks an award of $50 for each violation as provided under Colo. Rev. Stat. Ann. § 38-12-105(1)(d), and for such additional relief as the Court deems necessary, reasonable, and just.

**FIFTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Classes)**

161.     Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

***Breach of Covenant of Good Faith and Fair Dealing***

162.     Every Form Lease is a contract that contains an implied covenant of good faith and fair dealing.

163.     The covenant of good faith and fair dealing requires that each party to the contract, to the extent the contract affords them discretion, not abuse that discretion or act in a manner so as to not frustrate the other side's ability to enjoy the benefit the bargain.

164.     Under the Form Lease, Defendant has the ability to determine which charges get billed in any particular month and the manner by which those charges will be pursued.

165.     Defendant has abused its discretion by grossly overcharging for its actual costs for valet trash service, pest control, and other fees. Defendant improperly shifts the cost burden of statutory compliance onto tenants. Further, only Defendant knows its actual costs, and by turning these charges into profit centers Defendant makes it more difficult for tenants to make rent and enjoy their tenancies.

166.     As a corollary to the implied covenant of good faith and fair dealing is an implied duty of accurate billing. Defendant has breached that implied duty by assessing the Challenged Fees and Unauthorized Fees without a legal basis for doing so.

167.     As a result of these breaches, Defendant has caused Plaintiff and other tenants actual damages.

168.     Plaintiff seeks, on behalf of herself and the Classes, actual damages in amounts to be proven at trial plus costs, pre- and post-judgment interest, and such additional relief as the Court deems necessary and just.

**SIXTH CAUSE OF ACTION**
**Alternative Claims for Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

169.    Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

170.    In the event the Form Lease is found unenforceable or otherwise fails, or that the Challenged Fees or Unauthorized Fees fall outside the contract, Defendant has been unjustly enriched through the charging and collection of the fees.

171.    Plaintiff and other tenants have conferred benefits on Defendant in the form of the Challenged Fees and the Unauthorized Fees under circumstances where Defendant should not be permitted under principles of equity and good conscience to retain such fees.

172.    Plaintiff, on behalf of herself and the Classes, pray for an Order of Judgment disgorging Defendant of all amounts collected and retained as a result of the Challenged Fees and the Unauthorized Fees and returning such fees to the Plaintiff and the other Class Members and for such additional relief as the Court deems necessary and just.

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment**
**C.R.S. §§ 13-51-105, 13-51-106 et seq**.
**(On Behalf of Plaintiff and the Classes)**

173.    Plaintiff restates and realleges the allegations set forth above as if set forth fully herein.

174.    Under C.R.S. § 13-51-105 "Courts of record within their respective jurisdictions have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

175.    Indeed, under Colorado law:

Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

C.R.S. § 13-51-106.

176.    Plaintiff and the Class members are interested under their Form Lease agreements, which are contracts, and they may have determined any question of construction or validity arising under their lease agreements.

177.    Based on the foregoing violations of Colorado statute, breaches of contract, and other causes of action, Plaintiffs seek an Order of Judgment finding and declaring the following:

a.    That Defendant, by charging Pest Control Fees and Valet Trash Fees, unlawfully shifts its burden under the Warranty of Habitability to ensure a premises free of pests and trash accumulation in the common areas;

b.    That Defendant's imposition of the Valet Trash service and collection of the Valet Trash Fees is illegal where it violates applicable fire codes disallowing such services;

c.    That Defendant's charging and markups on Valet Trash, Pest Control, and Territorial Fees violate the CCPA;

d.    That Defendant's charging excessive late fees violates C.R.S. § 38-12-105;

e.    That Defendant's charging of Unauthorized Fees constitutes a breach of contract;

d.    That Defendant has breached the implied covenant of good faith and fair dealing;

e.    That Defendant has been unjustly enriched through the charging and collection of the Challenged Fees and should be disgorged of such monies; and

f.    That the Plaintiff and class members are entitled to damages and injunctive relief barring the continued charging and collection of the Challenged Fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all other Class Members, prays for an Order of Judgment:

A.    Certifying the Classes as set forth above, appointing Kimberly Segura as the Class Representative and appointing her counsel as Class Counsel;

B.    Awarding actual damages in an amount to be proven at trial, plus injunctive relief prohibiting the further collection, reasonable attorneys' fees and costs for all violations of the CCPA;

C.    Awarding actual damages and statutory penalties in amounts to be proven at trial, plus injunctive relief prohibiting the further collection, reasonable attorneys' fees and costs for all violations of the C.R.S. § 38-12-105, *et seq.*;

D.    Awarding actual damages in an amount to be proven at trial for all breaches of contract and breaches of the covenant of good faith and fair dealing;

E.    In the alternative, requiring that Defendant be disgorged of all ill-gotten gains and other sums that have led to Defendant's unjust enrichment, in amounts to be proven at trial, for Defendant's charging of the unlawful Challenged Fees and Unauthorized Fees;

F.    Requiring that all damages be paid into a common fund for the benefit of the Classes;

G.      Awarding pre-judgment interest and post-judgment interest against Defendant, on all sums awarded to Plaintiff and Class Members;

H.      Awarding Plaintiff and Class Members their reasonable attorneys' fees and expenses, to be paid from the common fund prayed for above; and

I.      For such other and further relief as the Court deems reasonable, necessary, and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: April 27, 2024                     KIMBERLY SEGURA, individually and on behalf of all others similarly situated,

By:  */s/ Jason Legg*
One of the Plaintiff's attorneys

Jason Legg, #42946
CADIZ LAW, LLC
501 S. Cherry St., Ste. 1100
Denver, CO 80246
720.330.2800
jason@cadizlawfirm.com

Steven L. Woodrow, #43140
swoodrow@woodrowpeluso.com
Taylor T. Smith #51162
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: (720) 213-0675

Cameron Netherland, #55864
cam@justiceforthepeoplecenter.org
Justice for the People Legal Center

*Counsel for Plaintiff*

23



DATE FILED: April 27, 2024 10:00 AM
FILING ID: 26C67C6DC6CE6
CASE NUMBER: 2024CV30375

August 6, 2021

Subject: Valet Trash Services

The Arvada Fire Protection District (AFPD) has seen an increase in valet trash services within our jurisdiction utilized at apartment and condominium complexes. Valet trash services collect a limited amount of occupant-generated combustible trash or recyclable materials from dwelling units, where trash is left outside the dwelling units for scheduled pickup.

This service is in violation of the adopted fire code. The 2018 International Fire Code, Section 315.3.2 Means of Egress states that "combustible materials shall not be stored in exits or enclosures for stairways and ramps" and Section 1031.2 Reliability states that "required exit access, exits and exit discharges shall be continuously maintained free from obstructions or impediments to full instant use in the case of fire or other emergency where the building area served by the means of egress is occupied. An exit or exit passageway shall not be used for any purpose that interferes with a means of egress".

On August 5th, 2021, the city of Arvada's Building Code Advisory Board upheld the AFPD's interpretation and enforcement of the code violation that this service creates. Given that decision and under Section 104.1 of the adopted fire code, the AFPD will continue to enforce our interpretation of the adopted fire code and require the removal of this service in all instances.

Effective immediately, any instance of valet trash services within the AFPD jurisdiction is in violation of the adopted fire code and shall be eliminated from the site. If still in use, the property will receive an Order to Comply requiring the immediate removal of the service from the community it serves.

Respectfully,

Steven Parker, EFO, FM
Fire Marshal





## APARTMENT LEASE CONTRACT

Date of Lease Contract: _____ **May 3, 2021** _____
*(when the lease contract is filled out)*

*This is a binding document. Read carefully before signing.*

### Moving In — General Information

DATE FILED: April 27, 2024 10:00 AM
FILING ID: 26G67C6DC6CE6
CASE NUMBER: 2024CV31573

**1. PARTIES.** This Lease Contract (sometimes referred to as the "Lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

**Kimberly vanessa Segura, Sofia Segura**

and *us*, the owner: **Montane**

*(name of apartment community or title holder).* The name and address of ❑ Landlord or ☒ Landlord's Authorized Agent is:
Name: **Avenue5 Residential LLC**
Address: **18301 East Cottonwood Drive Parker, CO 80134**.
If this information changes in the future, Landlord or its authorized agent will notify you by email within one business day and will post the identity of the new landlord or authorized agent in the leasing office.

You have agreed to rent Apartment No. _____ **11-101** _____
at **18201 E. Cottonwood Dr.**

*(street address)* in _____ **Parker** _____
*(city)*, Colorado, _____ **80134** _____ *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. "You" and "Your," regardless of whether or not specifically stated in any provision, also means occupants, family members, and guests. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

**Landon Segura, Daniel Segura**

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than __**14**__ consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.* Upon Owner's request, Resident shall provide in writing the name, phone number, and a copy of photo ID, of any unauthorized occupant who has occupied the premises for more than seven days in Owner's reasonable judgment. If we claim any person is an unauthorized occupant, you must prove to us and to any court that the unauthorized person does not live at the premises.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __**7th**__ day of __**May**__, __**2021**__, and ends at 11:59 p.m. the __**6th**__ day of __**August**__, __**2022**__.

**Renewal.** This Lease Contract will automatically renew month-to-month unless either party gives at least __**60**__ days written notice of termination or intent to move-out as required by paragraph 45 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __**349.00**__, due on or before the date this Lease Contract is signed. Owner's management company or representative, whose address appears at the end of this Lease Contract, shall initially hold your security deposit, subject to transfer upon sale or a change in management, as authorized by law. If Owner sells the community, upon Owner's compliance with the applicable law, you agree to look solely to any successor Owner, or any successor Owner's agent, broker or manager, as the case may be, for satisfaction of all claims relating to said security deposit, and shall not look to Owner. Upon a sale or change in management, you specifically consent to and authorize the transfer of your security deposit to a successor Owner or management company.

**5. KEYS.** You will be provided _____ apartment key(s), _____ mailbox key(s), _____ FOB(s), and/or _____ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ __**1777.00**__ per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at **WIPS** _____

or at any such other place we may designate in writing.

You must pay your rent on or before the 1st day of each month (due date) with no grace period, and we can statutorily demand you pay your rent on the day it is due or any time after. Cash is unacceptable without our prior written permission. If we have a dropbox, lockbox, or any other unattended rent drop (collectively "dropbox") for rent payments, the dropbox is for your convenience only. You agree that any payment placed into a rent dropbox is not delivered to us unless your payment is in the dropbox when opened by us. Until any payment put in the dropbox is delivered to us, you bear the risk of loss, including by theft, of any payments, put in the dropbox. In the event you deliver a payment(s) to us, and said payment(s) is stolen from us, regardless of fault, you agree to promptly cooperate with us in tracing or replacing the stolen funds. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, electronic payment, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the __**3rd**__ day of the month, you'll pay a late charge. Your late charge will be *(check one):* ☒ a flat rate of $ __**75.00**__ or ❑ _____ % of your total monthly rent payment. Imposition of a late charge is not a grace period or a waiver of our right to demand rent on its due date, but an incentive for you to pay on time. If you pay late, you agree to pay the rent due plus all applicable late charges incurred through the date of payment regardless of whether we made a written demand for the rent. You'll also pay a charge of $ __**75.00**__ or the maximum allowed by state statute, whichever is lower, for each returned check or rejected electronic payment, plus a late charge. If you are delinquent, all remedies under this Lease Contract and at law will be authorized, including eviction.

If you make any payment in response to an eviction notice after the notice has expired, you shall pay us our current eviction administrative fees and attorney's fees. The eviction administrative fee is not a late charge or penalty, but rather is in addition to any charges set forth in this Lease Contract. You will also owe us all sheriff's fees if you are evicted and we incur sheriff's fees. Regardless of whether specifically stated in any applicable provision of this Lease Contract or any addenda, any and all rent, amounts, charges, sums, damages, or money owed by you under this Lease Contract or any addenda shall be considered rent, and we shall have all remedies for non-payment of any amount including eviction. You agree that any payment you make to us via an ACH debit transaction is for your convenience, and you agree to pay the stated fee imposed by the online payment site for each ACH debit transaction for this convenience. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

**Prorated Rent.**   If this Lease Contract commences on a date other than the FIRST day of the month, the Rent for the partial month shall be due upon execution of the Lease Contract. Notwithstanding any preliminary calculations to the contrary. Prorated rent of $ _____ is due for the period of _____, _____ to _____, _____.

**Administrative Fees.**   On the day this Lease Contract begins, you agree to pay us a Lease and Maintenance Administration Fee of $ __220.00__ to offset our anticipated costs for administering this Lease Contract and associated maintenance requests during the Lease Contract term.

**7.  UTILITIES.**   We'll pay for the following items, if checked:

☐ water          ☐ gas          ☐ electricity          ☐ master antenna
☐ wastewater     ☐ trash        ☐ cable TV
☒ other __None__

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the Lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8.  INSURANCE.**   We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, mold, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We ☐ require ☒ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like. If no box is checked, renter's insurance is not required.

In addition, we urge all residents, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions may be a breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

**9.  LOCKS AND LATCHES.**   Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.**   You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.**   The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

__See special provisions on the last page__
_____
_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVE-OUT.**   *(Check only (1) one box).*

☒ BOX 1: RE-LETTING CHARGE:
If this box is checked, you'll be liable to us for a reletting charge of $ __3554.00__ if you:

(1)  fail to give written move-out notice as required in paragraph 45 (Move-Out Notice); or
(2)  move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3)  move out at our demand because of your default; or
(4)  are judicially evicted.

The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract.

**Not a Release.**   The reletting charge is not a lease cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages, that is, our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from

continued liability for: future or past-due rent; repayment of concessions or discounts; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

☐ BOX 2: LIQUIDATED DAMAGES:
If this box is checked, it replaces paragraph 11 (Early Move-Out) Box 1 in its entirety and you'll be liable to us for liquidated damages in the amount set forth below if you move out without paying rent in full for the entire Lease Contract term or renewal period under any circumstances, including but not limited to if you default and we either request you move out or you are evicted.

You agree to pay us for liquidated damages in the amount of $ _____ (if no dollar amount is filled in, the liquidated damages amount is equivalent to one month's rent) as well as pay, repay, or refund any concessions and move in discounts in the total amount set forth in the Lease Contract or Lease Addendum for Rent Concession or Other Rent Discount. You agree that the liquidated damages is an amount agreed to by you in consideration of, among other things, our waiver to seek from you future rent for the entire amount of any uncompleted rental term, plus re-letting related fees, costs, and expenses. For the reasons stated and because the re-renting of the premises after you break this Lease Contract cannot be determined with any certainty, you agree that the liquidated damages amount represents a fair amount and method to allocate the numerous risks and liabilities regarding future rent and re-letting damages. You agree the liquidated damages amount only relieves you from liability for the future payment of monthly Rent and re-letting related costs and expenses, and will not under any circumstances release you for any liability to us under this Lease Contract for any other charges or amounts due under the Lease Contract, including but not limited to unpaid utilities, cleaning charges, or any physical damages to the premises, and you will at all times remain liable for said amounts or any other breaches of the Lease Contract. We will retain all remedies for your breaches and other non-compliance with the Lease Contract. You will not be released from liability on this Lease Contract for any reason whatsoever unless specifically released by us in writing.

If neither BOX 1 nor BOX 2 above is checked, BOX 1 RELETTING CHARGE shall apply in the event of your early move out.

**12. REIMBURSEMENT.** Upon demand you must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community incurred by us due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Regardless of whether specifically stated in any applicable provision of this Lease Contract, you are always liable to us for any damage caused by you, and any occupant, child, family, member, guest, invitee, licensee, or any other person that comes on the community because of you. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from you or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. PROPERTY LEFT IN APARTMENT.**

**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 50 (Deposit Return, Surrender and Abandonment)).

**Storage.** We may store, but have no duty to store, property removed after judicial eviction, surrender, or abandonment of the apartment. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe.

**Redemption.** If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, early move-out charges, storage, damages, etc. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, if you abandon the premises or vacate the premises upon the expiration or termination of the Lease Contract or for any reason while leaving personal property within the premises, including any parking spaces, garages, or storage units, you intentionally, specifically and irrevocably waive all title and interest you have in such property and grant us full authority to immediately dispose of the property without notice, court order, accountability, or liability. You agree to indemnify us, our employees and representatives against any claim or cost for any damages or expenses with regard to the removal, disposal or storage of any property, including attorneys' fees and costs regardless of who makes a claim against us or any other indemnified party in connection with our removal of any property. We may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 1 hour, or any period legally required, after a writ of restitution is executed, following a judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent and all other sums due and owing when or before the Lease Contract begins, all remedies pursuant to this Lease Contract and at law will apply. We also may end your right of occupancy and recover damages, early move-out charges, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraphs 11 (Early Move-Out) and 33 (Default by Resident) apply to acceleration under this paragraph.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 19 (Community Policies or Rules). If, at least 5 days before the advance deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease changes. Unless you give us required written move-out notice under paragraph 3 (Lease Term) and paragraph 46 (Move-Out Procedures), the new modified Lease Contract will begin on the date stated in the notice without necessity of your signature. If you are on month-to-month status under paragraph 3 (Lease Term), we can raise your rent or change Lease terms in accordance with this paragraph.

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Your termination notice must be in writing. After termination, you are entitled only to a refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment, or if we have offered you substitute premises of comparable location and quality at no additional cost to you.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of the date on the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days of the date on the notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

**19. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are part of this Lease Contract. Your violation or breach of our rules is a default for which we may exercise any remedy. We may make reasonable changes to written rules, effective upon distribution to all applicable units without prior notice to you, if they do not change dollar amounts on page 1 of this Lease Contract. We may change rules without prior notice to you and regardless of whether you acknowledge receiving or consenting to any change to any rule at any time.

**20. LIMITATIONS ON CONDUCT.** You will use the premises as your principal residence, solely as a private residential household, not for any unlawful purposes, and or for any other purpose whatsoever. You, your occupants, and guests will show due consideration for others by not permitting, committing, or suffering any conduct, disorderly or otherwise, noise, vibration, odor, or other nuisance whatsoever having a tendency to annoy or disturb others and to use no machinery, device, or any other apparatus which would damage the premises or annoy others; and interfering with, disturbing, or threatening the rights, comfort, health, safety, convenience, quiet enjoyment, management, and use of the community by us, other residents and occupants and any of their guests, agents, invitees, or the general public. You, and any occupants, and guests may not disrupt or interfere with our business operations, or communicate with us in a rude, hostile, or unreasonable manner, including times, manner and amount of communications, or injure our reputation by making bad faith allegations against us to others. We are the sole judge of acceptable conduct.

The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles and compliance with all laws. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use and appearance of patios, balconies, windows, and porches; (2) the conduct of movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may limit or prohibit your right to photograph or video the common areas or others. We may exclude from your apartment or the apartment community, guests or others who, in our reasonable judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may deny any person access to the premises, including by changing the locks, if any court or legal order restrains or bars said person from the premises. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**21. PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, shall not engage in, commit, or permit criminal or unlawful activities whether or not such unlawful activities occur in, near, off, or about the premises, including but not limited to the manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance (as defined by any law), or drug paraphernalia; engaging in or threatening violence, possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying a knife in the common area, displaying a firearm or possessing a loaded firearm in the common area, excluding law enforcement personnel; displaying or possessing any other weapon in the common area; storing anything in closets having gas appliances, tampering with utilities or telecommunications; or bringing hazardous materials into the apartment community. You and your occupants shall not register the address of the premises or any part of the apartment community on any list of registered sex offenders or similar list or compilation. You agree that any act set forth in this paragraph constitutes a material breach of this Lease. Upon any violation of the paragraph by you, we may terminate your right to occupancy upon three days' notice to quit.

**22. PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute or booted. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space; or
(14) is not displaying a parking permit, if required by landlord.

**23. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 16 (Delay in Occupancy), 32 (Responsibilities of Owner), or 45 (Move-Out Notice), you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**24. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**25. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke and Carbon Monoxide Detectors.** We'll furnish smoke and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke and carbon monoxide detectors malfunctions to us. Neither you nor others may disable neither the smoke nor carbon monoxide detectors. If you disable or damage the smoke and carbon monoxide detectors, or fail to replace a dead battery or report known smoke or carbon monoxide detectors malfunctions to us, and if your action or inaction causes loss, damage, or fines from fire, smoke, or water to us or others, you will be liable for such loss, damage, or fines.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, mold, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. You must maintain appropriate or reasonable climate control, ventilation, and lighting in the unit based on the circumstances. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. Unless

© 2020, National Apartment Association, Inc.

☑ Blue Moon eSignature Services Document ID: 263376127

otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**26. CONDITION OF THE PREMISES AND ALTERATIONS.**   Except for conditions materially affecting the health or safety of ordinary persons, you accept the apartment, fixtures, and furniture as is. To the extent not prohibited by law, we disclaim all implied warranties or covenants, including but not limited to warranties or covenants of quiet enjoyment.You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining and not damaging the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke or carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**27. REQUESTS, REPAIRS, AND MALFUNCTIONS.**   IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you. IF YOU OR ANY OCCUPANT CHOOSES TO ELECTRONICALLY SEND US ANY STATUTORILY REQUIRED NOTICE, YOU MUST SEND IT TO US AT ☐ THE ONLINE TENANT/ MAINTENANCE PORTAL or ☐ _____

_____

*(alternative electronic method of communication).*

Our complying with or responding to any oral request regarding security or non-security matters, or statutory matters, doesn't waive the strict requirement for written notices under this Lease Contract and as required by law. You must immediately notify us in writing of: water leaks; moisture accumulation; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part except as permitted by law.

Regardless of the extent of damage to the premises or any portion of the community, if we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you or would be impractical, in our sole discretion, we may terminate your tenancy or relocate you at our cost within the apartment community within a reasonable time by giving you written notice. If we terminate your tenancy under this paragraph, we'll refund prorated rent and all deposits, less lawful deductions.

**28. ANIMALS.**   Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove any unauthorized, neglected, or abandoned animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 29 (When We May Enter). We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges.

**29. WHEN WE MAY ENTER.**   You shall allow us access to the Premises and we shall have the right to reenter the Premises at all reasonable times for any legitimate or necessary purpose which we determine in our sole discretion, including but not limited to, inspecting, providing necessary services, making necessary repairs or improvements, and showing the Premises to prospective residents or to other persons having a legitimate or necessary interest. We shall always have the right to reenter the Premises without notice, with your consent or request. Absent consent or request from you, we may reenter with notice when practical, and without notice when impractical, or with required legal notice if applicable. Any entry by us shall not constitute an eviction in whole or in part, at any time, nor shall we be liable to you for any inconvenience or discomfort, and Rent shall not abate during any period that we reenter. We may enter regardless of whether you are present by duplicate key or by breaking a window or other means when necessary or in the event of an emergency.

**30. JOINT AND SEVERAL RESPONSIBILITY.**   Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 50 (Deposit Return, Surrender, and Abandonment or Judicial Eviction).

© 2020, National Apartment Association, Inc.   ☑ Blue Moon eSignature Services Document ID: 263376127

## Replacements

**31. CHANGING RESIDENTS.**   You may not assign or sublet without our prior written consent, which may be withheld in our absolute discretion. Replacing, adding, or subcontracting a resident is allowed only with our written consent. We may specifically condition any changes to authorized occupants upon among other things, successful completion of the application process by any proposed new resident, payment of application fees or other customary fees and charges required by new residents, and the execution of any documents we deem necessary. The departing resident must agree in writing as to the disposition of any security deposit. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease term unless we agree otherwise in writing—even if a new Lease Contract is signed. You may not advertise or sublease the premises as a short-term or vacation rental via airbnb, Homeaway, VRBO, or similar forum.

## Responsibilities of Owner and Resident

**32. RESPONSIBILITIES OF OWNER.**   We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 26 (Conditions of the Premises and Alterations);

(2) maintain fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, and you have complied with your legal obligations under this Lease Contract and under state statute, you may terminate your tenancy and exercise other remedies as permitted only by state statute.

**33. DEFAULT BY RESIDENT.**   You shall be in default if you break or fail to observe or perform any promise, agreement, or covenant set forth in this Agreement or any Addendum, including but not limited to your failure to timely and fully pay any Rent and other amounts due, abandoning or vacating the premises without fully performing all Lease terms and conditions, or if you shall make any misrepresentation. Regardless, of whether specifically stated in any Lease provisions or Addendum, you are always responsible for the conduct of, shall be liable for, and shall also be in default if any occupant, family member, children, guest, invitee, or any other person in or about the premises, coming to or leaving the premises, or on Owner's Property due to you, or with your knowledge or consent breaches or fails to observe any of your covenants, promises, or obligations contained in this Agreement or any Addendum. You will also be in default if you in bad faith, make any invalid complaint to an official or employee of a utility company or the government. If you fail to cure any default, provided any default can be cured, or commit a non-curable default either defined by this Agreement or by law, you shall be in breach of this Agreement and Owner shall have all remedies provided in this Agreement and at law.

**False Application.**   You executed this Lease Contract after completing a Rental Application. You acknowledge that we entered into this Lease Contract in reliance on the information contained in your Rental Application. If it is determined at any time that such information is incorrect, false, or materially misleading, we shall have the option to terminate your right of occupancy upon three days' notice to quit.

**Right to cure.**   Unless we have the specific right to terminate your right of occupancy, you have a statutory right to cure all other violations within 10 days.

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction.**   If you default, we may end your right of occupancy by giving you written notice required by statute or by this Lease Contract. Notice may be by: (1) personal delivery to any resident; (2) personal delivery at the apartment to any occupant over 16 years old; or (3) affixing the notice to the apartment's main entry door. Unless we have specifically released you in writing, termination of your possession rights or subsequent reletting doesn't release you from liability for early move-out charges or other lease obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; past or future rent or other sums; or to continue with eviction proceedings.

**Acceleration of Future Rent.**   Unless damages are liquidated pursuant to paragraph 11 (Early Move-Out), all future monthly rent for the rest of the Lease term or renewal period will be accelerated automatically without notice or demand and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease term or renewal period. Unless damages are liquidated pursuant to paragraph 11 (Early Move-Out), remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.**   You or any occupant, invitee, or guest must not wrongfully hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a wrongful holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the Lease term of a new resident—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**Remedies Cumulative.**   Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Other Remedies.**   We may report unpaid amounts to credit agencies. If you default and move out without fully performing all of your Lease Contract covenants, you will pay, repay, or refund to us any amount stated to be rental discounts in this Lease Contract or any addendum, in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the court shall award the prevailing party from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Mitigation of Damages.**   If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. In the event Box 1 in paragraph 11 (Early Move-Out) is checked, we will exercise customary diligence to relet and mitigate damages, and we'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

**34. ENTIRE AGREEMENT.**   Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**36. NO WAIVER.**   No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**37. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

**38. MISCELLANEOUS.**
A. All of your obligations under this Lease Contract (including payment of all sums) are independent covenants.
B. A violation on our part is not a defense to eviction.
C. Exercising one remedy won't constitute an election or waiver of other remedies.
D. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
E. All remedies are cumulative.
F. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
G. This Lease Contract binds subsequent owners.
H. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
I. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
J. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
K. All Lease Contract obligations must be performed in the county where the apartment is located.
L. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**39. WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute, common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**40. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system,

artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**41. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with the Lease Terms paragraph, and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**42. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**43. PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than base monthly rent are due upon our demand. After the due date and any legally required demand period, we do not have to accept the rent or any other payments.

**44. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**45. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the early move-out charges under paragraph 11 (Early Move-Out) except if you are able to terminate your tenancy under the statutory rights explained under paragraph 23 (Release of Resident) or any other applicable laws. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If your notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move on the last day in the lease term, you agree to pay and are liable for the number of days notice required in paragraph 3 (Lease Term), regardless of whether you occupy the premises for the entire notice period. If your lease term is month-to-month, your advance written notice of your move out date must be at least the number of days of notice required in paragraph 3 (Lease Term) and your move-out date must be on the last day of a month. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**46. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless you and we both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in early move-out charges under paragraphs 11 (Early Move-Out) and 33 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 60-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**47. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**48. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**49. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.**
Normal wear and tear accepted, you'll be liable for and you agree that we may deduct from your security deposit for the following charges, if applicable: unpaid rent; unpaid utilities; agreed early move-out charges; unreimbursed service charges; repairs or damages caused by smoke or smoking, negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or storing property under paragraph 13 (Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 28 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, sheriff's fees, court costs, and filing fees actually paid; and any other sums due under this Lease Contract.

You'll be liable to us for, and we may deduct from your security deposit: (1) charges for replacing all keys and access devices if you fail to return them on or before your actual move-out date; and (2) or all other charges, damages and fees pursuant to this Lease Contract.

**50. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT OR JUDICIAL EVICTION.**

**Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 60 days after surrender or abandonment, unless statutes provide otherwise.

Upon move out, you will deliver to us at the onsite Management Office all keys to the premises, access cards or devices and remotes (collectively "keys") issued by us to you to avoid disputes over the date you vacated and surrendered the premises. You have not vacated and surrendered possession of the premises to us until and unless you have either turned in all keys to the premises and we have acknowledged receipt of your keys, or you have abandoned the premises in our reasonable judgment. If you fail to turn in keys, you agree that you will be liable for rent and any other damages in accordance with this Lease Contract through the date we determine that you vacated and surrendered the premises in our reasonable judgment.

You have abandoned the premises if your personal belongings have been substantially removed, and you do not appear to be living in the premises in our reasonable judgment and if any of the following have occurred: (1) your written move out date has passed; (2) we are in the process of judicially evicting you for any reason; (3) you've been in default for non-payment of rent for 10 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, or judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13 - Property Left in Apartment), but do not affect our mitigation obligations (paragraph 33 - Default by Resident).

## Severability, Originals and Attachments, and Signatures

**51. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**52. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. You agree that your failure to notify us within 10 days of signing this Lease Contract that you did not receive a copy of the fully signed Lease Contract will be your acknowledgment that you received a copy from us. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. In filling out, processing, and completing this Lease Contract some clerical, scrivener, human, computer and/or mathematical errors may occur. Regardless of the cause of any error or mistake, you agree to cooperate with us by signing or resigning any document necessary to correct any mistake or error upon our request. Your failure to cooperate or failure to sign or resign any document is a default of this Lease Contract. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**53. ACKNOWLEDGEMENTS.** By signing this Lease Contract, you acknowledge that: (a) you received a disclosure from us about our application fees before you submitted your rental application; (b) you received a receipt from us for the application fees and deposits you paid at the time of your application; (c) you received any statutorily required disclosures from us regarding any known pest control issues affecting the premises.

---

| You are legally bound by this document. |
| :---: |
| Read it carefully before signing. |

**Resident or Residents** *(all sign below)*

*Kimberly segura*

*Sofia Segura*

_____

_____

_____

_____

**Owner or Owner's Representative** *(signing on behalf of owner)*

*Kaitlyn Oetrich*

**Address and phone number of owner's representative for notice purposes**

**18301 East Cottonwood Drive**

_____

**Parker, CO 80134**

**(303) 805-4188**

**Name and address of locator service** *(if applicable)*

_____

_____

_____

**Date form is filled out** *(same as on top of page 1)*

**05/03/2021**

_____

---

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) **Cash payment will not be accepted. If you don't pay all rent on or before the 3rd day of the month, you'll pay an initial late charge of $75.00, plus a late charge of $10.00 per day after that date until paid in full. Should the Owner serve any notices, the Resident will pay $35 as a service fee for each and every notice served. This service fee shall be payable as additional rent with any other monies owed within the time frame specified on the current notice that was served, or the resident will be considered in default of the Lease Contract and the Owner shall proceed with legal action. Maximum of 2 guests per resident in any common area. Property Damage Liability cost is $12.50 per month, if selected.**



**COLORADO**
APARTMENT ASSOCIATION

**LEASE ADDENDUM FOR RENT CONCESSION
OR OTHER RENT DISCOUNT**



**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. CONCESSION/DISCOUNT AGREEMENT.** As consideration for your agreement to remain in your dwelling and to fulfill your Lease obligations throughout the full term of your Lease, you will receive the following rent Concession and or Discount.

*(Check all that apply)*

❑ **One-Time Concession.** You will receive a One-Time Concession off the rent indicated in the Rent and Charges paragraph of the Lease Contract in the total amount of $ _____. This Concession will be credited to your rent due for the month(s) of: _____
_____
_____
_____.

❑ **Monthly Discount/Concession.** The rent indicated in the Rent and Charges paragraph of the Lease Contract includes a Monthly Discount of $ _____ per month off of the suggested rental rate for your dwelling.

❑ **Other Discount/Concession.** You will receive the following discount off the rent indicated in the Rent and Charges paragraph of the Lease Contract:
_____
_____
_____
_____

❑ **Non-Monetary Concession.** You will receive the following non-monetary concession during the term of the Lease:
_____
_____
_____
_____
_____

**4. CONCESSION CANCELLATION AND CHARGE-BACK.** The concession and discounts indicated above are provided to you as an incentive and with the understanding that you will fulfill your obligations under the Lease Contract through the entire term of your Lease.

If your tenancy is terminated early due to your default (for example, if you abandon the premises without paying rent or are evicted), this Concession/Discount Agreement will be immediately terminated, and you will be required to immediately repay to the Owner the amounts of all *(Check all that apply)*

☒ Concessions
☒ Discounts

that you have actually received for the months you resided in the Premises, and without further notice from us.

**5. MARKET RENT.** The market rent for this dwelling is the rent stated in the Lease Contract. You acknowledge that the market rent is a fair representation of what the specific dwelling would actually rent for at the time the Lease Contract was negotiated and executed, and is reflective of the rent for a similar dwelling at comparable properties.

**6. SPECIAL PROVISIONS.** The following special provisions control over any conflicting provisions of this printed Addendum form or the Lease Contract.

**The full amount of any and all concessions
or discounts must be paid back in full if
the lease contract is not fulfilled. If
the lease is terminated early, the full
amount will be added to the buy-out fee.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

*Kimberly segura*
*Sofia Segura*
_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs here)*

*Kaitlyn Oelrich*
_____

**Date of Lease Contract**

**May 3, 2021**
_____

© 2019, National Apartment Association, Inc. - 2/2019, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127



**COLORADO**
APARTMENT ASSOCIATION

## LEASE CONTRACT BUY-OUT AGREEMENT



**NAA**
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

(This Agreement may only be used if Box 1 of the Early Move-Out paragraph of the Lease Contract is checked.)

**1. APARTMENT DESCRIPTION.**
Apt. No. **11-101** , **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, _____**80134**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents):*
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Agreement constitutes an Agreement to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Agreement vary or contradict any terms or conditions found in the Lease Contract, this Agreement shall control.

**3. PURPOSE OF AGREEMENT.** The purpose of this Buy-Out Agreement is to give you the right to buy out of your Lease Contract early—subject to any special provisions in paragraph 9 below. In order to buy out early, your notice must be signed by all residents listed in the Parties paragraph of the Lease Contract and you must comply with all provisions of this Buy-Out Agreement.

**4. BUY-OUT PROCEDURES.** You may buy out of the Lease Contract prior to the end of the Lease term and cut off all liability for paying rent for the remainder of the Lease term if all of the following occur:

(a) you give us written notice of buy-out at least ___**60**___ days prior to the new termination date (i.e., your new move-out date), which (check one) ❑ must be the last day of a month or ☒ may be during a month;

(b) you specify the new termination date in the notice, i.e., the date by which you'll move out;

(c) you are not in default under the Lease Contract on the date you give us notice of buy-out;

(d) you are not in default under the Lease Contract on the new termination date (move-out date);

(e) you move out on or before the new termination date and do not hold over;

(f) you pay us a buy-out fee (consideration) of $_____;

(g) you pay us the amount of any concessions you received when signing the Lease Contract; and

(h) you comply with any special provisions in paragraph 9 below.

**5. WHEN PAYABLE.** The buy-out fee in paragraph 4(f) is due and payable no later than ___**0**___ days after you give us your buy-out notice. The total dollar amount of any concessions regarding rent or other monetary lease obligations for the entire Lease term is $_____ and is due payable on the same day as the buy-out fee, subject to any special provisions in paragraph 9 regarding the amount, calculation method, or payment date.

**6. SHOWING UNIT TO PROSPECTIVE RESIDENTS.** After you give us notice of buy-out, the Lease Contract gives us the right to begin showing your unit to prospective residents and telling them it will be available immediately after your new termination date.

**7. COMPLIANCE ESSENTIAL.** Our deposit of all amounts due under paragraphs 4(f) and 4(g) constitutes our approval of the new termination date stated in your notice of buy-out. If you fail to comply with any of the procedures or requirements in this agreement after we deposit such monies, your buy-out right and this agreement will be voided automatically; and (1) any amounts you have paid under this agreement will become part of your security deposit, and (2) the lease will continue without buy-out. Then, if you move out early, you are subject to all lease remedies, as stated in the Early Move-Out paragraph of the Lease Contract.

**8. MISCELLANEOUS.** If moving out by the new termination date becomes a problem for you, contact us. An extension may be possible if we have not already relet the apartment to a successor resident. We and any successor residents who may be leasing your unit will be relying on your moving out on or before the new termination date. Therefore, you may not hold over beyond such date without our written consent—even if it means you have to make plans for temporary lodging elsewhere. "Default" as used in paragraphs 4(c) and 4(d) of this agreement means default as defined in the Lease Contract. You will continue to be liable for any damages and any sums accruing and unpaid prior to the new termination date.

**9. SPECIAL PROVISIONS.** Your right of buy-out *(check one)* ❑ is or ☒ is not limited to a particular fact situation. If limited, buy-out may be exercised only if the following facts (see below) occur and any described documents are furnished to us. Any special provisions below will supersede any conflicting provision of this printed agreement. Any false statements or documents presented to us regarding buy-out will automatically void your right to buy-out of the Lease Contract. The special provisions are:

**Buy-Out fee is equivalent to 2 months rent**
**and must be paid at the time written**
**notice is provided to the management**
**company. Buy-Out fee must be paid in**
**Certified funds. Cash payment or personal**
**checks will not be accepted.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

*Kimberly segura* _____
*Sofia Segura* _____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs below)*

*Kaitlyn Oelrich* _____

**Date of Lease Contract**
**May 3, 2021**
_____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127



**UTILITY AND SERVICES ADDENDUM**



This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated _____**May 3, 2021**_____ between **Montane**

_____

("We" and/or "we" and/or "us") and **Kimberly vanessa Segura, Sofia Segura**

_____
_____
_____
_____

("You" and/or "you") of Apt. No. _____**11-101**_____ located at **18201 E. Cottonwood Dr.**

(street address) in _____**Parker, CO 80134**_____ and is in addition to all terms and conditions in the Lease. This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

1. Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

   a) **Water** service to your apartment will be paid by you either:
   - ☐ directly to the utility service provider; or
   - ☒ water bills will be billed by the service provider to us and then allocated to you based on the following formula: _**1**_____
     - ☐ If flat rate is selected, the current flat rate is $_____ per month.
     - ☒ 3rd party billing company if applicable **YES Energy**

   b) **Sewer** service to your apartment will be paid by you either:
   - ☐ directly to the utility service provider; or
   - ☒ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: _**1**_____
     - ☐ If flat rate is selected, the current flat rate is $_____ per month.
     - ☒ 3rd party billing company if applicable **YES Energy**

   c) **Gas** service to your apartment will be paid by you either:
   - ☐ directly to the utility service provider; or
   - ☒ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: _**8**_____
     - ☒ If flat rate is selected, the current flat rate is $_____ per month.
     - ☐ 3rd party billing company if applicable **YES Energy**

     **If your Gas service is sub-metered and charged by Owner, a separate "Gas and Electric Sub-metering Addendum" is attached hereto and incorporated by reference. Any conflicting terms of the Gas and Electric Sub-metering Addendum shall supersede the terms of this Utility and Services Addendum.**

   d) **Trash** service to your apartment will be paid by you either:
   - ☐ directly to the service provider; or
   - ☐ trash bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
     - ☒ If flat rate is selected, the current flat rate is $_____**10.00**_____ per month.
     - ☐ 3rd party billing company if applicable _____

   e) **Electric** service to your apartment will be paid by you either:
   - ☒ directly to the utility service provider; or
   - ☐ electric bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
     - ☐ If flat rate is selected, the current flat rate is $_____ per month.
     - ☐ 3rd party billing company if applicable _____

     **If your Electric service is sub-metered and charged by Owner, a separate "Gas and Electric Sub-metering Addendum"is attached hereto and incorporated by reference. Any conflicting terms of the Gas and Electric Sub-metering Addendum shall supersede the terms of this Utility and Services Addendum.**

   f) **Stormwater** service to your apartment will be paid by you either:
   - ☐ directly to the utility service provider; or
   - ☒ stormwater bills will be billed by the service provider to us and then allocated to you based on the following formula: _**1**_____
     - ☐ If flat rate is selected, the current flat rate is $_____ per month.
     - ☒ 3rd party billing company if applicable **YES Energy**

   g) **Cable TV** service to your apartment will be paid by you either:
   - ☒ directly to the utility service provider; or
   - ☐ cable TV bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
     - ☐ If flat rate is selected, the current flat rate is $_____ per month.
     - ☐ 3rd party billing company if applicable _____

   h) **Master Antenna** service to your apartment will be paid by you either:
   - ☒ directly to the utility service provider; or
   - ☐ master antenna bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
     - ☐ If flat rate is selected, the current flat rate is $_____ per month.
     - ☐ 3rd party billing company if applicable _____

   i) **Internet** service to your apartment will be paid by you either:
   - ☒ directly to the utility service provider; or
   - ☐ internet bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
     - ☐ If flat rate is selected, the current flat rate is $_____ per month.
     - ☐ 3rd party billing company if applicable _____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127

j) **Pest Control** service to your apartment will be paid by you either:
- ❏ directly to the utility service provider; or
- ❏ pest control bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
  - ☒ If flat rate is selected, the current flat rate is $_____**3.00**_____ per month.
  - ❏ 3rd party billing company if applicable _____

k) **Valet Trash** service to your apartment and costs will be paid by you either:
- ❏ directly to the utility service provider; or
- ❏ bills will be billed by the service provider to us and then charged to you based on the following formula: _____
  - ☒ If flat rate is selected, the current flat rate is $_____**25.00**_____ per month.
  - ❏ Additional, replacement, and missing valet trash containers are $_____.
  - ❏ 3rd party billing company if applicable _____

l) (Other) **Common Electric and Gas**_____ service to your apartment will be paid by you either:
- ❏ directly to the utility service provider; or
- ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: _**8**_____
  - ❏ If flat rate is selected, the current flat rate is $_____ per month.
  - ☒ 3rd party billing company if applicable **Yes Energy**_____

METERING/ALLOCATION METHOD KEY
"1"  - Sub-metering of all of your water/gas/electric use
"2"  - Calculation of your total water use based on sub-metering of hot water
"3"  - Calculation of your total water use based on sub-metering of cold water
"4"  - Flat rate per month
"5"  - Allocation based on the number of persons residing in your apartment
"6"  - Allocation based on the number of persons residing in your apartment using a ratio occupancy formula
"7"  - Allocation based on square footage of your apartment
"8"  - Allocation based on a combination of square footage of your apartment and the number of persons residing in your apartment
"9"  - Allocation based on the number of bedrooms in your apartment
"10" - Allocation based on a lawful formula not listed here
   (Note: if method "10" is selected, a separate sheet will be attached describing the formula used)

2. If an allocation method is used, we or our billing company will calculate your allocated share of the utilities and services provided and all costs in accordance with state and local statutes. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request.

If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3. When billed by us directly or through our billing company, you must pay utility bills within ___**3**___ days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

| | | |
|---|---|---|
| New Account Fee: | $____**10.00**____ | (not to exceed $ _____ ) |
| Monthly Administrative Billing Fee: | $____**4.30**____ | (not to exceed $ ___**5.00**___ ) |
| Late Fee: | $_____ | (not to exceed $ _____ ) |
| Final Bill Fee: | $____**15.00**____ | (not to exceed $ _____ ) |

If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

4. ❏ If this paragraph is checked, notwithstanding anything to the contrary in this Addendum, utilities with large fluctuations in use and therefore cost, may be billed based on a trailing 12-month average rate in order to minimize large variations in resident expense. Resident may "opt out" of this averaged billing by communicating the request in writing to the management office.

5. No later than the Lease commencement date, you will transfer into your name or account all utilities to be paid for by you. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your apartment and may charge a reasonable administration fee for billing the utility service in the amount of $____**50.00**____. Similarly, you will not change any such utility out of your name or allow any utility to be disconnected for any reason or by any means, including but not limited to non-payment of utility bills until you vacate the apartment. You consent to any utility company notifying us of your failure to pay any utility, or of any pending disconnection. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. You are liable for all utilities until you move out, or could have moved out, whichever date is first.

6. When you move out, you will receive a final bill which may be estimated based on your prior utility usage. This bill must be paid at the time you move out or it will be deducted from the security deposit.

7. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the apartment unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the apartment due to such outages, interruptions, or fluctuations.

8. You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease, this Addendum and at law.

9. Where lawful, all utilities, charges and fees of any kind under this Lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

10. You represent that all occupants that will be residing in the Unit are accurately identified in the Lease. You agree to promptly notify Owner of any change in such number of occupants.

11. You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities.

12. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this Addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

☑ Blue Moon eSignature Services Document ID: 263376127   Apartment Association, Inc. - 6/2018, Colorado

13. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Addendum and will supersede any conflicting provisions of this printed Addendum and/or the Lease Contract.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Resident Signature _Kimberly segura_____     Date _____05/03/2021_____
Resident Signature _Sofia Segura_____     Date _____05/03/2021_____
Resident Signature _____     Date _____
Resident Signature _____     Date _____
Resident Signature _____     Date _____
Resident Signature _____     Date _____
Management _Kaitlyn Oelrich_____     Date _____05/03/2021_____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127



## COLORADO GAS AND ELECTRIC
## SUB-METERING ADDENDUM



This Colorado Gas and Electric Sub-metering Addendum is hereby made part of and attached to that Lease Contract executed on _____ **May 3, 2021** _____ between **Montane**

_____ (Owner) and

**Kimberly vanessa Segura, Sofia Segura** _____

_____

_____

_____

_____

_____ (Resident) of Apt. No. _____ **11-101**

located at **18201 E. Cottonwood Dr.**

_____ (street address) in _____ **Parker, CO 80134** ,

and is in addition to all terms and conditions in the Lease.

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control. This Addendum is to be used where the Owner submeters or charges the Resident for gas or electric use and the Owner's billing method(s) are different from the methods established in Colorado Public Utilities Commission (PUC) regulation (Rules 4803 and 4804).

Owner sub-meters the cost of gas and/or electricity to residents. As Owner's methods of billing residents are dissimilar to the billing methods referenced in Colorado Public Utilities Commission (PUC) regulations (Rules 4803 and 4804), Owner has applied for and been granted the right to sub-meter the cost of gas and/or electricity as an exempt Master Meter Operator. The Owner shall bill the Resident for those portions of the gas and/or electricity sub-metered to the apartment according to the following:

1) The Owner shall not charge the Resident, as part of its billing for utility service, for any costs in addition to the actual cost billed to the Owner by the serving utility.

2) The sum of the Owner's billings to all Residents shall not exceed the amount billed to the Owner by the serving utility.

3) The Owner shall pass on to the Resident any refunds, rebates, rate reductions or similar adjustments it receives from the serving utility.

4) The Owner shall notify its current Residents, either by first class mail with a certificate of mailing or by inclusion in a regular monthly communication, of any refunds, rebate, rate reduction or similar adjustments from its serving utility and inform such Residents that they may claim the adjustments within 90 days after receipt of the notice.

5) With respect to those who are not current Residents, but were Residents during a previous period covered by any refunds, rebate, rate reduction or similar adjustments from the serving utility, the Owner shall send notice by first class mail to the Resident's last known address, advising them that they may claim said adjustments within 90 days after receipt of the notice.

6) Upon the expiration of the 90 day period, the Owner shall contribute unclaimed adjustments, if the aggregate amount exceeds one hundred dollars, to the fund established by the Legislative Commission on Low Income Energy Assistance.

7) Upon receipt of an invoice for any sub-metered utility, Resident (at Owner's option) shall either immediately make payment to the Owner for the sub-metered utility or shall remit the payment with the next regularly scheduled monthly rent payment. Failure by the Resident to timely pay for any sub-metered utility shall represent a monetary default under the terms of the Lease, entitling Owner to recover possession of the apartment upon the posting of a three-day Demand for Compliance or Possession as well as any and all other remedies provided by the Lease.

**Owner:**

_Kaitlyn Oelrich_ _____

**Resident(s):**

_Kimberly segura_ _____

_Sofia Segura_ _____

_____

_____

_____

_____

© 2018 National Apartment Association, Inc. - 6/2018, Colorado



# PEST CONTROL ADDENDUM

Date: **May 3, 2021**
(when this Addendum is filled out)

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, **80134** *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

***Resident and owner agree as follows:***

**3.** If Resident fails to report any pest infestation and/or problems with the Premises within two (2) days of move-in, Resident acknowledges that the Premises are acceptable, in good condition, and pest free. After this period, Resident shall immediately report to Owner's onsite agent any signs or indications of pests.

IF YOU CHOOSE TO SEND A STATUTORILY REQUIRED NOTICE TO US ELECTRONICALLY, YOU MUST SEND IT TO US AT ❑ THE ONLINE TENANT/MAINTENANCE PORTAL or ❑ _____

*(alternative electronic method of communication).*

**4.** Resident agrees that Resident's violation of this Addendum constitutes a material breach of this Addendum and the Lease. Upon Resident's breach, Owner shall have all remedies for breach set forth in this Addendum, set forth in the Lease and at law, including eviction. In accordance with Resident's Lease, Resident is at all times responsible for the conduct of Resident's occupants, guests, invitees and all others ("other Persons") who are present on or in any portion of the apartment community due to or because of Resident. A violation by any other Person of this Addendum is a violation by Resident.

**5.** Resident agrees that it is in Resident's best interest and the best interest of the apartment community to fully cooperate with Owner's pest control efforts. Resident agrees to fully cooperate with Owner or Owner's pest control company employed to eradicate pests, including all written instructions distributed to Resident. Resident's full cooperation includes, but is not limited to, immediately reporting in writing pest infestation to the Owner, making the Premises available for entry to complete pest inspection and eradication treatment(s), completing all required pre-treatment activities, evacuating the premises during and after treatment for the required time frame, if any, completing all required post-treatment activities,

and immediately reporting in writing ineffective treatment or re-infestations to the Owner. Resident shall also immediately dispose of any property or furniture that has been infested and that is not salvageable in the sole discretion of Owner's pest control vendor.

**6.** Resident shall practice good housekeeping to prevent pest infestations and to promptly eradicate them if they occur. Resident shall keep the Premises clutter free, clean, and sanitary, including regularly vacuuming. Resident shall cover mattresses and box springs with zippered, vinyl coverings, to prevent bed bugs from getting inside of mattresses. Residents shall arrange furniture to minimize pest hiding places. If possible, keep furniture several inches away from walls. Resident shall inspect clothing, luggage, and other personal property for signs of bed bugs when Resident stays overnight away from the Premises, or otherwise is exposed to areas that likely contain bed bugs.

**7.** In addition to regularly scheduled pest control services, if any, provided by the Community, Resident may request reasonable extermination services at any time. All requests must be in writing. Owner may enter Resident's unit to inspect for pests or for pest control related matters. If practical, Owner will notify Resident in advance of each pest inspection, including providing a preparation sheet. Notification is presumed received if Owner hands the notice and instructions directly to Resident or if Owner posts the notice and instructions to Resident's unit. Resident acknowledges that under some circumstances, immediate action may be necessary to control pests, and Owner is not required to provide Resident advance notice if circumstances require immediate action.

**8.** If Resident promptly notifies Owner and cooperates with Owner and/or Owner's pest control company and the unit is either re-infested or the initial treatment is ineffective, Owner will promptly schedule re-inspection and re-treatment at no cost to Resident. If Resident is not fully prepared for the treatment, Resident agrees to pay $ **175.00** . (If no amount is filled in, Resident shall be billed for the actual cost of service.) If Resident fails to cooperate fully with any pest treatment plan and the unit is either re-infested or the initial treatment is ineffective, Resident agrees to pay all costs of all subsequent treatments, as well as the cost of treatments due to any spread of the infestation to additional units, and all of Owner's consequential damages caused by any infestation spread due to Resident's failure to cooperate.

**9.** Bed bugs are a common problem throughout society. A surge in global travel and mobility, combined with changes in pesticide use, including the banning of DDT created optimal conditions for the revival of bed bugs, which had been virtually dormant since World War II. Exterminators have treated maternity wards, five-star hotels, movie theaters, banks, private schools, apartment communities, private homes, and countless other places. Accordingly, nearly every apartment community, including this one, has or will experience some level of bed bug infestation. Owner is not liable to Resident for any damages caused by pests including, but not limited to, replacement or cleaning of personal property, medications, or medical expenses. Resident must allow Owner and Owner's qualified inspectors or pest control agents access to the apartment at reasonable times to inspect for or treat bed bugs as allowed by law. Resident and Resident's family members, occupants, guests, and invitees must cooperate with all written instructions distributed to Resident and not interfere with inspections or treatments for bed bugs. Owner is not responsible for any damage done to Resident's unit or personal items during pest control inspections or treatments. After any infestation and inspection, Owner may require Resident to professionally treat any affected personal property, or to remove such property from the Premises if it cannot be

☑ Blue Moon eSignature Services Document ID: 263376127

effectively treated. Resident agrees to indemnify and hold harmless the Owner and the Owner's Agent from any actions, claims, losses, damages, and expenses, including, but not limited to, attorneys' fees that they may incur as a result of Resident's breach of this Addendum.

10. Resident represents and warrants that Resident's current and previous residences were bed bug free, that Resident's personal property does not contain any bed bugs, and that Resident is unaware of being exposed to any circumstances where bed bugs were present. Resident's current and previous residences include any apartment (including the building in which the apartment is located), home, or other dwelling Resident resided. Resident's personal property is all of Resident's personal property including but not limited to clothing, linen, and furniture.

   **Alternatively:**
   If Resident cannot make the representations and warranties set forth above, Resident makes the following disclosures regarding Resident's exposure to bed bugs:_____
   _____
   _____
   _____
   _____
   (if more room is necessary attach additional sheet). With respect to Resident's previous exposure to bed bugs, Resident represents and warrants that all of Resident's personal property has been inspected, professionally treated if warranted, and that no bed bugs are present in Resident's personal property. If Resident has been exposed to bed bugs, Resident shall provide or authorize Owner to obtain for review, documentation regarding such exposure, and shall upon request make all of Resident's personal property available for inspection to confirm the absence of bed bugs.

   In order to successfully eradicate bed bugs and to maximize the probability of providing a bed bug free community for all residents, Resident acknowledges and agrees that the Lease and this Addendum are being entered into by Owner in reliance on Resident's representations and warranties contained in this Addendum. If such information is false or materially misleading, it shall be considered a substantial and material violation of the Lease and Owner shall have the option to terminate your right to occupancy upon three (3) days notice to quit.

11. Resident acknowledges that Owner's adoption of this Addendum, and the efforts to provide a pest free environment, does not in any way change the standard of care that Owner owes Resident under the lease. Resident further acknowledges that Owner does not guarantee or warrant a pest free environment. Resident acknowledges and agrees that Owner's ability to police, monitor, and eradicate pests is directly dependent on Resident's and other residents' voluntary compliance and cooperation with pest eradication efforts, and Resident's full and faithful performance of Resident's obligations set forth in this Addendum. If Resident breaches this Addendum, by failing to cooperate with Owner's pest control efforts or otherwise, Resident shall have no right to terminate Resident's Lease, and shall remain legally responsible for all sums and damages due under the Lease.

12. Resident acknowledges that used or secondhand furniture is a primary method for the spread of bed bugs and other pests. Resident agrees to carefully inspect any used or secondhand furniture, especially bedding, acquired by Resident that is brought into the Premises. Used furniture, especially beds and mattresses, are often infested with bed bugs. Resident agrees not to acquire or bring into the Premises any used or secondhand furniture removed from the garbage or from unknown origins. Resident acknowledges that sharing vacuum cleaners is another highly possible way to spread bed bugs and roaches. Owner strongly advises Resident not to share such items with other residents.

13. In case of any conflict between the provisions of the Lease and this Lease Addendum, the provisions of this Lease Addendum shall govern. This Lease Addendum is incorporated into the Lease executed or renewed between the Owner and the Resident.

14. **SPECIAL PROVISIONS.**
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

**You are legally bound by this document. Please read it carefully.**

| **Resident or Residents** | **Owner or Owner's Representative** |
| *(All residents must sign)* | *(Signs below)* |

*Kimberly segura*

*Sofia Segura*

*Kaitlyn Oelrich*

**Date of Signing Addendum**

05/03/2021

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*



☑ Blue Moon eSignature Services Document ID: 263376127

# VALET TRASH SERVICE ADDENDUM

Valet trash service will be provided for each resident 5 **nights per week at Montane**. The cost for trash collection is $25.00 **per month.** A container will be provided to each resident and must be used in conjunction with the valet service. **Containers with bagged trash should be placed outside front door only between the hours of 6:00 pm - 8:00 pm.** Service will begin at 8:00 pm. All trash must be in bags and securely tied. Bags must be placed inside the container. No trash will be collected without the use of the container. No loose trash will be collected. All boxes must be broken down and flattened. After collection, residents are required to bring containers inside by 9:00am the following morning. Containers are the property of Valet Waste Inc. It is the responsibility of each resident to keep his or her container clean. There will be a $50 charge to the resident if an additional or replacement container is needed or if you take the container with you when you move out.

If any resident misses service on any of the designated nights, it is their responsibility to bring trash to the designated compactor or dumpster area or keep the trash inside his or her apartment until the next collection evening. **Containers/trash may NOT be left out for any reason during non-designated times.** If not complied with, resident will receive a warning. If after the first warning the resident is again in violation, his or her container will be removed and/or a fine of $25.00 per bag will be issued. Containers may be returned after a return fee is paid and with the resident's thorough understanding of the procedures for the service. If this problem continues beyond that, valet service for that resident will be terminated and disposing of trash will become the resident's responsibility.

We hope everyone will follow the rules to enjoy this amenity. By not following the rules for our community, you are in violation of your lease agreement and this will be handled accordingly.

We ask that everyone do his or her part in keeping our property clean and beautiful.

By signing this addendum you are stating that you are fully aware of the rules for the valet trash service and the penalties that may be incurred.

| | |
|---|---|
| *Kimberly segura*       05/03/2021 | 11-101 |
| Resident Signature, Date | Apt. # |
| *Sofia Segura*       05/03/2021 | |
| Resident Signature, Date | Resident Signature, Date |
| | *Kaitlyn Oelrich*       05/03/2021 |
| Resident Signature, Date | Property Representative, Date |

## PROPERTY DAMAGE LIABILITY – LEASE ADDENDUM

This Property Damage Liability Lease Addendum (this "Addendum") is an addendum to your Lease Agreement.  It is intended to be a part of the Lease Agreement between the Tenant and Landlord.

Landlord: **Montane** _____

Occupant: **Kimberly vanessa Segura, Sofia Segura** _____

Premises: **Montane** _____

As provided in the Lease Agreement, Tenant's Occupant is required to maintain property damage liability insurance during the Term of the Lease Agreement and any subsequent renewal periods.  It is required that the insurance be no less than One Hundred Thousand and No/100 Dollars ($100,000.00) for damages to Landlord's property  with provisions covering, at a minimum, perils of fire, explosion, water and smoke, among other things.

Tenant's Occupant agrees to either (a) purchase an insurance policy from in insurance company of his/her choice in accordance with the terms and conditions of this Addendum or (b) elect the *"Property Damage Liability Loss Waiver"* option below, which provides coverage to Landlord only for the four perils noted above and enrolls the Tenant's Occupant in the Occupant Legal Liability (OLL) program, an ePremium Insurance Company program, for the tenants of the Premises.  The *"Property Damage Liability Loss Waiver"* does not provide insurance to Tenant's Occupant, and does not cover losses to the personal property of Tenant's Occupant.  Notwithstanding anything herein or in the Lease Agreement to the contrary, Tenant's Occupant will be deemed to have satisfied the Tenant's insurance requirements set forth in Section 42 of the Lease Agreement in the event that the Tenant's Occupant elects the *"Property Damage Liability Loss Waiver"* option below.  All costs and expenses incurred in connection with either option shall be paid by Tenant's Occupant.

In the event Tenant's Occupant elects to obtain its own insurance policy, Tenant's Occupant shall request that the Landlord be (a) named as an "interested party" on the policy and (b) noted to be informed if the policy is canceled or terminated.  Such policy shall be written as a policy not contributing with and not in excess of coverage which Landlord may carry, and shall remain in full force and effect during the Term of the Lease Agreement and any subsequent renewal periods.

In the event Tenant's Occupant elects the *"Property Damage Liability Loss Waiver"* option below, Tenant's Occupant will pay the monthly fee associated therewith, which shall be due and payable each month without demand at the time of the Periodic Installment Payment.  Landlord provides no representations or warranties with respect to the services provided by the OLL program or the sufficiency of such program or any other product described herein.  The Occupant Legal Liability (OLL) program is not owned or operation by Landlord. You are under no obligation to elect this option.

Tenant agrees that a failure by Tenant's Occupant to comply with any of the terms and conditions of this Addendum shall constitute a default under the Lease Agreement to the extent permitted by Applicable Law.  In the event of such default to the extent permitted by Applicable Law, Landlord shall have all rights and remedies available to it under the Lease Agreement.

### Acknowledgement:

By signing the below, I understand that Landlord is not a licensed insurance agent and is neither making an offer of insurance nor selling insurance.

### Choose Option Below:

[x]    I will purchase my own insurance policy in accordance with the terms and conditions of this Addendum and provide a copy of the policy to Landlord.

By not choosing the first option, I accept the Property Damage Liability Loss Waiver and agree to enrollment in the OLL program for the tenants of the Premises and the monthly fee associated therewith of $11.95 per month.

Occupant: **Kimberly vanessa Segura** _____     Occupant: **Sofia Segura** _____

By: *Kimberly segura* _____          By: *Sofia Segura* _____
       (Occupant Signature)                    (Occupant Signature)

Date: 05/03/2021 _____          Date: 05/03/2021 _____

Occupant: _____     Occupant: _____

By: _____     By: _____
(Occupant Signature)     (Occupant Signature)

Date: _____     Date: _____

Landlord: _____

By: *Kaitlyn Oelrich* _____
(Authorized Signature)

Date: 05/03/2021 _____

☑ Blue Moon eSignature Services Document ID: 263376127



**ELECTRONIC PAYMENTS ADDENDUM**

DATE <u>05/03/2021</u>          PROPERTY NAME/NUMBER <u>Montane</u>

RESIDENT NAME(s) <u>Kimberly vanessa Segura, Sofia Segura</u>

UNIT NUMBER <u>11-101</u>     STREET ADDRESS <u>18201 E. Cottonwood Dr.</u>

CITY <u>Parker</u>          STATE <u>CO</u>   ZIP <u>80134</u>

This Addendum constitutes an Addendum to that Rental Agreement entered into by and between the Landlord and Tenant on <u>05/03/2021</u>          (date) for the premises commonly known as <u>18201 E. Cottonwood Dr., Parker, CO 80134</u>   (address) at <u>11-101</u>     Apartments. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Rental Agreement, this Addendum shall control.

**PAYMENT BY "ACH" DEBIT IS STRONGLY ENCOURAGED:** Landlord strongly encourages that Tenant make all payments of rent, together with any utility charges and/or other charges, of any nature whatsoever, by Automated Clearing House ("ACH") debit.

All amounts due Landlord are payable to [name of person or entity, street address and telephone number]. Payment must be made by: **ACH (strongly encouraged)** or ☒ Cashier's Check, ☐ Money Order, or ☐ Personal Check. No personal checks will be accepted after the third day of the month (they may be accepted on the third, not the fourth or any date after the fourth). Personal checks will not be accepted in response to a notice to pay rent or quit or a notice to perform lease condition or quit requiring payment.

**CERTIFIED FUNDS REQUIRED FOR NSF:** If any payment is returned, certified funds will be required for all future payments to Landlord for one year, or through the end of the tenancy, whichever is shorter.

**AUTOMATIC DEBIT FORM:** Resident shall, at the time of execution of the Rental Agreement, and at any time thereafter immediately following demand of Landlord, promptly complete an automatic debit form provided by Landlord authorizing Landlord to establish arrangements for the transfer of payments from Resident to Landlord by ACH debit(s) initiated by Landlord from an account in the name of Resident established at a United States Bank.

**TIMING OF PAYMENT:** For purposes of determining the timing of Resident's payment(s) to Landlord, Resident shall be deemed to have paid Landlord upon receipt of the Resident's funds in Landlord's bank account.

**REFUSAL OF TENDER(S):** Notwithstanding the foregoing ACH debit (payment) procedures, Landlord may, at its sole option, refuse or return any amount tendered by Resident (a) that constitutes a partial payment of debts, (b) that is refused or returned based on a rejection of rent for default due to nuisance or under non-monetary provisions of the lease agreement, (c) constitutes a payment of rent past any existing termination date, and/or (d) for any other lawful reason whatsoever.

**DEFAULT BY RESIDENT:** In the event that Landlord is unable, through no fault of Landlord or its bank, to successfully receive and/or process any ACH debit hereunder, Resident shall be deemed not to have

*Revised 8/28/2018*
*Owner: Operations*
*Page 1 of 2*



paid Landlord, and Landlord shall be deemed not to have received, such payment from Resident. If, for any reason, an ACH debit is later returned for nonsufficient funds, or for any other reason, Resident shall be deemed to have defaulted in the tender of said debit/payment. Resident will be responsible for a $50.00_____ insufficient funds fee.

**NON-WAIVER:** Resident agrees that it is in Landlord's sole discretion to choose the date on which to begin enforcement of the policies stated in this Addendum. If the policy is not enforced within 30 days of execution of this Addendum, Landlord will, as a courtesy to Resident, provide the Resident with 30 days written notice prior to the date the Addendum will be enforced.

*Kimberly segura*_____   05/03/2021_____
Resident                                       Date

*Sofia Segura*_____   05/03/2021_____
Resident                                       Date

_____   _____
Resident                                       Date

_____   _____
Resident                                       Date

*Kaitlyn Oelrich*_____   05/03/2021_____
Agent for Owner                                Date

*Revised 8/28/2018*
*Owner:  Operations*
*Page **2** of 2*



☑ Blue Moon eSignature Services Document ID: 263376127



**RESIDENT PARKING ADDENDUM**



Date: _____**May 3, 2021**_____
(when this Addendum is filled out)

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____ *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **May 3, 2021**_____
Owner's name: **Montane**_____
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The term of this Parking Addendum is as follows:
Begins on _____ , _____ and
ending on _____ , _____.

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**RESIDENT AND OWNER AGREE AS FOLLOWS:**

3. You agree to properly register all of your vehicles with management and any parking management agent we use to monitor and enforce our parking rules. If you get a new or replacement vehicle you must notify us, notify any parking management agent, and complete a new addendum within __**14**__ day(s) of obtaining the vehicle.

4. If you are provided with a parking tag or sticker, it must be properly installed and displayed according to management's specifications.

5. Unless your vehicle(s) has been assigned a specific space(s) you may park in any available space(s) in the parking areas, with the exception of spaces reserved for a particular use or any marked handicap space, unless you possess a government issued handicap decal or similar signage.

6. If you are assigned a specific parking space(s), we will assign you the space(s), and retain the right to change your assigned space(s) at our sole discretion.

7. You understand and agree that we have the right at any time, without notice, to tow or boot any unauthorized, non-registered vehicles, or vehicles without a parking tag or sticker from any parking space on the property.

8. You agree to use parking spaces in accordance with the terms of the Lease, any addenda, and Community Rules.

9. Any vehicles that are improperly parked or are in violation of this Addendum, the terms of the Lease, or Community Rules will be towed or booted at your expense. You agree that we will not be liable to you for damages related to the physical towing or booting nor any consequential damages you may incur through loss of use of the vehicle(s).

10. You understand that we will not be held liable for any damage or theft that may occur while your vehicle(s) is parked on any part of the property. Upon signing this Addendum, you knowingly accept the risk of parking any vehicle(s) on the property.

11. Any action by you, any occupant, guest, or visitor that violates this Addendum will constitute a violation of your Lease Contract.

12. You understand and agree that any judgment for possession entered against you will include any parking spaces you are entitled to under this Addendum. Once such judgment is rendered and executed upon you, you will immediately remove all vehicles from the property parking areas. If you fail to remove your vehicle(s), we will tow the vehicle(s) at your expense. You agree that we will not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s).

**COST FOR PARKING**

Resident agrees to pay a one-time fee of $ __**0.00**__ per vehicle on or before the _____ day of _____, _____. In alternative resident agrees to pay $ _____ monthly per vehicle due on or before the __**3rd**__ day of the month. If no amount is filled in, parking will be free for properly registered and authorized vehicles.

Resident understands and accepts that all-parking rights and privileges will immediately be revoked in the event Resident is ____**4**____ days delinquent in paying the required parking fee.

Resident agrees to pay $ __**20.00**__ NSF fee for all checks returned for non-sufficient funds.

**VEHICLE INFORMATION:**

**Vehicle 1**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

**Vehicle 2**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

**Vehicle 3**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

☑ Blue Moon eSignature Services Document ID: 263376127

**13. SPECIAL PROVISIONS.**

<u>Garages must be used for parking only. A</u>
<u>$75.00 fee will be assessed for lost/</u>
<u>stolen garage door openers. Your security</u>
<u>deposit will be reduced by $75.00 if</u>
<u>garage remote is not returned upon move</u>
<u>out. Parking is $10 monthly, paid directly</u>
<u>to ParkM. All unregistered vehicles are</u>
<u>subject to immediate tow at owners</u>
<u>expense. Commercial Vehicles are not</u>
<u>permitted to park anywhere in the</u>
<u>Community. Vehicles may not obstruct,</u>
<u>block, or hinder access to driveways or</u>
<u>sidewalks at any time, and must fit within</u>
<u>one parking space.</u>

**Resident or Residents**
*(All residents must sign)*

*Kimberly segura*

*Sofia Segura*

**Owner or Owner's Representative**
*(Signs below)*

*Kaitlyn Oelrich*

**Date of Signing Addendum**

05/03/2021

☑ Blue Moon eSignature Services Document ID: 263376127



**LEASE CONTRACT ADDENDUM FOR
ENCLOSED GARAGE, CARPORT, OR STORAGE UNIT**



**1. APARTMENT DESCRIPTION.**
Apt. No. **11-101**, **18201 E.
Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, _____**80134**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. GARAGE, CARPORT, OR STORAGE UNIT.** You are entitled to exclusive possession of: *(check as applicable)*
❑ garage or carport attached to the apartment;
❑ garage space number(s) _____ ;
❑ carport space number(s) _____; and/or
❑ storage unit number(s) _____.
All terms and conditions of the Lease Contract apply to the above areas unless modified by this Addendum.

**4. SECURITY DEPOSIT.** An additional security deposit of $_____**0.00**_____ will be charged for the checked areas above. We *(check one)* ☒ will consider or ❑ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in the Security Deposit paragraph of the Lease Contract *(check one)* ❑ does or ☒ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

**5. ADDITIONAL MONTHLY RENT.** Your total monthly rent (as stated in the Lease Contract) will be increased by $_____**0.00**_____.The monthly rent amount in the Rent and Charges paragraph of the Lease Contract *(check one)* ☒ includes ❑ does not include this additional rent.

**6. USE RESTRICTIONS.** Garage or carport may be used only for storage of operable motor vehicles unless otherwise stated in our rules or community policies. Storage units may be used only for storage of personal property. No one may sleep, cook, barbeque, or live in a garage, carport, or storage unit. Persons not listed as a resident or occupant in the Lease Contract may not use the areas covered by this Addendum. No plants may be grown in such areas. No animals may be kept in such areas.

**7. NO DANGEROUS ITEMS.** Items that pose an environmental hazard or a risk to the safety or health of other residents, occupants, or neighbors in our sole judgment or that violate any government regulation may not be stored. Prohibited items include fuel (other than in a properly capped fuel tank of a vehicle or a closed briquette lighter fluid container),

fireworks, rags, piles of paper, or other material that may create a fire or environmental hazard. We may remove from such areas, without prior notice, items that we believe might constitute a fire or environmental hazard. Because of carbon monoxide risks, you may not run the motor of a vehicle inside a garage unless the garage door is open to allow fumes to escape.

**8. NO SMOKE, FIRE, OR CARBON MONOXIDE DETECTORS.** No smoke, fire, or carbon monoxide detectors will be furnished by us unless required by law.

**9. GARAGE DOOR OPENER.** If an enclosed garage is furnished, you ☒ will ❑ will not be provided with a ☒ garage door opener and/or ❑ garage key. You will be responsible for maintenance of any garage door opener, including battery replacement. Transmitter frequency settings may not be changed on the garage door or opener without our prior written consent.

**10. SECURITY.** Always remember to lock any door of a garage or storage unit and any door between a garage and the apartment. When leaving, be sure to lock all keyed deadbolt locks.

**11. INSURANCE AND LOSS/DAMAGE TO YOUR PROPERTY.** You will maintain liability and comprehensive insurance coverage for any vehicle parked or stored. We are not responsible for pest control in such areas.

**12. COMPLIANCE.** As allowed by law, we may periodically open and enter garages and storerooms to ensure compliance with this Addendum. In the event we enter the garage or storerooms, we will comply with the notice provisions set forth in the Lease Contract.

**13. NO LOCK CHANGES, ALTERATIONS, OR IMPROVEMENTS.** Without our prior written consent, locks on doors of garages and storage units may not be rekeyed, added, or changed, and improvements, alterations, or electrical extensions or changes to the interior or exterior of such areas are not allowed. You may not place nails, screws, bolts, or hooks into walls, ceilings, floors, or doors. Any damage not caused by us or our representatives to areas covered by this Addendum will be paid for by you.

**14. MOVE-OUT AND REMEDIES.** Any items remaining anywhere on the community or our property after you have vacated the apartment will be removed, sold, or otherwise disposed of according to the Lease Contract, which addresses disposition or sale of property left in an abandoned or surrendered apartment. All remedies in the Lease Contract apply to areas covered by this Addendum.

**15. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**Rentable items cannot be removed during
the lease agreement. Removing rentable
items can only be done at the time of
lease renewal. Garages must be used for
parking only. For all rentable items, a
one time, non refundable administration
fee will be due in the amount of $30.00.
ParkM Registration is required for all
residents. ParkM for Lot Parking is $10
monthly.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

© 2018, National Apartment Association, Inc.

☑ Blue Moon eSignature Services Document ID: 263376127

| **Resident or Residents** | **Owner or Owner's Representative** |
|---|---|
| *(All residents must sign here)* | *(signs here)* |

*Kimberly segura*

*Kaitlyn Oelrich*

*Sofia Segura*

**Date of Lease Contract**

**May 3, 2021**



## LEASE ADDENDUM
## FOR REMOTE CONTROL, CARD, OR CODE ACCESS GATE



**1. APARTMENT DESCRIPTION.**
Apt. No. **11-101** , **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, _____ **80134**
*(zip code)*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**

Residents *(list all Residents)*:

**Kimberly vanessa Segura, Sofia Segura**

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. REMOTE CONTROL/CARDS/CODE FOR GATE ACCESS.**

☒ **Remote control for gate access.** Each person who is listed as a resident on the lease will be given a remote control at no cost to use during his or her residency. Each additional remote control for you or other occupants will require a $ **75.00** non-refundable fee.

☒ **Cards for gate access.** Each person who is listed as a resident on the lease will be given a card at no cost to use during his or her residency. Each additional card for you or other occupants will require a $ **75.00** non-refundable fee.

❏ **Code for gate access.** Each resident will be given, at no cost, an access code (keypad number) for the pedestrian or vehicular access gates. It is to be used only during your residency. We may change the access code at any time and will notify you of any such changes.

**4. DAMAGED, LOST OR UNRETURNED REMOTE CONTROLS, CARDS OR CODE CHANGES.**

☒ If a remote control is lost, stolen or damaged, a $ **75.00** fee will be charged for a replacement. If a remote control is not returned or is returned damaged when you move out, there will be a $ **75.00** deduction from the security deposit.

☒ If a card is lost, stolen or damaged, a $ **75.00** fee will be charged for a replacement card. If a card is not returned or is returned damaged when you move out, there will be a $ **75.00** deduction from the security deposit.

❏ We may change the code(s) at any time and notify you accordingly.

**5. REPORT DAMAGE OR MALFUNCTIONS.** Please immediately report to the office any malfunction or damage to gates, fencing, locks or related equipment.

**6. FOLLOW WRITTEN INSTRUCTIONS.** We ask that you and all other occupants read the written instructions that have been furnished to you regarding the access gates. This is important because if the gates are damaged by you or other occupants, guests or invitees through negligence or misuse, you are liable for the damages under your lease, and collection of damage amounts will be pursued.

**7. PERSONAL INJURY AND/OR PERSONAL PROPERTY DAMAGE.** Except as specifically required by law, we have no duty to maintain the gates and cannot guaranty against gate malfunctions. We make no representations or guarantees to you concerning security of the community. Any measures, devices, or activities taken by us are solely for the benefit of us and for the protection of our property and interests, and any benefit to you of the same is purely incidental. Anything mechanical or electronic is subject to malfunction. Fencing, gates or other devices will not prevent all crime. No access control system or device is foolproof or 100 percent successful in deterring crime. Crime can still occur. Protecting residents, their families, occupants, guests and invitees from crime is the sole responsibility of residents, occupants and law enforcement agencies. You should first call 911 or other appropriate emergency police numbers if a crime occurs or is suspected. We are not liable to any resident, family member, guest, occupant or invitee for personal injury, death or damage/loss of personal property from incidents related to perimeter fencing, automobile access gates and/or pedestrian access gates. We reserve the right to modify or eliminate access control systems other than those statutorily required. You will be held responsible for the actions of any persons to whom you provide access to the community.

**8. RULES IN USING VEHICLE GATES.**

- Always approach entry and exit gates with caution and at a very slow rate of speed.

- Never stop your car where the gate can hit your vehicle as the gate opens or closes.

- Never follow another vehicle into an open gate. Always use your card to gain entry.

- Report to management the vehicle license plate number of any vehicle that piggybacks through the gate.

- Never force the gate open with your car.

- Never get out of your vehicle while the gates are opening or closing.

- If you are using the gates with a boat or trailer, please contact management for assistance. The length and width of the trailer may cause recognition problems with the safety loop detector and could cause damage.

- Do not operate the gate if there are persons nearby who might get caught in it as it opens or closes.

- If you lose your card, please contact the management office immediately.

- Do not give your card or code to anyone else.

- Do not tamper with the gate or allow your occupants to tamper or play with the gates.

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**There will be a $15 one time programming**
**fee charged at move in.**

© 2018, National Apartment Association, Inc. - ☑ Blue Moon eSignature Services Document ID: 263376127

| **Resident or Residents** | **Owner or Owner's Representative** |
|---|---|
| *(All residents must sign here)* | *(signs here)* |

Kimberly segura _____     Kaitlyn Oelrich _____

Sofia Segura _____

_____     **Date of Lease Contract**

_____     May 3, 2021   _____

_____

_____

© 2018, National Apartment Association, Inc. - ☑ Blue Moon eSignature Services Document ID: 263376127





## ANIMAL ADDENDUM
*Becomes part of Lease Contract*

Date: _____**May 3, 2021**_____
(when this Addendum is filled out)

*Please note: We consider animals a serious responsibility and a risk to each Resident in the apartment. If you do not properly control and care for an animal, you'll be held liable if it causes any damage or disturbs other Residents.*

*In this document, the terms "you" and "your" refer to all residents listed below and all occupants or guests; and the terms "we," "us," and "our" refer to the owner named in the Lease Contract (not to the property manager or anyone else).*

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____ *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control. The Lease Contract is referred to in this Addendum as the "Lease Contract."

**3. A. ☐ NO APPROVED ANIMALS.** If this box is checked, you are not allowed to have animals (including mammals, reptiles, birds, fish, rodents, and insects), even temporarily, anywhere in the apartment or apartment community unless we've authorized so in writing. We will authorize support and/or service animals for you, your guests, and occupants pursuant to the parameters and guidelines established by the Fair Housing Act, HUD regulatory guidelines, and any applicable state and/or local laws.

**B. ☐ CONDITIONAL AUTHORIZATION FOR ANIMAL.** If this box is checked, you may keep the animal that is described below in the apartment until the Lease Contract expires. But we may terminate this authorization sooner if your right of occupancy is lawfully terminated or if in our judgment you and your animal, your guests, or any occupant violate any of the rules in this Addendum.

**4. ANIMAL DEPOSIT.** An animal deposit of $ __**0.00**__ will be charged. We *[check one]* ☒ will consider, or ☐ will not consider this additional security deposit the general security deposit for all purposes. The security deposit amount in the Security Deposit paragraph of the Lease Contract *[check one]* ☐ does, or ☒ does not include this additional deposit amount. Refund of the animal deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit. It is our policy to not charge a deposit for assistance animals.

**5. ADDITIONAL MONTHLY RENT.** Your total monthly rent (as stated in the Lease Contract) will be increased by $ __**35.00**__. The monthly rent amount in the Rent and Charges paragraph of the Lease Contract *[check one]* ☐ includes ☒ does not include this additional animal rent.

**6. ADDITIONAL FEE.** You must also pay a one-time non-refundable fee of $ __**300.00**__ for having the animal in the apartment. It is our policy to not charge a fee for assistance animals.

**7. LIABILITY NOT LIMITED.** The additional monthly rent and additional security deposit under this Animal Addendum do not limit Residents' liability for property damages, cleaning, deodorization, defleaing, replacements, or personal injuries.

**8. DESCRIPTION OF ANIMAL(S).** You may keep only the animal(s) described below. You may not substitute any other animal(s). Neither you nor your guests or occupants may bring any other animal(s)—mammal, reptile, bird, amphibian, fish, rodent, arachnid, or insect—into the apartment or apartment community.

Animal's name: _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____
City of license: _____
License no.: _____
Date of last rabies shot: _____
Housebroken? _____
Animal owner's name: _____
_____
_____

Animal's name: _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____
City of license: _____
License no.: _____
Date of last rabies shot: _____
Housebroken? _____
Animal owner's name: _____
_____
_____

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**The following constitutes a list of animals, and/or breed of animals, that shall not be permitted in, on or upon any dwelling unit or common area. Animals not listed below, but which display substantially similar physical characteristics or traits to those animals listed below, shall be treated as though they had been listed below. Breeds of Dogs: Pit Bull, Rottweiler, Presa Canario, German Shepherd, Husky, Malamute, Doberman, Chow Chow, St. Bernard, Great Dane, Akita, Staffordshire Terriers, American Bull Dog, Karelian Bear Dog. Exotic Animals: Reptiles, Ferrets, Skunks, Raccoons, Squirrels, Rabbits, Birds, Pigs, Arachnids, Piranha, other farm or poisonous animals. Aquarium max 5 gallons, must be first floor, management must approve.**

**10. EMERGENCY.** In an emergency involving an accident or injury to your animal, we have the right, but not a duty, to take the animal to the following veterinarian for treatment, at your expense.

Doctor: _____
Address: _____
City/State/Zip: _____
Phone: _____

**11. ANIMAL RULES.** You are responsible for the animal's actions at all times. You agree to abide by these rules:

- The animal must not disturb the neighbors or other Residents, regardless of whether the animal is inside or outside the apartment.

- Dogs, cats, and assistance animals must be housebroken. All other animals must be caged at all times. No animal offspring are allowed.

- Inside, the animal may urinate or defecate *only* in these designated areas: **Litter Box** _____
_____

- Outside, the animal may urinate or defecate *only* in these designated areas: **Designated Pet Areas** _____
_____

- Animals may not be tied to any fixed object anywhere outside the apartments, except in fenced yards (if any) for your exclusive use.

- You must not let an animal other than assistance animals into swimming-pool areas, laundry rooms, offices, clubrooms, other recreational facilities, or other apartments.

- Your animal must be fed and watered inside the apartment. Don't leave animal food or water outside the apartment at any time, except in fenced yards (if any) for your exclusive use.

- You must keep the animal on a leash and under your supervision when outside the apartment or any private fenced area. We or our representative may pick up unleashed animals and/or report them to the proper authorities. We may impose reasonable charges for picking up and/or keeping unleashed animals.

- Unless we have designated a particular area in your apartment or on the grounds for animal defecation and urination, you are prohibited from letting an animal defecate or urinate *anywhere* on our property. You must take the animal off our property for that purpose. If we allow animal defecation inside the apartment in this Addendum, you must ensure that it's done in a litter box with a kitty litter-type mix. If the animal defecates anywhere on our property (including in a fenced yard for your exclusive use), you'll be responsible for immediately removing the waste and repairing any damage. Despite anything this Addendum says, you must comply with all local ordinances regarding animal defecation.

**12. ADDITIONAL RULES.** We have the right to make reasonable changes to the animal rules from time to time if we distribute a written copy of any changes to every Resident who is allowed to have animals.

**13. VIOLATION OF RULES.** If you, your guest, or any occupant violates any rule or provision of this Animal Addendum (based upon our judgment) and we give you written notice, you must permanently remove the animal from the premises

within the time period specified in our notice. We also have all other rights and remedies set forth in the Lease Contract, including damages, eviction, and attorney's fees to the extent allowed by law.

**14. COMPLAINTS ABOUT ANIMAL.** You must immediately and permanently remove the animal from the premises if we receive a reasonable complaint from a neighbor or other Resident or if we, in our sole discretion, determine that the animal has disturbed neighbors or other Residents.

**15. OUR REMOVAL OF ANIMAL.** In some circumstances, we may enter the apartment and remove the animal with one day's notice left in a conspicuous place. We can do this if, in our sole judgment, you have:

- abandoned the animal;
- left the animal in the apartment for an extended period of time without food or water;
- failed to care for a sick animal;
- violated our animal rules; or
- let the animal defecate or urinate where it's not supposed to.

In doing this, we must follow the procedures of the Lease Contract, and we may board the animal or turn the animal over to a humane society or local authority. We'll return the animal to you upon request if we haven't already turned it over to a humane society or local authority. We don't have a lien on the animal for any purpose, but you must pay for reasonable care and kenneling charges for the animal. If you don't pick up the animal within 5 days after we remove it, it will be considered abandoned.

**16. LIABILITY FOR DAMAGES, INJURIES, CLEANING, ETC.** You and all Co-Residents will be jointly and severally liable for the entire amount of all damages caused by the animal, including all cleaning, defleaing, and deodorizing. This provision applies to all parts of the apartment, including carpets, doors, walls, drapes, wallpaper, windows, screens, furniture, appliances, as well as landscaping and other outside improvements. If items cannot be satisfactorily cleaned or repaired, you must pay for us to replace them completely. Payment for damages, repairs, cleaning, replacements, etc. are due immediately upon demand.

As owner of the animal, you're strictly liable for the entire amount of any injury that the animal causes to a person or anyone's property. You'll indemnify us for all costs of litigation and attorney's fees resulting from any such damage.

**17. MOVE-OUT.** When you move out, you'll pay for defleaing, deodorizing, and shampooing to protect future Residents from possible health hazards, regardless of how long the animal was there. We—not you—will arrange for these services.

**18. JOINT AND SEVERAL RESPONSIBILITY.** Each Resident who signed the Lease Contract must sign this Animal Addendum. You, your guests, and any occupants must follow all animal rules. Each Resident is jointly and severally liable for damages and all other obligations set forth in this Animal Addendum, even if the Resident does not own the animal.

**19. GENERAL.** You acknowledge that no other oral or written agreement exists regarding animals. Except for written rule changes under paragraph 9 above, our representative has no authority to modify this Animal Addendum or the animal rules except in writing. This Animal Addendum and the animal rules are considered part of the Lease Contract described above. It has been executed in multiple originals, one for you and one or more for us.

**This is a binding legal document. Read it carefully before signing.**

| Resident or Residents | Owner or Owner's Representative |
|---|---|
| *(All Resident's must sign)* | *(Signs below)* |

*Kimberly segura* _____   *Kaitlyn Oelrich* _____

*Sofia Segura* _____

_____

_____

_____

_____



Montane



### PET LEASE ADDENDUM

**NOW COMES** _____Montane_____ (hereinafter referred to as "Lessor") and

_____Kimberly vanessa Segura, Sofia Segura_____(hereinafter

referred to as "Lessee") and for new and valuable consideration agree as follows:

**WHEREAS**, the Lessor and Lessee have entered into a Lease Agreement dated __05/07/2021__ for the

rental of Apartment ____11-101___ (the "Unit") in the building located at __18201 E. Cottonwood Dr., Parker,__

____CO 80134____ _____Montane_____;

**WHEREAS**, the Lessee has made an application to the Lessor for a dog to reside with the Lessee in the

Unit;

**WHEREAS**, prior to the approval of a pet application, Lessee hereby agrees to the following:

1. Lessor shall provide to Lessee a DNA collection kit for each dog on the property.

2. Lessee shall use the kit to cheek swab its dog in the presence of the Lessor's agent and provide the

   collected material to the Lessor's agent.

3. Lessor's agent shall provide the materials to its dog registration company.

4. The Lessee shall affix the tag in the collection kit to the dog's collar to identify the dog as registered into

   the World Pet Registry and shall not allow the tag to be transferred to any other dog.

5. Lessee and Lessor shall be provided with the results of DNA testing in writing.

6. In the event fecal matter from Lessee's dog is found on the Property, Lessee agrees to be responsible for

   all testing and collection fees and costs incurred by the Lessor and shall pay a fine of $__250.00__

   within fourteen (14) days of being notified in writing by the Lessor or its agent that Lessee's dog's feces

   has been located on the Property. If this occurs a second time with no specified time period in-between

1



EQUAL HOUSING
OPPORTUNITY

☑ Blue Moon eSignature Services Document ID: 263376127

Montane

Lessee shall pay a fine of $_____ within fourteen (14) days of being notified in writing by the Lessor or its

agent that Lessee's dog's feces has been located on the Property. If this occurs a third time Lessee shall be required to remove the animal in violation within fourteen (14) days of being notified in writing by the Lessor or its agent that Lessee's dog's feces has been located on the Property.

7. Lessee hereby agrees to indemnify, defend and hold Lessor harmless from any and all claims or causes of actions, including reasonable attorneys' fees, brought by any person or entity against the Lessor arising out of the registration, collection or testing of the Lessee's dog.

8. After the pet application is approved, the Lessee agrees to abide by the terms and conditions of the Pet Rules and Regulations attached hereto as Exhibit A.

All of the terms and conditions of the Pet Lease Addendum shall be incorporated by reference into the Lease Agreement and any breach of the terms and conditions of the Addendum shall be construed a breach of the Lease Agreement.  Any amounts due and owing the Lessor as a result of a fee imposed for the collection, testing and resulting fine associated with the Pet Addendum shall be considered additional rent under the parties' Lease Agreement.

Lessor's Agent: *Kaitlyn Oelrich*_____   Date:_____05/03/2021_____

I/We certify that I/we have read all the paragraphs contained in this Pet Addendum and voluntarily agree to each and every term.

Lessee *Kimberly segura*_____   Date:_____05/03/2021_____

Lessee *Sofia Segura*_____   Date:_____05/03/2021_____

2

Revised 2.17.16



EQUAL HOUSING
OPPORTUNITY

Montane



_____ Montane _____ **PET POLICY**

### EXHIBIT A

Our pet policy has been established to ensure the safety of all our residents and to ensure the aesthetics of our community.  Not all buildings in our community are allowed dogs, so these rules were set up in order to keep everyone happy.

Anyone found in violation of this policy will be warned in writing the first time.  If these actions continue, we will terminate your leasing agreement and start eviction proceedings.

1. All dogs should be attended by an adult and leashed at all times while walking on the property.
2. Your pet is not allowed to be leashed to your back or front stairs.
3. Your pet must be current on all their vaccinations.  A vaccination certificate must be supplied in order to move in or renew your leasing agreement with our community.
4. Dogs are not allowed in the clubhouse or pool area.
5. Preventative and/or general maintenance is required to maintain your home.  In order to perform this work, your dog may need to be kenneled or kept in a room while this work is being conducted.  This is required in order to protect the safety of our staff and your animal.  In some cases, a scheduled appointment may be necessary to have an owner home to supervise the dog.
6. Any damage to your apartment or common areas caused by your pet will be your expense to repair or replace.
7. You are not allowed to transfer to another building unless it is a designated dog building, or your dog is no longer with you.
8. Your pet must be insured for damage and/or dog bite.  The property owner of _____ **Montane** _____ _____ will not be held responsible if your pet attacks and hurts another dog and/or person.
9. The weight limit set for the dogs in our community is _____ pounds.

Lessee: _Kimberly segura_ _____     Date: _____ 05/03/2021 _____

Agent: _Kaitlyn Oelrich_ _____     Date: _____ 05/03/2021 _____

3



**EQUAL HOUSING OPPORTUNITY**

Revised 2.17.16

☑ Blue Moon eSignature Services Document ID: 263376127



## Service Animal Policy

**BACKGROUND**

The Federal Fair Housing Act requires that applicants and Residents with disabilities be provided with "reasonable accommodations" as needed, in order for them to have an opportunity for full use and enjoyment of their housing. Allowing Residents and their guests who have disabilities to be accompanied by their service animals is a reasonable accommodation to housing policy and practice.

**WHO NEEDS SERVICE ANIMALS?**

Some disabled people require the assistance of an animal because of their disabling conditions. Under most federal laws, a person is considered to be disabled if he/she has a sensory, mental or physical condition that substantially limits one or more major life activities (such as walking, seeing, working, etc.).

**WHAT IS A SERVICE ANIMAL?**

The most common service animals are dogs, but sometimes other species are used (for example, a cat or bird). Service animals may be any breed, size, weight. Some, but not all, service animals wear special collars and harnesses. Some, but not all, are licensed or "certified" and/or have identification papers. However, **there is no legal requirement for service animals to be visibly identified or to have documentation.**

In addition, there are many types of service animals with different names which are not certified and don't have special training. For example, companion animals, which don't perform specific tasks, are considered service animals. The next two sections explain in detail the different types of service animals.

**WHAT'S THE DIFFERENCE BETWEEN A SERVICE ANIMAL AND A PET?**

Service animals are not considered to be pets. A person with a disability uses a service animal as an auxiliary aid—similar to the use of a cane, crutches or wheelchair. Service animals are a medical device necessary for the full enjoyment of a home. For this reason, fair housing laws require that housing providers make modifications to "No Pet" policies to permit the use of a service animal by an individual with a disability. Service animals sometimes are called assistance animals or emotional support animals and, as stated previously, companion animals.

**WHAT DO SERVICE ANIMALS DO?**

- A guide animal serves as a travel tool by a person who is legally blind.
- A hearing animal alerts a person with a significant hearing loss or who is deaf when a sound occurs; such as a ringing alarm or knock on the door.
- A service animal helps a person who has a mobility or health disability. Duties may include carrying, fetching, opening doors, ringing doorbells, activating elevator buttons, steadying a person walking, helping a person up after a fall, etc.
- A seizure response animal assists a person with a seizure disorder. The animal's service depends on the person's needs. The animal may go for help, or may stand guard over the person during a seizure. Some animals have learned to predict a seizure and warn the person.
- A companion animal or emotional support animal assists people with psychological disabilities. Emotional support animals can help alleviate symptoms such as depression, anxiety, stress and difficulties regarding social interactions, allowing Residents to live independently and fully use and enjoy their living environment.

Service Animal Policy;                                                                                                 1





**PRACTICAL GUIDELINES FOR RESIDENTS WHO WANT OR NEED SERVICE ANIMALS**

**REQUEST FOR A SERVICE ANIMAL ACCOMMODATION:**
The Resident who needs a service/companion animal can submit a request to the housing provider for an accommodation for the Resident's disability. The Resident will be provided with the Avenue5 Residential form "Request of Reasonable Accommodation". If the resident/applicant chooses another form, or verbally tells Avenue5 Residential, they may do so and it will be acceptable by Avenue5 Residential. If this option is chosen Avenue5 Residential will document the time and date that the request was made. Written requests should be dated, copied and copies retained by the Resident for proof that the request was made. NOTE: A Request for a Reasonable Accommodation is **NOT** required when the disability is visible.

**VERIFICATION OF DISABILITY AND NEED FOR A SERVICE ANIMAL**
The Resident must be prepared to provide written verification that he/she has a disability and that the accommodation is necessary to give the Resident equal opportunity to use and enjoy the housing and/or housing community. If the resident/applicant's situation requires that they get a third person to verify the disability or the need for the accommodation, (this happens when a person's disability is not obvious), the Resident/applicant should obtain verification on the Avenue5 Residential form "Reasonable Accommodation Verification Form". This verification form must be from his/her healthcare or mental health provider answering the following questions:

- Is the person disabled as defined by the fair housing laws?
- In the health care provider's professional opinion, does the person need the requested accommodation (use of a service animal) to have the same opportunity as a non-disabled person to use and enjoy the housing community?

While the property management may not require the requester of an accommodation to disclose the nature or severity of his/her disability, the requester might be required to show the relationship between the disability and the need for the requested accommodation.

For example, a Resident may need a seizure response animal. The seizures may come and go unexpectedly and due to genetics, an injury or some other situations. The only thing they need to disclose is that they have had seizures and many have seizures in the future and that the seizures come and go unexpectedly. Either the Resident can explain this or have it explained by a health care provider. The Resident does not have to say how often they have seizures, how severe the seizures are or what causes the seizures.

**ANIMAL CARE AND SUPERVISION:**
The Resident/handler is responsible for the care of his/her service animal. The animal must be supervised and the Resident/handler must retain full control of the animal at all times. This generally means that while the animal is in common areas, is it on a leash, in a carrier, or otherwise in the direct control of the animal owner/handler. When in the presence of others, the animal is expected to be well behaved. The Resident is responsible for the proper disposal of animal waste.

- Never allow the service animal to defecate on any property, public or private (except the Resident's own property), unless the Resident immediately removes the waste.



✓ Blue Moon eSignature Services Document ID: 263376127



- Always carry equipment sufficient to clean up the animal's feces whenever the service animal is in the common areas or off the Resident's property.
- Properly dispose of waste and/or litter.
- If you need assistance with cleanup, make arrangements for such help through family, friends or advocates.

---

**SERVICE ANIMAL POLICY**
**ACKNOWLEDGEMENT OF RECEIPT**

I hereby acknowledge the receipt of the Service Animal Policy implemented and enforced by Avenue5 Residential.


*Kimberly segura*          05/03/2021          _____
Resident Signature/Date                        Resident Signature/Date


*Sofia Segura*          05/03/2021          _____
Resident Signature/Date                        Resident Signature/Date


*Kaitlyn Oelrich*          05/03/2021          _____
Property Manager Signature/Date


Service Animal Policy;                                                            3





**COLORADO**
APARTMENT ASSOCIATION

# ASSISTANCE ANIMAL ADDENDUM

Date: **May 3, 2021**
*(when this Addendum is filled out)*

**NAA**
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E. Cottonwood Dr.**
_____ *(street address)* in
_____ **Parker**
*(city)*, Colorado, **80134** *(zip code)*. (the "Premises").

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3.** "Property" for purposes of this Addendum includes all of the Property we manage at the community, including but not limited to your dwelling unit, all common areas, buildings, walk ways, grounds, fenced areas, parking lots, the Premises, and perimeters of the community.

**4.** We agree to allow you to have an assistance animal at the Premises as a reasonable accommodation for the disability you have disclosed to us.

**5. DESCRIPTION OF ASSISTANCE ANIMAL(S).** You represent that this animal(s) will serve as your assistance animal during your tenancy by providing assistive services to you.

Animal's name: _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____

Animal's name: _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____

**6.** You represent and affirm that you have properly licensed the assistance animal if there is any general municipal or governmental licensing requirement for this type of animal and that you have inoculated the assistance animal for rabies and other usual inoculations for this type of animal (certificate attached).

**7.** Our permission for you to have the assistance animal is restricted solely to the particular assistance animal described above, and does not extend to any other animal whatsoever and does not change or waive the Lease's no-pet restrictions.

**8.** You certify that the assistance animal will not pose a direct threat of harm or danger to any of the other tenants, our staff, or any other individuals and will not damage any portion of the Premises or the Property. If the assistance animal poses a direct threat of harm to anyone during your residency, and/or if the assistance animal damages any portion of the Property, we will notify you in writing of the problem and upon receipt of such written notice, you will have ten (10) days to correct the behavioral issue with the assistance animal and/or pay for any damages to the Premises and/or Property. If you fail to correct the problem with the assistance animal and/or pay for any damages caused to the Premises and/or Property within the ten (10) days of receiving notice from us, we may terminate your occupancy rights upon three (3) days Notice to Quit. You further agree to indemnify and hold us and the owner of the Property harmless from any claim, loss, expense, cost, or damage, including reasonable attorneys' fees by reason of the assistance animal being on the Property.

**9.** You agree to continually clean up after the assistance animal, which includes but is not limited to cleaning up the assistance animal's waste on or near the Property. You expressly acknowledge that we do not provide animal waste removal services and you are solely responsible for such waste removal. You also agree to prevent the assistance animal from causing damage to the Premises beyond normal wear and tear. If you fail to clean up after the assistance animal, you agree upon three (3) days written notice in the form of a demand for compliance, to thoroughly clean up after the assistance animal. If you fail to thoroughly clean up after the assistance animal after receiving notice from us, we may terminate your occupancy rights to the dwelling unit.

**10.** You are responsible for the care of the assistance animal. In the event the animal is sick or injured and you are unavailable to seek treatment for the animal, we will have the right (but not the duty) to contact a veterinarian and incur on your behalf any necessary veterinarian charges to render aid or treatment to the animal.

**11.** There are no pet fees or deposits required concerning the assistance animal because you and we are agreeing that the animal is to provide you assistance and that the assistance animal is a reasonable accommodation based on your stated disability.

**12. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**You are legally bound by this document. Please read it carefully.**

**Resident or Residents**
*(All residents must sign)*

*Kimberly segura*
_____

*Sofia Segura*
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs below)*

*Kaitlyn Oelrich*
_____

**Date of Signing Addendum**
05/03/2021
_____

© 2019, National Apartment Association, Inc. · ☑ Blue Moon eSignature Services Document ID: 263376127



**COMMUNITY POLICIES, RULES AND REGULATIONS
ADDENDUM**



*This Addendum is incorporated into the Lease Contract (the "Lease") identified below and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Owner:*  **Montane**

*Resident(s):*  **Kimberly vanessa Segura, Sofia Segura**

*Apt. No:/Address:*  **#11-101, 18201 E. Cottonwood Dr., Parker, CO 80134**

*Lease Date:*  **05/03/2021**

**I.   GENERAL CONDITIONS FOR USE OF APARTMENT PROPERTY AND RECREATIONAL FACILITIES.**
Resident(s) permission for use of all common areas, Resident amenities, and recreational facilities (together, "Amenities") located at the Apartment Community is a privilege and license granted by Owner, and not a contractual right except as otherwise provided for in the Lease. Such permission is expressly conditioned upon Resident's adherence to the terms of the Lease, this Addendum, and the Community rules and regulations ("Rules") in effect at any given time, and such permission may be revoked by Owner at any time for any lawful reason. In all cases, the most strict terms of either the Lease, this Addendum, or the Community Rules shall control. Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Resident. Owner and management may make changes to the Rules for use of any Amenity at any time.

**Additionally, Resident(s) expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, related to Resident's use of the amenities at the Community. Resident(s) agrees to hold Owner harmless and release and waive any and all claims, allegations, actions, damages, losses, or liabilities of every type, whether or not foreseeable, that Resident(s) may have against Owner and that are in any way related to or arise from such use. This provision shall be enforceable to the fullest extent of the law.**

**THE TERMS OF THIS ADDENDUM SHALL ALSO APPLY TO RESIDENT(S)' OCCUPANTS, AGENTS AND INVITEES, TOGETHER WITH THE HEIRS, ASSIGNS, ESTATES AND LEGAL REPRESENTATIVES OF THEM ALL, AND RESIDENT(S) SHALL BE SOLELY RESPONSIBLE FOR THE COMPLIANCE OF SUCH PERSONS WITH THE LEASE, THIS ADDENDUM, AND COMMUNITY RULES AND REGULATIONS, AND RESIDENT(S) INTEND TO AND SHALL INDEMNIFY AND HOLD OWNER HARMLESS FROM ALL CLAIMS OF SUCH PERSONS AS DESCRIBED IN THE PRECEDING PARAGRAPH. The term "Owner" shall include the Management, officers, partners, employees, agents, assigns, Owners, subsidiaries and affiliates of Owner.**

**II.   POOL.**   This Community ☒ **DOES;**  ☐ **DOES NOT** have a pool. When using the pool, Resident(s) agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the pool area and Management policies.
- All Swimmers swim at their own risk. Owner is not responsible for accidents or injuries.
- For their safety, Residents should not swim alone.
- Pool hours are posted at the pool.
- No glass, pets, or alcoholic beverages are permitted in the pool area. Use paper or plastic containers only.
- Proper swimming attire is required at all times and a swimsuit "cover up" should be worn to and from the pool.
- No running or rough activities are allowed in the pool area. Respect others by minimizing noise, covering pool furniture with a towel when using suntan oils, leaving pool furniture in pool areas, disposing of trash, and keeping pool gates closed.
- Resident(s) must accompany their guests.
- Resident(s) must notify Owner any time there is a problem or safety hazard at the pool.

**IN CASE OF EMERGENCY DIAL 911**

**III.   FITNESS CENTER.**   This Community ☒ **DOES;**  ☐ **DOES NOT** have a fitness center. When using the fitness center, Resident agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the fitness center and Management policies.
- The Fitness Center is not supervised. Resident(s) are solely responsible for their own appropriate use of equipment.
- Resident(s) shall carefully inspect each piece of equipment prior to Resident's use and shall refrain from using any equipment that may be functioning improperly or that may be damaged or dangerous.
- Resident(s) shall immediately report to Management any equipment that is not functioning properly, is damaged or appears dangerous, as well as any other person's use that appears to be dangerous or in violation of Management Rules and Policies.
- Resident(s) shall consult a physician before using any equipment in the Fitness Center and before participating in any aerobics or exercise class, and will refrain from such use or participation unless approved by Resident's physician.
- Resident(s) will keep Fitness Center locked at all times during Resident's visit to the Fitness Center.
- Resident(s) will not admit any person to the Fitness Center who has not registered with the Management Office.
- Resident(s) must accompany guests, and no glass, smoking, eating, alcoholic beverages, pets, or black sole shoes are permitted in the Fitness Center.

Card # issued:   (1) _____   (3) _____   (5) _____
                 (2) _____   (4) _____   (6) _____

☑ Blue Moon eSignature Services Document ID: 263376127

**IV.    PACKAGE RELEASE.**   This Community ☒ **DOES;**   ☐ **DOES NOT** accept packages on behalf of Residents.

*For communities that do accept packages on behalf of its Residents:*
Resident(s) gives Owner permission to sign and accept any parcels or letters sent to Resident(s) through UPS, Federal Express, Airborne, United States Postal Service or the like. Resident agrees that Owner does not accept responsibility or liability for any lost, damaged, or unordered deliveries, and agrees to hold Owner harmless for the same.

**V.    BUSINESS CENTER.**   This Community ☐ **DOES;**   ☒ **DOES NOT** have a business center.

Resident(s) agrees to use the business center and Community Internet, if available to Resident by Owner, at Resident(s) sole risk and according to the rules and regulations posted in the business center and Management policies. Owner is not responsible for data, files, programs or any other information that is unlawfully obtained by a security breach, lost or damaged as a result of Resident's use of the Community Internet, on Business Center computers, or in the Business Center for any reason. Resident covenants that Resident and Resident's occupants will not: 1) share the community's wireless internet password with guests or invitees; 2) download, upload, transmit, or exchange unauthorized copies of copyrighted material (e.g. music, movies, or software) or any other content in violation of any federal, state or local laws; or 3) use the Internet for excessively high volume data transfers. If Resident or Resident's occupants intentionally or unintentionally breach this covenant (e.g. copyright infringement, security or data breach, compromising the security of Owner's computer(s)), and Owner incurs or suffers damages of any kind, including claims made by third-parties, Resident agrees to indemnify Owner for any and all damages, including reasonable attorney's fees and legal costs. No software may be loaded on Business Center computers without the written approval of Community Management. No inappropriate, offensive, or pornographic images or files (in the sole judgment of Owner) will be viewed or loaded onto the Business Center computers at any time. Residents will limit time on computers to _____0_____ minutes if others are waiting to use them. Smoking, eating, alcoholic beverages, pets, and any disturbing behavior are prohibited in the business center.

**VI.    AUTOMOBILES/BOATS/RECREATIONAL VEHICLES.**   The following policies are in addition to those in the Lease, and may be modified by the additional rules in effect at the Community at any given time:
- Only _____1_____ vehicle per licensed Resident is allowed.
- All vehicles must be registered at the Management office.
- Any vehicle(s) not registered, considered abandoned, or violating the Lease, this Addendum, or the Community Rules, in the sole judgment of Management, will be towed at the vehicle owner's expense after a _____24_____ hour notice is placed on the vehicle.
- Notwithstanding this, any vehicle illegally parked in a fire lane, designated no parking space or handicapped space, or blocking an entrance, exit, driveway, dumpster, or parked illegally in a designated parking space, will immediately be towed, without notice, at the vehicle owner's expense.
- The washing of vehicles is not permitted on the property unless specifically allowed in designated areas.
- Any on property repairs and/or maintenance of any vehicle must be with the prior written permission of the Management.
- Recreational vehicles, boats or trailers may only be parked on the property with Management's permission (in Management's sole discretion), and must be registered with the Management Office and parked in the area(s) designated by Management.

**VII.    FIRE HAZARDS.**   In order to minimize fire hazards and comply with city ordinances, Resident shall comply with the following:
- Residents and guests will adhere to the Community rules, regulations and other Management policies concerning fire hazards, which may be revised from time to time.
- No person shall knowingly maintain a fire hazard.
- **Grills, Barbeques, and any other outdoor cooking or open flame devices will be used only on the ground level and will be placed a minimum of _____10_____ feet from any building.** Such devices will not be used close to combustible materials, tall grass or weeds, on exterior walls or on roofs, indoors, on balconies or patios, or in other locations which may cause fires.
- Fireplaces:   Only firewood is permitted in the fireplace. No artificial substances, such as Duraflame® logs are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold.
- Flammable or combustible liquids and fuels shall not be used or stored (including stock for sale) in the apartments, near exits, stairways, breezeways, or areas normally used for the ingress and egress of people. This includes motorcycles and any apparatus or engine using flammable or combustible liquid as fuel.
- No person shall block or obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.
- Resident(s) are solely responsible for fines or penalties caused by their actions in violation of local fire protection codes.

**VIII.    EXTERMINATING.**   Unless prohibited by statute or otherwise stated in the Lease, Owner may conduct extermination operations in Resident's apartment several times a year and as needed to prevent insect infestation. Owner will notify Resident in advance of extermination in Resident's Apartment, and give Resident instructions for the preparation of the Apartment and safe contact with insecticides. Resident will be responsible to prepare the Apartment for extermination in accordance with Owner's instructions. If Residents are unprepared for a scheduled treatment date Owner may prepare Resident's apartment and charge Resident accordingly. Resident must request extermination treatments in addition to those regularly provided by Owner in writing. **Resident agrees to perform the tasks required by Owner on the day of interior extermination to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following:**
- Clean in all cabinets, drawers and closets in kitchen and pantry.
- If roaches have been seen in closets, remove contents from shelves and floor.
- Remove infants and young children from the apartment.
- Remove pets or place them in bedrooms, and notify Owner of such placement.
- Remove chain locks or other types of obstruction on day of service.
- Cover fish tanks and turn off their air pumps.
- Do not wipe out cabinets after treatment.

In the case of suspected or confirmed bed bug infestation, Resident will agree to the following:
- Resident will wash all clothing, bed sheets, draperies, towels, etc. in extremely hot water.
- Resident will thoroughly clean, off premises, all luggage, handbags, shoes and clothes hanging containers.
- Resident will cooperate with Owner's cleaning efforts for all mattresses and seat cushions or other upholstered furniture, and will dispose of same if requested.

☑ Blue Moon eSignature Services Document ID: 263376127

**RESIDENTS ARE SOLELY RESPONSIBLE TO NOTIFY OWNER IN WRITING PRIOR TO EXTERMINATION OF ANY ANTICIPATED HEALTH OR SAFETY CONCERNS RELATED TO EXTERMINATION AND THE USE OF INSECTICIDES**

IX. **DRAPES AND SHADES.** Drapes or shades installed by Resident, when allowed, must be lined in white and present a uniform exterior appearance.

X. **WATER BEDS.** Resident shall not have water beds or other water furniture in the apartment without prior written permission of Owner.

XI. **BALCONY or PATIO.** Balconies and patios shall be kept neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balconies or patios. No misuse of the space is permitted, including but not limited to, throwing, spilling or pouring liquids or other items, whether intentionally or negligently, over the balconies or patios.

XII. **SIGNS.** Resident shall not display any signs, exterior lights or markings on the apartment or any building or common areas. No awnings or other projections shall be attached to the outside of the building of which apartment is a part.

XIII. **SATELLITE DISHES/ANTENNAS.** You must complete a satellite addendum and abide by its terms prior to installation or use.

XIV. **WAIVER/SEVERABILITY CLAUSE.** No waiver of any provision herein, or in any Community rules and regulations, shall be effective unless granted by the Owner in a signed and dated writing. If any court of competent jurisdiction finds that any clause, phrase, or provision of this Part is invalid for any reason whatsoever, this finding shall not effect the validity of the remaining portions of this Addendum, the Lease Contract or any other addenda to the Lease Contract.

XV. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

All BBQ equipment is subject to management approval. Grills, Barbeques and any other outdoor flame devices will be used only on the ground level and will be placed a minimum of 10 feet from any building. A maximum of one propane BBQ with a tank no larger than 5 gallons is permitted with management approval. No Hibachi or charcoal style BBQ grills or smoker grills allowed anywhere on the premises.

I have read, understand and agree to comply with the preceding provisions.

| Kimberly segura | 05/03/2021 | | |
|---|---|---|---|
| Resident | Date | Resident | Date |
| Sofia Segura | 05/03/2021 | | |
| Resident | Date | Resident | Date |
| | | | |
| Resident | Date | Resident | Date |
| Kaitlyn Oelrich | | 05/03/2021 | |
| Owner Representative | | Date | |

☑ Blue Moon eSignature Services Document ID: 263376127

Amenities Lease Addendum



This Addendum is incorporated into the Lease Contract (the "Lease") identified below and is in addition to all the terms and conditions contained in the Lease. If any terms of this Lease Addendum conflict with the Lease, the terms of this Lease Addendum shall be controlling:

Property Owner:     **Montane**

Resident(s):     **Kimberly vanessa Segura, Sofia Segura**

Unit No./Address:     **18201 E. Cottonwood Dr. #11-101, Parker, CO 80134**

Lease Date:     **05/03/2021**

1.   The Community has made certain amenities and recreational facilities, including **Fitness Cntr, Pool/Spa, BBQ Areas,Greenhouse,Lounge,Bar**, available for use by residents subject to the below acknowledgment and release.

2.   Resident(s) acknowledge that the use of amenities and recreational facilities at the Community could expose Resident(s) to viruses or bacteria that could result in an infection or ailment. Resident(s) shall comply with the rules and regulations and owner policies relating to the mitigation or prevention of the spread of viruses and bacteria. Resident(s) shall comply with federal, state, county, and local laws, proclamations, orders, and guidelines regarding the use of face coverings while using amenity and recreational facilities. **Resident(s) assume the risks of personal injury, death and property damage relating to Resident(s)' use of the amenities at the apartment. Resident(s) hold harmless, indemnify, and release owner from any claims, allegations, actions, damages, losses, or liabilities, whether or not foreseeable, that Resident(s) may have against owner that is in any way related to such use. This release shall also apply to Resident(s)' occupants, invitees, guests, and their respective heirs, successors, assigns, estates, and legal representatives. The term "Owner" shall include the property owner, management, and each of their respective officers, employees, directors, managers, representatives, agents, and affiliates.**

I have read, understand and agree to comply with the preceding provisions.

| *Kimberly segura* | 05/03/2021 |
| Residents | Date |
| *Sofia Segura* | 05/03/2021 |
| Residents | Date |
| | |
| Residents | Date |
| | |
| Residents | Date |
| | |
| Residents | Date |
| | |
| Residents | Date |
| *Kaitlyn Oelrich* | 05/03/2021 |
| Owner Representative | Date |

Revised 5/20/2020
Owner: Legal

**PACKAGE ACCEPTANCE ADDENDUM**



**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, _____**80134**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:

**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE OF ADDENDUM.** By signing this Addendum, you wish for us to sign for, and to accept, U.S. mail and privately-delivered packages or other items on your behalf, subject to the terms and conditions set forth herein.

**4. PACKAGE ACCEPTANCE.**
**A. Generally.** You hereby authorize us and our agent to accept, on your behalf, any package or item delivered to our on-site management office during disclosed business hours, including but not limited to any package delivered by the U.S. Postal Service or by any private courier service or individual. You also specifically authorize us to sign on your behalf if the person or entity delivering said package or item requires an adult signature prior to delivery, including but not limited to the delivery of certified or registered mail. A photo I.D. is required before any packages will be released. Packages will only be released to verified Residents or approved representatives.

**B. Limitations.** You understand and agree that we may refuse to accept any package for any reason or no reason at all.

**5. TIME LIMITATION.** Due to limited storage space, we must ask that you pick up your package as soon as possible. You also agree that we shall have no duty whatsoever to hold or store any package for more than __3__ days after receipt (accordingly, you should notify the management office if you are going to be away from the apartment home and expect to be receiving a package(s)). After said time, you agree that any such package is deemed abandoned and you authorize us to return the package to its original sender.

**6. DUTY OF CARE, INDEMNIFICATION, ASSUMPTION OF RISKS AND WAIVER.** As to any package for which we sign and/or receive on your behalf, you understand and agree that we have no duty to notify you of our receipt of such package, nor do we have any duty to maintain, protect, or deliver said package to you, nor do we have any duty to make said package available to you outside disclosed business hours. Any packages or personal property delivered to us or stored by us shall be at your sole risk, and you assume all risks whatsoever associated with any loss or damage to your packages and personal property. You, your guests, family, invitees, and agents hereby waive any and all claims against us or our agents of any nature regarding or relating to any package or item received by us, including but not limited to, claims for theft, misplacing or damaging any such package, except in the event of our or our agent's gross negligence or willful misconduct. You also agree to defend and indemnify us and our agents and hold us both harmless from any and all claims that may be brought by any third party relating to any injury sustained relating to or arising from any package that we received on your behalf. You also agree to indemnify us and our agents and hold us harmless from any damage caused to us or our agents by any package received by us for you. You also authorize us to throw away or otherwise dispose of any package that we, in our sole discretion, deem to be dangerous, noxious, or in the case of packaged food, spoiled, and waive any claim whatsoever resulting from such disposal.

**7. SEVERABILITY.** If any provision of this Addendum or the Lease Contract is illegal, invalid or unenforceable under any applicable law, then it is the intention of the parties that (a) such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease, (b) the remainder of this Addendum shall not be affected thereby, and (c) it is also the intention of the parties to this Addendum that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Addendum a clause or provision similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

**8. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Resident or Residents** | **Owner or Owner's Representative** |
|---|---|
| *(All residents must sign)* | *(Signs below)* |

*Kimberly segura*                         *Kaitlyn Oelrich*
_____
*Sofia Segura*
_____                **Date of Signing Addendum**

_____                05/03/2021
_____
_____
_____

☑ Blue Moon eSignature Services Document ID: 263376127          ...ment Association, Inc. - 6/2018, Colorado





## LEASE CONTRACT ADDENDUM
## FOR SATELLITE DISH OR ANTENNA

Under a Federal Communications Commission (FCC) order, you as our resident have a right to install a transmitting or receiving satellite dish or antenna on the leased apartment, subject to FCC limitations. We as a rental housing owner are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that you and we agree to follow.

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. NUMBER AND SIZE.** You may install _____**1**_____ satellite dish(es) or antenna(s) on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. Antennas that only transmit signals or that are not covered by 47 CFR § 1.4000 are prohibited.

**4. LOCATION.** Your satellite dish or antenna may be located: (1) inside your apartment; or (2) in an area outside your apartment such as a balcony, patio, yard, etc. of which you have exclusive use under your lease. Installation is not permitted on any parking area, roof, exterior wall, window, window sill, fence or common area, or in an area that other residents are allowed to use. A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to you for your exclusive use.

**5. SAFETY AND NON-INTERFERENCE.** Your installation: (1) must comply with all applicable ordinances and laws and all reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of three methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or (3) any other method approved by us in writing. No other methods are allowed. We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

**6. SIGNAL TRANSMISSION FROM EXTERIOR DISH OR ANTENNA TO INTERIOR OF APARTMENT.** You may not damage or alter the leased premises and may not drill holes through outside walls, door jams, window sills, etc. If your satellite dish or antenna is installed outside your apartment (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your apartment only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane," similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window—without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the apartment; or (5) any other method approved by us in writing.

**7. SAFETY IN INSTALLATION.** In order to assure safety, the strength and type of materials used for installation must be approved by us. Installation must be done by a qualified person or company approved by us. Our approval will not be unreasonably withheld. An installer provided by the seller of the satellite dish or antenna is presumed to be qualified.

**8. MAINTENANCE.** You will have the sole responsibility for maintaining your satellite dish, antenna and all related equipment.

**9. REMOVAL AND DAMAGES.** You must remove the satellite dish or antenna and all related equipment when you move out of the apartment. In accordance with the NAA Lease Contract, you must pay for any damages and for the cost of repairs or repainting caused by negligence, carelessness, accident or abuse which may be reasonably necessary to restore the leased premises to its condition prior to the installation of your satellite dish, antenna or related equipment. You will not be responsible for normal wear.

**10. LIABILITY INSURANCE. You must take full responsibility for the satellite dish, antenna and related equipment. If the dish or antenna is installed at a height that could result in injury to others if it becomes unattached and falls, you must provide us with evidence of liability insurance (if available) to protect us against claims of personal injury and property damage to others, related to your satellite dish, antenna and related equipment.** The insurance coverage must be $___**100000.00**___, which is an amount reasonably determined by us to accomplish that purpose. Factors affecting the amount of insurance include height of installation above ground level, potential wind velocities, risk of the dish/antenna becoming unattached and falling on someone, etc.

**11. SECURITY DEPOSIT.** An additional security deposit of $____**500.00**____ will be charged. We *(check one)* ☒ will consider or ☐ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in Provision 4 of the Lease Contract *(check one)* ☐ does or ☒ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

This additional security deposit is required to help protect us against possible repair costs, damages, or failure to remove the satellite dish, antenna and related equipment at time of move-out. Factors affecting any security deposit may vary,

© 2018, National Apartment Association, Inc. -   ☑ Blue Moon eSignature Services Document ID: 263376127

depending on: (1) how the dish or antenna is attached (nails, screws, lag bolts drilled into walls); (2) whether holes were permitted to be drilled through walls for the cable between the satellite dish and the TV; and (3) the difficulty and cost repair or restoration after removal, etc.

**12. WHEN YOU MAY BEGIN INSTALLATION.**   You may start installation of your satellite dish, antenna or related equipment only after you have: (1) signed this addendum; (2) provided us with written evidence of the liability insurance referred to in paragraph 10 of this addendum; (3) paid us the additional security deposit, if applicable, in paragraph 11; and (4) received our written approval of the installation materials and the person or company that will do the installation, which approval may not be unreasonably withheld.

**13. MISCELLANEOUS.**   If additional satellite dishes or antennas are desired, an additional lease addendum must be executed.

**14. SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:

(1) satellite dish per unit is permitted. Satellite dish may not be attached, or drilled into building in any way. Satellite dish may be placed on patio/ balcony on a tripod but must not exceed living space

_____

**Resident or Residents**
*(All residents must sign here)*

*Kimberly segura*
_____

*Sofia Segura*
_____

_____

_____

_____

_____

**Owner or Owner's Representative**
*(signs here)*

*Kaitlyn Oelrich*
_____

**Date of Lease Contract**

May 3, 2021
_____



**PHOTO, VIDEO, AND STATEMENT RELEASE ADDENDUM**



**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____ **Parker** _____
*city),* Colorado, _____ **80134** _____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Occupants *(list all occupants)*:
**Landon Segura, Daniel Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE OF ADDENDUM.** By signing this Addendum, you, without payment or other consideration, agree to grant us permission to use your likeness in photographs, videos and/ or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

A. CONSENT FOR MINOR OCCUPANTS. By signing this Addendum, if any minor occupants are named above, you further certify that you are the parent, or legal guardian of the minor occupant(s) named above, and you, without payment or other consideration, agree to grant us permission to use their likeness in photographs, videos and/ or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

**4. PHOTO AND VIDEO RELEASE.** You hereby grant us and our agents and affiliates (collectively, the "Released Parties") permission and a license to take, use, reuse, and publish the likeness of you and any minor occupants in all photographs or other electronic and/or digital media in any and all of our publications, including, without limitation, any website entries, advertising websites, and any other marketing materials. You understand and agree that these materials will become the property of the Released Parties and will not be returned. You agree to irrevocably authorize the Released Parties to edit, alter, copy, exhibit, publish, or distribute this media for any lawful purpose whatsoever including, without limitation, promotional and advertising uses. You waive the right to inspect or approve the finished product, including any written or electronic copy, wherein your likeness appears now or in the future. In addition, you waive any right to payment, royalties, or any other compensation arising or related to the use of the media.

**5. CONSENT TO USE YOUR NAME, LIKENESS , WRITTEN COMMENTS, AND STATEMENTS.** You are expressly agreeing to allow us to post your name, picture, written comments, and statements, and/or the names, pictures, written comments and statements of any minor occupants in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. You hereby grant the Released Parties permission and a license to use, reproduce, and publish any media on its website, social media platforms, or in other marketing-related materials, whether in electronic or print form.

**6. RELEASE OF LIABILITY.** You hereby release, hold harmless, and forever discharge us from any claims or causes of actions including, without limitation, any and all claims for libel or violation of any right of publicity or privacy, related to our use of the media in any and all of our publications, including any website entries, advertising websites, social media websites, and any other marketing material so long as the claim or cause of action does not result from our intentional misconduct or gross negligence. This consent and release shall be binding upon you and your heirs, legal representatives and assigns.

**7. REVOCATION.** You have the right to revoke your consent to our use of your name, picture, video, voice, written comments, or statement, and/or the name, picture, video, written comments, voice, or statement of any minor occupants, by written notice to us.

**8. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

☑ Blue Moon eSignature Services Document ID: 263376127

| **Resident or Residents**<br>*(All residents must sign)* | **Owner or Owner's Representative**<br>*(signs below)* |
|---|---|
| *Kimberly segura* | *Kaitlyn Oelrich* |
| *Sofia Segura* | |
| | **Date of Signing Addendum** |
| | 05/03/2021 |

© 2018, National Apartment Association, Inc. -

☑ Blue Moon eSignature Services Document ID: 263376127



**WASHER AND DRYER ADDENDUM**



1. **APARTMENT UNIT DESCRIPTION.**
Apt. No. _____ **11-101** _____ , at **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____ **Parker** _____
*(city)*, Colorado, _____ **80134** _____
*(zip code).*

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **PURPOSE OF ADDENDUM.** In consideration of your agreeing to rent a washer and dryer from us and by signing this Addendum, you agree to the terms and conditions set forth herein.

4. **OWNER SUPPLIED WASHER AND DRYER.**

   **A. Washer and Dryer Rental Fees.** We agree to rent to you a washer and dryer for the sum of $_____ per month, beginning on _____ and expiring concurrently with the above referenced Lease Contract, including any renewal periods.

   You shall pay the monthly washer and dryer rental amount in advance and without demand, as additional rent, along with your monthly rent payment. If any monthly washer and dryer rent is not paid on or before the due date, we or our agent(s) reserve the right to remove the equipment, as provided by law.

   **B. Identification of Washer and Dryer.** You are entitled to exclusive use of a:

   ❏ Full Size
   ❏ Stackable
   ❏ Other: _____

   Washer Model/Serial Number:

   _____

   Dryer Model/Serial Number:

   _____

   The washer/dryer set will hereinafter collectively be referred to as the "equipment." You acknowledge that you have inspected the equipment, and have found the same to be in good working condition free from any defect or mechanical issue. You further acknowledge that the equipment is for your use and in consideration of your agreement to pay washer and dryer rent. We are the owner of the equipment, and you shall not remove the equipment from the apartment. Removal of the equipment from the apartment without our prior written consent will constitute theft, and result in our reporting to law enforcement and pursuit of both criminal and civil penalties against you.

**C. Responsibility for Damages.** You agree to immediately report any and all repairs or maintenance needed to the equipment to us. You will be responsible for any damages to our property, or to the personal property of others, if you fail to promptly report needed repairs or maintenance, and such needed repairs or maintenance not being able to be carried out causes damage to our property, or to the personal property of others. Except as may otherwise be prohibited by law, (1) you are responsible for any damage caused by a leaking washer, and will be billed by us for such damage; (2) we are not liable for any damage caused by the equipment; (3) you agree to waive any and all claims, liabilities and actions of any nature you may ever have against us and our agents for the delivery, repair, maintenance or removal of equipment unless such claims arise from any proximately caused negligence or intentional act committed by us or our agents; and (4) you agree to indemnify and to hold us and our agents harmless from and/or for any and all damages of any nature or kind arising from your willful or negligent misuse of the equipment.

**D. Insurance.** At all times you must carry renter's insurance that provides insurance coverage for damage to your personal belongings from accidental water discharge from the equipment or other causes. The insurance must also provide coverage for any potential liability, due to your fault, for water or other damage to other units and to personal property of others. You must verify with your insurance agent that such coverages are included in your policy and must furnish us a copy of the policy upon our request.

5. **ACCESS TO WASHER AND DRYER; EMERGENCIES.**
   You agree to allow our agent(s) access to the apartment and the equipment for the purpose of delivery, repair, maintenance, replacement or removal of the equipment. You agree to make any necessary preparations, including clearing a path to the laundry closet and securing all pets. Additionally, without advanced notice, you agree to allow our agent(s) access to the apartment and the equipment in the event of an emergency, as provided by law.

6. **RESIDENT USE AND MAINTENANCE OF WASHER AND DRYER.** You agree to use the equipment for normal household purposes, to use diligence in using the equipment, and to take proper care of the equipment. An equipment operations manual will be provided to you upon your request. You acknowledge that you know how to operate the equipment. You are liable to us for all damages to the equipment beyond normal wear and tear including, but not limited to, scratches, dents, dings and costs for repairs. You must pay us for all damages to the equipment upon demand. If not previously paid, we will assess the cost of equipment rent and damages to the equipment against your security deposit and/or final account upon move-out. If you remove the equipment from the apartment, you shall pay us the actual cost of replacing the equipment.

7. **ADDITIONAL PROVISIONS.** You agree that sums and charges owed under this Addendum are additional rent. Violation of this Addendum including, but not limited to, your failure to pay monthly equipment rent is a breach of the Lease Contract, and we shall have all remedies available including termination of the Lease Contract and eviction. In addition, upon your failure to pay equipment rent, we shall have the right to remove the equipment, as provided by law. You shall remain liable for all amounts due under this Addendum until you vacate the apartment, including holding over or month-to-month periods, and all provisions of this Addendum will remain in full force and effect during such periods.

© 2018, National Apartment Association, Inc. · ☑ Blue Moon eSignature Services Document ID: 263376127

**8. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

<table>
<tr><td align="center"><b>Resident or Residents</b><br><i>(All residents must sign)</i></td><td align="center"><b>Owner or Owner's Representative</b> <i>(signs below)</i></td></tr>
<tr><td><i>Kimberly segura</i></td><td><i>Kaitlyn Oelrich</i></td></tr>
<tr><td><i>Sofia Segura</i></td><td></td></tr>
<tr><td></td><td align="center"><b>Date of Signing Addendum</b></td></tr>
<tr><td></td><td align="center">05/03/2021</td></tr>
</table>

☑ Blue Moon eSignature Services Document ID: 263376127

**Montane**



# CARE OF STAINLESS STEEL APPLIANCES

Resident(s) Name:

**Kimberly vanessa Segura, Sofia Segura**

Unit Number: _____ **11-101** _____

This Addendum to the Lease Contract is hereby attached to and made part of the  Lease dated____**05/07/2021**____between_____**Montane**_____ and Resident(s).

In the event any provision in this Addendum is inconsistent with any provision or provisions contained in other portions or attachments to  the  above-mentioned  Lease  Contract,  then  the  provisions  of  this  Addendum shall control. For purposes of this addendum, the term 'imit" shall include the rental premises, all common areas, all other rental premises on the property or any common areas or other rental premises on or about other property owned by or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

Your stainless steel appliances need to be cleaned for aesthetic considerations and to preserve corrosion resistance. Stainless steel is protected from corrosion by a thin layer of chromium oxide. Oxygen from the atmosphere combines with the chromium in the stainless steel to form this passive chromium oxide film that protects from further corrosion. Any contamination of the surface by dirt, or other material, hinders this passivation process and traps corrosive agents reducing corrosion protection. Thus, some form of routine cleaning is necessary to preserve the appearance and integrity of the appliance surface.
 General Precautions

- In selecting cleaning practices, consider the possibility of scratching and the potential for post-cleaning corrosion caused by incompletely removed cleaners, NEVER USE ABRASIVE CLEANERS. Abrasive cleaners can permanently damage your stainless steel appliance. Regardless of which type of cleaner you use, thorough post-clean rinsing with clean water and a cloth is recommended.

Suggested Cleaning Methods

- Do not use metal (i.e. carbon steel brushes or steel wool), hard (like pumice) or rough items (emery or sand paper) to clean as they can scratch the appliance surface, Scratches can lead to rusting. Avoid using oily or greasy cloths when cleaning stainless steel.

- Clean Water and Wipe: The simplest, safest and least costly method that will adequately do the job is always the best method. Your stainless steel appliances will thrive with frequent cleaning because there is no surface coating to wear off. A soft cloth and clean, warm water should always be the first choice for mild stains, loose dirt and soil. A final rinse with clean water and a dry wipe will complete the process and eliminate the possibility of water stains.

- Follow the directions on the container. In addition, all you will need is a soft cloth to wipe the product off.

I have read "The Care of Stainless Steel Appliances" and agree to comply with the suggested methods of cleaning. I acknowledge that I will be held responsible for any damages due to neglect, misuse or abuse.


*Kimberly segura*_____    05/03/2021____        *Kaitlyn Oelrich*_____   05/03/2021____
Resident/Date                                                        Owners Representative/Date



Revised 2.16.16



## ADDITIONAL SPECIAL PROVISIONS

**APARTMENT UNIT DESCRIPTION.**   Apt. No. _____ __11-101__ _____ , __18201 E. Cottonwood Dr.__

_____ *(street address)* in __Parker__

_____ *(city)*, Colorado, _____ __80134__ _____ *(zip code)*.

**LEASE CONTRACT DESCRIPTION.**   Lease Contract date: _____ __May 3, 2021__ _____
Owner's Name:            __Montane__

Residents *(list all residents)*:   __Kimberly vanessa Segura, Sofia Segura__

If your unit has stainless steel appliances, the following cleaning precautions and methods must apply. General Precautions In selecting cleaning practices, consider the possibility of scratching and the potential for post-cleaning corrosion caused by incompletely removed cleaners. NEVER USE ABRASIVE CLEANERS. Abrasive cleaners can permanently damage your stainless steel appliance. Regardless of which type of cleaner you use, thorough post-clean rinsing with clean water and a cloth is recommended. Suggested Cleaning Methods Do not use metal (e.g. carbon steel brushes or steel wool), hard (like pumice) or rough items (emery or sand paper) to clean as they can scratch the appliance surface. Scratches can lead to rusting. Avoid using oily or greasy clothes when cleaning stainless steel. Clean Water and Wipe: The simplest, safest, and least costly method that will adequately do the job is always the best method. Your stainless steel appliances will thrive with frequent cleaning because there is no surface coating to wear off. A soft cloth and clean, warm water should always be the first choice for mild stains, loose dirt and soil. A final rinse with clean water and a dry wipe will complete the process and eliminate the possibility of water stains. Follow the directions on the container. In addition, all you will need is a soft cloth to wipe the product off. I have read "The Care of Stainless Steel Appliances" and agree to comply with the suggested methods of cleaning. I acknowledge that I will be held responsible for any damages due to neglect, misuse or abuse.

| **Resident(s)** | **Date of Signing Addendum** |
|---|---|
| *(All residents must sign)* | |
| *Kimberly segura* | 05/03/2021 |
| *Sofia Segura* | 05/03/2021 |

| **Owner or Owner's Representative** | **Date of Signing Addendum** |
|---|---|
| *Kaitlyn Oelrich* | 05/03/2021 |

Colorado/National Apartment Association Official Form, June 2018
☑ Blue Moon eSignature Services Document ID: 263376127   8, National Apartment Association, Inc.



Addendum to Lease Agreement

Hardwood Floor Addendum

This Addendum to the Lease Contract is hereby attached to and made part of the Lease Agreement.

In the event that any provision is this Addendum is inconsistent with any provision or provisions contained in other portions or attachments to the above-mentioned Lease Agreement, then the provisions of this Addendum shall control. For purposes of this addendum, the term "unit" shall include the rental premises, all common areas, all other rental premises on the property or any common areas or other rental premises on or about other property owned by or managed by the Owner. The parties hereby amend and supplement the Lease contract as follows:

This apartment home features new hardwood flooring. All resident(s) occupying this unit will be responsible for all costs to repair or replace due to damage caused by them or their furniture. All residents are required to place felt pads on the underside of all their furniture to protect the hard wood flooring.

Upon termination of residency, the Owner will conduct a move-out inspection and provide the resident with a copy of the move out report, as required in the Lease Agreement. If any damages are noted, the Owner will contract with a professional to attempt to repair the flooring. In the event repair is unsuccessful, the wood floor will be replaced. Resident acknowledges if replacement occurs they are wholly responsible for all costs. This section shall be attached to and become part of the Lease Agreement.

Hardwood floors are finished with a durable finish that is designed to provide years of protection and easy care. Some simple care and maintenance procedures will help to keep the floor looking it's best and help to protect it from unnecessary wear and damage.

Sweep or vacuum the floor regularly to keep it clean and free of dust, sand and other abrasive materials. Place area rugs or doormats at entryway to help prevent sand, grit, oils, dirt and other abrasive or staining materials from being tracked onto the floor surface from outdoors. (Avoid rubber backed or similarly dense matting materials that may trap moisture between the mat and the floor; choose mats that enable airflow instead.) Place protective mats at high-use work areas such as sinks, ranges and workstations.

Protect the floor from any exposure to liquids, water and other forms of moisture. Blot up any spilled food, drink, or other liquid immediately. Never wet mop the floor when



cleaning. Avoid walking on the floor with wet feet or footwear. Damage caused by flooding, broken pipes, wet mopping or any other exposure to liquid or moisture is not covered by the product warranty.

Ensure that the environmental conditions are maintained with a temperature of 68-72 degrees and humidity at 40-60% at all times. Hardwood flooring reacts to changes in the environment. Excessive heat or dryness can result in gapping or splitting; excessive humidity can result in cupping.

Put felt protector pads on the feet of all furniture and accessories that will be placed directly to the floor surface. Avoid letting sharp or pointed objects come into contact with the floor surface. Do not walk in the floor with high heeled shoes, sports cleats, or other types of footwear which may damage the finish or cause indentations to the surface.

Pets nails will scratch and mark the floor surface. Keep pet's nails trimmed to minimize damage to the surface. Do not drag, push or roll appliances, furniture, or any heavy objects across the floor. Use heavy duty moving mats, dollies, or other moving aids to protect the floor surface.

Cleaning routinely by sweeping or vacuuming will keep the floor clear of most dust, grit, and debris. For more thorough cleaning, use a wood floor cleaning solution approved for use with hardwood flooring. Do not use any household cleaners, oils, soaps, waxes, or any abrasive materials or scouring agents on the floor.


*Kimberly segura*_____          05/03/2021_____
Resident                                            Date

*Sofia Segura*_____          05/03/2021_____
Resident                                            Date

_____          _____
Resident                                            Date

_____          _____
Resident                                            Date

# Smart Apartment Amenity Addendum

This Smart Apartment Amenity Addendum ("Addendum") is entered into on the date set forth below between the parties set forth below ("Owner" and "Resident").  If more than one resident executes this Addendum, the term "Resident" shall be interpreted to mean all such residents collectively.  It is intended to be a part of the Apartment Lease Contract between the parties for leasing a residential rental unit at **Montane**                                                    , **18201 E. Cottonwood Dr. #11-101, Parker, CO 80134**                                                    ("Property").

Owner anticipates providing technology and devices to enable Resident to have a "smart apartment," including without limitation DWELO smart system (collectively, the "Amenity"), at the Property. Because of changes in technology and opportunities, this technology and devices may be fluid and continuing. It is anticipated that the devices and technology will be provided by a third party provider, currently Dwelo, Inc. ("Provider").  Owner may determine to change providers at any time for any reason and will provide notice thereof to Resident.

    1. Third Party Provider.  By executing this Addendum, Resident (for itself, its guests, service personnel, occupants, and other similar individuals of Resident) expressly acknowledges and agrees that the Appliances may be installed at the Property, and consents and agrees to the installation, use and maintenance of the Amenity at the Property.

    2. Upgrade Consent. Resident consents to upgrades and servicing of the Amenity either directly or remotely. Resident consents to access to the Amenity by Owner, Provider, or the contractors or agents of either Owner or Provider to upgrade or service it.

    3. Resident Information and Data. Resident expressly consents to (a) Owner providing to Provider the Amenity data concerning Resident (including certain personally identifiable data, including name, email and unit number), and (b) Provider's collection, control, maintenance, storage, processing, transmittal and use of Resident information and data (including personally identifiable data) collected through the Amenity and Provider's associated website and/or app for purposes consistent with providing the Amenity to Resident. Resident agrees to and acknowledges that it will be subject to, and Provider will provide the Amenity in accordance with, Provider's Privacy Policy (located at http://dwelo.com/privacy-policy) and Terms of Use (located at https://concierge.dwelo.com/terms).

    4. Owner's Obligations.  Owner shall not be liable for any failures of smart apartment technology or any part of the Amenity. Owner shall not be liable for any damages (actual, consequential, or otherwise) related to the use, inability to use, failure, suspension, or any other related issues regarding the Amenity. Resident acknowledges and agrees that Owner does not represent or warrant that the Amenity works, will always work, or will work as anticipated.  Owner's sole responsibility shall be to work as a conduit for resolution of any problems with the Amenity.

    5. Hold Harmless.  Owner shall not be responsible for any damages or costs incurred by Resident resulting from the Amenity or use thereof. Nor shall Owner be responsible for any damages to Resident due to Provider.  Resident shall hold Owner harmless for any damages related in any way to Provider or the Amenity.

    6. Equipment Damage.  Resident is responsible to notify owner within 60 days of occupying the apartment of any default of damaged smart apartment equipment. Resident will be responsible for reimbursing the owner for replacement costs of any damage incurred to equipment beyond that of normal wear-and-tear during the occupancy of the apartment.

Date: 05/03/2021

**Resident(s):**

By: *Kimberly segura*

Name: **Kimberly vanessa Segura**

Date: 05/03/2021

By: *Sofia Segura*

Name: **Sofia Segura**

Date: 05/03/2021

By: _____

Name: _____

Date: _____

By: _____

Name: _____

Date: _____

By: _____

Name: _____

Date: _____

By: _____

Name: _____

Date: _____

**Owner**: **Kimberly vanessa Segura, Sofia Segura**

By: *Kaitlyn Oelrich*

Name: _____

Date: 05/03/2021



**LEASE ADDENDUM FOR INTRUSION ALARM**



**1. APARTMENT UNIT DESCRIPTION.**
Unit No. _____**11-101**_____, **18201 E. Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. INTRUSION ALARM.**   Your apartment is equipped with an intrusion alarm. It must not be considered a guaranty of safety or security. You should at all times take precautions as if the intrusion alarm were malfunctioning. You acknowledge that the security of you and your family, occupants, and guests are your responsibility alone. Your use of the alarm system is *(check one)* ❑ required or ☒ optional. You are responsible for all false alarm charges for your apartment.

**4. PERMIT FROM CITY.   You** *(check one)* ❑ do or ❑ do not have to obtain a city permit for activation and use of the intrusion alarm. If you do, the phone number to call is _____, and it is your responsibility to obtain the permit. You also will be responsible for any fines due to excessive false alarms.

**5. FOLLOW INSTRUCTIONS.**   You agree to use reasonable care in operating the alarm and to follow the written instructions, rules and procedures furnished to you by us. Instructions ❑ are attached or ❑ will be provided to you when you move in.

**6. ALARM COMPANY.   You** *(check one)* ☒ will or ❑ will not have to make arrangements with an independent alarm company to activate and maintain the alarm system. You *(check one)* ☒ may choose your own alarm company or ❑ are required to use _____
as your alarm company. The alarm system is repaired and maintained by **Resident**
_____.

**7. ENTRY BY OWNER.**   Upon activation of the alarm system, you must immediately provide us (management) with your security code and any special alarm system instructions for lawful entry into the unit when no one is there, as authorized in your NAA Lease Contract. You must reimburse us for any expenses we incur in entering your apartment, when those expenses are due to your failure to provide the foregoing information.

**8. REPAIRS OR MALFUNCTIONS.**   If the intrusion alarm malfunctions, you agree to *(check one)* ☒ contact your intrusion alarm company immediately for repair or ❑ contact us immediately for repair. The cost of repair will be paid by *(check one)* ☒ you or ❑ us.

**9. NO WARRANTY.**   We make no guarantees or warranties, express or implied, concerning the alarm system. All guarantees and warranties are expressly disclaimed. Crime can and does occur despite the best security measures. Anything electronic or mechanical in nature will malfunction from time to time. We are absolutely not responsible for malfunction of the alarm.

**10. LIABILITY.**   We are not liable to you, your guests or other occupants for any injury, damage or loss resulting from the alarm or any malfunction of the alarm. It is recommended that you purchase insurance to cover casualty loss of your property, including loss by theft.

**11. EMERGENCIES.**   Always call 911 or law enforcement authorities or emergency medical services in the event of a crime or emergency. Then contact us. We are not required to answer the alarm, but we do have the right to enter and cut off the alarm to minimize annoyance to neighbors when it malfunctions or is not timely cut off.

**12. ENTIRE AGREEMENT.**   We've made no promises or representations regarding the alarm system except those in this addendum.

**13. SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:
**Apartment is not equipped with an Intrusion Alarm.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

*Kimberly segura*_____
*Sofia Segura*_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs here)*

*Kaitlyn Oelrich*_____

**Date of Lease Contract**

**May 3, 2021**

...nent Association, Inc. - 6/2018, Colorado





## SMOKE AND CARBON MONOXIDE
## DETECTOR ADDENDUM

Date: **May 3, 2021**
(when this Addendum is filled out)

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, **80134**
*(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. DETECTORS.**  Owner agrees to furnish and install smoke and carbon monoxide detectors (collectively "detectors") in accordance with law and the manufacturer's published instructions. As of this date, Resident acknowledges the existence of operating detector(s) in Resident's Apartment. Resident has inspected the detector(s), and found the detector(s) to be in good working order. Resident also acknowledges that Owner has provided any necessary batteries for the detector(s) to properly operate and function in accordance with law. Resident understands that any detector(s) have been provided to help insure the Resident's safety, but are not and must not be considered a guaranty of safety.

**4. MAINTENANCE, REPAIR, OR REPLACEMENT.**
Resident agrees to regularly test, keep, and maintain any detector(s) in good repair. Resident shall give Owner immediate written notification if any detector(s) is missing, damaged, defective, malfunctioning, failing, or otherwise non-operational. Owner shall promptly repair or replace any detector(s) that is missing, damaged, defective, malfunctioning, failing, or otherwise non-operational subject to the provisions of this Addendum and the Lease. Specifically, Resident shall reimburse Owner for all costs and damages associated with repairing or replacing any detector(s) if any repair or replacement is caused by or due to Resident, Resident's occupants, guest or invitees, including but not limited to if a repair or replacement is due to Resident's violation of this Addendum. Resident agrees to not remove batteries from any detector(s) unless and only when necessary to inspect, maintain, or repair any detector(s).

**5. BATTERY REPLACEMENT.**  Subject to Owner's responsibility to provide batteries at the commencement of Resident's lease in paragraph 1 above, Resident shall replace at Resident's cost all detector(s) batteries during Resident's tenancy, if any, anytime any detector(s) battery needs to be replaced for any detector(s) to operate and function as intended and in accordance with law.

**6. DISCLAIMER.**  Resident acknowledges and agrees that Owner is not the operator, manufacturer, distributor, retailer or supplier of any detector(s). Subject to Owner's responsibilities set forth in this Addendum, Resident assumes full and complete  responsibility for all risk and hazards attributable to, connected with or in any way related to the operation, malfunction, or failure of any detector(s), regardless of  whether such malfunction or failure is attributable to, connected with, or in any way related to the use, operation, manufacture, distribution, repair, servicing, or installation of said smoke detector(s). Owner, its employees, and agents have made no representations, warranties, undertakings or promises, whether oral or implied, or otherwise to Resident regarding any detector(s), or the alleged performance of the same. Owner neither makes nor adopts any warranty of any person or company of any nature regarding any detector(s), and expressly disclaims all warranties or fitness for a particular purpose, or any and all other expressed or implied warranties. Owner shall not be liable for damages or losses to person or property caused by (1) Resident's failure to regularly test any detector(s); (2) Resident's failure to notify Owner in writing of any problem, defect, malfunction, or failure of any detector(s); and (3) False alarms produced by any detector(s).

**Resident or Residents**
*(All Resident's must sign here)*

*Kimberly segura*

*Sofia Segura*

_____

_____

_____

**Owner or Owner's Representative**
*(Signs here)*

*Kaitlyn Oelrich*

©2018, National Apartment Association, Inc. - 6/2018, Colorado



# EXHIBIT B TO FIRE SAFETY AND PROTECTION INFORMATION

| Resident(s): | Date: |
|---|---|
| Kimberly vanessa Segura, Sofia Segura | 05/03/2021 |
| **Apartment Address:** | |
| 18201 E. Cottonwood Dr. #11-101, Parker, CO 80134 | |

**Smoking Policy**

Smoking is not permitted in or adjacent to the building. This prohibition applies to **all elevators, hallways, stairwells, garages, parking lots, Club House, and pool/spa area**. In addition, all indoor common areas are non-smoking. Please completely extinguish and place all smoking materials in a proper waste receptacle before entering 'Common Areas'.

'Common Areas' include **all elevators, hallways, stairwells, garages, parking lots, Club House, and pool/spa area**.

Failure to comply with this notice will be a breach of your rental agreement.

Dated January 17, 2014

*Kimberly segura*                     05/03/2021
_Resident_                                  _Date_

*Kaitlyn Oelrich*                       05/03/2021
_Owner/Agent_                             _Date_



# BED BUG ADDENDUM



Date: **May 3, 2021**
(when this Addendum is filled out)

*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your apartment or surrounding apartments. This addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.*

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, **80134** *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE.** This Addendum modifies the Lease Contract and addresses situations related to bed bugs *(cimex lectularius)* which may be discovered infesting the apartment or personal property in the apartment. You understand that we relied on your representations to us in this Addendum. If such information is false or materially misleading, then we shall have the option to terminate your tenancy upon 3 days notice to quit. You agree that we do not guarantee or warrant a bed bug free environment.

**4. INSPECTION AND INFESTATIONS.** BY SIGNING THIS ADDENDUM, YOU REPRESENT THAT:

- YOU HAVE INSPECTED THE DWELLING PRIOR TO MOVING IN, OR PRIOR TO SIGNING THIS ADDENDUM, AND YOU DID NOT FIND ANY EVIDENCE OF BED BUGS OR A BED BUG INFESTATION;

OR

- YOU WILL INSPECT THE DWELLING WITHIN 48 HOURS AFTER MOVING IN, OR WITHIN 48 HOURS AFTER SIGNING THIS ADDENDUM AND WILL NOTIFY US OF ANY BED BUGS OR BED BUG INFESTATIONS.

You agree that you have read the information provided in this Addendum and that you are not aware of any infestation or presence of bed bugs in your current or previous dwellings, furniture, clothing, personal property, or possessions. You also acknowledge that you have fully disclosed to us any previous bed bug infestations or bed bug issues that you have experienced.

If you disclose to us a previous experience with bed bug infestations or other bed bug related issues, we can review documentation of the previous treatment(s) and inspect your personal property and possession to confirm the absence of bed bugs.

**5. ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the apartment at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate, with all written instructions distributed to you and not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the apartment and building. We can select the method of treating the apartment, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring apartments to the infestation even if those apartments are not the source or cause of the known infestation. Unless otherwise prohibited by law, you are responsible for and must, at your own expense, have your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the apartment. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the apartment for a bed bug infestation on your own.

**6. NOTIFICATION.** You must promptly notify us:
- of any known or suspected bed bug infestation or presence in the apartment, or in any of your clothing, furniture or personal property.
- of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the apartment.
- if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

**Via written or electronic notice.** IF YOU CHOOSE TO SEND YOUR NOTICE TO US ELECTRONICALLY, YOU MUST SEND IT TO US AT ☐ THE ONLINE TENANT/MAINTENANCE PORTAL or
☐ _____
*(alternative electronic method of communication).*

**7. COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the apartment and building that are infested. If you are not fully prepared for a treatment, you agree to pay us $ **175.00** per incident. You may only remove or destroy personal property that cannot be treated or cleaned as instructed by our qualified inspector. Any items you remove from the apartment must be disposed of off-site and not in the common areas or property's trash receptacles. If we confirm the presence or infestation of bed bugs in your apartment, we have the right to require you to temporarily vacate the apartment and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

**8. RESPONSIBILITIES.** We will be responsible for the initial costs of inspection and, if the presence of bed bugs is confirmed by a qualified inspector, the initial costs of treatment. If you knowingly and unreasonably fail to comply with inspections and treatment requirements, you will be in default of this Addendum, the Lease Contract, and state law, and you may be required to pay all reasonable costs of any necessary treatments to your apartment and any adjoining or neighboring

© 2020, National Apartment Association, Inc. - 2/2020, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127

apartments to your apartment if the treatments arose from your noncompliance. If we confirm the presence of infestation of bed bugs after you vacate your apartment, you may be responsible for the cost of cleaning and pest control treatments. If you fail to comply with your inspection and treatment requirements and we must move other residents in order to treat adjoining or neighboring apartments to your apartment unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring residents and to clean and perform pest control treatments to eradicate infestations in other apartments. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract, and obtain immediate possession of the apartment. If you fail to move out after your right of occupancy has been terminated, you will be liable for holdover rent under the Lease Contract.

9. **TRANSFERS.** If we allow you to transfer to another apartment in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

10. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**You are legally bound by this document. Please read it carefully.**

**Resident or Residents**
*(All residents must sign)*

*Kimberly segura*
_____
*Sofia Segura*
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs below)*

*Kaitlyn Oelrich*
_____

**Date of Signing Addendum**

05/03/2021
_____

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*

☑ Blue Moon eSignature Services Document ID: 263376127

# BED BUGS — A Guide for Rental Housing Residents

Bed bugs, with a typical lifespan of 6 to 12 months, are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals—their sole food source—the bugs assume a distinctly blood-red hue until digestion is complete.

**Bed bugs don't discriminate**
Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

**Bed bugs don't transmit disease**
There exists no scientific evidence that bed bugs transmit disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease transmitting pests. Again, claims associating bed bugs with disease are false.

**Identifying bed bugs**
*Bed bugs can often be found in, around and between:*
- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors

- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

**Preventing bed bug encounters when traveling**
Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

**Bed bug do's and don'ts**
- **Do not bring used furniture from unknown sources into your apartment.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, residents should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing residents who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.



☑ Blue Moon eSignature Services Document ID: 263376127



**Mold Information and Prevention Addendum**



> *Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize any mold growth in your apartment. That is why this Addendum contains important information for you, and responsibilities for both you and us.*

**1. APARTMENT DESCRIPTION.**
Apt. No. _____ **11-101** _____, **18201 E.**
**Cottonwood Dr.** _____
_____ *(street address)* in
_____ **Parker** _____
*(city)*, Colorado, _____ **80134** _____
*(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021** _____
Owner's name: **Montane** _____
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ABOUT MOLD.** Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside an apartment, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for persons with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.

**4. PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your apartment, you must do the following:

- Keep your apartment, clean—particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.

- Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines—especially if the leak is large enough for

water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen *before* you start showering or cooking with open pots. When showering, be sure to keep the shower curtain *inside* the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.

- Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your apartment dry out.

- Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.

- Keep the thermostat set to automatically circulate air in the event temperatures rise to or above 80 degrees Fahrenheit.

**5. IN ORDER TO AVOID MOLD GROWTH,** it is important to prevent excessive moisture buildup in your apartment. Failure to promptly pay attention to leaks and moisture that might accumulate on apartment surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:

- rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;

- overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;

- leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;

- washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;

- leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and

- insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

**6. IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON** *NON-POROUS* SURFACES (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold). Tilex® and Clorox® contain bleach which can discolor or stain. **Be sure to follow the instructions on the container.** Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be used to help remove non-visible mold products from *porous* items, such as fibers in sofas, chairs, drapes and carpets—provided the fibers are completely dry. Machine washing or dry cleaning will remove mold from clothes.

**7. DO NOT CLEAN OR APPLY BIOCIDES TO:** (1) visible mold on *porous surfaces,* such as sheetrock walls or ceilings, or (2) *large areas* of visible mold on *non-porous* surfaces. Instead, notify us in writing, and we will take appropriate action.

**8. COMPLIANCE.** Complying with this Addendum will help prevent mold growth in your apartment, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this Addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

**If you fail to comply with this Addendum, you can be held responsible for property damage to the apartment and any health problems that may result. We can't fix problems in your apartment unless we know about them.**

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

*Kimberly segura*
_____
*Sofia Segura*
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs here)*

*Kaitlyn Oelrich*
_____
**Date of Lease Contract**
**May 3, 2021**
_____

Colorado/National Apartment Association Official Form, June 2018
18, National Apartment Association, Inc.

☑ Blue Moon eSignature Services Document ID: 263376127

# COLORADO
**APARTMENT ASSOCIATION**

## NO-SMOKING ADDENDUM

Date: _____**May 3, 2021**_____
(when this Addendum is filled out)


**NAA**
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

*All use of any tobacco product involving smoking, burning, or combustion of tobacco is prohibited in any portion of the apartment community. You are entitled to receive an original of this No-Smoking Addendum after it is fully signed. Keep it in a safe place.*

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, ____**18201 E.**___
**Cottonwood Dr.**_____
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**_____
Owner's name: **Montane**_____
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly vanessa Segura, Sofia Segura**_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. DEFINITION OF SMOKING.** Smoking refers to any use or possession of any form of any product, especially including, but not limited to, a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term tobacco includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons.

**4. SMOKING ANYWHERE INSIDE BUILDINGS OF THE APARTMENT COMMUNITY IS STRICTLY PROHIBITED.** All forms and use of burning, lighted, vaporized, or ignited tobacco products and smoking of tobacco products inside any apartment, building, or interior of any portion of the apartment community is strictly prohibited. Any violation of the no-smoking policy is a material and substantial violation of this Addendum and the Lease Contract.

The prohibition on use of any burning, lighted, vaporized, or ignited tobacco products or smoking of any tobacco products extends to all residents, their occupants, guests, invitees and all others who are present on or in any portion of the apartment community. The no-smoking policy and rules extend to, but are not limited to, the management and leasing offices, building interiors and hallways, building common areas, apartments, club house, exercise or spa facility, tennis courts, all interior areas of the apartment community, commercial shops, businesses, and spaces, work areas, and all other spaces whether in the interior of the apartment community or in the enclosed spaces on the surrounding community grounds. Smoking of non-tobacco products which are harmful to the health, safety, and welfare of other residents in any apartment or building is also prohibited by this Addendum and other provisions of the Lease Contract.

**5. SMOKING OUTSIDE BUILDINGS OF THE APARTMENT COMMUNITY.** Smoking is permitted only in specially designated areas outside the buildings of the apartment community. Smoking must be at least **25** feet from the buildings in the apartment community, including administrative office buildings. If the previous field is not completed, smoking is only permitted at least 25 feet from the buildings in the apartment community, including administrative office buildings. The smoking-permissible areas are marked by signage.

Smoking on balconies, patios, and limited common areas attached to or outside of your apartment ☐ is ☒ is not permitted.

The following outside areas of the community may be used for smoking: **None**_____
_____
_____
_____

Even though smoking may be permitted in certain limited outside areas, we reserve the right to direct that you and your occupants, family, guests, and invitees cease and desist from smoking in those areas if smoke is entering the apartments or buildings or if it is interfering with the health, safety, or welfare or disturbing the quiet enjoyment, or business operations of us, other residents, or guests.

**6. YOUR RESPONSIBILITY FOR DAMAGES AND CLEANING.** You are responsible for payment of all costs and damages to your apartment, other residents' apartments, or any other portion of the apartment community for repair, replacement, or cleaning due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees, regardless of whether such use was a violation of this Addendum. Any costs or damages we incur related to repairs, replacement, and cleaning due to your smoking or due to your violation of the no-smoking provisions of the Lease Contract are in excess of normal wear and tear. Smoke related damage, including but not limited to, the smell of tobacco smoke which permeates sheetrock, carpeting, wood, insulation, or other components of the apartment or building is in excess of normal wear and tear in our smoke free apartment community.

**7. YOUR RESPONSIBILITY FOR LOSS OF RENTAL INCOME AND ECONOMIC DAMAGES REGARDING OTHER RESIDENTS.** You are responsible for payment of all lost rental income or other economic and financial damages or loss to us due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees which results in or causes other residents to vacate their apartments, results in disruption of other residents' quiet enjoyment, or adversely affects other residents' or occupants' health, safety, or welfare.

**8. LEASE CONTRACT TERMINATION FOR VIOLATION OF THIS ADDENDUM.** We have the right to terminate your Lease Contract or right of occupancy of the apartment for any violation of this No-Smoking Addendum. Violation of the no-smoking provisions is a material and substantial default or violation of the Lease Contract. Despite the termination of the Lease Contract or your occupancy, you will remain liable for early move-out charges pursuant to the Early Move-Out paragraph of the Lease Contract.

© 2018, National Apartment Association, Inc. - 10/2018, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127

**9. EXTENT OF YOUR LIABILITY FOR LOSSES DUE TO SMOKING.**   Your responsibility for damages, cleaning, loss of rental income, and loss of other economic damages under this No-Smoking Addendum are in addition to, and not in lieu of, your responsibility for any other damages or loss under the Lease Contract or any other addendum.

**10. YOUR RESPONSIBILITY FOR CONDUCT OF OCCUPANTS, FAMILY MEMBERS, AND GUESTS.**   You are responsible for communicating this community's no-smoking policy and for ensuring compliance with this Addendum by your occupants, family, guests, and invitees.

**11. THERE IS NO WARRANTY OF A SMOKE FREE ENVIRONMENT.**   Although we prohibit smoking in all interior parts of the apartment community, there is no warranty or guaranty of any kind that your apartment or the apartment community is smoke free. Smoking in certain limited outside areas is allowed as provided above. Enforcement of our no-smoking policy is a joint responsibility which requires your cooperation in reporting incidents or suspected violations of smoking. You must report violations of our no-smoking policy before we are obligated to investigate and act, and you must thereafter cooperate with us in prosecution of such violations.

This is an important and binding legal document. By signing this Addendum you are agreeing to follow our no-smoking policy and you are acknowledging that a violation could lead to termination of your Lease Contract or right to continue living in the apartment. If you or someone in your household is a smoker, you should carefully consider whether you will be able to abide by the terms of this Addendum.

**12. SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

*Kimberly segura*
*Sofia Segura*
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Sign here)*

*Kaitlyn Oelrich*
_____

© 2018, National Apartment Association, Inc. - 10/2018, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127



**CRIME/DRUG FREE HOUSING ADDENDUM**



**1. APARTMENT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____
(zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**_____
Owner's name: **Montane**_____
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly vanessa Segura, Sofia Segura**_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ADDENDUM APPLICABILITY.** In the event any provision in this Addendum is inconsistent with any provision(s) contained in other portions of, or attachments to, the above-mentioned Lease Contract, then the provisions of this Addendum shall control. For purposes of this Addendum, the term "premises" shall include the apartment, all common areas, all other apartments on the property or any common areas or other apartments on or about other property owned or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

**4. CRIME/DRUG FREE HOUSING.** Resident, members of the Resident's household, Resident's guests, and all other persons affiliated with the Resident:

A. Shall not engage in any illegal or criminal activity regardless of where such illegal or criminal activity occurs. The phrase, "illegal or criminal activity" shall include, but is not limited to, the following:

1. Engaging in any act intended to facilitate any type of criminal activity.

2. Permitting the premises to be used for, or facilitating any type of criminal activity or drug related activity, regardless of whether the individual engaging in such activity is a member of the household, or a guest.

3. The unlawful manufacturing, selling, using, storing, keeping, purchasing or giving of an illegal or controlled substance or paraphernalia as defined in any city, county, state or federal laws, including but not limited to the State of Colorado and/or the Federal Controlled Substances Act regardless of whether or not the offense is a misdemeanor or felony.

4. Violation of any federal drug laws governing the use, possession, sale, manufacturing and distribution of marijuana or marijuana concentrate, regardless of state or local laws. (So long as the use, possession, sale, manufacturing and distribution of marijuana remains a violation of federal law, violation of any such federal law shall constitute a material violation of the Lease Contract.)

5. Engaging in, or allowing, any behavior that is associated with drug activity, including but not limited to having excessive vehicle or foot traffic associated with his or her unit.

6. Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Residents, or involving imminent, actual or substantial property damage.

7. Engaging in or committing any act that would be a violation of the Owner's screening criteria for criminal conduct or which would have provided Owner with a basis for denying Resident's application due to criminal conduct.

8. Engaging in any activity that constitutes waste, nuisance, or unlawful use.

B. Agree and acknowledge that Resident has an affirmative duty to abstain from any criminal activity and to prevent criminal activity by any other persons, including but not limited to, immediately notifying a law enforcement officer at the first sign of Resident's knowledge of the criminal activity which constitutes any substantial violation agreed to in this Addendum or at law (collectively "substantial violation"), and cooperating with law enforcement with respect to the substantial violation. For the purpose of this Addendum, criminal activity also includes any activity or conduct by any person, which a reasonable person would conclude has the potential for escalating into or becoming criminal activity. Resident agrees that Resident's affirmative duty extends to being responsible for the conduct and actions of all persons regardless of any culpability or knowledge on Resident's part, that Resident's affirmative duty extends to making all persons aware of Resident's obligations, covenants, and duties under this Addendum, and that Resident's duties extend to all conduct whether or not such conduct occurs in Resident's unit. Resident may not assert as a defense in any eviction action against Resident based on violation of this Addendum that Resident did not know any person, occupant or guest was in violation of this Addendum.

C. AGREE THAT ANY VIOLATION OF THE ABOVE PROVISIONS CONSTITUTES A SUBSTANTIAL VIOLATION AND MATERIAL NON-COMPLIANCE WITH THE LEASE CONTRACT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this Addendum shall be deemed a serious violation, and a material default, of the parties' Lease Contract. It is understood that a single violation shall be good cause for termination of the Resident's tenancy. Notwithstanding the foregoing comments, Owner may terminate Resident's tenancy for any lawful reason, and by any lawful method, with or without good cause.

Resident waives any and all legal rights of any kind whatsoever to claim or insist that Landlord must first serve Resident with a demand for compliance or possession in order to initiate an eviction action against Resident for recovery of the premises. Upon any violation of this Addendum by Resident, Owner may terminate Resident's right to occupancy without terminating the Lease Contract or Resident's obligation to pay rent as set forth in the Lease Contract at Owner's election. Owner's termination of Resident's right to occupancy shall be effective with right of eviction upon three (3) days notice to quit. Unless required by law, Owner shall not be required to serve any other notices upon Resident in order to terminate Resident's right of possession.

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127

**5. CRIMINAL CONVICTION NOT REQUIRED.** Agree that unless otherwise provided by law, proof of violation of any criminal law shall not require a criminal conviction and shall be by a preponderance of the evidence.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Resident or Residents** *(sign here)* | **Date of Signing Addendum** |
|---|---|
| *Kimberly segura* | 05/03/2021 |
| *Sofia Segura* | 05/03/2021 |
| | |
| | |
| | |
| | |

| **Owner or Owner's Representative** *(signs here)* | **Date of Signing Addendum** |
|---|---|
| *Kaitlyn Oelrich* | 05/03/2021 |

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

☑ Blue Moon eSignature Services Document ID: 263376127



**COLORADO**
APARTMENT ASSOCIATION

# ADDENDUM REGARDING RECREATIONAL and MEDICAL MARIJUANA
## and
## LANDLORD'S COMMITMENT TO DRUG FREE HOUSING



NAA
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:

**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3.** Under federal law, specifically the Controlled Substances Act (CSA), marijuana is still categorized as a Schedule I substance. This means that under federal law, the manufacture, distribution, or possession of marijuana is strictly prohibited. Because the U.S. Department of Housing and Urban Development is controlled by the federal government, it agrees that the manufacture, distribution, or possession of marijuana, whether prescribed for medical reasons or not, is a criminal offense and will not be protected under the fair housing laws. Therefore, landlords are not required to accommodate the manufacturing, distribution, possession or use of marijuana by a tenant for medical or recreational purposes. Disabled tenants who are registered medical marijuana users, however, should not feel discouraged to request reasonable accommodations if the need arises.

**4.** The Premises listed above follow and comply with federal law regarding marijuana and is, and will continue to be, a drug free community. Possession, use, manufacture or sale of any illegal substance, including marijuana, or marijuana concentrate by the Resident and/or Resident's occupants, guests or invitees is a substantial violation of the Lease Contract and will result in immediate termination of Resident's possession of the apartment. If you have any questions or concerns about this policy, please speak to management.

**5.** By signing below, Resident acknowledges his or her understanding of the terms and conditions as stated above, and his or her agreement to comply with those terms and conditions.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Resident or Residents** *(sign here)* | **Date of Signing Addendum** |
|---|---|
| *Kimberly segura* | 05/03/2021 |
| *Sofia Segura* | 05/03/2021 |
| | |
| | |
| | |

| **Owner or Owner's Representative** *(signs here)* | **Date of Signing Addendum** |
|---|---|
| *Kaitlyn Oelrich* | 05/03/2021 |

© 2019, National Apartment Association, Inc. - 8/2019, Colorado

Blue Moon eSignature Services Document ID: 263376127



### ADDENDUM PROHIBITING
### SHORT-TERM SUBLETTING OR RENTAL



**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city),* Colorado, _____**80134**
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents):*

**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. SHORT TERM SUBLEASE OR RENTING PROHIBITED.**
Without limiting the prohibition in the Lease on subletting and assignment and without limiting any of our rights or remedies, this Addendum to the Lease further supplements and defines the requirements and prohibitions contained in the Lease Contract between you and us. You are hereby strictly prohibited from subletting or renting to any third party, or allowing occupancy by any third party, of all or any portion of the apartment, whether for an overnight use or duration of any length, without our prior written consent in each instance. This prohibition applies to overnight stays or any other stays arranged on Airbnb.com or other similar internet sites.

**4. PROHIBITION ON LISTING OR ADVERTISING APARTMENT ON OVERNIGHT SUBLETTING OR RENTING WEBSITES.**
You agree not to list or advertise the apartment as being available for short term subletting or rental or occupancy by others on Airbnb.com or similar internet websites. You agree that listing or advertising the apartment on Airbnb.com or similar internet websites shall be a violation of this Addendum and a breach of your Lease Contract.

**5. VIOLATION OF LEASE AGREEMENT.** Your Lease Contract allows for use of your apartment as a private residence only and strictly prohibits conducting any kind of business in, from, or involving your apartment unless expressly permitted by law. Separately, your Lease Contract prohibits subletting or occupancy by others of the apartment for any period of time

without our prior written consent. Permitting your apartment to be used for any subletting or rental or occupancy by others (including, without limitation, for a short term), regardless of the value of consideration received or if no consideration is received, is a violation and breach of this Addendum and your Lease Contract.

**6. REMEDY FOR VIOLATION.** Any violation of this Addendum constitutes a material violation of the Lease Contract, and as such we may exercise any default remedies permitted in the Lease Contract, including termination of your tenancy, in accordance with local law. This clause shall not be interpreted to restrict our rights to terminate your tenancy for any lawful reason, or by any lawful method.

**7. RESIDENT LIABILITY.** You are responsible for and shall be held liable for any and all losses, damages, and/or fines that we incur as a result of your violations of the terms of this Addendum or the Lease Contract. Further, you agree you are responsible for and shall be held liable for any and all actions of any person(s) who occupy your apartment in violation of the terms of this Addendum or the Lease Contract, including, but not limited to, property damage, disturbance of other residents, and violence or attempted violence to another person. In accordance with applicable law, without limiting your liability you agree we shall have the right to collect against any renter's or liability insurance policy maintained by you for any losses or damages that we incur as the result of any violation of the terms of this Addendum.

**8. SEVERABILITY.** If any provision of this Addendum or the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Resident or Residents** | **Owner or Owner's Representative** |
|---|---|
| *(All residents must sign)* | *(Signs below)* |

*Kimberly segura*                                    *Kaitlyn Oelrich*
_____    _____
*Sofia Segura*
_____
                                                            **Date of Signing Addendum**
_____    _____
                                                                          05/03/2021
_____
_____

☑ Blue Moon eSignature Services Document ID: 263376127          Association, Inc. - 6/2018, Colorado

> The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission.
> (BDT20-5-09) (Mandatory 7-09)

**DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE LANDLORD AGENCY, TENANT AGENCY OR TRANSACTION-BROKERAGE.**

# BROKERAGE DISCLOSURE TO TENANT
# DEFINITIONS OF WORKING RELATIONSHIPS

For purposes of this document, landlord includes sublandlord and tenant includes subtenant.

**Landlord's Agent:** A landlord's agent works solely on behalf of the landlord to promote the interests of the landlord with the utmost good faith, loyalty and fidelity. The agent negotiates on behalf of and acts as an advocate for the landlord. The landlord's agent must disclose to potential tenants all adverse material facts actually known by the landlord's agent about the property. A separate written listing agreement is required which sets forth the duties and obligations of the broker and the landlord.

**Tenant's Agent:** A tenant's agent works solely on behalf of the tenant to promote the interests of the tenant with the utmost good faith, loyalty and fidelity. The agent negotiates on behalf of and acts as an advocate for the tenant. The tenant's agent must disclose to potential landlords all adverse material facts actually known by the tenant's agent, including the tenant's financial ability to perform the terms of the transaction and, if a residential property, whether the tenant intends to occupy the property. A separate written tenant agency agreement is required which sets forth the duties and obligations of the broker and the tenant.

**Transaction-Broker:** A transaction-broker assists the tenant or landlord or both throughout a real estate transaction by performing terms of any written or oral agreement, fully informing the parties, presenting all offers and assisting the parties with any contracts, including the closing of the transaction, without being an agent or advocate for any of the parties. A transaction-broker must use reasonable skill and care in the performance of any oral or written agreement, and must make the same disclosures as agents about all adverse material facts actually known by the transaction-broker concerning a property or a tenant's financial ability to perform the terms of a transaction and, if a residential property, whether the tenant intends to occupy the property. No written agreement is required.

**Customer:** A customer is a party to a real estate transaction with whom the broker has no brokerage relationship because such party has not engaged or employed the broker, either as the party's agent or as the party's transaction-broker.

# RELATIONSHIP BETWEEN BROKER AND TENANT

Broker and Tenant referenced below have NOT entered into a tenant agency agreement. The working relationship specified below is for a specific property described as:

**Montane**
_____
or real estate which substantially meets the following requirements:

_____
_____.

Tenant understands that Tenant shall not be liable for Broker's acts or omissions that have not been approved, directed, or ratified by Tenant.

**CHECK ONE BOX ONLY:**

[X]     **Multiple-Person Firm.** Broker, referenced below, is designated by Brokerage Firm to serve as Broker. If more than one individual is so designated, then references in this document to Broker shall include all persons so designated, including substitute or additional brokers. The brokerage relationship exists only with Broker and does not extend to the employing broker, Brokerage Firm or to any other brokers employed or engaged by Brokerage Firm who are not so designated.

☑ Blue Moon eSignature Services Document ID: 263376127

☐ **One-Person Firm.** If Broker is a real estate brokerage firm with only one licensed natural person, then any references to Broker or Brokerage Firm mean both the licensed natural person and brokerage firm who shall serve as Broker.

**CHECK ONE BOX ONLY:**

☐ **Customer.** Broker is the landlord's agent and Tenant is a customer. Broker is not the agent of Tenant.

Broker, as landlord's agent, intends to perform the following list of tasks:
☐ **Show** a property ☐ **Prepare and Convey** written offers, counteroffers and agreements to amend or extend the lease.

☐ **Customer for Broker's Listings – Transaction-Brokerage for Other Properties.** When Broker is the landlord's agent, Tenant is a customer. When Broker is not the landlord's agent, Broker is a transaction-broker assisting in the transaction. Broker is not the agent of Tenant.

☐ **Transaction-Brokerage Only.** Broker is a transaction-broker assisting in the transaction. Broker is not the agent of Tenant.

If Broker is acting as a transaction-broker, Tenant consents to Broker's disclosure of Tenant's confidential information to the supervising broker or designee for the purpose of proper supervision, provided such supervising broker or designee shall not further disclose such information without consent of Tenant, or use such information to the detriment of Tenant.

**THIS IS NOT A CONTRACT.**

If this is a residential transaction, the following provision shall apply:

**MEGAN'S LAW.** If the presence of a registered sex offender is a matter of concern to Tenant, Tenant understands that Tenant must contact local law enforcement officials regarding obtaining such information.

TENANT ACKNOWLEDGMENT:

Tenant acknowledges receipt of this document on _____ 05/03/2021 _____.

_Kimberly segura_ _____
Tenant

_Sofia Segura_ _____
Tenant

_____
Tenant

_____
Tenant

BROKER ACKNOWLEDGMENT:

On 05/03/2021 _____, Broker provided **Kimberly vanessa Segura, Sofia Segura** _____
_____(Tenant) with this document
via_____and retained a copy for Broker's records.

Brokerage Firm's Name: **Avenue5 Residential LLC** _____

Broker: **MarySusan Wanich** _____

☑ Blue Moon eSignature Services Document ID: 263376127



## CLASS ACTION WAIVER ADDENDUM



**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80134**_____ *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **May 3, 2021**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:

**Kimberly vanessa Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. CLASS ACTION WAIVER.** You agree that you hereby waive your ability to participate either as a class representative or member of any class action claim(s) against us or our agents. While you are not waiving any right(s) to pursue claims against us related to your tenancy, you hereby agree to file any claim(s) against us in your individual capacity, and you may not be a class action plaintiff, class representative, or member in any purported class action lawsuit ("Class Action"). Accordingly, **you expressly waive any right**

and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us or our agents in any forum.

Any claim that all or any part of this Class Action waiver provision is unenforceable, unconscionable, void, or voidable shall be determined solely by a court of competent jurisdiction.

YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU MAY HAVE POSSESSED THE ABILITY TO BE A PARTY TO A CLASS ACTION LAWSUIT. BY SIGNING THIS AGREEMENT, YOU UNDERSTAND AND CHOOSE TO WAIVE SUCH ABILITY AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THIS CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE CONTRACT.

**4. SEVERABILITY.** If any clause or provision of this Addendum is illegal, invalid or unenforceable under any present or future laws, then it is the intention of the parties hereto that the remainder of this Addendum shall not be affected thereby.

**5. SPECIAL PROVISIONS.** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Resident's Acknowledgment** | **Date of Signing Addendum** |
| --- | --- |
| *Kimberly segura* | 05/03/2021 |
| *Sofia Segura* | 05/03/2021 |
| | |
| | |
| | |
| | |

| **Landlord (or Landlord Agent) Acknowledgment** | **Date of Signing Addendum** |
| --- | --- |
| *Kaitlyn Oelrich* | 05/03/2021 |

© 2018, National Apartment Association, Inc. - ☑ Blue Moon eSignature Services Document ID: 263376127

## STANDARD CLEANING AND REPAIR CHARGES

The following information is provided to assist you in your move-out and assist in assessing any charges that may be applicable. A full inspection of the apartment will be made only after you have moved out. If the move-out occurs during regular business hours, a property representative should be scheduled to walk the apartment with you. If the apartment is in need of cleaning or repair, the following estimated charges will be used as a guide to assess amounts to be deducted from your Security Deposit and charged to you, if the amount assessed exceeds your security deposit. Please note that this is not a complete list of all possible estimated charges that you may incur when your apartment is inspected. **Please also note that these charges are estimates only to give you an idea of the charges you may incur for particular items. You may be charged more than the maximum, depending upon the costs or charges we incur**. Please leave a forwarding address on file with the office.

| KITCHEN CLEANING | |
|---|---|
| Oven | $15.00 - $50.00 |
| Stove and Vent-a-Hood | $10.00 - $15.00 |
| Refrigerator/ Freezer | $10.00 - $50.00 |
| Dishwasher/ Microwave | $10.00 - $25.00 |
| Cabinets and Countertops | $10.00 - $20.00 |
| Floors | $15.00 - $50.00 |
| BATHROOM CLEANING | |
| Toilet | $10.00 - $20.00 |
| Tub/ Shower | $10.00 - $60.00 |
| Sinks/ Counters/ Mirrors | $10.00 - $20.00 |
| MISCELLANEOUS | |
| Blinds (Windows/ Patio) | $15.00 to estimate |
| Carpet Repairs | Based on actual cost including labor and installation |
| Washer/ Dryer Cleaning | $15.00 to $30.00 |
| Tile Floor Repair or Waxing/ Cleaning | $15.00 to estimate |
| Sheetrock Repairs | $10.00 to estimate |
| Window Cleaning – Window | $10.00 each |
| Window Cleaning – Sliding Glass Doors | $15.00 each |
| Graffiti Removal | $5.00 per letter to estimate |
| Carpet Cleaning/ Stain Removal per vendor | $45.00 to estimate |
| Standard Trash Removal | $20.00 per bag |
| HVAC Smoke Damage/ Duct Cleaning/ Ozone Treatments | **$250.00 - $650.00** |

# REMOVING PROPERTY

| Cost of removing property (such as furniture pieces), including storage | $25.00 – $100.00 each piece |
|---|---|

# REPLACEMENT CHARGES

If any items are missing/ damaged to the point that they must be replaced when you move out, you will be charged for the current cost of the item in addition to possible labor services. A list of various replacement charges has been provided below. Please note that this is not a complete list of possible charges that you may incur when your apartment is inspected, and additional labor cost may be considered. Please also note that these charges are estimates only to give you an idea of the charges you may incur for particular items. You may be charged more than the maximum, depending upon the cost or charges we incur.

| | |
|---|---|
| **Window Glass** | Estimate |
| **Patio Door Glass** | Estimate |
| **Window Screens** | $10.00 - $35.00 |
| **Patio Screen Doors** | $80.00 - $90.00 |
| **Mail Box Keys/ New Lock** | $10.00 per key / $45.00 per lock |
| **Keys Not Returned/ New Lock** | $25.00 - $85.00 |
| **Ice Maker Tray** | $10.00 each |
| **Refrigerator Shelves/ Racks** | $35.00 - $60.00 |
| **Microwave Glass Tray** | $25.00 - $60.00 |
| **Disposal Damage** | $65.00 - $80.00 |
| **Dishwasher Rack** | $50.00 - $150.00 |
| **Dishwasher Silverware Basket** | $35.00 - $85.00 |
| **Blinds Replaced** | $12.00 - $75.00 |
| **Interior Door/ Door Jam** | $50.00 - $150.00 |
| **Door Hardware/ Knobs/ Latches** | $20.00 - $40.00 |
| **Fire Extinguisher** | $25.00 - $60.00 |
| **Mirrors/ Medicine Cabinets** | $40.00 - $200.00 |
| **Shower Rods/ Towel Bars** | $15.00 - $150.00 |
| **Ceiling Fans (if original is not available in apartment)** | $50.00 - $175.00 |
| **Light Fixtures (if original is not available in apartment)** | $15.00 - $175.00 |
| **Faucets/ Bath/ Tub** | $15.00 - $50.00 |
| **Toilet Tanks/ Lids** | $30.00 - $60.00 |
| **Toilet Seats** | $15.00 - $20.00 |
| **Parking Tag** | $20.00 each |
| **Counter Top Repairs** | $50.00 - $200.00 |
| **Drip Pan** | $5.00 each |
| **Broiler Pans** | $25.00 - $50.00 |
| **Oven Racks** | $20.00 - $60.00 |
| **Smoke Detectors** | $25.00 - $75.00 |
| **Gate Cards** | $10.00 each |
| **Gate Remotes/ Key Fobs** | $25.00 - $75.00 each |
| **Cabinet Repairs** | Based on labor and cost of repair |
| **Wall Damage/ Sheet Rock Repair** | Based on labor and cost of repair |
| **Full Painting** | Based on labor and cost of paint |
| **Pest Extermination; bedbugs/ fleas** | Based on labor and cost of pest extermination |
| **Carpet Replacement/ Pet Urine/ Floor Sealing** | Based on actual cost including labor and installation |

Blinds, carpet, vinyl, appliance, replacements will be based on actual cost including labor and installation.

| Carpet Wear & Tear is taken into consideration based upon the following ratio: | |
|---|---|
| 5 years old: 20% of cost | 2 years old: 80% of cost |
| 4 years old: 40% of cost | 1 year old or less: 100% of cost |
| 3 years old: 60% of cost | |

I have reviewed the Charge Rate Sheet and understand the potential costs associated with the turnover of my apartment if cleaning, repairs or replacements are necessary at the time of move-out. The above price list will be used in determining the standard costs to bring the apartment back to its original condition, with exception of wear and tear.

*Kimberly segura*                    05/03/2021
_____         _____
Resident                                  Date

# E-SIGNATURE CERTIFICATE

*This certificate details the actions recorded during the signing of this Document.*



## DOCUMENT INFORMATION

| | |
|---|---|
| Status | Signed |
| Document ID | 263376127 |
| Submitted | 05/03/21 |
| Total Pages | 72 |
| Forms Included | Apartment Lease Form, Addendum for Rent Concession, Lease Contract Buy-Out Agreement, All-In-One Utility Addendum, Colorado Gas & Electric Submetering Addendum, Pest Control Addendum, Valet Trash Service Addendum, Kennedy Wilson Property Damage Liability, Electronic Payments Addendum, Parking Addendum, Enclosed Garage Addendum, Remote Control, Card or Code Access Gate Addendum, Animal Addendum, Pet Lease Addendum, Service Animal Policy, Assistance Animal Addendum, Community Policies, Rules, & Regulations, Amenities Lease Addendum, Package Acceptance Addendum, Satellite Dish or Antenna Addendum, Photo, Video, and Statement Release Addendum, Washer and Dryer Addendum, Care of Stainless Steel Appliances, Additional Special Provisions, Hardwood Floor Addendum, Smart Apartment Amenity Addendum, Intrusion Alarm Addendum, Smoke and Carbon Monoxide Detector Addendum, Exhibit B To Fire Safety And Protection Information, Bed Bug Addendum, Mold Information and Prevention Addendum, No-Smoking Addendum, Crime/Drug Free Housing Addendum, Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing, Short-Term Subletting or Rental Prohibited, Brokerage Disclosure To Tenant, Class Action Waiver Addendum, Standard Cleaning and Repair Charges |

## PARTIES

### Kimberly segura

signer key: 84cd9972f2eac61cca43fd32e6f2cec0
IP address: 174.198.133.209
signing method: Blue Moon eSignature Services
authentication method: eSignature by email kmphotography210@gmail.com
browser: Mozilla/5.0 (iPhone; CPU iPhone OS 14_0_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/14.0 Mobile/15E148 Safari/604.1



### Sofia Segura

signer key: 9196f1ab0a6f8741679a752bc4698369
IP address: 65.121.139.2
signing method: Blue Moon eSignature Services
authentication method: eSignature by email segura1168@gmail.com
browser: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/90.0.4430.93 Safari/537.36



### Kaitlyn Oelrich

signer key: bc1dca343b442e9e288ce4678e687e0e
IP address: 10.100.20.16
signing method: Blue Moon eSignature Services
authentication method: eSignature by email pm.montane@avenue5apt.com
browser: PHP 7.3.27/SOAP

*Kaitlyn Oelrich*

(Property Manager )

DOCUMENT AUDIT

| 1 | 05/03/21 11:37:04 AM CDT | Kimberly segura accepted Consumer Disclosure |
|---|---|---|
| 2 | 05/03/21 11:37:51 AM CDT | Kimberly segura signed Apartment Lease Form |
| 3 | 05/03/21 11:37:59 AM CDT | Kimberly segura signed Addendum for Rent Concession |
| 4 | 05/03/21 11:38:08 AM CDT | Kimberly segura signed Lease Contract Buy-Out Agreement |
| 5 | 05/03/21 11:38:23 AM CDT | Kimberly segura signed All-In-One Utility Addendum |
| 6 | 05/03/21 11:38:25 AM CDT | Kimberly segura dated All-In-One Utility Addendum |
| 7 | 05/03/21 11:38:32 AM CDT | Kimberly segura signed Colorado Gas & Electric Submetering Addendum |
| 8 | 05/03/21 11:38:41 AM CDT | Kimberly segura signed Pest Control Addendum |
| 9 | 05/03/21 11:38:48 AM CDT | Kimberly segura dated Valet Trash Service Addendum |
| 10 | 05/03/21 11:38:51 AM CDT | Kimberly segura signed Valet Trash Service Addendum |
| 11 | 05/03/21 11:39:00 AM CDT | Kimberly segura checked box on Kennedy Wilson Property Damage Liability |
| 12 | 05/03/21 11:39:04 AM CDT | Kimberly segura signed Kennedy Wilson Property Damage Liability |
| 13 | 05/03/21 11:39:07 AM CDT | Kimberly segura dated Kennedy Wilson Property Damage Liability |
| 14 | 05/03/21 11:39:16 AM CDT | Kimberly segura dated Electronic Payments Addendum |
| 15 | 05/03/21 11:39:18 AM CDT | Kimberly segura signed Electronic Payments Addendum |
| 16 | 05/03/21 11:39:26 AM CDT | Kimberly segura signed Parking Addendum |
| 17 | 05/03/21 11:39:33 AM CDT | Kimberly segura signed Enclosed Garage Addendum |
| 18 | 05/03/21 12:11:37 PM CDT | Kimberly segura signed Remote Control, Card or Code Access Gate Addendum |
| 19 | 05/03/21 12:12:09 PM CDT | Kimberly segura signed Animal Addendum |
| 20 | 05/03/21 12:12:18 PM CDT | Kimberly segura signed Pet Lease Addendum |
| 21 | 05/03/21 12:12:20 PM CDT | Kimberly segura dated Pet Lease Addendum |
| 22 | 05/03/21 12:12:26 PM CDT | Kimberly segura signed Pet Lease Addendum |
| 23 | 05/03/21 12:12:29 PM CDT | Kimberly segura dated Pet Lease Addendum |
| 24 | 05/03/21 12:12:36 PM CDT | Kimberly segura signed Service Animal Policy |
| 25 | 05/03/21 12:12:39 PM CDT | Kimberly segura dated Service Animal Policy |
| 26 | 05/03/21 12:12:46 PM CDT | Kimberly segura signed Assistance Animal Addendum |
| 27 | 05/03/21 12:12:55 PM CDT | Kimberly segura signed Community Policies, Rules, & Regulations |
| 28 | 05/03/21 12:13:05 PM CDT | Kimberly segura dated Community Policies, Rules, & Regulations |
| 29 | 05/03/21 12:13:16 PM CDT | Kimberly segura signed Amenities Lease Addendum |
| 30 | 05/03/21 12:13:18 PM CDT | Kimberly segura dated Amenities Lease Addendum |
| 31 | 05/03/21 12:13:27 PM CDT | Kimberly segura signed Package Acceptance Addendum |
| 32 | 05/03/21 12:13:37 PM CDT | Kimberly segura signed Satellite Dish or Antenna Addendum |
| 33 | 05/03/21 12:13:51 PM CDT | Kimberly segura signed Photo, Video, and Statement Release Addendum |
| 34 | 05/03/21 12:13:57 PM CDT | Kimberly segura signed Washer and Dryer Addendum |
| 35 | 05/03/21 12:14:06 PM CDT | Kimberly segura signed Care of Stainless Steel Appliances |
| 36 | 05/03/21 12:14:10 PM CDT | Kimberly segura dated Care of Stainless Steel Appliances |
| 37 | 05/03/21 12:14:20 PM CDT | Kimberly segura signed Additional Special Provisions |
| 38 | 05/03/21 12:14:24 PM CDT | Kimberly segura dated Additional Special Provisions |
| 39 | 05/03/21 12:14:34 PM CDT | Kimberly segura signed Hardwood Floor Addendum |
| 40 | 05/03/21 12:14:43 PM CDT | Kimberly segura dated Hardwood Floor Addendum |
| 41 | 05/03/21 12:14:54 PM CDT | Kimberly segura signed Smart Apartment Amenity Addendum |
| 42 | 05/03/21 12:14:59 PM CDT | Kimberly segura dated Smart Apartment Amenity Addendum |
| 43 | 05/03/21 12:15:09 PM CDT | Kimberly segura signed Intrusion Alarm Addendum |
| 44 | 05/03/21 12:15:22 PM CDT | Kimberly segura signed Smoke and Carbon Monoxide Detector Addendum |
| 45 | 05/03/21 12:15:33 PM CDT | Kimberly segura signed Exhibit B To Fire Safety And Protection Information |
| 46 | 05/03/21 12:15:38 PM CDT | Kimberly segura dated Exhibit B To Fire Safety And Protection Information |

**DOCUMENT AUDIT CONTINUED**

| 47 | 05/03/21 12:15:45 PM CDT | Kimberly segura signed Bed Bug Addendum |
|---|---|---|
| 48 | 05/03/21 12:15:58 PM CDT | Kimberly segura signed Mold Information and Prevention Addendum |
| 49 | 05/03/21 12:16:09 PM CDT | Kimberly segura signed No-Smoking Addendum |
| 50 | 05/03/21 12:16:16 PM CDT | Kimberly segura signed Crime/Drug Free Housing Addendum |
| 51 | 05/03/21 12:16:25 PM CDT | Kimberly segura dated Crime/Drug Free Housing Addendum |
| 52 | 05/03/21 12:18:33 PM CDT | Kimberly segura signed Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing |
| 53 | 05/03/21 12:18:35 PM CDT | Kimberly segura dated Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing |
| 54 | 05/03/21 12:18:43 PM CDT | Kimberly segura signed Short-Term Subletting or Rental Prohibited |
| 55 | 05/03/21 12:18:57 PM CDT | Kimberly segura signed Brokerage Disclosure To Tenant |
| 56 | 05/03/21 12:19:08 PM CDT | Kimberly segura dated Class Action Waiver Addendum |
| 57 | 05/03/21 12:19:11 PM CDT | Kimberly segura signed Class Action Waiver Addendum |
| 58 | 05/03/21 12:19:30 PM CDT | Kimberly segura signed Standard Cleaning and Repair Charges |
| 59 | 05/03/21 12:19:33 PM CDT | Kimberly segura dated Standard Cleaning and Repair Charges |
| 60 | 05/03/21 12:19:40 PM CDT | Kimberly segura submitted signed documents |
| 61 | 05/03/21 12:23:08 PM CDT | Sofia Segura accepted Consumer Disclosure |
| 62 | 05/03/21 12:38:44 PM CDT | Sofia Segura signed Apartment Lease Form |
| 63 | 05/03/21 12:39:25 PM CDT | Sofia Segura signed Addendum for Rent Concession |
| 64 | 05/03/21 12:39:38 PM CDT | Sofia Segura signed Lease Contract Buy-Out Agreement |
| 65 | 05/03/21 12:39:56 PM CDT | Sofia Segura signed All-In-One Utility Addendum |
| 66 | 05/03/21 12:39:58 PM CDT | Sofia Segura dated All-In-One Utility Addendum |
| 67 | 05/03/21 12:42:19 PM CDT | Sofia Segura signed Colorado Gas & Electric Submetering Addendum |
| 68 | 05/03/21 12:42:38 PM CDT | Sofia Segura signed Pest Control Addendum |
| 69 | 05/03/21 12:42:53 PM CDT | Sofia Segura signed Valet Trash Service Addendum |
| 70 | 05/03/21 12:42:57 PM CDT | Sofia Segura dated Valet Trash Service Addendum |
| 71 | 05/03/21 12:43:42 PM CDT | Sofia Segura signed Kennedy Wilson Property Damage Liability |
| 72 | 05/03/21 12:43:51 PM CDT | Sofia Segura dated Kennedy Wilson Property Damage Liability |
| 73 | 05/03/21 12:44:39 PM CDT | Sofia Segura checked box on Kennedy Wilson Property Damage Liability |
| 74 | 05/03/21 12:45:07 PM CDT | Sofia Segura signed Electronic Payments Addendum |
| 75 | 05/03/21 12:45:09 PM CDT | Sofia Segura dated Electronic Payments Addendum |
| 76 | 05/03/21 12:45:28 PM CDT | Sofia Segura signed Parking Addendum |
| 77 | 05/03/21 12:45:43 PM CDT | Sofia Segura signed Enclosed Garage Addendum |
| 78 | 05/03/21 12:46:07 PM CDT | Sofia Segura signed Remote Control, Card or Code Access Gate Addendum |
| 79 | 05/03/21 12:46:28 PM CDT | Sofia Segura signed Animal Addendum |
| 80 | 05/03/21 12:46:47 PM CDT | Sofia Segura signed Pet Lease Addendum |
| 81 | 05/03/21 12:48:01 PM CDT | Sofia Segura dated Pet Lease Addendum |
| 82 | 05/03/21 12:48:53 PM CDT | Sofia Segura signed Service Animal Policy |
| 83 | 05/03/21 12:48:56 PM CDT | Sofia Segura dated Service Animal Policy |
| 84 | 05/03/21 12:49:07 PM CDT | Sofia Segura signed Assistance Animal Addendum |
| 85 | 05/03/21 12:49:24 PM CDT | Sofia Segura signed Community Policies, Rules, & Regulations |
| 86 | 05/03/21 12:49:29 PM CDT | Sofia Segura dated Community Policies, Rules, & Regulations |
| 87 | 05/03/21 12:49:40 PM CDT | Sofia Segura signed Amenities Lease Addendum |
| 88 | 05/03/21 12:49:42 PM CDT | Sofia Segura dated Amenities Lease Addendum |
| 89 | 05/03/21 12:49:51 PM CDT | Sofia Segura signed Package Acceptance Addendum |
| 90 | 05/03/21 12:50:08 PM CDT | Sofia Segura signed Satellite Dish or Antenna Addendum |
| 91 | 05/03/21 12:50:21 PM CDT | Sofia Segura signed Photo, Video, and Statement Release Addendum |
| 92 | 05/03/21 12:50:40 PM CDT | Sofia Segura signed Washer and Dryer Addendum |
| 93 | 05/03/21 12:50:50 PM CDT | Sofia Segura signed Care of Stainless Steel Appliances |

**DOCUMENT AUDIT CONTINUED**

| 94 | 05/03/21 12:51:00 PM CDT | Sofia Segura signed Additional Special Provisions |
|---|---|---|
| 95 | 05/03/21 12:51:03 PM CDT | Sofia Segura dated Additional Special Provisions |
| 96 | 05/03/21 12:51:13 PM CDT | Sofia Segura signed Hardwood Floor Addendum |
| 97 | 05/03/21 12:51:16 PM CDT | Sofia Segura dated Hardwood Floor Addendum |
| 98 | 05/03/21 12:51:30 PM CDT | Sofia Segura signed Smart Apartment Amenity Addendum |
| 99 | 05/03/21 12:51:32 PM CDT | Sofia Segura dated Smart Apartment Amenity Addendum |
| 100 | 05/03/21 12:51:43 PM CDT | Sofia Segura signed Intrusion Alarm Addendum |
| 101 | 05/03/21 12:51:52 PM CDT | Sofia Segura signed Smoke and Carbon Monoxide Detector Addendum |
| 102 | 05/03/21 12:52:03 PM CDT | Sofia Segura signed Exhibit B To Fire Safety And Protection Information |
| 103 | 05/03/21 12:52:15 PM CDT | Sofia Segura signed Bed Bug Addendum |
| 104 | 05/03/21 12:52:29 PM CDT | Sofia Segura signed Mold Information and Prevention Addendum |
| 105 | 05/03/21 12:52:41 PM CDT | Sofia Segura signed No-Smoking Addendum |
| 106 | 05/03/21 12:52:52 PM CDT | Sofia Segura signed Crime/Drug Free Housing Addendum |
| 107 | 05/03/21 12:52:54 PM CDT | Sofia Segura dated Crime/Drug Free Housing Addendum |
| 108 | 05/03/21 12:53:05 PM CDT | Sofia Segura signed Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing |
| 109 | 05/03/21 12:53:07 PM CDT | Sofia Segura dated Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing |
| 110 | 05/03/21 12:53:17 PM CDT | Sofia Segura signed Short-Term Subletting or Rental Prohibited |
| 111 | 05/03/21 12:53:29 PM CDT | Sofia Segura signed Brokerage Disclosure To Tenant |
| 112 | 05/03/21 12:53:39 PM CDT | Sofia Segura signed Class Action Waiver Addendum |
| 113 | 05/03/21 12:53:42 PM CDT | Sofia Segura dated Class Action Waiver Addendum |
| 114 | 05/03/21 12:54:01 PM CDT | Sofia Segura signed Standard Cleaning and Repair Charges |
| 115 | 05/03/21 12:54:08 PM CDT | Sofia Segura submitted signed documents |
| 116 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Apartment Lease Form |
| 117 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Addendum for Rent Concession |
| 118 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Lease Contract Buy-Out Agreement |
| 119 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed All-In-One Utility Addendum |
| 120 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated All-In-One Utility Addendum |
| 121 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Colorado Gas & Electric Submetering Addendum |
| 122 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Pest Control Addendum |
| 123 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Pest Control Addendum |
| 124 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Valet Trash Service Addendum |
| 125 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Valet Trash Service Addendum |
| 126 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Kennedy Wilson Property Damage Liability |
| 127 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Kennedy Wilson Property Damage Liability |
| 128 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Electronic Payments Addendum |
| 129 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Electronic Payments Addendum |
| 130 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Parking Addendum |
| 131 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Parking Addendum |
| 132 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Enclosed Garage Addendum |
| 133 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Remote Control, Card or Code Access Gate Addendum |
| 134 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Animal Addendum |
| 135 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Pet Lease Addendum |
| 136 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Pet Lease Addendum |
| 137 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Pet Lease Addendum |
| 138 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Pet Lease Addendum |
| 139 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Service Animal Policy |
| 140 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Service Animal Policy |

**DOCUMENT AUDIT CONTINUED**

| 141 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Assistance Animal Addendum |
| 142 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Assistance Animal Addendum |
| 143 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Community Policies, Rules, & Regulations |
| 144 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Community Policies, Rules, & Regulations |
| 145 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Amenities Lease Addendum |
| 146 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Amenities Lease Addendum |
| 147 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Package Acceptance Addendum |
| 148 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Package Acceptance Addendum |
| 149 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Satellite Dish or Antenna Addendum |
| 150 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Photo, Video, and Statement Release Addendum |
| 151 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Photo, Video, and Statement Release Addendum |
| 152 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Washer and Dryer Addendum |
| 153 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Washer and Dryer Addendum |
| 154 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Care of Stainless Steel Appliances |
| 155 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Care of Stainless Steel Appliances |
| 156 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Additional Special Provisions |
| 157 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Additional Special Provisions |
| 158 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Hardwood Floor Addendum |
| 159 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Smart Apartment Amenity Addendum |
| 160 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Smart Apartment Amenity Addendum |
| 161 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Intrusion Alarm Addendum |
| 162 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Smoke and Carbon Monoxide Detector Addendum |
| 163 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Exhibit B To Fire Safety And Protection Information |
| 164 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Exhibit B To Fire Safety And Protection Information |
| 165 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Bed Bug Addendum |
| 166 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Bed Bug Addendum |
| 167 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Mold Information and Prevention Addendum |
| 168 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed No-Smoking Addendum |
| 169 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Crime/Drug Free Housing Addendum |
| 170 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Crime/Drug Free Housing Addendum |
| 171 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing |
| 172 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing |
| 173 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Short-Term Subletting or Rental Prohibited |
| 174 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Short-Term Subletting or Rental Prohibited |
| 175 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Brokerage Disclosure To Tenant |
| 176 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich dated Class Action Waiver Addendum |
| 177 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Class Action Waiver Addendum |
| 178 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich signed Standard Cleaning and Repair Charges |
| 179 | 05/03/21 01:07:07 PM CDT | Kaitlyn Oelrich submitted signed documents |



**APARTMENT LEASE CONTRACT**



Date of Lease Contract: _____ **August 8, 2022** _____
(when the lease contract is filled out)

*This is a binding document. Read carefully before signing.*

| Moving In — General Information |
| --- |

**1. PARTIES.** This Lease Contract (sometimes referred to as the "Lease" or the "Agreement") is between *you*, the resident(s) *(list all people signing the Lease Contract):*

**Kimberly Segura, Sofia Segura**

_____
_____
_____
_____
_____
_____
_____
_____
_____

and *us*, the owner: **Montane**

_____
_____
_____

*(name of apartment community or title holder).* The name and address of ☐ Landlord or ☒ Landlord's Authorized Agent is:
Name: **Avenue5 Residential LLC**
Address: **18301 East Cottonwood Drive Parker, CO 80138**
If this information changes in the future, Landlord or its authorized agent will notify you by email within one business day and will post the identity of the new landlord or authorized agent in the leasing office.

You have agreed to rent Apartment No. _____ **11-101** _____
at **18201 E. Cottonwood Dr.** _____

*(street address)* in _____ **Parker** _____
*(city),* Colorado, _____ **80138** _____ *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. "You" and "Your," regardless of whether or not specifically stated in any provision, also means occupants, family members, and guests. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

**Landon Segura, Daniel Segura**

_____
_____
_____
_____
_____
_____
_____
_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **14** consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.* Upon Owner's request, Resident shall provide in writing the name, phone number, and a copy of photo ID, of any unauthorized occupant who has occupied the premises for more than seven days in Owner's reasonable judgment. If we claim any person is an unauthorized occupant, you must prove to us and to any court that the unauthorized person does not live at the premises.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **7th** day of **August**, **2022**, and ends at 11:59 p.m. the **6th** day of **August**, **2023**.

**Renewal.** The Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 45 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **250.00** , due on or before the date this Lease Contract is signed. Regardless of the purpose of any Security Deposit, Owner may apply any deposit to any sum owed by Resident. If Owner applies any portion of the Security Deposit for any purpose while Resident is in possession of the Premises, Resident shall promptly pay Owner upon demand the amount necessary to restore the Security Deposit to the original amount. Owner's management company or representative, whose address appears at the end of this Lease Contract, shall initially hold your security deposit, subject to transfer upon sale or a change in management, as authorized by law. If Owner sells the community, upon Owner's compliance with the applicable law, you agree to look solely to any successor Owner, or any successor Owner's agent, broker or manager, as the case may be, for satisfaction of all claims relating to said security deposit, and shall not look to Owner. Upon a sale or change in management, you specifically consent to and authorize the transfer of your security deposit to a successor Owner or management company.

**5. KEYS.** You will be provided _____ apartment key(s), _____ mailbox key(s), _____ FOB(s), and/or _____ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ **1906.00** per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at **WIPS**
_____
_____
_____
or at any such other place we may designate in writing.

Rent is due *(Check One):*

☐ on or before the **8th** day of the month prior to the month for which rent is due.

☐ on or before the last day of the month prior to the month for which rent is due.

☒ on or before the 1st day of the month.

*(If no box is checked rent is due on or before the 1st day of the month).*

You must pay your rent on or before the due date with no grace period, and we can statutorily demand you pay your rent on the day it is due or any time after. Cash is unacceptable without our prior written permission. If we have a dropbox, lockbox, or any other unattended rent drop (collectively "dropbox") for rent payments, the dropbox is for your convenience only. You agree that any payment placed into a rent dropbox is not delivered to us unless your payment is in the dropbox when opened by us. Until any payment put in the dropbox is delivered to us, you bear the risk of loss, including by theft, of any payments, put in the dropbox. In the event you deliver a payment(s) to us, and said payment(s) is stolen from us, regardless of fault, you agree to promptly cooperate with us in tracing or replacing the stolen funds. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, electronic payment, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted if the payment/ACH is rejected, does not clear, or is stopped for any reason. Rent is late if not paid by 11:59 p.m. on the day it is due. If you don't pay all rent and other amounts due within seven (7) calendar days of it being late, you'll pay a late charge. Your late

© 2021, National Apartment Association, Inc. - 9/2021, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

charge will be (check one): ☐ a flat rate of $ __95.30__ or ☒ __5__ % (not to exceed 5%) of your total monthly rent payment. If no amounts are filled in, the late charge will be $50 or 5% of the monthly rent payment, whichever is greater. Imposition of a late charge is not a grace period or a waiver of our right to demand rent on its due date, but an incentive for you to pay on time. If you pay late, you agree to pay the rent due plus all applicable late charges incurred through the date of payment regardless of whether we made a written demand for the rent. You'll also owe us a charge of $20 or actual charges, whichever is higher, for each returned check or rejected electronic payment, plus a late charge. If you are delinquent, all remedies under this Lease Contract at law will be authorized, including eviction. You will also owe us all sheriff's fees if you are evicted and we incur sheriff's fees. You agree that any payment you make to us via an ACH debit transaction is for your convenience, and you agree to pay the stated fee imposed by the online payment site for each ACH debit transaction for this convenience.

**Statutory Right to Cure.** Pursuant to Colorado law, you have the right to pay all amounts due prior to a court entering a judgment for possession if you are being evicted for non-payment of rent. If you exercise your statutory right to pay, we only have to accept your payment if you fully pay all amounts due according to the eviction notice, as well as any rent that remains due under this Agreement. If you exercise your right to pay, you agree to pay as follows:

_____
_____
_____
_____
_____

If you exercise your statutory right to pay in response to an eviction notice after the notice has expired and after our attorney has filed an eviction case with a court to enforce our legal rights but before the court has entered a judgment for possession, you agree to pay us our current attorney's fees and court costs as set forth in the eviction notice in addition to any other amounts due pursuant to the Lease and all other amounts set forth in the notice. If we file an eviction case and the court determines the possession issue, attorneys' fees and costs will be awarded to the prevailing party as determined by the court consistent with the parties' intent to have attorneys' fees and court costs awarded to the prevailing party in disputed court actions as set forth in this Agreement.

**Prorated Rent and Other Charges.** If this Lease Contract commences on a date other than the FIRST day of the month, the Rent and any other charges for the partial month shall be due upon execution of the Lease Contract. Notwithstanding any preliminary calculations to the contrary. Prorated rent of $ __1537.00__ is due for the period of _____ __August 7__ _____, __2022__ to _____ __August 31__ _____, __2022__.

**Administrative Fees.** On the day this Lease Contract begins, you agree to pay us a Lease and Maintenance Administration Fee of $ __250.00__ to offset our anticipated costs for administering this Lease Contract and associated maintenance requests during the Lease Contract term.

**7. UTILITIES.** We'll pay for the following items, if checked:

☐ water ☐ gas ☐ electricity ☐ master antenna
☐ wastewater ☐ trash ☐ cable TV
☒ other __None__

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the Lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, mold, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We ☐ require ☒ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like. If no box is checked, renter's insurance is not required.

In addition, we urge all residents, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

Additionally, you are [check one] ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions may be a breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

_____
_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVE-OUT.** (Check only (1) one box).

☐ BOX 1: RE-LETTING CHARGE:
If this box is checked, you'll be liable to us for a reletting charge of $ _____ (not to exceed $200) if you:

(1) fail to give written move-out notice as required in paragraph 45 (Move-Out Notice); or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract.

**Not a Release.** The reletting charge is not a lease cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages, that is, our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; repayment of concessions or discounts; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

☒ BOX 2: LIQUIDATED DAMAGES:
If this box is checked, it replaces paragraph 11 (Early Move-Out) Box 1 in its entirety and you'll be liable to us for liquidated damages in the amount set forth below if you move out without paying rent in full for the entire Lease Contract term or renewal period under any circumstances, including but not limited to if you default and we either request you move out or you are evicted.

© 2021, National Apartment Association, Inc. - 9/2021, Colorado
Page 2 of 9

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

You agree to pay us for liquidated damages in the amount of $ **3812.00** (if no dollar amount is filled in, the liquidated damages amount is equivalent to one month's rent) as well as pay, repay, or refund any concessions and move in discounts in the total amount set forth in the Lease Contract or Lease Addendum for Rent Concession or Other Rent Discount. You agree that the liquidated damages is an amount agreed to by you in consideration of, among other things, our waiver to seek from you future rent for the entire amount of any uncompleted rental term, plus re-letting related fees, costs, and expenses. For the reasons stated and because the re-renting of the premises after you break this Lease Contract cannot be determined with any certainty, you agree that the liquidated damages amount represents a fair amount and method to allocate the numerous risks and liabilities regarding future rent and re-letting damages. You agree the liquidated damages amount only relieves you from liability for the future payment of monthly Rent and re-letting related costs and expenses, and will not under any circumstances release you for any liability to us under this Lease Contract for any other charges or amounts due under the Lease Contract, including but not limited to unpaid utilities, cleaning charges, or any physical damages to the premises, and you will at all times remain liable for said amounts or any other breaches of the Lease Contract. We will retain all remedies for your breaches and other non-compliance with the Lease Contract. You will not be released from liability on this Lease Contract for any reason whatsoever unless specifically released by us in writing.

If neither BOX 1 nor BOX 2 above is checked, BOX 1 RELETTING CHARGE shall apply in the event of your early move out.

**12. REIMBURSEMENT.** Upon demand you must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community incurred by us due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Regardless of whether specifically stated in any applicable provision of this Lease Contract, you are always liable to us for any damage caused by you, and any occupant, child, family, member, guest, invitee, licensee, or any other person that comes on the community because of you. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from you or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. PROPERTY LEFT IN APARTMENT.**
**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 50 (Deposit Return, Surrender and Abandonment)).

**Storage.** We may store, but have no duty to store, property removed after judicial eviction, surrender, or abandonment of the apartment. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe.

**Redemption.** If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, early move-out charges, storage, damages, etc. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, if you abandon the premises or vacate the premises upon the expiration or termination of the Lease Contract or for any reason while leaving personal property within the premises, including any parking spaces, garages, or storage units, you intentionally, specifically and irrevocably waive all title and interest you have in such property and grant us full authority to immediately dispose of the property without notice, court order, accountability, or liability. You agree to indemnify us, our employees and representatives against any claim or cost for any damages or expenses with regard to the removal, disposal or storage of any property, including attorneys' fees and costs regardless of who makes a claim against us or any other indemnified party in connection with our removal of any property. We may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2)

left outside more than 1 hour, or any period legally required, after a writ of restitution is executed, following a judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent and all other sums due and owing when or before the Lease Contract begins, all remedies pursuant to this Lease Contract and at law will apply. We also may end your right of occupancy and recover damages, early move-out charges, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraphs 11 (Early Move-Out) and 33 (Default by Resident) apply to acceleration under this paragraph.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 19 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease changes. Unless you give us required written move-out notice under paragraph 3 (Lease Term) and paragraph 46 (Move-Out Procedures), the new modified Lease Contract will begin on the date stated in the notice without necessity of your signature. If you are on month-to-month status under paragraph 3 (Lease Term), we can raise your rent or change Lease terms in accordance with this paragraph and with the law.

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Your termination notice must be in writing. After termination, you are entitled only to a refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment, or if we have offered you substitute premises of comparable location and quality at no additional cost to you.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of the date on the notice, but not later.
(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days of the date on the notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. AD VALOREM TAXES/FEES AND CHARGES.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can

include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.**   If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

**19. COMMUNITY POLICIES OR RULES.**   You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are part of this Lease Contract. Your violation or breach of our rules is a default for which we may exercise any remedy. We may make reasonable changes to written rules, effective upon distribution to all applicable units without prior notice to you, if they do not change dollar amounts on page 1 of this Lease Contract. We may change rules without prior notice to you and regardless of whether you acknowledge receiving or consenting to any change to any rule at any time.

**20. LIMITATIONS ON CONDUCT.**   You will use the premises as your principal residence, solely as a private residential household, not for any unlawful purposes, and or for any other purpose whatsoever. You, your occupants, and guests will show due consideration for others by not permitting, committing, or suffering any conduct, disorderly or otherwise, noise, vibration, odor, or other nuisance whatsoever having a tendency to annoy or disturb others and to use no machinery, device, or any other apparatus which would damage the premises or annoy others; and interfering with, disturbing, or threatening the rights, comfort, health, safety, convenience, quiet enjoyment, management, and use of the community by us, other residents and occupants and any of their guests, agents, invitees, or the general public. You, and any occupants, and guests may not disrupt or interfere with our business operations, or communicate with us in a rude, hostile, or unreasonable manner, including times, manner and amount of communications, or injure our reputation by making bad faith allegations against us to others. We are the sole judge of acceptable conduct.

The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles and compliance with all laws. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited— except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use and appearance of patios, balconies, windows, and porches; (2) the conduct of movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may limit or prohibit your right to photograph or video the common areas or others. We may exclude from your apartment or the apartment community, guests or others who, in our reasonable judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may deny any person access to the premises, including by changing the locks, if any court or legal order restrains or bars said person from the premises. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**21. PROHIBITED CONDUCT.**   You, your occupants or guests, or the guests of any occupants, shall not engage in, commit, or permit criminal or unlawful activities whether or not such unlawful activities occur in, near, off, or about the premises, including but not limited to the manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance (as defined by any law), or drug paraphernalia; engaging in or threatening violence, possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying a knife in the common area, displaying a firearm or possessing a loaded firearm in the common area, excluding law enforcement personnel; displaying or possessing any other weapon in the common area; storing anything in closets having gas appliances, tampering with utilities or telecommunications; or bringing hazardous materials into the apartment community. You and your occupants shall not register the address of the premises or any part of the apartment community on any list of registered sex offenders or similar list or compilation. You agree that any act set forth in this paragraph constitutes a material breach of this Lease. Upon any violation of the paragraph by you, we may terminate your right to occupancy upon three days' notice to quit.

**22. PARKING.**   We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute or booted. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space; or
(14) is not displaying a parking permit, if required by landlord.

**23. RELEASE OF RESIDENT.**   Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 16 (Delay in Occupancy), 32 (Responsibilities of Owner), or 45 (Move-Out Notice), you won't be released from this Lease Contract for any reason— including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**24. MILITARY PERSONNEL CLAUSE.**   All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**25. RESIDENT SAFETY AND PROPERTY LOSS.**   You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke and Carbon Monoxide Detectors.**   We'll furnish smoke and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis; you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without

prior notice to you. You must immediately report smoke and carbon monoxide detectors malfunctions to us. Neither you nor others may disable neither the smoke nor carbon monoxide detectors. If you disable or damage the smoke and carbon monoxide detectors, or fail to replace a dead battery or report known smoke or carbon monoxide detectors malfunctions to us, and if your action or inaction causes loss, damage, or fines from fire, smoke, or water to us or others, you will be liable for such loss, damage, or fines.

**Casualty Loss.**   We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, mold, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. You must maintain appropriate or reasonable climate control, ventilation, and lighting in the unit based on the circumstances. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.**   Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

26. **CONDITION OF THE PREMISES AND ALTERATIONS.**   Except for conditions materially affecting the health or safety of ordinary persons, you accept the apartment, fixtures, and furniture as is. To the extent not prohibited by law, we disclaim all implied warranties or covenants, including but not limited to warranties or covenants of quiet enjoyment.You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining and not damaging the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke or carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

27. **REQUESTS, REPAIRS, AND MALFUNCTIONS.**   IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you. IF YOU OR ANY OCCUPANT CHOOSES TO ELECTRONICALLY SEND US ANY STATUTORILY REQUIRED NOTICE, YOU MUST SEND IT TO US AT ☒ THE ONLINE TENANT/ MAINTENANCE PORTAL or ☐ _____

*(alternative electronic method of communication).*

Our complying with or responding to any oral request regarding security or non-security matters, or statutory matters, doesn't waive the strict requirement for written notices under this Lease Contract and as required by law. You must immediately notify us in writing of: water leaks; moisture accumulation; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part except as permitted by law.

Regardless of the extent of damage to the premises or any portion of the community, if we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you or would be impractical, in our sole discretion, we may terminate your tenancy or relocate you at our cost within the apartment community within a reasonable time by giving you written notice. If we terminate your tenancy under this paragraph, we'll refund prorated rent and all deposits, less lawful deductions.

28. **ANIMALS.**   Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove any unauthorized, neglected, or abandoned animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 29 (When We May Enter). We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges.

© 2021, National Apartment Association, Inc. - 9/2021, Colorado                                                         Page 5 of 9

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**29. WHEN WE MAY ENTER.**   You shall allow us access to the Premises and we shall have the right to reenter the Premises at all reasonable times for any legitimate or necessary purpose which we determine in our sole discretion, including but not limited to, inspecting, providing necessary services, making necessary repairs or improvements, and showing the Premises to prospective residents or to other persons having a legitimate or necessary interest. We shall always have the right to reenter the Premises without notice, with your consent or request. Absent consent or request from you, we may reenter with notice when practical, and without notice when impractical, or with required legal notice if applicable. Any entry by us shall not constitute an eviction in whole or in part, at any time, nor shall we be liable to you for any inconvenience or discomfort, and Rent shall not abate during any period that we reenter. We may enter regardless of whether you are present by duplicate key or by breaking a window or other means when necessary or in the event of an emergency.

**30. JOINT AND SEVERAL RESPONSIBILITY.**   Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 50 (Deposit Return, Surrender, and Abandonment or Judicial Eviction).

## Replacements

**31. CHANGING RESIDENTS.**   You may not assign or sublet without our prior written consent, which may be withheld in our absolute discretion. Replacing, adding, or subcontracting a resident is allowed only with our written consent. We may specifically condition any changes to authorized occupants upon among other things, successful completion of the application process by any proposed new resident, payment of application fees or other customary fees and charges required by new residents, and the execution of any documents we deem necessary. The departing resident must agree in writing as to the disposition of any security deposit. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the original Lease term unless we agree otherwise in writing—even if a new Lease Contract is signed. You may not advertise or sublease the premises as a short-term or vacation rental via airbnb, Homeaway, VRBO, or similar forum.

## Responsibilities of Owner and Resident

**32. RESPONSIBILITIES OF OWNER.**   We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 26 (Conditions of the Premises and Alterations);
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, and you have complied with your legal obligations under this Lease Contract and under state statute, you may terminate your tenancy and exercise other remedies as permitted only by state statute.

**33. DEFAULT BY RESIDENT.**   You shall be in default if you break or fail to observe or perform any promise, agreement, or covenant set forth in this Agreement or any Addendum, including but not limited to your failure to timely and fully pay any Rent and other amounts due, abandoning or vacating the premises without fully performing all Lease terms and conditions, or if you shall make any misrepresentation. Regardless of whether specifically stated in any Lease provisions or Addendum, you are always responsible for the conduct of, shall be liable for, and shall be in default if any occupant, family member, children, guest, invitee, or any other person in or about the premises, coming to or leaving the premises, or on Owner's Property due to you, or with your knowledge or consent breaches or fails to observe any of your covenants, promises, or obligations contained in this Agreement or any Addendum. You will also be in default if you in bad faith, make any invalid complaint to an official or employee of a utility company or the government. If you fail to cure any default, provided any default can be cured, or commit a non-curable default either defined by this Agreement or by law, you shall be in breach of this Agreement and Owner shall have all remedies provided in this Agreement and at law.

**False Application.**   You executed this Lease Contract after completing a Rental Application. You acknowledge that we entered into this Lease Contract in reliance on the information contained in your Rental Application. If it is determined at any time that such information is incorrect, false, or materially misleading, we shall have the option to terminate your right of occupancy upon three days' notice to quit.

**Right to cure.**   Unless we have the specific right to terminate your right of occupancy, you have a statutory right to cure all violations other than non-payment of rent violations within 10 days.

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction.**   If you default, we may end your right of occupancy by giving you written notice required by statute or by this Lease Contract. Notice may be by: (1) personal delivery to any resident; (2) personal delivery at the apartment to any occupant over 16 years old; or (3) affixing the notice to the apartment's main entry door. Unless we have specifically released you in writing, termination of your possession rights or subsequent reletting doesn't release you from liability for early move-out charges or other lease obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; past or future rent or other sums; or to continue with eviction proceedings.

**Acceleration of Future Rent.**   Unless damages are liquidated pursuant to paragraph 11 (Early Move-Out), all future monthly rent for the rest of the Lease term or renewal period will be accelerated automatically without notice or demand and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease term or renewal period. Unless damages are liquidated pursuant to paragraph 11 (Early Move-Out), remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.**   You or any occupant, invitee, or guest must not wrongfully hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a wrongful holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the Lease term of a new resident—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**Remedies Cumulative.**   Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Other Remedies.**   We may report unpaid amounts to credit agencies. If you default and move out without fully performing all of your Lease Contract covenants, you will pay, repay, or refund to us any amounts stated to be rental discounts in this Lease Contract

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

or any addendum, in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the court shall award the prevailing party from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). Except for unpaid rent and late charges, all other unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Mitigation of Damages.**   If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. In the event Box 1 in paragraph 11 (Early Move-Out) is checked, we will exercise customary diligence to relet and mitigate damages, and we'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

**34. ENTIRE AGREEMENT.**   Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO AMEND UNLESS IN WRITING.**
Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**36. NO WAIVER.**   No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**37. NOTICE.**   Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

**38. MISCELLANEOUS.**
A. All of your obligations under this Lease Contract (including payment of all sums) are independent covenants.
B. A violation on our part is not a defense to eviction.
C. Exercising one remedy won't constitute an election or waiver of other remedies.
D. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
E. All remedies are cumulative.
F. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
G. This Lease Contract binds subsequent owners.
H. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
I. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
J. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
K. All Lease Contract obligations must be performed in the county where the apartment is located.
L. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**39. WAIVER OF JURY TRIAL.**   To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute, common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**40. CONTACTING YOU.**   By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**41. OBLIGATION TO VACATE.**   If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with the Lease Terms paragraph, and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**42. FORCE MAJEURE.**   If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**43. PAYMENTS.**   At our option and without notice, we may apply money received (other than late charges under paragraph 6 (Rent and Late Charges) and sale proceeds under paragraph 13 (Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than base monthly rent are due upon our demand. After the due date and any legally required demand or cure period, we do not have to accept the rent or any other payments.

**44. ASSOCIATION MEMBERSHIP.**   We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**45. MOVE-OUT NOTICE.**   Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the early move-out charges under paragraph 11 (Early Move-Out) except if you are able to terminate your tenancy under the statutory rights explained under paragraph 23 (Release of Resident) or any other applicable laws. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If your notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move on the last day in the lease term, you agree to pay and are liable for the number of days notice required in paragraph 3 (Lease Term), regardless of whether you occupy the premises for the entire notice period. If your lease term is month-to-month, your advance written notice of your move out date must be at least the number of days of notice required in paragraph 3 (Lease Term) and your move-out date must be on the last day of a month. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**46. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless you and we both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in early move-out charges under paragraphs 11 (Early Move-Out) and 33 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 60-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**47. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**48. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**49. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** Normal wear and tear accepted, you'll be liable for and you agree that we may deduct from your security deposit for the following charges, if applicable: unpaid rent; unpaid utilities; unpaid late charges; agreed early move-out charges; unreimbursed service charges; repairs or damages caused by smoke or smoking, negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or storing property under paragraph 13 (Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 28 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, sheriff's fees, court costs, and filing fees actually paid; and any other sums due under this Lease Contract. In any disputed court action where the court resolves the dispute

and determines the prevailing party, the court shall also award to the prevailing party its attorneys' fees and costs and the non-prevailing party shall be liable to the prevailing party for payment of any court awarded attorney's fees and costs.

You'll be liable to us for, and we may deduct from your security deposit: (1) charges for replacing all keys and access devices if you fail to return them on or before your actual move-out date; and (2) or all other charges, damages and fees pursuant to this Lease Contract.

**50. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT OR JUDICIAL EVICTION.**
**Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 60 days after surrender or abandonment, unless statutes provide otherwise.

Upon move out, you will deliver to us at the onsite Management Office all keys to the premises, access cards or devices and remotes (collectively "keys") issued by us to you to avoid disputes over the date you vacated and surrendered the premises. You have not vacated and surrendered possession of the premises to us until and unless you have either turned in all keys to the premises and we have acknowledged receipt of your keys, or you have abandoned the premises in our reasonable judgment. If you fail to turn in keys, you agree that you will be liable for rent and any other damages in accordance with this Lease Contract through the date we determine that you vacated and surrendered the premises in our reasonable judgment.

You have abandoned the premises if your personal belongings have been substantially removed, and you do not appear to be living in the premises in our reasonable judgment and if any of the following have occurred: (1) your written move out date has passed; (2) we are in the process of judicially evicting you for any reason; (3) you've been in default for non-payment of rent for 10 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, or judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13 - Property Left in Apartment), but do not affect our mitigation obligations (paragraph 33 - Default by Resident).

---

## Severability, Originals and Attachments, and Signatures

**51. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**52. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. You agree that your failure to notify us within 10 days of signing this Lease Contract that you did not receive a copy of the fully signed Lease Contract will be your acknowledgment that you received a copy from us. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. In filling out, processing, and completing this Lease Contract some clerical, scrivener, human, computer and/or mathematical errors may occur. Regardless of the cause of any error or mistake, you agree to cooperate with us by signing or resigning any document necessary to correct any mistake or error upon our request. Your failure to cooperate or failure to sign or resign any document is a default of this Lease Contract. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that

you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**53. ACKNOWLEDGEMENTS.** By signing this Lease Contract, you acknowledge that: (a) you received a disclosure from us about our application fees before you submitted your rental application; (b) you received a receipt from us for the application fees and deposits you paid at the time of your application; (c) you received any statutorily required disclosures from us regarding any known pest control issues affecting the premises.

> **You are legally bound by this document.**
> **Read it carefully before signing.**

**Resident or Residents** *(all sign below)*

_____

_____

_____

_____

_____

**Owner or Owner's Representative** *(signing on behalf of owner)*

_____

© 2021, National Apartment Association, Inc. - 9/2021, Colorado

**Address and phone number of owner's representative for notice purposes**

18301 East Cottonwood Drive

Parker, CO 80138

(303)805-4188

**Name and address of locator service** *(if applicable)*

**Date form is filled out** *(same as on top of page 1)*

08/08/2022

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2)

© 2021, National Apartment Association, Inc.    Colorado/National Apartment Association Official Form, September 2021    Page 9 of 9

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**LEASE CONTRACT BUY-OUT AGREEMENT**



(This Agreement may only be used if Box 1 of the Early Move-Out paragraph of the Lease Contract is checked.)

**1. APARTMENT DESCRIPTION.**
Apt. No. ___**11-101**___, **18201 E.**
**Cottonwood Dr.**
_____ _(street address)_ in
_____**Parker**_____
_(city)_, Colorado,_____**80138**_____
_(zip code)._

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**
Owner's name: **Montane**
_____
_____
_____
_____

Residents _(list all Residents):_
**Kimberly Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Agreement constitutes an Agreement to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Agreement vary or contradict any terms or conditions found in the Lease Contract, this Agreement shall control.

**3. PURPOSE OF AGREEMENT.** The purpose of this Buy-Out Agreement is to give you the right to buy out of your Lease Contract early—subject to any special provisions in paragraph 9 below. In order to buy out early, your notice must be signed by all residents listed in the Parties paragraph of the Lease Contract and you must comply with all provisions of this Buy-Out Agreement.

**4. BUY-OUT PROCEDURES.** You may buy out of the Lease Contract prior to the end of the Lease term and cut off all liability for paying rent for the remainder of the Lease term if all of the following occur:

(a) you give us written notice of buy-out at least ___**60**___ days prior to the new termination date (i.e., your new move-out date), which (check one) ❑ must be the last day of a month or ⊠ may be during a month;

(b) you specify the new termination date in the notice, i.e., the date by which you'll move out;

(c) you are not in default under the Lease Contract on the date you give us the notice of buy-out;

(d) you are not in default under the Lease Contract on the new termination date (move-out date);

(e) you move out on or before the new termination date and do not hold over;

(f) you pay us a buy-out fee (consideration) of $ _**3812.00**_ ;

(g) you pay us the amount of any concessions you received when signing the Lease Contract; and

(h) you comply with any special provisions in paragraph 9 below.

**5. WHEN PAYABLE.** The buy-out fee in paragraph 4(f) is due and payable no later than ___**0**___ days after you give us your buy-out notice. The total dollar amount of any concessions regarding rent or other monetary lease obligations for the entire Lease term is $_____ and is due payable on the same day as the buy-out fee, subject to any special provisions in paragraph 9 regarding the amount, calculation method, or payment date.

**6. SHOWING UNIT TO PROSPECTIVE RESIDENTS.** After you give us notice of buy-out, the Lease Contract gives us the right to begin showing your unit to prospective residents and telling them it will be available immediately after your new termination date.

**7. COMPLIANCE ESSENTIAL.** Our deposit of all amounts due under paragraphs 4(f) and 4(g) constitutes our approval of the new termination date stated in your notice of buy-out. If you fail to comply with any of the procedures or requirements in this agreement after we deposit such monies, your buy-out right and this agreement will be voided automatically; and (1) any amounts you have paid under this agreement will become part of your security deposit, and (2) the lease will continue without buy-out. Then, if you move out early, you are subject to all lease remedies, as stated in the Early Move-Out paragraph of the Lease Contract.

**8. MISCELLANEOUS.** If moving out by the new termination date becomes a problem for you, contact us. An extension may be possible if we have not already relet the apartment to a successor resident. We and any successor residents who may be leasing your unit will be relying on your moving out on or before the new termination date. Therefore, you may not hold over beyond such date without our written consent—even if it means you have to make plans for temporary lodging elsewhere. "Default" as used in paragraphs 4(c) and 4(d) of this agreement means default as defined in the Lease Contract. You will continue to be liable for any damages and any sums accruing and unpaid prior to the new termination date.

**9. SPECIAL PROVISIONS.** Your right of buy-out _(check one)_ ❑ is or ⊠ is not limited to a particular fact situation. If limited, buy-out may be exercised only if the following facts (see below) occur and any described documents are furnished to us. Any special provisions below will supersede any conflicting provision of this printed agreement. Any false statements or documents presented to us regarding buy-out will automatically void your right to buy-out of the Lease Contract. The special provisions are:

**Buy-Out fee is equivalent to 2 months rent**
**and must be paid at the time written**
**notice is provided to the management**
**company. Buy-Out fee must be paid in**
**Certified funds. Cash payment or personal**
**checks will not be accepted.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
_(All residents must sign)_

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
_(signs below)_

_____

**Date of Lease Contract**
**August 8, 2022**

_____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado



**UTILITY AND SERVICES ADDENDUM**



This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated _____**August 8, 2022**_____ between **Montane** _____

_____

("We" and/or "we" and/or "us") and **Kimberly Segura, Sofia Segura** _____

_____

_____

_____

_____

("You" and/or "you") of Apt. No. _____**11-101**_____ located at **18201 E. Cottonwood Dr.** _____

(street address) in _____**Parker, CO 80138**_____ and is in addition to all terms and conditions in the Lease. This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

1. Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

   a) **Water** service to your apartment will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ water bills will be billed by the service provider to us and then allocated to you based on the following formula: **1** _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☒ 3rd party billing company if applicable **Conservice** _____

   b) **Sewer** service to your apartment will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: **1** _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☒ 3rd party billing company if applicable **Conservice** _____

   c) **Gas** service to your apartment will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: **7** _____
         ☒ If flat rate is selected, the current flat rate is $_____ per month.
         ☐ 3rd party billing company if applicable **Conservice** _____

      **If your Gas service is sub-metered and charged by Owner, a separate "Gas and Electric Sub-metering Addendum" is attached hereto and incorporated by reference. Any conflicting terms of the Gas and Electric Sub-metering Addendum shall supersede the terms of this Utility and Services Addendum.**

   d) **Trash** service to your apartment will be paid by you either:
      ☐ directly to the service provider; or
      ☒ trash bills will be billed by the service provider to us and then allocated to you based on the following formula: **6** _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☒ 3rd party billing company if applicable **Conservice** _____

   e) **Electric** service to your apartment will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ electric bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☐ 3rd party billing company if applicable _____

      **If your Electric  service is sub-metered and charged by Owner, a separate "Gas and Electric Sub-metering Addendum"is attached hereto and incorporated by reference. Any conflicting terms of the Gas and Electric Sub-metering Addendum shall supersede the terms of this Utility and Services Addendum.**

   f) **Stormwater** service to your apartment will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ stormwater bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☐ 3rd party billing company if applicable _____

   g) **Cable TV** service to your apartment will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ cable TV bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☐ 3rd party billing company if applicable _____

   h) **Master Antenna** service to your apartment will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ master antenna bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☐ 3rd party billing company if applicable _____

   i) **Internet** service to your apartment will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ internet bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $_____ per month.
         ☐ 3rd party billing company if applicable _____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

j) **Pest Control** service to your apartment will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ pest control bills will be billed by the service provider to us and then allocated to you based on the following formula: **4**
  - ☒ If flat rate is selected, the current flat rate is $_____ **5.00** _____ per month.
  - ☒ 3rd party billing company if applicable **Conservice**

k) **Valet Trash** service to your apartment and costs will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ bills will be billed by the service provider to us and then charged to you based on the following formula: **4**
  - ☒ If flat rate is selected, the current flat rate is $_____ **25.00** _____ per month.
  - ☐ Additional, replacement, and missing valet trash containers are $_____.
  - ☒ 3rd party billing company if applicable **Conservice**

l) (Other) **Common Area Electric** _____ service to your apartment will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: **10**
  - ☐ If flat rate is selected, the current flat rate is $_____ per month.
  - ☒ 3rd party billing company if applicable **Conservice**

METERING/ALLOCATION METHOD KEY
"1"  - Sub-metering of all of your water/gas/electric use
"2"  - Calculation of your total water use based on sub-metering of hot water
"3"  - Calculation of your total water use based on sub-metering of cold water
"4"  - Flat rate per month
"5"  - Allocation based on the number of persons residing in your apartment
"6"  - Allocation based on the number of persons residing in your apartment using a ratio occupancy formula
"7"  - Allocation based on square footage of your apartment
"8"  - Allocation based on a combination of square footage of your apartment and the number of persons residing in your apartment
"9"  - Allocation based on the number of bedrooms in your apartment
"10" - Allocation based on a lawful formula not listed here
      (Note: if method "10" is selected, a separate sheet will be attached describing the formula used)

2. If an allocation method is used, we or our billing company will calculate your allocated share of the utilities and services provided and all costs in accordance with state and local statutes. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request.

   If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3. When billed by us directly or through our billing company, you must pay utility bills within ____ **3** ____ days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.
   - New Account Fee:                              $ _____ **30.00** _____ (not to exceed $ _____ )
   - Monthly Administrative Billing Fee:   $ _____ **6.00** _____ (not to exceed $ _____ )
   - Late Fee:                                          $ _____ (not to exceed $ _____ )
   - Final Bill Fee:                                   $ _____ **15.00** _____ (not to exceed $ _____ )
   If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

4. ☐  If this paragraph is checked, notwithstanding anything to the contrary in this Addendum, utilities with large fluctuations in use and therefore cost, may be billed based on a trailing 12-month average rate in order to minimize large variations in resident expense. Resident may "opt out" of this averaged billing by communicating the request in writing to the management office.

5. No later than the Lease commencement date, you will transfer into your name or account all utilities to be paid for by you. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your apartment and may charge a reasonable administration fee for billing the utility service in the amount of $ ____ **50.00** ____ . Similarly, you will not change any such utility out of your name or allow any utility to be disconnected for any reason or by any means, including but not limited to non-payment of utility bills until you vacate the apartment. You consent to any utility company notifying us of your failure to pay any utility, or of any pending disconnection. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. You are liable for all utilities until you move out, or could have moved out, whichever date is first.

6. When you move out, you will receive a final bill which may be estimated based on your prior utility usage. This bill must be paid at the time you move out or it will be deducted from the security deposit.

7. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the apartment unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the apartment due to such outages, interruptions, or fluctuations.

8. You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease, this Addendum and at law.

9. Where lawful, all utilities, charges and fees of any kind under this Lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

10. You represent that all occupants that will be residing in the Unit are accurately identified in the Lease. You agree to promptly notify Owner of any change in such number of occupants.

11. You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities.

12. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this Addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

© 2018, National Apartment Association, Inc. - 6/2018, Colorado
Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

13. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Addendum and will supersede any conflicting provisions of this printed Addendum and/or the Lease Contract.

**An Additional Territorial fee of $33.23 per month will be charged. Studio units in Building 19 are not individually metered and will receive Water/Sewer charges are based on RUBS per Unit method. Common Area Electric will also be billed based on RUBS per unit method. The property's provider bills will be divided equally among occupied units in the building.**

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Management _____ Date _____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**COLORADO GAS AND ELECTRIC
SUB-METERING ADDENDUM**



This Colorado Gas and Electric Sub-metering Addendum is hereby made part of and attached to that Lease Contract executed on _____ **August 8, 2022** _____ between **Montane** _____

_____ (Owner) and

**Kimberly Segura, Sofia Segura** _____

_____

_____

_____

_____

_____ (Resident) of Apt. No. _____ **11-101** _____

located at **18201 E. Cottonwood Dr.** _____

_____ (street address) in _____ **Parker, CO 80138** _____,

and is in addition to all terms and conditions in the Lease.

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control. This Addendum is to be used where the Owner submeters or charges the Resident for gas or electric use and the Owner's billing method(s) are different from the methods established in Colorado Public Utilities Commission (PUC) regulation (Rules 4803 and 4804).

Owner sub-meters the cost of gas and/or electricity to residents. As Owner's methods of billing residents are dissimilar to the billing methods referenced in Colorado Public Utilities Commission (PUC) regulations (Rules 4803 and 4804), Owner has applied for and been granted the right to sub-meter the cost of gas and/or electricity as an exempt Master Meter Operator. The Owner shall bill the Resident for those portions of the gas and/or electricity sub-metered to the apartment according to the following:

1) The Owner shall not charge the Resident, as part of its billing for utility service, for any costs in addition to the actual cost billed to the Owner by the serving utility.

2) The sum of the Owner's billings to all Residents shall not exceed the amount billed to the Owner by the serving utility.

3) The Owner shall pass on to the Resident any refunds, rebates, rate reductions or similar adjustments it receives from the serving utility.

4) The Owner shall notify its current Residents, either by first class mail with a certificate of mailing or by inclusion in a regular monthly communication, of any refunds, rebate, rate reduction or similar adjustments from its serving utility and inform such Residents that they may claim the adjustments within 90 days after receipt of the notice.

5) With respect to those who are not current Residents, but were Residents during a previous period covered by any refunds, rebate, rate reduction or similar adjustments from the serving utility, the Owner shall send notice by first class mail to the Resident's last known address, advising them that they may claim said adjustments within 90 days after receipt of the notice.

6) Upon the expiration of the 90 day period, the Owner shall contribute unclaimed adjustments, if the aggregate amount exceeds one hundred dollars, to the fund established by the Legislative Commission on Low Income Energy Assistance.

7) Upon receipt of an invoice for any sub-metered utility, Resident (at Owner's option) shall either immediately make payment to the Owner for the sub-metered utility or shall remit the payment with the next regularly scheduled monthly rent payment. Failure by the Resident to timely pay for any sub-metered utility shall represent a monetary default under the terms of the Lease, entitling Owner to recover possession of the apartment upon the posting of a three-day Demand for Compliance or Possession as well as any and all other remedies provided by the Lease.

**Owner:**                                        **Resident(s):**

_____            _____

                                           _____

                                           _____

                                           _____

                                           _____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado





**PEST CONTROL ADDENDUM**

Date: _____**August 8, 2022**_____
*(when this Addendum is filled out)*

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80138**_____ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 8, 2022**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

*Resident and owner agree as follows:*

**3.** If Resident fails to report any pest infestation and/or problems with the Premises within two (2) days of move-in, Resident acknowledges that the Premises are acceptable, in good condition, and pest free. After this period, Resident shall immediately report to Owner's onsite agent any signs or indications of pests.

IF YOU CHOOSE TO SEND A STATUTORILY REQUIRED NOTICE TO US ELECTRONICALLY, YOU MUST SEND IT TO US AT ☒ THE ONLINE TENANT/MAINTENANCE PORTAL or ☐ _____
_____
*(alternative electronic method of communication).*

**4.** Resident agrees that Resident's violation of this Addendum constitutes a material breach of this Addendum and the Lease. Upon Resident's breach, Owner shall have all remedies for breach set forth in this Addendum, set forth in the Lease and at law, including eviction. In accordance with Resident's Lease, Resident is at all times responsible for the conduct of Resident's occupants, guests, invitees and all others ("other Persons") who are present on or in any portion of the apartment community due to or because of Resident. A violation by any other Person of this Addendum is a violation by Resident.

**5.** Resident agrees that it is in Resident's best interest and the best interest of the apartment community to fully cooperate with Owner's pest control efforts. Resident agrees to fully cooperate with Owner or Owner's pest control company employed to eradicate pests, including all written instructions distributed to Resident. Resident's full cooperation includes, but is not limited to, immediately reporting in writing pest infestation to the Owner, making the Premises available for entry to complete pest inspection and eradication treatment(s), completing all required pre-treatment activities, evacuating the premises during and after treatment for the required time frame, if any, completing all required post-treatment activities,

and immediately reporting in writing ineffective treatment or re-infestations to the Owner. Resident shall also immediately dispose of any property or furniture that has been infested and that is not salvageable in the sole discretion of Owner's pest control vendor.

**6.** Resident shall practice good housekeeping to prevent pest infestations and to promptly eradicate them if they occur. Resident shall keep the Premises clutter free, clean, and sanitary, including regularly vacuuming. Resident shall cover mattresses and box springs with zippered, vinyl coverings, to prevent bed bugs from getting inside of mattresses. Residents shall arrange furniture to minimize pest hiding places. If possible, keep furniture several inches away from walls. Resident shall inspect clothing, luggage, and other personal property for signs of bed bugs when Resident stays overnight away from the Premises, or otherwise is exposed to areas that likely contain bed bugs.

**7.** In addition to regularly scheduled pest control services, if any, provided by the Community, Resident may request reasonable extermination services at any time. All requests must be in writing. Owner may enter Resident's unit to inspect for pests or for pest control related matters. If practical, Owner will notify Resident in advance of each pest inspection, including providing a preparation sheet. Notification is presumed received if Owner hands the notice and instructions directly to Resident or if Owner posts the notice and instructions to Resident's unit. Resident acknowledges that under some circumstances, immediate action may be necessary to control pests, and Owner is not required to provide Resident advance notice if circumstances require immediate action.

**8.** If Resident promptly notifies Owner and cooperates with Owner and/or Owner's pest control company and the unit is either re-infested or the initial treatment is ineffective, Owner will promptly schedule re-inspection and re-treatment at no cost to Resident. If Resident is not fully prepared for the treatment, Resident agrees to pay $ _____**175.00**_____. (If no amount is filled in, Resident shall be billed for the actual cost of service.) If Resident fails to cooperate fully with any pest treatment plan and the unit is either re-infested or the initial treatment is ineffective, Resident agrees to pay all costs of all subsequent treatments, as well as the cost of treatments due to any spread of the infestation to additional units, and all of Owner's consequential damages caused by any infestation spread due to Resident's failure to cooperate.

**9.** Bed bugs are a common problem throughout society. A surge in global travel and mobility, combined with changes in pesticide use, including the banning of DDT created optimal conditions for the revival of bed bugs, which had been virtually dormant since World War II. Exterminators have treated maternity wards, five-star hotels, movie theaters, banks, private schools, apartment communities, private homes, and countless other places. Accordingly, nearly every apartment community, including this one, has or will experience some level of bed bug infestation. Owner is not liable to Resident for any damages caused by pests including, but not limited to, replacement or cleaning of personal property, medications, or medical expenses. Resident must allow Owner and Owner's qualified inspectors or pest control agents access to the apartment at reasonable times to inspect for or treat bed bugs as allowed by law. Resident and Resident's family members, occupants, guests, and invitees must cooperate with all written instructions distributed to Resident and not interfere with inspections or treatments for bed bugs. Owner is not responsible for any damage done to Resident's unit or personal items during pest control inspections or treatments. After any infestation and inspection, Owner may require Resident to professionally treat any affected personal property, or to remove such property from the Premises if it cannot be

© 2019, National Apartment Association, Inc. - 6/2019, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

effectively treated. Resident agrees to indemnify and hold harmless the Owner and Owner's Agent from any actions, claims, losses, damages, and expenses, including, but not limited to, attorneys' fees that they may incur as a result of Resident's breach of this Addendum.

10. Resident represents and warrants that Resident's current and previous residences were bed bug free, that Resident's personal property does not contain any bed bugs, and that Resident is unaware of being exposed to any circumstances where bed bugs were present. Resident's current and previous residences include any apartment (including the building in which the apartment is located), home, or other dwelling Resident resided. Resident's personal property is all of Resident's personal property including but not limited to clothing, linen, and furniture.

**Alternatively:**

If Resident cannot make the representations and warranties set forth above, Resident makes the following disclosures regarding Resident's exposure to bed bugs:_____

_____

_____

_____

_____

(if more room is necessary attach additional sheet). With respect to Resident's previous exposure to bed bugs, Resident represents and warrants that all of Resident's personal property has been inspected, professionally treated if warranted, and that no bed bugs are present in Resident's personal property. If Resident has been exposed to bed bugs, Resident shall provide or authorize Owner to obtain for review, documentation regarding such exposure, and shall upon request make all of Resident's personal property available for inspection to confirm the absence of bed bugs.

In order to successfully eradicate bed bugs and to maximize the probability of providing a bed bug free community for all residents, Resident acknowledges and agrees that the Lease and this Addendum are being entered into by Owner in reliance on Resident's representations and warranties contained in this Addendum. If such information is false or materially misleading, it shall be considered a substantial and material violation of the Lease and Owner shall have the option to terminate your right to occupancy upon three (3) days notice to quit.

11. Resident acknowledges that Owner's adoption of this Addendum, and the efforts to provide a pest free environment, does not in any way change the standard of care that Owner owes Resident under the lease. Resident further acknowledges that Owner does not guarantee or warrant a pest free environment. Resident acknowledges and agrees that Owner's ability to police, monitor, and eradicate pests is directly dependent on Resident's and other residents' voluntary compliance and cooperation with pest eradication efforts, and Resident's full and faithful performance of Resident's obligations set forth in this Addendum. If Resident breaches this Addendum, by failing to cooperate with Owner's pest control efforts or otherwise, Resident shall have no right to terminate Resident's Lease, and shall remain legally responsible for all sums and damages due under the Lease.

12. Resident acknowledges that used or secondhand furniture is a primary method for the spread of bed bugs and other pests. Resident agrees to carefully inspect any used or secondhand furniture, especially bedding, acquired by Resident that is brought into the Premises. Used furniture, especially beds and mattresses, are often infested with bed bugs. Resident agrees not to acquire or bring into the Premises any used or secondhand furniture removed from the garbage or from unknown origins. Resident acknowledges that sharing vacuum cleaners is another highly possible way to spread bed bugs and roaches. Owner strongly advises Resident not to share such items with other residents.

13. In case of any conflict between the provisions of the Lease and this Lease Addendum, the provisions of this Lease Addendum shall govern. This Lease Addendum is incorporated into the Lease executed or renewed between the Owner and the Resident.

14. **SPECIAL PROVISIONS.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**You are legally bound by this document. Please read it carefully.**

| Resident or Residents | Owner or Owner's Representative |
|---|---|
| *(All residents must sign)* | *(Signs below)* |
| _____ | _____ |
| _____ | |
| _____ | **Date of Signing Addendum** |
| _____ | |
| _____ | _____ |
| _____ | |

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*

© 2019, National Apartment Association, Inc. - 6/2019, Colorado                                                    Page 2 of 2 

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

## VALET TRASH SERVICE ADDENDUM

Valet trash service will be provided for each resident **5_____nights per week at Montane_____.** The cost for trash collection is $**25.00**_____ **per month.** A container will be provided to each resident and must be used in conjunction with the valet service. **Containers with bagged trash should be placed outside front door only between the hours of 5:00_____ pm - 7:00_____ pm.** Service will begin at **7:00**_____ pm. All trash must be in bags and securely tied. Bags must be placed inside the container. No trash will be collected without the use of the container. No loose trash will be collected. All boxes must be broken down and flattened. After collection, residents are required to bring containers inside by 9:00am the following morning. Containers are the property of Valet Waste Inc. It is the responsibility of each resident to keep his or her container clean. There will be a $50 charge to the resident if an additional or replacement container is needed or if you take the container with you when you move out.

If any resident misses service on any of the designated nights, it is their responsibility to bring trash to the designated compactor or dumpster area or keep the trash inside his or her apartment until the next collection evening**. Containers/trash may NOT be left out for any reason during non-designated times.** If not complied with, resident will receive a warning. If after the first warning the resident is again in violation, his or her container will be removed and/or a fine of $25.00 per bag will be issued. Containers may be returned after a return fee is paid and with the resident's thorough understanding of the procedures for the service. If this problem continues beyond that, valet service for that resident will be terminated and disposing of trash will become the resident's responsibility.

We hope everyone will follow the rules to enjoy this amenity. By not following the rules for our community, you are in violation of your lease agreement and this will be handled accordingly.

We ask that everyone do his or her part in keeping our property clean and beautiful.

By signing this addendum you are stating that you are fully aware of the rules for the valet trash service and the penalties that may be incurred.

_____          **11-101**
_____
Resident Signature, Date                                        Apt. #

_____          _____
Resident Signature, Date                                 Resident Signature, Date

_____          _____
Resident Signature, Date                                 Property Representative, Date



**ELECTRONIC PAYMENTS ADDENDUM**

DATE <u>08/08/2022</u>        PROPERTY NAME/NUMBER <u>Montane</u>
RESIDENT NAME(s) <u>Kimberly Segura, Sofia Segura</u>
UNIT NUMBER <u>11-101</u>        STREET ADDRESS <u>18201 E. Cottonwood Dr.</u>
CITY <u>Parker</u>        STATE <u>CO</u>  ZIP <u>80138</u>

This Addendum constitutes an Addendum to that Rental Agreement entered into by and between the Landlord and Tenant on <u>08/08/2022</u> (date) for the premises commonly known as <u>18201 E. Cottonwood Dr., Parker, CO 80138</u> (address) at <u>11-101</u> Apartments. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Rental Agreement, this Addendum shall control.

**PAYMENT BY "ACH" DEBIT IS STRONGLY ENCOURAGED:** Landlord strongly encourages that Tenant make all payments of rent, together with any utility charges and/or other charges, of any nature whatsoever, by Automated Clearing House ("ACH") debit.

All amounts due Landlord are payable to [name of person or entity, street address and telephone number]. Payment must be made by: **ACH (strongly encouraged)** or ☒ Cashier's Check, ☐ Money Order, or ☒ Personal Check. No personal checks will be accepted after the third day of the month (they may be accepted on the third, not the fourth or any date after the fourth). Personal checks will not be accepted in response to a notice to pay rent or quit or a notice to perform lease condition or quit requiring payment.

**CERTIFIED FUNDS REQUIRED FOR NSF:** If any payment is returned, certified funds will be required for all future payments to Landlord for one year, or through the end of the tenancy, whichever is shorter.

**AUTOMATIC DEBIT FORM:** Resident shall, at the time of execution of the Rental Agreement, and at any time thereafter immediately following demand of Landlord, promptly complete an automatic debit form provided by Landlord authorizing Landlord to establish arrangements for the transfer of payments from Resident to Landlord by ACH debit(s) initiated by Landlord from an account in the name of Resident established at a United States Bank.

**TIMING OF PAYMENT:** For purposes of determining the timing of Resident's payment(s) to Landlord, Resident shall be deemed to have paid Landlord upon receipt of the Resident's funds in Landlord's bank account.

**REFUSAL OF TENDER(S):** Notwithstanding the foregoing ACH debit (payment) procedures, Landlord may, at its sole option, refuse or return any amount tendered by Resident (a) that constitutes a partial payment of debts, (b) that is refused or returned based on a rejection of rent for default due to nuisance or under non-monetary provisions of the lease agreement, (c) constitutes a payment of rent past any existing termination date, and/or (d) for any other lawful reason whatsoever.

**DEFAULT BY RESIDENT:** In the event that Landlord is unable, through no fault of Landlord or its bank, to successfully receive and/or process any ACH debit hereunder, Resident shall be deemed not to have

*Revised 8/28/2018*
*Owner: Operations*
*Page **1** of 2*



paid Landlord, and Landlord shall be deemed not to have received, such payment from Resident. If, for any reason, an ACH debit is later returned for nonsufficient funds, or for any other reason, Resident shall be deemed to have defaulted in the tender of said debit/payment. Resident will be responsible for a $20.00_____ insufficient funds fee.

**NON-WAIVER:** Resident agrees that it is in Landlord's sole discretion to choose the date on which to begin enforcement of the policies stated in this Addendum. If the policy is not enforced within 30 days of execution of this Addendum, Landlord will, as a courtesy to Resident, provide the Resident with 30 days written notice prior to the date the Addendum will be enforced.

_____
Resident                                    Date

_____
Resident                                    Date

_____
Resident                                    Date

_____
Resident                                    Date

_____
Agent for Owner                             Date

*Revised 8/28/2018*
*Owner:  Operations*
*Page **2** of **2***



Document digitally signed using RENTCafe eSignature services. Document ID: 15944828





**RESIDENT PARKING ADDENDUM**

Date: **August 8, 2022**
*(when this Addendum is filled out)*

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E. Cottonwood Dr.** *(street address)* in **Parker** *(city)*, Colorado, **80138** *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 8, 2022**
Owner's name: **Montane**

Residents *(list all residents)*:
**Kimberly Segura, Sofia Segura**

The term of this Parking Addendum is as follows:
Begins on _____, _____ and ending on _____, _____.

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**RESIDENT AND OWNER AGREE AS FOLLOWS:**

3. You agree to properly register all of your vehicles with management and any parking management agent we use to monitor and enforce our parking rules. If you get a new or replacement vehicle you must notify us, notify any parking management agent, and complete a new addendum within _____**7**_____ day(s) of obtaining the vehicle.

4. If you are provided with a parking tag or sticker, it must be properly installed and displayed according to management's specifications.

5. Unless your vehicle(s) has been assigned a specific space(s) you may park in any available space(s) in the parking areas, with the exception of spaces reserved for a particular use or any marked handicap space, unless you possess a government issued handicap decal or similar signage.

6. If you are assigned a specific parking space(s), we will assign you the space(s), and retain the right to change your assigned space(s) at our sole discretion.

7. You understand and agree that we have the right at any time, without notice, to tow or boot any unauthorized, non-registered vehicles, or vehicles without a parking tag or sticker from any parking space on the property.

8. You agree to use parking spaces in accordance with the terms of the Lease, any addenda, and Community Rules.

9. Any vehicles that are improperly parked or are in violation of this Addendum, the terms of the Lease, or Community Rules will be towed or booted at your expense. You agree that we will not be liable to you for damages related to the physical towing or booting nor any consequential damages you may incur through loss of use of the vehicle(s).

10. You understand that we will not be held liable for any damage or theft that may occur while your vehicle(s) is parked on any part of the property. Upon signing this Addendum, you knowingly accept the risk of parking any vehicle(s) on the property.

11. Any action by you, any occupant, guest, or visitor that violates this Addendum will constitute a violation of your Lease Contract.

12. You understand and agree that any judgment for possession entered against you will include any parking spaces you are entitled to under this Addendum. Once such judgment is rendered and executed upon you, you will immediately remove all vehicles from the property parking areas. If you fail to remove your vehicle(s), we will tow the vehicle(s) at your expense. You agree that we will not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s).

**COST FOR PARKING**

Resident agrees to pay a one-time fee of $ ____**0.00**____ per vehicle on or before the _____ day of _____. In alternative resident agrees to pay $ _____ monthly per vehicle due on or before the ___**3rd**___ day of the month. If no amount is filled in, parking will be free for properly registered and authorized vehicles.

Resident understands and accepts that all-parking rights and privileges will immediately be revoked in the event Resident is _____**4**_____ days delinquent in paying the required parking fee.

Resident agrees to pay $____**20.00**____ NSF fee for all checks returned for non-sufficient funds.

**VEHICLE INFORMATION:**

**Vehicle 1**
Make: **acura**
Model & Year: **MDX 2018**
State: **CO**
License Plate: **N/A**
Permit Number: _____
Phone Number: _____
Parking Space: _____

**Vehicle 2**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

**Vehicle 3**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

© 2019, National Apartment Association, Inc. - 6/2019, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**13. SPECIAL PROVISIONS.**

Parking is $10 monthly, paid directly to
ParkM. All unregistered vehicles are
subject to immediate tow at owners
expense. Commercial Vehicles are not
permitted to park anywhere in the
Community. Vehicles may not obstruct,
block, or hinder access to driveways or
sidewalks at any time, and must fit within
one parking space.

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

**Date of Signing Addendum**

© 2019, National Apartment Association, Inc. - 6/2019, Colorado                                        Page 2 of 2

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**LEASE CONTRACT ADDENDUM FOR
ENCLOSED GARAGE, CARPORT, OR STORAGE UNIT**



**1. APARTMENT DESCRIPTION.**
Apt. No. _____11-101_____, 18201 E.
Cottonwood Dr.
_____ (street address) in
_____ Parker _____
(city), Colorado, _____80138_____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**
Owner's name: **Montane**
_____
_____
_____
_____

Residents (list all Residents):
**Kimberly Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The term of this Addendum is as follows:
Begins on _____, _____ and
ending on _____, _____.

This Addendum constitutes an Addendum to the above
described Lease Contract for the above described premises,
and is hereby incorporated into and made a part of such Lease
Contract. Where the terms or conditions found in this
Addendum vary or contradict any terms or conditions found
in the Lease Contract, this Addendum shall control.

**3. GARAGE, CARPORT, OR STORAGE UNIT.** You are entitled
to exclusive possession of: (check as applicable)
☐ garage or carport attached to the apartment;
☐ garage space number(s) _____
                                              ;
☐ carport space number(s) _____
                                              ;
and/or
☐ storage unit number(s) _____

All terms and conditions of the Lease Contract apply to the
above areas unless modified by this Addendum.

**4. SECURITY DEPOSIT.** An additional security deposit of
$____0.00____ will be charged for the checked areas above.
We (check one) ☒ will consider or ☐ will not consider this
additional security deposit a general security deposit for all
purposes. The security deposit amount in the Security Deposit
paragraph of the Lease Contract (check one) ☐ does or
☒ does not include this additional deposit amount. Refund
of the additional security deposit will be subject to the terms
and conditions set forth in the Lease Contract regardless of
whether it is considered part of the general security deposit.

**5. MONTHLY FEE.** Your monthly fee will be $____175.00____,
which must be remitted with your regularly scheduled
monthly rent payment.

**6. USE RESTRICTIONS.** Garage or carport may be used only for
storage of operable motor vehicles unless otherwise stated
in our rules or community policies. Storage units may be used
only for storage of personal property. No one may sleep, cook,
barbeque, or live in a garage, carport, or storage unit. Persons
not listed as a resident or occupant in the Lease Contract may
not use the areas covered by this Addendum. No plants may
be grown in such areas. No animals may be kept in such areas.

**7. NO DANGEROUS ITEMS.** Items that pose an environmental
hazard or a risk to the safety or health of other residents,
occupants, or neighbors in our sole judgment or that violate
any government regulation may not be stored. Prohibited
items include fuel (other than in a properly capped fuel tank
of a vehicle or a closed briquette lighter fluid container),
fireworks, rags, piles of paper, or other material that may
create a fire or environmental hazard. We may remove from
such areas, without prior notice, items that we believe might
constitute a fire or environmental hazard. Because of carbon
monoxide risks, you may not run the motor of a vehicle inside
a garage unless the garage door is open to allow fumes to
escape.

**8. NO SMOKE, FIRE, OR CARBON MONOXIDE DETECTORS.**
No smoke, fire, or carbon monoxide detectors will be furnished
by us unless required by law.

**9. GARAGE DOOR OPENER.** If an enclosed garage is furnished,
you ☒ will ☐ will not be provided with a ☒ garage door
opener and/or ☐ garage key. You will be responsible for
maintenance of any garage door opener, including battery
replacement. Transmitter frequency settings may not be
changed on the garage door or opener without our prior
written consent.

**10. SECURITY.** Always remember to lock any door of a garage
or storage unit and any door between a garage and the
apartment. When leaving, be sure to lock all keyed deadbolt
locks.

**11. INSURANCE AND LOSS/DAMAGE TO YOUR PROPERTY.**
You will maintain liability and comprehensive insurance
coverage for any vehicle parked or stored. We are not
responsible for pest control in such areas.

**12. COMPLIANCE.** As allowed by law, we may periodically open
and enter garages and storerooms to ensure compliance
with this Addendum. In the event we enter the garage or
storerooms, we will comply with the notice provisions set
forth in the Lease Contract.

**13. NO LOCK CHANGES, ALTERATIONS, OR IMPROVEMENTS.**
Without our prior written consent, locks on doors of garages
and storage units may not be rekeyed, added, or changed,
and improvements, alterations, or electrical extensions or
changes to the interior or exterior of such areas are not
allowed. You may not place nails, screws, bolts, or hooks into
walls, ceilings, floors, or doors. Any damage not caused by
us or our representatives to areas covered by this Addendum
will be paid for by you.

**14. MOVE-OUT AND REMEDIES.** Any items remaining anywhere
on the community or our property after you have vacated
the apartment will be removed, sold, or otherwise disposed
of according to the Lease Contract, which addresses
disposition or sale of property left in an abandoned or
surrendered apartment. All remedies in the Lease Contract
apply to areas covered by this Addendum.

© 2022, National Apartment Association, Inc. - 3/2022, Colorado                    Page 1 of 2

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**15. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

Rentable items cannot be removed during the lease agreement. Removing rentable items can only be done at the time of lease renewal. Garages must be used for parking only. For all rentable items, a one time, non refundable administration fee will be due in the amount of $30.00. ParkM Registration is required for all residents. ParkM for Lot Parking is $10 monthly.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs here)*

_____

**Date of Lease Contract**

August 8, 2022

© 2022, National Apartment Association, Inc. - 3/2022, Colorado          Page 2 of 2

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**LEASE ADDENDUM
FOR REMOTE CONTROL, CARD, OR CODE ACCESS GATE**



**1. APARTMENT DESCRIPTION.**
Apt. No. _____11-101_____, _18201 E.
Cottonwood Dr._____
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____80138_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. REMOTE CONTROL/CARDS/CODE FOR GATE ACCESS.**
☒ **Remote control for gate access.** Each person who is listed as a resident on the lease will be given a remote control at no cost to use during his or her residency. Each additional remote control for you or other occupants will require a $__75.00__ non-refundable fee.

☒ **Cards for gate access.** Each person who is listed as a resident on the lease will be given a card at no cost to use during his or her residency. Each additional card for you or other occupants will require a $__75.00__ non-refundable fee.

☐ **Code for gate access.** Each resident will be given, at no cost, an access code (keypad number) for the pedestrian or vehicular access gates. It is to be used only during your residency. We may change the access code at any time and will notify you of any such changes.

**4. DAMAGED, LOST OR UNRETURNED REMOTE CONTROLS, CARDS OR CODE CHANGES.**
☒ If a remote control is lost, stolen or damaged, a $__75.00__ fee will be charged for a replacement. If a remote control is not returned or is returned damaged when you move out, there will be a $____75.00____ deduction from the security deposit.

☒ If a card is lost, stolen or damaged, a $__75.00__ fee will be charged for a replacement card. If a card is not returned or is returned damaged when you move out, there will be a $__75.00__ deduction from the security deposit.

☐ We may change the code(s) at any time and notify you accordingly.

**5. REPORT DAMAGE OR MALFUNCTIONS.** Please immediately report to the office any malfunction or damage to gates, fencing, locks or related equipment.

**6. FOLLOW WRITTEN INSTRUCTIONS.** We ask that you and all other occupants read the written instructions that have been furnished to you regarding the access gates. This is important because if the gates are damaged by you or other occupants, guests or invitees through negligence or misuse, you are liable for the damages under your lease, and collection of damage amounts will be pursued.

**7. PERSONAL INJURY AND/OR PERSONAL PROPERTY DAMAGE.** Except as specifically required by law, we have no duty to maintain the gates and cannot guaranty against gate malfunctions. We make no representations or guarantees to you concerning security of the community. Any measures, devices,or activities taken by us are solely for the benefit of us and for the protection of our property and interests, and any benefit to you of the same is purely incidental. Anything mechanical or electronic is subject to malfunction. Fencing, gates or other devices will not prevent all crime. No access control system or device is foolproof or 100 percent successful in deterring crime. Crime can still occur. Protecting residents, their families, occupants, guests and invitees from crime is the sole responsibility of residents, occupants and law enforcement agencies. You should first call 911 or other appropriate emergency police numbers if a crime occurs or is suspected. We are not liable to any resident, family member, guest, occupant or invitee for personal injury, death or damage/loss of personal property from incidents related to perimeter fencing, automobile access gates and/or pedestrian access gates. We reserve the right to modify or eliminate access control systems other than those statutorily required. You will be held responsible for the actions of any persons to whom you provide access to the community.

**8. RULES IN USING VEHICLE GATES.**
- Always approach entry and exit gates with caution and at a very slow rate of speed.
- Never stop your car where the gate can hit your vehicle as the gate opens or closes.
- Never follow another vehicle into an open gate. Always use your card to gain entry.
- Report to management the vehicle license plate number of any vehicle that piggybacks through the gate.
- Never force the gate open with your car.
- Never get out of your vehicle while the gates are opening or closing.
- If you are using the gates with a boat or trailer, please contact management for assistance. The length and width of the trailer may cause recognition problems with the safety loop detector and could cause damage.
- Do not operate the gate if there are persons nearby who might get caught in it as it opens or closes.
- If you lose your card, please contact the management office immediately.
- Do not give your card or code to anyone else.
- Do not tamper with the gate or allow your occupants to tamper or play with the gates.

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**There will be a $15 one time programming
fee charged at move in.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

**Owner or Owner's Representative**
*(signs here)*

_____

_____

**Date of Lease Contract**

_____

**August 8, 2022**

_____

_____

_____

_____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

Page 2 of 2



**COMMUNITY POLICIES, RULES AND REGULATIONS ADDENDUM**



*This Addendum is incorporated into the Lease Contract (the "Lease") identified below and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Owner:*   **Montane**

*Resident(s):*   **Kimberly Segura, Sofia Segura**

*Apt. No./Address:*   **#11-101, 18201 E. Cottonwood Dr., Parker, CO 80138**

*Lease Date:*   **08/08/2022**

**I.   GENERAL CONDITIONS FOR USE OF APARTMENT PROPERTY AND RECREATIONAL FACILITIES.**

Resident(s) permission for use of all common areas, Resident amenities, and recreational facilities (together, "Amenities") located at the Apartment Community is a privilege and license granted by Owner, and not a contractual right except as otherwise provided for in the Lease. Such permission is expressly conditioned upon Resident's adherence to the terms of the Lease, this Addendum, and the Community rules and regulations ("Rules") in effect at any given time, and such permission may be revoked by Owner at any time for any lawful reason. In all cases, the most strict terms of either the Lease, this Addendum, or the Community Rules shall control. Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Resident. Owner and management may make changes to the Rules for use of any Amenity at any time.

**Additionally, Resident(s) expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, related to Resident's use of the amenities at the Community. Resident(s) agrees to hold Owner harmless and release and waive any and all claims, allegations, actions, damages, losses, or liabilities of every type, whether or not foreseeable, that Resident(s) may have against Owner and that are in any way related to or arise from such use. This provision shall be enforceable to the fullest extent of the law.**

**THE TERMS OF THIS ADDENDUM SHALL ALSO APPLY TO RESIDENT(S)' OCCUPANTS, AGENTS AND INVITEES, TOGETHER WITH THE HEIRS, ASSIGNS, ESTATES AND LEGAL REPRESENTATIVES OF THEM ALL, AND RESIDENT(S) SHALL BE SOLELY RESPONSIBLE FOR THE COMPLIANCE OF SUCH PERSONS WITH THE LEASE, THIS ADDENDUM, AND COMMUNITY RULES AND REGULATIONS, AND RESIDENT(S) INTEND TO AND SHALL INDEMNIFY AND HOLD OWNER HARMLESS FROM ALL CLAIMS OF SUCH PERSONS AS DESCRIBED IN THE PRECEDING PARAGRAPH. The term "Owner" shall include the Management, officers, partners, employees, agents, assigns, Owners, subsidiaries and affiliates of Owner.**

**II.   POOL.**   This Community ☒ **DOES;**  ☐ **DOES NOT** have a pool. When using the pool, Resident(s) agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the pool area and Management policies.
- All Swimmers swim at their own risk. Owner is not responsible for accidents or injuries.
- For their safety, Residents should not swim alone.
- Pool hours are posted at the pool.
- No glass, pets, or alcoholic beverages are permitted in the pool area. Use paper or plastic containers only.
- Proper swimming attire is required at all times and a swimsuit "cover up" should be worn to and from the pool.
- No running or rough activities are allowed in the pool area. Respect others by minimizing noise, covering pool furniture with a towel when using suntan oils, leaving pool furniture in pool areas, disposing of trash, and keeping pool gates closed.
- Resident(s) must accompany their guests.
- Resident(s) must notify Owner any time there is a problem or safety hazard at the pool.

**IN CASE OF EMERGENCY DIAL 911**

**III.   FITNESS CENTER.**   This Community ☒ **DOES;**  ☐ **DOES NOT** have a fitness center. When using the fitness center, Resident agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the fitness center and Management policies.
- The Fitness Center is not supervised. Resident(s) are solely responsible for their own appropriate use of equipment.
- Resident(s) shall carefully inspect each piece of equipment prior to Resident's use and shall refrain from using any equipment that may be functioning improperly or that may be damaged or dangerous.
- Resident(s) shall immediately report to Management any equipment that is not functioning properly, is damaged or appears dangerous, as well as any other person's use that appears to be dangerous or in violation of Management Rules and Policies.
- Resident(s) shall consult a physician before using any equipment in the Fitness Center and before participating in any aerobics or exercise class, and will refrain from such use or participation unless approved by Resident's physician.
- Resident(s) will keep Fitness Center locked at all times during Resident's visit to the Fitness Center.
- Resident(s) will not admit any person to the Fitness Center who has not registered with the Management Office.
- Resident(s) must accompany guests, and no glass, smoking, eating, alcoholic beverages, pets, or black sole shoes are permitted in the Fitness Center.

Card # issued:   (1) _____   (3) _____   (5) _____
                (2) _____   (4) _____   (6) _____

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**IV.**   **PACKAGE RELEASE.**   This Community ❑ **DOES;**   ☒ **DOES NOT** accept packages on behalf of Residents.

*For communities that do accept packages on behalf of its Residents:*

Resident(s) gives Owner permission to sign and accept any parcels or letters sent to Resident(s) through UPS, Federal Express, Airborne, United States Postal Service or the like. Resident agrees that Owner does not accept responsibility or liability for any lost, damaged, or unordered deliveries, and agrees to hold Owner harmless for the same.

**V.**   **BUSINESS CENTER.**   This Community ❑ **DOES;**   ☒ **DOES NOT** have a business center.

Resident(s) agrees to use the business center and Community Internet, if available to Resident by Owner, at Resident(s) sole risk and according to the rules and regulations posted in the business center and Management policies. Owner is not responsible for data, files, programs or any other information that is unlawfully obtained by a security breach, lost or damaged as a result of Resident's use of the Community Internet, on Business Center computers, or in the Business Center for any reason. Resident covenants that Resident and Resident's occupants will not: 1) share the community's wireless internet password with guests or invitees; 2) download, upload, transmit, or exchange unauthorized copies of copyrighted material (e.g. music, movies, or software) or any other content in violation of any federal, state or local laws; or 3) use the Internet for excessively high volume data transfers. If Resident or Resident's occupants intentionally or unintentionally breach this covenant (e.g. copyright infringement, security or data breach, compromising the security of Owner's computer(s)), and Owner incurs or suffers damages of any kind, including claims made by third-parties, Resident agrees to indemnify Owner for any and all damages, including reasonable attorney's fees and legal costs. No software may be loaded on Business Center computers without the written approval of Community Management. No inappropriate, offensive, or pornographic images or files (in the sole judgment of Owner) will be viewed or loaded onto the Business Center computers at any time. Residents will limit time on computers to _____**0**_____ minutes if others are waiting to use them. Smoking, eating, alcoholic beverages, pets, and any disturbing behavior are prohibited in the business center.

**VI.**   **AUTOMOBILES/BOATS/RECREATIONAL VEHICLES.**   The following policies are in addition to those in the Lease, and may be modified by the additional rules in effect at the Community at any given time:

- Only _____**1**_____ vehicle per licensed Resident is allowed.
- All vehicles must be registered at the Management office.
- Any vehicle(s) not registered, considered abandoned, or violating the Lease, this Addendum, or the Community Rules, in the sole judgment of Management, will be towed at the vehicle owner's expense after a _____**24**_____ hour notice is placed on the vehicle.
- Notwithstanding this, any vehicle illegally parked in a fire lane, designated no parking space or handicapped space, or blocking an entrance, exit, driveway, dumpster, or parked illegally in a designated parking space, will immediately be towed, without notice, at the vehicle owner's expense.
- The washing of vehicles is not permitted on the property unless specifically allowed in designated areas.
- Any on property repairs and/or maintenance of any vehicle must be with the prior written permission of the Management.
- Recreational vehicles, boats or trailers may only be parked on the property with Management's permission (in Management's sole discretion), and must be registered with the Management Office and parked in the area(s) designated by Management.

**VII.**   **FIRE HAZARDS.**   In order to minimize fire hazards and comply with city ordinances, Resident shall comply with the following:

- Residents and guests will adhere to the Community rules, regulations and other Management policies concerning fire hazards, which may be revised from time to time.
- No person shall knowingly maintain a fire hazard.
- **Grills, Barbeques, and any other outdoor cooking or open flame devices will be used only on the ground level and will be placed a minimum of _____10_____ feet from any building.** Such devices will not be used close to combustible materials, tall grass or weeds, on exterior walls or on roofs, indoors, on balconies or patios, or in other locations which may cause fires.
- Fireplaces:   Only firewood is permitted in the fireplace. No artificial substances, such as Duraflame® logs are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold.
- Flammable or combustible liquids and fuels shall not be used or stored (including stock for sale) in the apartments, near exits, stairways, breezeways, or areas normally used for the ingress and egress of people. This includes motorcycles and any apparatus or engine using flammable or combustible liquid as fuel.
- No person shall block or obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.
- Resident(s) are solely responsible for fines or penalties caused by their actions in violation of local fire protection codes.

**VIII.**   **EXTERMINATING.**   Unless prohibited by statute or otherwise stated in the Lease, Owner may conduct extermination operations in Resident's apartment several times a year and as needed to prevent insect infestation. Owner will notify Resident in advance of extermination in Resident's Apartment, and give Resident instructions for the preparation of the Apartment and safe contact with insecticides. Resident will be responsible to prepare the Apartment for extermination in accordance with Owner's instructions. If Residents are unprepared for a scheduled treatment date Owner may prepare Resident's apartment and charge Resident accordingly. Resident must request extermination treatments in addition to those regularly provided by Owner in writing. **Resident agrees to perform the tasks required by Owner on the day of interior extermination to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following:**

- Clean in all cabinets, drawers and closets in kitchen and pantry.
- If roaches have been seen in closets, remove contents from shelves and floor.
- Remove infants and young children from the apartment.
- Remove pets or place them in bedrooms, and notify Owner of such placement.
- Remove chain locks or other types of obstruction on day of service.
- Cover fish tanks and turn off their air pumps.
- Do not wipe out cabinets after treatment.

In the case of suspected or confirmed bed bug infestation, Resident will agree to the following:

- Resident will wash all clothing, bed sheets, draperies, towels, etc. in extremely hot water.
- Resident will thoroughly clean, off premises, all luggage, handbags, shoes and clothes hanging containers.
- Resident will cooperate with Owner's cleaning efforts for all mattresses and seat cushions or other upholstered furniture, and will dispose of same if requested.

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**RESIDENTS ARE SOLELY RESPONSIBLE TO NOTIFY OWNER IN WRITING PRIOR TO
EXTERMINATION OF ANY ANTICIPATED HEALTH OR SAFETY CONCERNS RELATED TO
EXTERMINATION AND THE USE OF INSECTICIDES**

IX.    **DRAPES AND SHADES.** Drapes or shades installed by Resident, when allowed, must be lined in white and present a uniform exterior appearance.

X.    **WATER BEDS.** Resident shall not have water beds or other water furniture in the apartment without prior written permission of Owner.

XI.    **BALCONY or PATIO.** Balconies and patios shall be kept neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balconies or patios. No misuse of the space is permitted, including but not limited to, throwing, spilling or pouring liquids or other items, whether intentionally or negligently, over the balconies or patios.

XII.    **SIGNS.** Resident shall not display any signs, exterior lights or markings on the apartment or any building or common areas. No awnings or other projections shall be attached to the outside of the building of which apartment is a part.

XIII.    **SATELLITE DISHES/ANTENNAS.** You must complete a satellite addendum and abide by its terms prior to installation or use.

XIV.    **WAIVER/SEVERABILITY CLAUSE.** No waiver of any provision herein, or in any Community rules and regulations, shall be effective unless granted by the Owner in a signed and dated writing. If any court of competent jurisdiction finds that any clause, phrase, or provision of this Part is invalid for any reason whatsoever, this finding shall not effect the validity of the remaining portions of this Addendum, the Lease Contract or any other addenda to the Lease Contract.

XV.    **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**All BBQ equipment is subject to management approval. Grills, Barbeques and any other outdoor flame devices will be used only on the ground level and will be placed a minimum of 10 feet from any building. A maximum of one propane BBQ with a tank no larger than 5 gallons is permitted with management approval. No Hibachi or charcoal style BBQ grills or smoker grills allowed anywhere on the premises.**

I have read, understand and agree to comply with the preceding provisions.

_____    _____
Resident                Date              Resident                Date

_____    _____
Resident                Date              Resident                Date

_____    _____
Resident                Date              Resident                Date

_____    _____
Owner Representative                Date



# COLORADO
## APARTMENT ASSOCIATION

## LEASE CONTRACT ADDENDUM
## FOR SATELLITE DISH OR ANTENNA



NAA
NATIONAL APARTMENT ASSOCIATION

Under a Federal Communications Commission (FCC) order, you as our resident have a right to install a transmitting or receiving satellite dish or antenna on the leased apartment, subject to FCC limitations. We as a rental housing owner are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that you and we agree to follow.

1. **APARTMENT UNIT DESCRIPTION.**

   Apt. No. **11-101**, **18201 E. Cottonwood Dr.**

   _____ *(street address)* in

   **Parker**

   *(city)*, Colorado, **80138**

   *(zip code).*

2. **LEASE CONTRACT DESCRIPTION.**

   Lease Contract date: **August 8, 2022**

   Owner's name: **Montane**

   Residents *(list all Residents):*

   **Kimberly Segura, Sofia Segura**

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **NUMBER AND SIZE.** You may install **1** satellite dish(es) or antenna(s) on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. Antennas that only transmit signals or that are not covered by 47 CFR § 1.4000 are prohibited.

4. **LOCATION.** Your satellite dish or antenna must be located: (1) inside your apartment; or (2) in an area outside your apartment such as a balcony, patio, yard, etc. of which you have exclusive use under your lease. Installation is not permitted on any parking area, roof, exterior wall, window, window sill, fence or common area, or in an area that other residents are allowed to use. A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to you for your exclusive use.

5. **SAFETY AND NON-INTERFERENCE.** Your installation: (1) must comply with all applicable ordinances and laws and all reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of three methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or (3) any other method approved by us in writing. No other methods are allowed. We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

6. **SIGNAL TRANSMISSION FROM EXTERIOR DISH OR ANTENNA TO INTERIOR OF APARTMENT.** You may not damage or alter the leased premises and may not drill holes through outside walls, door jams, window sills, etc. If your satellite dish or antenna is installed outside your apartment (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your apartment only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane," similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window—without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the apartment; or (5) any other method approved by us in writing.

7. **SAFETY IN INSTALLATION.** In order to assure safety, the strength and type of materials used for installation must be approved by us. Installation must be done by a qualified person or company approved by us. Our approval will not be unreasonably withheld. An installer provided by the seller of the satellite dish or antenna is presumed to be qualified.

8. **MAINTENANCE.** You will have the sole responsibility for maintaining your satellite dish, antenna and all related equipment.

9. **REMOVAL AND DAMAGES.** You must remove the satellite dish or antenna and all related equipment when you move out of the apartment. In accordance with the NAA Lease Contract, you must pay for any damages and for the cost of repairs or repainting caused by negligence, carelessness, accident or abuse which may be reasonably necessary to restore the leased premises to its condition prior to the installation of your satellite dish, antenna or related equipment. You will not be responsible for normal wear.

10. **LIABILITY INSURANCE. You must take full responsibility for the satellite dish, antenna and related equipment. If the dish or antenna is installed at a height that could result in injury to others if it becomes unattached and falls, you must provide us with evidence of liability insurance (if available) to protect us against claims of personal injury and property damage to others, related to your satellite dish, antenna and related equipment.** The insurance coverage must be $**100000.00**, which is an amount reasonably determined by us to accomplish that purpose. Factors affecting the amount of insurance include height of installation above ground level, potential wind velocities, risk of the dish/antenna becoming unattached and falling on someone, etc.

11. **SECURITY DEPOSIT.** An additional security deposit of $**500.00** will be charged. We *(check one)* ☒ will consider or ☐ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in Provision 4 of the Lease Contract *(check one)* ☐ does or ☒ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

This additional security deposit is required to help protect us against possible repair costs, damages, or failure to remove the satellite dish, antenna and related equipment at time of move-out. Factors affecting any security deposit may vary,

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

depending on: (1) how the dish or antenna is attached (nails, screws, lag bolts drilled into walls); (2) whether holes were permitted to be drilled through walls for the cable between the satellite dish and the TV; and (3) the difficulty and cost repair or restoration after removal, etc.

**12. WHEN YOU MAY BEGIN INSTALLATION.** You may start installation of your satellite dish, antenna or related equipment only after you have: (1) signed this addendum; (2) provided us with written evidence of the liability insurance referred to in paragraph 10 of this addendum; (3) paid us the additional security deposit, if applicable, in paragraph 11; and (4) received our written approval of the installation materials and the person or company that will do the installation, which approval may not be unreasonably withheld.

**13. MISCELLANEOUS.** If additional satellite dishes or antennas are desired, an additional lease addendum must be executed.

**14. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

(1) satellite dish per unit is permitted. Satellite dish may not be attached, or drilled into building in any way. Satellite dish may be placed on patio/ balcony on a tripod but must not exceed living space

---

**Resident or Residents**
*(All residents must sign here)*

_____

_____

_____

_____

_____

_____

**Owner or Owner's Representative**
*(signs here)*

_____

**Date of Lease Contract**
August 8, 2022



**PHOTO, VIDEO, AND STATEMENT RELEASE ADDENDUM**



1. **APARTMENT UNIT DESCRIPTION.**
Apt. No. _____11-101_____, 18201 E.
Cottonwood Dr.
_____ (street address) in
_____Parker_____
city), Colorado, _____80138_____
(zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: __August 8, 2022_____
Owner's name: __Montane__
_____
_____
_____

Residents (list all residents):

__Kimberly Segura, Sofia Segura__
_____
_____
_____
_____
_____
_____
_____
_____
_____

Occupants (list all occupants):
__Landon Segura, Daniel Segura__
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **PURPOSE OF ADDENDUM.** By signing this Addendum, you, without payment or other consideration, agree to grant us permission to use your likeness in photographs, videos and/or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

   A. CONSENT FOR MINOR OCCUPANTS. By signing this Addendum, if any minor occupants are named above, you further certify that you are the parent, or legal guardian of the minor occupant(s) named above, and you, without payment or other consideration, agree to grant us permission to use their likeness in photographs, videos and/or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

4. **PHOTO AND VIDEO RELEASE.** You hereby grant us and our agents and affiliates (collectively, the "Released Parties") permission and a license to take, use, reuse, and publish the likeness of you and any minor occupants in all photographs or other electronic and/or digital media in any and all of our publications, including, without limitation, any website entries, advertising websites, and any other marketing materials. You understand and agree that these materials will become the property of the Released Parties and will not be returned. You agree to irrevocably authorize the Released Parties to edit, alter, copy, exhibit, publish, or distribute this media for any lawful purpose whatsoever including, without limitation, promotional and advertising uses. You waive the right to inspect or approve the finished product, including any written or electronic copy, wherein your likeness appears now or in the future. In addition, you waive any right to payment, royalties, or any other compensation arising or related to the use of the media.

5. **CONSENT TO USE YOUR NAME, LIKENESS , WRITTEN COMMENTS, AND STATEMENTS.** You are expressly agreeing to allow us to post your name, picture, written comments, and statements, and/or the names, pictures, written comments and statements of any minor occupants in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. You hereby grant the Released Parties permission and a license to use, reproduce, and publish any media on its website, social media platforms, or in other marketing-related materials, whether in electronic or print form.

6. **RELEASE OF LIABILITY.** You hereby release, hold harmless, and forever discharge us from any claims or causes of actions including, without limitation, any and all claims for libel or violation of any right of publicity or privacy, related to our use of the media in any and all of our publications, including any website entries, advertising websites, social media websites, and any other marketing material so long as the claim or cause of action does not result from our intentional misconduct or gross negligence. This consent and release shall be binding upon you and your heirs, legal representatives and assigns.

7. **REVOCATION.** You have the right to revoke your consent to our use of your name, picture, video, voice, written comments, or statement, and/or the name, picture, video, written comments, voice, or statement of any minor occupants, by written notice to us.

8. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(signs below)*

_____

**Date of Signing Addendum**

_____

**Montane**



# CARE OF STAINLESS STEEL APPLIANCES

Resident(s) Name:

<u>**Kimberly Segura, Sofia Segura**</u>

Unit Number: <u>**11-101**</u>

This Addendum to the Lease Contract is hereby attached to and made part of the  Lease dated <u>**08/07/2022**</u> between <u>**Montane**</u> and Resident(s).

In the event any provision in this Addendum is inconsistent with any provision or provisions contained in other portions or attachments to the above-mentioned Lease Contract, then the provisions of this Addendum shall control. For purposes of this addendum, the term 'imit" shall include the rental premises, all common areas, all other rental premises on the property or any common areas or other rental premises on or about other property owned by or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

Your stainless steel appliances need to be cleaned for aesthetic considerations and to preserve corrosion resistance. Stainless steel is protected from corrosion by a thin layer of chromium oxide. Oxygen from the atmosphere combines with the chromium in the stainless steel to form this passive chromium oxide film that protects from further corrosion. Any contamination of the surface by dirt, or other material, hinders this passivation process and traps corrosive agents reducing corrosion protection. Thus, some form of routine cleaning is necessary to preserve the appearance and integrity of the appliance surface.

General Precautions

* In selecting cleaning practices, consider the possibility of scratching and the potential for post-cleaning corrosion caused by incompletely removed cleaners, NEVER USE ABRASIVE CLEANERS. Abrasive cleaners can permanently damage your stainless steel appliance. Regardless of which type of cleaner you use, thorough post-clean rinsing with clean water and a cloth is recommended.

Suggested Cleaning Methods

* Do not use metal (i.e. carbon steel brushes or steel wool), hard (like pumice) or rough items (emery or sand paper) to clean as they can scratch the appliance surface, Scratches can lead to rusting. Avoid using oily or greasy cloths when cleaning stainless steel.

* Clean Water and Wipe: The simplest, safest and least costly method that will adequately do the job is always the best method. Your stainless steel appliances will thrive with frequent cleaning because there is no surface coating to wear off. A soft cloth and clean, warm water should always be the first choice for mild stains, loose dirt and soil. A final rinse with clean water and a dry wipe will complete the process and eliminate the possibility of water stains.

* Follow the directions on the container. In addition, all you will need is a soft cloth to wipe the product off.

I have read "The Care of Stainless Steel Appliances" and agree to comply with the suggested methods of cleaning. I acknowledge that I will be held responsible for any damages due to neglect, misuse or abuse.

_____      _____
Resident/Date                                      Owners Representative/Date

Revised 2.16.16



# <u>Smart Apartment Amenity Addendum</u>

This Smart Apartment Amenity Addendum ("Addendum") is entered into on the date set forth below between the parties set forth below ("Owner" and "Resident").  If more than one resident executes this Addendum, the term "Resident" shall be interpreted to mean all such residents collectively.  It is intended to be a part of the Apartment Lease Contract between the parties for leasing a residential rental unit at **Montane**_____, **18201 E. Cottonwood Dr. #11-101,** **Parker, CO 80138**_____ ("Property").

Owner anticipates providing technology and devices to enable Resident to have a "smart apartment," including without limitation DWELO smart system (collectively, the "Amenity"), at the Property. Because of changes in technology and opportunities, this technology and devices may be fluid and continuing. It is anticipated that the devices and technology will be provided by a third party provider, currently Dwelo, Inc. ("Provider").  Owner may determine to change providers at any time for any reason and will provide notice thereof to Resident.

1. <u>Third Party Provider.</u>  By executing this Addendum, Resident (for itself, its guests, service personnel, occupants, and other similar individuals of Resident) expressly acknowledges and agrees that the Appliances may be installed at the Property, and consents and agrees to the installation, use and maintenance of the Amenity at the Property.

2. <u>Upgrade Consent.</u> Resident consents to upgrades and servicing of the Amenity either directly or remotely. Resident consents to access to the Amenity by Owner, Provider, or the contractors or agents of either Owner or Provider to upgrade or service it.

3. <u>Resident Information and Data.</u> Resident expressly consents to (a) Owner providing to Provider the Amenity data concerning Resident (including certain personally identifiable data, including name, email and unit number), and (b) Provider's collection, control, maintenance, storage, processing, transmittal and use of Resident information and data (including personally identifiable data) collected through the Amenity and Provider's associated website and/or app for purposes consistent with providing the Amenity to Resident. Resident agrees to and acknowledges that it will be subject to, and Provider will provide the Amenity in accordance with, Provider's Privacy Policy (located at http://dwelo.com/privacy-policy) and Terms of Use (located at https://concierge.dwelo.com/terms).

4. <u>Owner's Obligations.</u>  Owner shall not be liable for any failures of smart apartment technology or any part of the Amenity. Owner shall not be liable for any damages (actual, consequential, or otherwise) related to the use, inability to use, failure, suspension, or any other related issues regarding the Amenity. Resident acknowledges and agrees that Owner does not represent or warrant that the Amenity works, will always work, or will work as anticipated.  Owner's sole responsibility shall be to work as a conduit for resolution of any problems with the Amenity.

5. <u>Hold Harmless.</u>  Owner shall not be responsible for any damages or costs incurred by Resident resulting from the Amenity or use thereof. Nor shall Owner be responsible for any damages to Resident due to Provider.  Resident shall hold Owner harmless for any damages related in any way to Provider or the Amenity.

6. <u>Equipment Damage.</u>  Resident is responsible to notify owner within 60 days of occupying the apartment of any default of damaged smart apartment equipment. Resident will be responsible for reimbursing the owner for replacement costs of any damage incurred to equipment beyond that of normal wear-and-tear during the occupancy of the apartment.

Date: 08/08/2022_____

**Resident(s):**

By: _____
Name: Kimberly Segura_____
Date: _____

By: _____
Name: Sofia Segura_____
Date: _____

By: _____
Name: _____
Date: _____

By: _____
Name: _____
Date: _____

By: _____
Name: _____
Date: _____

By: _____
Name: _____
Date: _____

**Owner**:Kimberly Segura, Sofia Segura_____

By: _____
Name: _____
Date: _____



**LEASE ADDENDUM FOR INTRUSION ALARM**



**1. APARTMENT UNIT DESCRIPTION.**
Unit No. _____ **11-101** _____, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____ **Parker** _____
*(city)*, Colorado, _____ **80138**
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents):*
**Kimberly Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. INTRUSION ALARM.** Your apartment is equipped with an intrusion alarm. It must not be considered a guaranty of safety or security. You should at all times take precautions as if the intrusion alarm were malfunctioning. You acknowledge that the security of you and your family, occupants, and guests are your responsibility alone. Your use of the alarm system is *(check one)* ❑ required or ☒ optional. You are responsible for all false alarm charges for your apartment.

**4. PERMIT FROM CITY.** You *(check one)* ❑ do or ❑ do not have to obtain a city permit for activation and use of the intrusion alarm. If you do, the phone number to call is _____, and it is your responsibility to obtain the permit. You also will be responsible for any fines due to excessive false alarms.

**5. FOLLOW INSTRUCTIONS.** You agree to use reasonable care in operating the alarm and to follow the written instructions, rules and procedures furnished to you by us. Instructions ❑ are attached or ❑ will be provided to you when you move in.

**6. ALARM COMPANY.** You *(check one)* ☒ will or ❑ will not have to make arrangements with an independent alarm company to activate and maintain the alarm system. You *(check one)* ☒ may choose your own alarm company or ❑ are required to use _____
as your alarm company. The alarm system is repaired and maintained by **Resident**
_____.

**7. ENTRY BY OWNER.** Upon activation of the alarm system, you must immediately provide us (management) with your security code and any special alarm system instructions for lawful entry into the unit when no one is there, as authorized in your NAA Lease Contract. You must reimburse us for any expenses we incur in entering your apartment, when those expenses are due to your failure to provide the foregoing information.

**8. REPAIRS OR MALFUNCTIONS.** If the intrusion alarm malfunctions, you agree to *(check one)* ☒ contact your intrusion alarm company immediately for repair or ❑ contact us immediately for repair. The cost of repair will be paid by *(check one)* ☒ you or ❑ us.

**9. NO WARRANTY.** We make no guarantees or warranties, express or implied, concerning the alarm system. All guarantees and warranties are expressly disclaimed. Crime can and does occur despite the best security measures. Anything electronic or mechanical in nature will malfunction from time to time. We are absolutely not responsible for malfunction of the alarm.

**10. LIABILITY.** We are not liable to you, your guests or other occupants for any injury, damage or loss resulting from the alarm or any malfunction of the alarm. It is recommended that you purchase insurance to cover casualty loss of your property, including loss by theft.

**11. EMERGENCIES.** Always call 911 or law enforcement authorities or emergency medical services in the event of a crime or emergency. Then contact us. We are not required to answer the alarm, but we do have the right to enter and cut off the alarm to minimize annoyance to neighbors when it malfunctions or is not timely cut off.

**12. ENTIRE AGREEMENT.** We've made no promises or representations regarding the alarm system except those in this addendum.

**13. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**Apartment is not equipped with an**
**Intrusion Alarm.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs here)*

_____

**Date of Lease Contract**

**August 8, 2022**
_____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado
Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**SMOKE AND CARBON MONOXIDE
DETECTOR ADDENDUM**



Date: **August 8, 2022**
(when this Addendum is filled out)

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E. Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, **80138**
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**
Owner's name: **Montane**

Residents *(list all Residents):*
**Kimberly Segura, Sofia Segura**

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. DETECTORS.** Owner agrees to furnish and install smoke and carbon monoxide detectors (collectively "detectors") in accordance with law and the manufacturer's published instructions. As of this date, Resident acknowledges the existence of operating detector(s) in Resident's Apartment. Resident has inspected the detector(s), and found the detector(s) to be in good working order. Resident also acknowledges that Owner has provided any necessary batteries for the detector(s) to properly operate and function in accordance with law. Resident understands that any detector(s) have been provided to help insure the Resident's safety, but are not and must not be considered a guaranty of safety.

**4. MAINTENANCE, REPAIR, OR REPLACEMENT.** Resident agrees to regularly test, keep, and maintain any detector(s) in good repair. Resident shall give Owner immediate written notification if any detector(s) is missing, damaged, defective, malfunctioning, failing, or otherwise non-operational. Owner shall promptly repair or replace any detector(s) that is missing, damaged, defective, malfunctioning, failing, or otherwise non-operational subject to the provisions of this Addendum and the Lease. Specifically, Resident shall reimburse Owner for all costs and damages associated with repairing or replacing any detector(s) if any repair or replacement is caused by or due to Resident, Resident's occupants, guest or invitees, including but not limited to if a repair or replacement is due to Resident's violation of this Addendum. Resident agrees to not remove batteries from any detector(s) unless and only when necessary to inspect, maintain, or repair any detector(s).

**5. BATTERY REPLACEMENT.** Subject to Owner's responsibility to provide batteries at the commencement of Resident's lease in paragraph 1 above, Resident shall replace at Resident's cost all detector(s) batteries during Resident's tenancy, if any, anytime any detector(s) battery needs to be replaced for any detector(s) to operate and function as intended and in accordance with law.

**6. DISCLAIMER.** Resident acknowledges and agrees that Owner is not the operator, manufacturer, distributor, retailer or supplier of any detector(s). Subject to Owner's responsibilities set forth in this Addendum, Resident assumes full and complete responsibility for all risk and hazards attributable to, connected with or in any way related to the operation, malfunction, or failure of any detector(s), regardless of whether such malfunction or failure is attributable to, connected with, or in any way related to the use, operation, manufacture, distribution, repair, servicing, or installation of said smoke detector(s). Owner, its employees, and agents have made no representations, warranties, undertakings or promises, whether oral or implied, or otherwise to Resident regarding any detector(s), or the alleged performance of the same. Owner neither makes nor adopts any warranty of any person or company of any nature regarding any detector(s), and expressly disclaims all warranties or fitness for a particular purpose, or any and all other expressed or implied warranties. Owner shall not be liable for damages or losses to person or property caused by (1) Resident's failure to regularly test any detector(s); (2) Resident's failure to notify Owner in writing of any problem, defect, malfunction, or failure of any detector(s); and (3) False alarms produced by any detector(s).

**Resident or Residents**
*(All Resident's must sign here)*

**Owner or Owner's Representative**
*(Signs here)*

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**BED BUG ADDENDUM**



Date: **August 8, 2022**
(when this Addendum is filled out)

*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your apartment or surrounding apartments. This addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.*

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. **11-101**, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, **80138** *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 8, 2022**
Owner's name: **Montane**

Residents *(list all residents)*:
**Kimberly Segura, Sofia Segura**

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE.** This Addendum modifies the Lease Contract and addresses situations related to bed bugs *(cimex lectularius)* which may be discovered infesting the apartment or personal property in the apartment. You understand that we relied on your representations to us in this Addendum. If such information is false or materially misleading, then we shall have the option to terminate your tenancy upon 3 days notice to quit. You agree that we do not guarantee or warrant a bed bug free environment.

**4. INSPECTION AND INFESTATIONS.** BY SIGNING THIS ADDENDUM, YOU REPRESENT THAT:
- YOU HAVE INSPECTED THE DWELLING PRIOR TO MOVING IN, OR PRIOR TO SIGNING THIS ADDENDUM, AND YOU DID NOT FIND ANY EVIDENCE OF BED BUGS OR A BED BUG INFESTATION;

OR
- YOU WILL INSPECT THE DWELLING WITHIN 48 HOURS AFTER MOVING IN, OR WITHIN 48 HOURS AFTER SIGNING THIS ADDENDUM AND WILL NOTIFY US OF ANY BED BUGS OR BED BUG INFESTATIONS.

You agree that you have read the information provided in this Addendum and that you are not aware of any infestation or presence of bed bugs in your current or previous dwellings, furniture, clothing, personal property, or possessions. You also acknowledge that you have fully disclosed to us any previous bed bug infestations or bed bug issues that you have experienced.

If you disclose to us a previous experience with bed bug infestations or other bed bug related issues, we can review documentation of the previous treatment(s) and inspect your personal property and possession to confirm the absence of bed bugs.

**5. ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the apartment at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate, with all written instructions distributed to you and not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the apartment and building. We can select the method of treating the apartment, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring apartments to the infestation even if those apartments are not the source or cause of the known infestation. Unless otherwise prohibited by law, you are responsible for and must, at your own expense, have your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the apartment. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the apartment for a bed bug infestation on your own.

**6. NOTIFICATION.** You must promptly notify us:
- of any known or suspected bed bug infestation or presence in the apartment, or in any of your clothing, furniture or personal property.
- of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the apartment.
- if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

**Via written or electronic notice.** IF YOU CHOOSE TO SEND YOUR NOTICE TO US ELECTRONICALLY, YOU MUST SEND IT TO US AT ☒ THE ONLINE TENANT/MAINTENANCE PORTAL or ☐ _____
_____
*(alternative electronic method of communication).*

**7. COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the apartment and building that are infested. If you are not fully prepared for a treatment, you agree to pay us $ **175.00** per incident. You may only remove or destroy personal property that cannot be treated or cleaned as instructed by our qualified inspector. Any items you remove from the apartment must be disposed of off-site and not in the common areas or property's trash receptacles. If we confirm the presence or infestation of bed bugs in your apartment, we have the right to require you to temporarily vacate the apartment and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

**8. RESPONSIBILITIES.** We will be responsible for the initial costs of inspection and, if the presence of bed bugs is confirmed by a qualified inspector, the initial costs of treatment. If you knowingly and unreasonably fail to comply with inspections and treatment requirements, you will be in default of this Addendum, the Lease Contract, and state law, and you may be required to pay all reasonable costs of any necessary treatments to your apartment and any adjoining or neighboring

© 2020, National Apartment Association, Inc. - 2/2020, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

apartments to your apartment if the treatments arose from your noncompliance. If we confirm the presence of infestation of bed bugs after you vacate your apartment, you may be responsible for the cost of cleaning and pest control treatments. If you fail to comply with your inspection and treatment requirements and we must move other residents in order to treat adjoining or neighboring apartments to your apartment unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring residents and to clean and perform pest control treatments to eradicate infestations in other apartments. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract, and obtain immediate possession of the apartment. If you fail to move out after your right of occupancy has been terminated, you will be liable for holdover rent under the Lease Contract.

9. **TRANSFERS.**   If we allow you to transfer to another apartment in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

10. **SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**You are legally bound by this document. Please read it carefully.**

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

_____

_____

_____          **Date of Signing Addendum**

_____

_____          _____

_____

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

## BED BUGS — A Guide for Rental Housing Residents

Bed bugs, with a typical lifespan of 6 to 12 months, are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals—their sole food source—the bugs assume a distinctly blood-red hue until digestion is complete.

### Bed bugs don't discriminate

Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

### Bed bugs don't transmit disease

There exists no scientific evidence that bed bugs transmit disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease transmitting pests. Again, claims associating bed bugs with disease are false.

### Identifying bed bugs

*Bed bugs can often be found in, around and between:*
- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors

- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

### Preventing bed bug encounters when traveling

Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

### Bed bug do's and don'ts

- **Do not bring used furniture from unknown sources into your apartment.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, residents should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing residents who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.



Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**Mold Information and Prevention Addendum**



> *Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize any mold growth in your apartment. That is why this Addendum contains important information for you, and responsibilities for both you and us.*

**1. APARTMENT DESCRIPTION.**
Apt. No. __11-101__, __18201 E. Cottonwood Dr.__
_____ *(street address)* in
_____ *Parker*
*(city)*, Colorado, _____80138_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: __August 8, 2022__
Owner's name: __Montane__
_____
_____
_____
_____

Residents *(list all Residents)*:
__Kimberly Segura, Sofia Segura__
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ABOUT MOLD.** Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside an apartment, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for persons with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.

**4. PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your apartment, you must do the following:

- Keep your apartment, clean—particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away mold food.

- Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines—especially if the leak is large enough for

water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen *before* you start showering or cooking with open pots. When showering, be sure to keep the shower curtain *inside* the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.

- Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your apartment dry out.

- Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.

- Keep the thermostat set to automatically circulate air in the event temperatures rise to or above 80 degrees Fahrenheit.

**5. IN ORDER TO AVOID MOLD GROWTH,** it is important to prevent excessive moisture buildup in your apartment. Failure to promptly pay attention to leaks and moisture that might accumulate on apartment surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:

- rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;

- overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;

- leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;

- washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;

- leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and

- insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

**6. IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON NON-POROUS SURFACES** (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold.) Tilex® and Clorox® contain bleach which can discolor or stain. **Be sure to follow the instructions on the container.** Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be used to help remove non-visible mold products from *porous* items, such as fibers in sofas, chairs, drapes and carpets—provided the fibers are completely dry. Machine washing or dry cleaning will remove mold from clothes.

**7. DO NOT CLEAN OR APPLY BIOCIDES TO:**   (1) visible mold on *porous surfaces,* such as sheetrock walls or ceilings, or (2) *large areas* of visible mold on *non-porous* surfaces. Instead, notify us in writing, and we will take appropriate action.

**8. COMPLIANCE.**   Complying with this Addendum will help prevent mold growth in your apartment, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this Addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

**If you fail to comply with this Addendum, you can be held responsible for property damage to the apartment and any health problems that may result. We can't fix problems in your apartment unless we know about them.**

**9. SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____

_____

_____

_____

_____

**Owner or Owner's Representative**
*(Signs here)*

_____

**Date of Lease Contract**
August 8, 2022

Colorado/National Apartment Association Official Form, June 2018
© 2018, National Apartment Association, Inc.

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

# COLORADO
**APARTMENT ASSOCIATION**

## NO-SMOKING ADDENDUM

Date: _____**August 8, 2022**_____
(when this Addendum is filled out)


**NAA**
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

*All use of any tobacco product involving smoking, burning, or combustion of tobacco is prohibited in any portion of the apartment community. You are entitled to receive an original of this No-Smoking Addendum after it is fully signed. Keep it in a safe place.*

**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, __**18201 E.**__
**Cottonwood Dr.**_____
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80138**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**____
Owner's name: **Montane**_____
_____
_____
_____

Residents *(list all residents)*:
**Kimberly Segura, Sofia Segura**_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. DEFINITION OF SMOKING.** Smoking refers to any use or possession of any form of any product, especially including, but not limited to, a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term tobacco includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons.

**4. SMOKING ANYWHERE INSIDE BUILDINGS OF THE APARTMENT COMMUNITY IS STRICTLY PROHIBITED.** All forms and use of burning, lighted, vaporized, or ignited tobacco products and smoking of tobacco products inside any apartment, building, or interior of any portion of the apartment community, is strictly prohibited. Any violation of the no-smoking policy is a material and substantial violation of this Addendum and the Lease Contract.

The prohibition on use of any burning, lighted, vaporized, or ignited tobacco products or smoking of any tobacco products extends to all residents, their occupants, guests, invitees and all others who are present on or in any portion of the apartment community. The no-smoking policy and rules extend to, but are not limited to, the management and leasing offices, building interiors and hallways, building common areas, apartments, club house, exercise or spa facility, tennis courts, all interior areas of the apartment community, commercial shops, businesses, and spaces, work areas, and all other spaces

whether in the interior of the apartment community or in the enclosed spaces on the surrounding community grounds. Smoking of non-tobacco products which are harmful to the health, safety, and welfare of other residents inside any apartment or building is also prohibited by this Addendum and other provisions of the Lease Contract.

**5. SMOKING OUTSIDE BUILDINGS OF THE APARTMENT COMMUNITY.** Smoking is permitted only in specially designated areas outside the buildings of the apartment community. Smoking must be at least _**25**_ feet from the buildings in the apartment community, including administrative office buildings. If the previous field is not completed, smoking is only permitted at least 25 feet from the buildings in the apartment community, including administrative office buildings. The smoking-permissible areas are marked by signage.

Smoking on balconies, patios, and limited common areas attached to or outside of your apartment ❏ is ☒ is not permitted.

The following outside areas of the community may be used for smoking: **None**_____
_____
_____
_____

Even though smoking may be permitted in certain limited outside areas, we reserve the right to direct that you and your occupants, family, guests, and invitees cease and desist from smoking in those areas if smoke is entering the apartments or buildings or if it is interfering with the health, safety, or welfare or disturbing the quiet enjoyment, or business operations of us, other residents, or guests.

**6. YOUR RESPONSIBILITY FOR DAMAGES AND CLEANING.** You are responsible for payment of all costs and damages to your apartment, other residents' apartments, or any other portion of the apartment community for repair, replacement, or cleaning due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees, regardless of whether such use was a violation of this Addendum. Any costs or damages we incur related to repairs, replacement, and cleaning due to your smoking or due to your violation of the no-smoking provisions of the Lease Contract are in excess of normal wear and tear. Smoke related damage, including but not limited to, the smell of tobacco smoke which permeates sheetrock, carpeting, wood, insulation, or other components of the apartment or building is in excess of normal wear and tear in our smoke free apartment community.

**7. YOUR RESPONSIBILITY FOR LOSS OF RENTAL INCOME AND ECONOMIC DAMAGES REGARDING OTHER RESIDENTS.** You are responsible for payment of all lost rental income or other economic and financial damages or loss to us due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees which results in or causes other residents to vacate their apartments, results in disruption of other residents' quiet enjoyment, or adversely affects other residents' or occupants' health, safety, or welfare.

**8. LEASE CONTRACT TERMINATION FOR VIOLATION OF THIS ADDENDUM.** We have the right to terminate your Lease Contract or right of occupancy of the apartment for any violation of this No-Smoking Addendum. Violation of the no-smoking provisions is a material and substantial default or violation of the Lease Contract. Despite the termination of the Lease Contract or your occupancy, you will remain liable for early move-out charges pursuant to the Early Move-Out paragraph of the Lease Contract.

© 2018, National Apartment Association, Inc. - 10/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**9. EXTENT OF YOUR LIABILITY FOR LOSSES DUE TO SMOKING.** Your responsibility for damages, cleaning, loss of rental income, and loss of other economic damages under this No-Smoking Addendum are in addition to, and not in lieu of, your responsibility for any other damages or loss under the Lease Contract or any other addendum.

**10. YOUR RESPONSIBILITY FOR CONDUCT OF OCCUPANTS, FAMILY MEMBERS, AND GUESTS.** You are responsible for communicating this community's no-smoking policy and for ensuring compliance with this Addendum by your occupants, family, guests, and invitees.

**11. THERE IS NO WARRANTY OF A SMOKE FREE ENVIRONMENT.** Although we prohibit smoking in all interior parts of the apartment community, there is no warranty or guaranty of any kind that your apartment or the apartment community is smoke free. Smoking in certain limited outside areas is allowed as provided above. Enforcement of our no-smoking policy is a joint responsibility which requires your cooperation in reporting incidents or suspected violations of smoking. You must report violations of our no-smoking policy before we are obligated to investigate and act, and you must thereafter cooperate with us in prosecution of such violations.

This is an important and binding legal document. By signing this Addendum you are agreeing to follow our no-smoking policy and you are acknowledging that a violation could lead to termination of your Lease Contract or right to continue living in the apartment. If you or someone in your household is a smoker, you should carefully consider whether you will be able to abide by the terms of this Addendum.

**12. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Sign here)*

_____

© 2018, National Apartment Association, Inc. - 10/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



**CRIME/DRUG FREE HOUSING ADDENDUM**



**1. APARTMENT DESCRIPTION.**
Apt. No. **11-101**, **18201 E. Cottonwood Dr.**
_____ *(street address)* in
**Parker**
*(city)*, Colorado, **80138**
(zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ADDENDUM APPLICABILITY.** In the event any provision in this Addendum is inconsistent with any provision(s) contained in other portions of, or attachments to, the above-mentioned Lease Contract, then the provisions of this Addendum shall control. For purposes of this Addendum, the term "premises" shall include the apartment, all common areas, all other apartments on the property or any common areas or other apartments on or about other property owned by or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

**4. CRIME/DRUG FREE HOUSING.** Resident, members of the Resident's household, Resident's guests, and all other persons affiliated with the Resident:

A.   Shall not engage in any illegal or criminal activity regardless of where such illegal or criminal activity occurs. The phrase, "illegal or criminal activity" shall include, but is not limited to, the following:

1.   Engaging in any act intended to facilitate any type of criminal activity.

2.   Permitting the premises to be used for, or facilitating any type of criminal activity or drug related activity, regardless of whether the individual engaging in such activity is a member of the household, or a guest.

3.   The unlawful manufacturing, selling, using, storing, keeping, purchasing or giving of an illegal or controlled substance or paraphernalia as defined in any city, county, state or federal laws, including but not limited to the State of Colorado and/or the Federal Controlled Substances Act regardless of whether or not the offense is a misdemeanor or felony.

4.   Violation of any federal drug laws governing the use, possession, sale, manufacturing and distribution of marijuana or marijuana concentrate, regardless of state or local laws. (So long as the use, possession, sale, manufacturing and distribution of marijuana remains a violation of federal law, violation of any such federal law shall constitute a material violation of the Lease Contract.)

5.   Engaging in, or allowing, any behavior that is associated with drug activity, including but not limited to having excessive vehicle or foot traffic associated with his or her unit.

6.   Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Residents, or involving imminent, actual or substantial property damage.

7.   Engaging in or committing any act that would be a violation of the Owner's screening criteria for criminal conduct or which would have provided Owner with a basis for denying Resident's application due to criminal conduct.

8.   Engaging in any activity that constitutes waste, nuisance, or unlawful use.

B.   Agree and acknowledge that Resident has an affirmative duty to abstain from any criminal activity and to prevent criminal activity by any other persons, including but not limited to, immediately notifying a law enforcement officer at the first sign of Resident's knowledge of the criminal activity which constitutes any substantial violation agreed to in this Addendum or at law (collectively "substantial violation"), and cooperating with law enforcement with respect to the substantial violation. For the purpose of this Addendum, criminal activity also includes any activity or conduct by any person, which a reasonable person would conclude has the potential for escalating into or becoming criminal activity. Resident agrees that Resident's affirmative duty extends to being responsible for the conduct and actions of all persons regardless of any culpability or knowledge on Resident's part, that Resident's affirmative duty extends to making all persons aware of Resident's obligations, covenants, and duties under this Addendum, and that Resident's duties extend to all conduct whether or not such conduct occurs in Resident's unit. Resident may not assert as a defense in any eviction action against Resident based on violation of this Addendum that Resident did not know any person, occupant or guest was in violation of this Addendum.

C.   AGREE THAT ANY VIOLATION OF THE ABOVE PROVISIONS CONSTITUTES A SUBSTANTIAL VIOLATION AND MATERIAL NON-COMPLIANCE WITH THE LEASE CONTRACT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this Addendum shall be deemed a serious violation, and a material default, of the parties' Lease Contract. It is understood that a single violation shall be good cause for termination of the Resident's tenancy. Notwithstanding the foregoing comments, Owner may terminate Resident's tenancy for any lawful reason, and by any lawful method, with or without good cause.

Resident waives any and all legal rights of any kind whatsoever to claim or insist that Landlord must first serve Resident with a demand for compliance or possession in order to initiate an eviction action against Resident for recovery of the premises. Upon any violation of this Addendum by Resident, Owner may terminate Resident's right to occupancy without terminating the Lease Contract or Resident's obligation to pay rent as set forth in the Lease Contract at Owner's election. Owner's termination of Resident's right to occupancy shall be effective with right of eviction upon three (3) days notice to quit. Unless required by law, Owner shall not be required to serve any other notices upon Resident in order to terminate Resident's right of possession.

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**5. CRIMINAL CONVICTION NOT REQUIRED.** Agree that unless otherwise provided by law, proof of violation of any criminal law shall not require a criminal conviction and shall be by a preponderance of the evidence.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents** *(sign here)*                    **Date of Signing Addendum**

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

**Owner or Owner's Representative** *(signs here)*          **Date of Signing Addendum**

_____      _____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

**COLORADO**
APARTMENT ASSOCIATION

**ADDENDUM REGARDING RECREATIONAL and MEDICAL MARIJUANA
and
LANDLORD'S COMMITMENT TO DRUG FREE HOUSING**



**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**_____, **18201 E.**
**Cottonwood Dr.** _____
_____ (street address) in
_____**Parker**_____
(city), Colorado, _____**80138**_____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022** _____
Owner's name: **Montane** _____
_____
_____
_____
_____

Residents (list all Residents):
**Kimberly Segura, Sofia Segura** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3.** Under federal law, specifically the Controlled Substances Act (CSA), marijuana is still categorized as a Schedule I substance. This means that under federal law, the manufacture, distribution, or possession of marijuana is strictly prohibited. Because the U.S. Department of Housing and Urban Development is controlled by the federal government, it agrees that the manufacture, distribution, or possession of marijuana, whether prescribed for medical reasons or not, is a criminal offense and will not be protected under the fair housing laws. Therefore, landlords are not required to accommodate the manufacturing, distribution, possession or use of marijuana by a tenant for medical or recreational purposes. Disabled tenants who are registered medical marijuana users, however, should not feel discouraged to request reasonable accommodations if the need arises.

**4.** The Premises listed above follow and comply with federal law regarding marijuana and is, and will continue to be, a drug free community. Possession, use, manufacture or sale of any illegal substance, including marijuana, or marijuana concentrate by the Resident and/or Resident's occupants, guests or invitees is a substantial violation of the Lease Contract and will result in immediate termination of Resident's possession of the apartment. If you have any questions or concerns about this policy, please speak to management.

**5.** By signing below, Resident acknowledges his or her understanding of the terms and conditions as stated above, and his or her agreement to comply with those terms and conditions.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents** (sign here)

_____
_____
_____
_____
_____

**Owner or Owner's Representative** (signs here)

_____

**Date of Signing Addendum**

_____
_____
_____
_____
_____

**Date of Signing Addendum**

_____

© 2019, National Apartment Association, Inc. - 8/2019, Colorado




**ADDENDUM PROHIBITING
SHORT-TERM SUBLETTING OR RENTAL**



**1. APARTMENT UNIT DESCRIPTION.**
Apt. No. _____**11-101**___, **18201 E.**
**Cottonwood Dr.**
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80138**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**_____
Owner's name: **Montane**_____
_____
_____
_____
_____

Residents *(list all residents):*
**Kimberly Segura, Sofia Segura**_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. SHORT TERM SUBLEASE OR RENTING PROHIBITED.** Without limiting the prohibition in the Lease on subletting and assignment and without limiting any of our rights or remedies, this Addendum to the Lease further supplements and defines the requirements and prohibitions contained in the Lease Contract between you and us. You are hereby strictly prohibited from subletting or renting to any third party, or allowing occupancy by any third party, of all or any portion of the apartment, whether for an overnight use or duration of any length, without our prior written consent in each instance. This prohibition applies to overnight stays or any other stays arranged on Airbnb.com or other similar internet sites.

**4. PROHIBITION ON LISTING OR ADVERTISING APARTMENT ON OVERNIGHT SUBLETTING OR RENTING WEBSITES.** You agree not to list or advertise the apartment as being available for short term subletting or rental or occupancy by others on Airbnb.com or similar internet websites. You agree that listing or advertising the apartment on Airbnb.com or similar internet websites shall be a violation of this Addendum and a breach of your Lease Contract.

**5. VIOLATION OF LEASE AGREEMENT.** Your Lease Contract allows for use of your apartment as a private residence only and strictly prohibits conducting any kind of business in, from, or involving your apartment unless expressly permitted by law. Separately, your Lease Contract prohibits subletting or occupancy by others of the apartment for any period of time

without our prior written consent. Permitting your apartment to be used for any subletting or rental or occupancy by others (including, without limitation, for a short term), regardless of the value of consideration received or if no consideration is received, is a violation and breach of this Addendum and your Lease Contract.

**6. REMEDY FOR VIOLATION.** Any violation of this Addendum constitutes a material violation of the Lease Contract, and as such we may exercise any default remedies permitted in the Lease Contract, including termination of your tenancy, in accordance with local law. This clause shall not be interpreted to restrict our rights to terminate your tenancy for any lawful reason, or by any lawful method.

**7. RESIDENT LIABILITY.** You are responsible for and shall be held liable for any and all losses, damages, and/or fines that we incur as a result of your violations of the terms of this Addendum or the Lease Contract. Further, you agree you are responsible for and shall be held liable for any and all actions of any person(s) who occupy your apartment in violation of the terms of this Addendum or the Lease Contract, including, but not limited to, property damage, disturbance of other residents, and violence or attempted violence to another person. In accordance with applicable law, without limiting your liability you agree we shall have the right to collect against any renter's or liability insurance policy maintained by you for any losses or damages that we incur as the result of any violation of the terms of this Addendum.

**8. SEVERABILITY.** If any provision of this Addendum or the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs below)*

_____

**Date of Signing Addendum**

_____

© 2018, National Apartment Association, Inc. - 6/2018, Colorado
Document digitally signed using RENTCafe eSignature services. Document ID: 15944828





**INVENTORY AND CONDITION FORM**



**APARTMENT UNIT DESCRIPTION.** Apt. No. **11-101**  **18201 E. Cottonwood Dr.**
_(street address)_ in **Parker**
_(city)_, Colorado, **80138** _(zip code)._
**LEASE CONTRACT DESCRIPTION.**  Lease Contract date: **August 8, 2022**  Owner's name: **Montane**

Residents _(list all residents):_
**Kimberly Segura, Sofia Segura**

Within 48 hours after move-in, you must note on this form all defects, damage or safety or pest-related concerns and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition. Please mark through items listed below or put "none" if the items don't exist. This form protects both you (the resident) and us (the owner). We'll use it in determining what should and should not be considered your responsibility upon move-out. You are entitled to a copy of this form after it is filled out and signed by you and us.

Resident's Name: **Kimberly Segura**
Home Phone: (_____) _____   Work Phone: (_____) _____

Resident's Name: **Sofia Segura**
Home Phone: (_____) _____   Work Phone: (_____) _____

Resident's Name: _____
Home Phone: (_____) _____   Work Phone: (_____) _____

Resident's Name: _____
Home Phone: (_____) _____   Work Phone: (_____) _____

Resident's Name: _____
Home Phone: (_____) _____   Work Phone: (_____) _____

Resident's Name: _____
Home Phone: (_____) _____   Work Phone: (_____) _____

☐ **Move-In   or   ☐ Move-Out Condition** _(Check one)_

**Living Room**
Walls _____
_____
Wallpaper_____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling_____
Light Fixtures, Bulbs _____
Floor/Carpet _____
_____
Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves_____
Closet Lights, Fixtures _____
Lamps, Bulbs _____
Water Stains on Walls or Ceilings _____
Other _____

**Kitchen**
Walls _____
_____
Wallpaper_____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs_____
Floor/Carpet _____
_____
Doors, Stops, Locks _____
Windows, Latches, Screens_____
Window Coverings _____
Cabinets, Drawers, Handles _____
Countertops _____
Stove/Oven, Trays, Pans, Shelves _____
Vent Hood _____
Refrigerator, Trays, Shelves _____
Refrigerator Light, Crisper _____
Dishwasher, Dispensers, Racks _____
Sink/Disposal _____
Microwave _____

Plumbing Leaks or Water Stains on Walls or Ceilings_____
Other _____

**General Items**
Thermostat _____
Cable TV or Master Antenna _____
A/C Filter _____
Washer/Dryer _____
Garage Door _____
Ceiling Fans _____
Exterior Doors, Screens/Screen Doors/Doorbell _____
Fireplace _____
Other _____
_____

**Dining Room**
Walls _____
_____
Wallpaper_____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling_____
Light Fixtures, Bulbs _____
Floor/Carpet _____
_____
Doors, Stops, Locks _____
Windows, Latches, Screens_____
Window Coverings _____
Closets, Rods, Shelves_____
Closet Lights, Fixtures _____
Other _____

**Halls**
Walls _____
_____
Wallpaper_____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling_____
Light Fixtures, Bulbs _____

Floor/Carpet _____

_____

Doors, Stops, Locks _____

Closets, Rods, Shelves _____

Closet Lights, Fixtures _____

Water Stains on Walls or Ceilings _____

Other _____

**Exterior** (if applicable)

Patio/Yard _____

Fences/Gates/Gate Latches or Locks _____

Faucets _____

Balconies _____

Other _____

**Bedroom** (describe which one) _____

Walls _____

_____

Wallpaper _____

Plugs, Switches, A/C Vents _____

Woodwork/Baseboards _____

Ceiling _____

Light Fixtures, Bulbs _____

Floor/Carpet _____

_____

Doors, Stops, Locks _____

Windows, Latches, Screens _____

Window Coverings _____

Closets, Rods, Shelves _____

Closet Lights, Fixtures _____

Water Stains on Walls or Ceilings _____

Other _____

**Bedroom** (describe which one): _____

Walls _____

_____

Wallpaper _____

Plugs, Switches, A/C Vents _____

Woodwork/Baseboards _____

Ceiling _____

Light Fixtures, Bulbs _____

Floor/Carpet _____

_____

Doors, Stops, Locks _____

Windows, Latches, Screens _____

Window Coverings _____

Closets, Rods, Shelves _____

Closet Lights, Fixtures _____

Water Stains on Walls or Ceilings _____

Other _____

**Bath** (describe which one): _____

Walls _____

_____

Wallpaper _____

Plugs, Switches, A/C Vents _____

Woodwork/Baseboards _____

Ceiling _____

Light Fixtures, Bulbs _____

Exhaust Fan/Heater _____

Floor/Carpet _____

_____

Doors, Stops, Locks _____

Windows, Latches, Screens _____

Window Coverings _____

Sink, Faucet, Handles, Stopper _____

Countertops _____

Mirror _____

Cabinets, Drawers, Handles _____

Toilet, Paper Holder _____

Bathtub, Enclosure, Stopper _____

Shower, Doors, Rods _____

Tile _____

Plumbing Leaks or Water Stains on Walls or Ceilings _____

_____

Other _____

**Half Bath**

Walls _____

_____

Wallpaper _____

Plugs, Switches, A/C Vents _____

Woodwork/Baseboards _____

Ceiling _____

Light Fixtures, Bulbs _____

Exhaust Fan/Heater _____

Floor/Carpet _____

_____

Doors, Stops, Locks _____

Windows, Latches, Screens _____

Window Coverings _____

Sink, Faucet, Handles, Stopper _____

Countertops _____

Mirror _____

Cabinets, Drawers, Handles _____

Toilet, Paper Holder _____

Tile _____

Plumbing Leaks or Water Stains on Walls or Ceilings _____

_____

Other _____

**Bedroom** (describe which one): _____

Walls _____

_____

Wallpaper _____

Plugs, Switches, A/C Vents _____

Woodwork/Baseboards _____

Ceiling _____

Light Fixtures, Bulbs _____

Floor/Carpet _____

_____

Doors, Stops, Locks _____

Windows, Latches, Screens _____

Window Coverings _____

Closets, Rods, Shelves _____

Closet Lights, Fixtures _____

Water Stains on Walls or Ceilings _____

Other _____

**Bath** (describe which one): _____

Walls _____

_____

Wallpaper _____

Plugs, Switches, A/C Vents _____

Woodwork/Baseboards _____

Ceiling _____

Light Fixtures, Bulbs _____

Exhaust Fan/Heater _____

Floor/Carpet _____

_____

Doors, Stops, Locks _____

Windows, Latches, Screens _____

Window Coverings _____

Sink, Faucet, Handles, Stopper _____

Countertops _____

Mirror _____

Cabinets, Drawers, Handles _____

Toilet, Paper Holder _____

Bathtub, Enclosure, Stopper _____

Shower, Doors, Rods _____

Tile _____

Water Stains on Walls or Ceilings _____

Plumbing Leaks or Water Stains on Walls or Ceilings _____

_____

Other _____

_____

**Safety-Related Items (Put "N/A" if not applicable)**

Door Knob Locks _____

Keyed Deadbolt Locks _____

_____

Keyless Deadbolts _____

_____

Keyless Bolting Devices _____

Sliding Door Pin Locks _____

Sliding Door Latches _____

Sliding Door Security Bars _____

Doorviewers _____

Window Latches _____

© 2021, National Apartment Association, Inc. - 12/2021, Colorado

Document digitally signed using RENTCafe eSignature services. Document ID: 15944828

Page 2 of 3

Porch and Patio Lights _____

Smoke Detectors (push button to test) _____

Alarm System _____

Fire Extinguishers (look at charge level-BUT DON'T TEST!) _____

Garage Door Opener _____

Gate Access Card(s) _____

Other _____

_____

_____

Date of Move-In: _____

*or*

Date of Move-Out: _____

**SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Acknowledgment.** You agree you will complete and submit this form in accordance with this Lease and our Community Policies. You acknowledge you will inspect and test all safety-related items in the apartment, including smoke alarms and any other detector(s), and confirm that they are working, except as noted on your completed Inventory and Condition Form. All items will be considered to be in good and working condition unless otherwise noted. You acknowledge you will receive written operating instructions on the alarm system and gate access entry systems (if there are any). You acknowledge that you will inspect the apartment and confirm no signs of bed bugs or other pests are present, or, if bugs are present, that you will promptly report any bed bug or pest issues on this Inventory and Condition Form and through a written work order or other written repair request. You agree that this returned completed Inventory and Condition Form accurately reflects the condition of the apartment for purposes of determining any refund of deposit due to you when you move out. You acknowledge that if you do not return the form within 48 hours after move-in, we will consider the apartment to be clean, safe, free of pest or insect infestations, and in good working condition for purposes of determining any refund of deposit due to you at move-out.

***In signing below, you accept this inventory as part of the Lease Contract and agree that it accurately reflects the condition of the premises for purposes of determining any refund due to you when you move out.***

**Resident or Resident's Agent:** _____   **Date of Signing:** _____

**Resident or Resident's Agent:** _____   **Date of Signing:** _____

**Resident or Resident's Agent:** _____   **Date of Signing:** _____

**Resident or Resident's Agent:** _____   **Date of Signing:** _____

**Resident or Resident's Agent:** _____   **Date of Signing:** _____

**Resident or Resident's Agent:** _____   **Date of Signing:** _____

**Owner or Owner's Representative:** _____   **Date of Signing:** _____

## STANDARD CLEANING AND REPAIR CHARGES

The following information is provided to assist you in your move-out and assist in assessing any charges that may be applicable. A full inspection of the apartment will be made only after you have moved out. If the move-out occurs during regular business hours, a property representative should be scheduled to walk the apartment with you. If the apartment is in need of cleaning or repair, the following estimated charges will be used as a guide to assess amounts to be deducted from your Security Deposit and charged to you, if the amount assessed exceeds your security deposit. Please note that this is not a complete list of all possible estimated charges that you may incur when your apartment is inspected. **Please also note that these charges are estimates only to give you an idea of the charges you may incur for particular items. You may be charged more than the maximum, depending upon the costs or charges we incur**. Please leave a forwarding address on file with the office.

| KITCHEN CLEANING | |
|---|---:|
| **Oven** | $15.00 - $50.00 |
| **Stove and Vent-a-Hood** | $10.00 - $15.00 |
| **Refrigerator/ Freezer** | $10.00 - $50.00 |
| **Dishwasher/ Microwave** | $10.00 - $25.00 |
| **Cabinets and Countertops** | $10.00 - $20.00 |
| **Floors** | $15.00 - $50.00 |
| BATHROOM CLEANING | |
| **Toilet** | $10.00 - $20.00 |
| **Tub/ Shower** | $10.00 - $60.00 |
| **Sinks/ Counters/ Mirrors** | $10.00 - $20.00 |
| MISCELLANEOUS | |
| **Blinds (Windows/ Patio)** | $15.00 to estimate |
| **Carpet Repairs** | Based on actual cost including labor and installation |
| **Washer/ Dryer Cleaning** | $15.00 to $30.00 |
| **Tile Floor Repair or Waxing/ Cleaning** | $15.00 to estimate |
| **Sheetrock Repairs** | $10.00 to estimate |
| **Window Cleaning – Window** | $10.00 each |
| **Window Cleaning – Sliding Glass Doors** | $15.00 each |
| **Graffiti Removal** | $5.00 per letter to estimate |
| **Carpet Cleaning/ Stain Removal per vendor** | $45.00 to estimate |
| **Standard Trash Removal** | $20.00 per bag |
| **HVAC Smoke Damage/ Duct Cleaning/ Ozone Treatments** | **$250.00 - $650.00** |

## REMOVING PROPERTY

| **Cost of removing property (such as furniture pieces), including storage** | $25.00 – $100.00 each piece |
|---|---:|

## REPLACEMENT CHARGES

If any items are missing/ damaged to the point that they must be replaced when you move out, you will be charged for the current cost of the item in addition to possible labor services. A list of various replacement charges has been provided below. Please note that this is not a complete list of possible charges that you may incur when your apartment is inspected, and additional labor cost may be considered. Please also note that these charges are estimates only to give you an idea of the charges you may incur for particular items. You may be charged more than the maximum, depending upon the cost or charges we incur.

| | |
|---|---|
| **Window Glass** | Estimate |
| **Patio Door Glass** | Estimate |
| **Window Screens** | $10.00 - $35.00 |
| **Patio Screen Doors** | $80.00 - $90.00 |
| **Mail Box Keys/ New Lock** | $10.00 per key / $45.00 per lock |
| **Keys Not Returned/ New Lock** | $25.00 - $85.00 |
| **Ice Maker Tray** | $10.00 each |
| **Refrigerator Shelves/ Racks** | $35.00 - $60.00 |
| **Microwave Glass Tray** | $25.00 - $60.00 |
| **Disposal Damage** | $65.00 - $80.00 |
| **Dishwasher Rack** | $50.00 - $150.00 |
| **Dishwasher Silverware Basket** | $35.00 - $85.00 |
| **Blinds Replaced** | $12.00 - $75.00 |
| **Interior Door/ Door Jam** | $50.00 - $150.00 |
| **Door Hardware/ Knobs/ Latches** | $20.00 - $40.00 |
| **Fire Extinguisher** | $25.00 - $60.00 |
| **Mirrors/ Medicine Cabinets** | $40.00 - $200.00 |
| **Shower Rods/ Towel Bars** | $15.00 - $150.00 |
| **Ceiling Fans (if original is not available in apartment)** | $50.00 - $175.00 |
| **Light Fixtures (if original is not available in apartment)** | $15.00 - $175.00 |
| **Faucets/ Bath/ Tub** | $15.00 - $50.00 |
| **Toilet Tanks/ Lids** | $30.00 - $60.00 |
| **Toilet Seats** | $15.00 - $20.00 |
| **Parking Tag** | $20.00 each |
| **Counter Top Repairs** | $50.00 - $200.00 |
| **Drip Pan** | $5.00 each |
| **Broiler Pans** | $25.00 - $50.00 |
| **Oven Racks** | $20.00 - $60.00 |
| **Smoke Detectors** | $25.00 - $75.00 |
| **Gate Cards** | $10.00 each |
| **Gate Remotes/ Key Fobs** | $25.00 - $75.00 each |
| **Cabinet Repairs** | Based on labor and cost of repair |
| **Wall Damage/ Sheet Rock Repair** | Based on labor and cost of repair |
| **Full Painting** | Based on labor and cost of paint |
| **Pest Extermination; bedbugs/ fleas** | Based on labor and cost of pest extermination |
| **Carpet Replacement/ Pet Urine/ Floor Sealing** | Based on actual cost including labor and installation |

Blinds, carpet, vinyl, appliance, replacements will be based on actual cost including labor and installation.

| Carpet Wear & Tear is taken into consideration based upon the following ratio: | |
|---|---|
| 5 years old: 20% of cost | 2 years old: 80% of cost |
| 4 years old: 40% of cost | 1 year old or less: 100% of cost |
| 3 years old: 60% of cost | |

I have reviewed the Charge Rate Sheet and understand the potential costs associated with the turnover of my apartment if cleaning, repairs or replacements are necessary at the time of move-out. The above price list will be used in determining the standard costs to bring the apartment back to its original condition, with exception of wear and tear.

_____
*Resident*                                          *Date*



**LEASE ADDENDUM**
**LIABILITY INSURANCE REQUIRED OF RESIDENT**



**1. APARTMENT DESCRIPTION.**
Apt. No. ___**11-101**___, __**18201 E.**__
__**Cottonwood Dr.**__
_____ *(street address)* in
_____**Parker**_____
*(city)*, Colorado, _____**80138**_____
*(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **August 8, 2022**
Owner's name: **Montane**
_____
_____
_____
_____

Residents *(list all Residents)*:
**Kimberly Segura, Sofia Segura**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ACKNOWLEDGMENT CONCERNING INSURANCE OR DAMAGE WAIVER.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests. You understand that paragraph 8 of the Lease Contract requires you to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $__**100000.00**___ per occurrence. You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods a policy of personal liability insurance satisfying the requirements listed below, at your sole expense.

**4. REQUIRED POLICY.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third parties (including damage to our property), in a minimum policy coverage amount of

$__**100000.00**___, from a carrier with an AM Best rating of A-VII or better, licensed to do business in Colorado. The carrier is required to provide notice to us within 30 days of any cancellation, non-renewal, or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

**5. We may provide you with information of an insurance program that we make available to residents, which provides you with an opportunity to buy renter's insurance from a preferred company. However, you are free to contract for the required insurance with a provider of your choosing.**

**6. SUBROGATION WAIVED.** Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.

**7. YOUR INSURANCE COVERAGE.** You have purchased the required personal liability insurance from the insurance company of your choosing listed below that is licensed to do business in this state, and have provided us with written proof of this insurance prior to the execution and commencement of the Lease Contract. You will provide additional proof of insurance in the future at our request.

Insurance Company: _____

**8. DEFAULT.** Any default under the terms of this Addendum shall be deemed an immediate, material and incurable default under the terms of the Lease Contract, and we shall be entitled to exercise all rights and remedies under the law.

**9. MISCELLANEOUS.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

**10. SPECIAL PROVISIONS.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**I have read, understand and agree to comply with the preceding provisions.**

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs here)*

_____

**Date of Lease Contract**

**August 8, 2022**

© 2018, National Apartment Association, Inc.- 6/2018, Colorado
Document digitally signed using RENTCafe eSignature services. Document ID: 15944828



The following information states that the identified document has been signed electronically by the parties detailed below:

| Signee Details | Role | Signature | Initials | Date Signed |
|---|---|---|---|---|
| Kimberly Segura<br>Email ID: kmphotography210@gmail.com | Resident | | | 08/08/2022 |
| Sofia Segura<br>Email ID: segura1168@gmail.com | Guarantor | | | 08/08/2022 |
| Kaitlyn Oelrich | Manager | | | 08/08/2022 |

## Document Information

Document Reference Number: 15944828

Document Pages: 55                Signatures: 3                    Status: Completed
                                  Initials: 3

Document Name: Apartment Lease Form, Lease Contract Buy-Out Agreement, All-In-One Utility Addendum, Colorado Gas & Electric Submetering Addendum, Pest Control Addendum, Parking Addendum, Enclosed Garage Addendum, Remote Control, Card or Code Access Gate Addendum, Community Policies, Rules, & Regulations, Satellite Dish or Antenna Addendum, Photo, Video, and Statement Release Addendum, Intrusion Alarm Addendum, Smoke and Carbon Monoxide Detector Addendum, Bed Bug Addendum, Mold Information and Prevention Addendum, No-Smoking Addendum, Crime/Drug Free Housing Addendum, Addendum Regarding Recreational and Medical Marijuana Use and Landlord's Commitment to Drug Free Housing, Short-Term Subletting or Rental Prohibited, Inventory and Condition Form, Renter's or Liability Insurance Addendum, Valet Trash Service Addendum, Electronic Payments Addendum, Care of Stainless Steel Appliances, Smart Apartment Amenity Addendum, Standard Cleaning and Repair Charges

| Signature Summary | Signature | Initials | Timestamp | Signing Status |
|---|---|---|---|---|
| Kimberly Segura | | | 08/08/2022 01:46:03 PM EST | Completed |
| Document Started:<br>Email Address: | 08/08/2022 01:45:01 PM EST<br>kmphotography210@gmail.com | | | |
| Sofia Segura | | | 08/08/2022 06:37:42 PM EST | Completed |
| Document Started:<br>Email Address: | 08/08/2022 06:37:21 PM EST<br>segura1168@gmail.com | | | |
| Kaitlyn Oelrich | | | 08/08/2022 06:40:30 PM EST | Completed |
| Document Started:<br>Email Address: | 08/08/2022 06:40:21 PM EST<br>pm.montane@avenue5apt.com | | | |

| Signature Details | Page | Signature/Initials | Signing Status | Tracking Details |
|---|---|---|---|---|
| Kimberly Segura | 55 | | Completed | IP Address: 71.211.88.230<br>Timestamp: 08/08/2022 01:46:00 PM EST<br>User Agent: Safari on iPhone |
| Kimberly Segura | 55 | | Completed | IP Address: 71.211.88.230<br>Timestamp: 08/08/2022 01:45:57 PM EST<br>User Agent: Safari on iPhone |
| Sofia Segura | 55 | | Completed | IP Address: 172.58.63.165<br>Timestamp: 08/08/2022 06:37:46 PM EST<br>User Agent: Safari on iPhone |
| Sofia Segura | 55 | | Completed | IP Address: 172.58.63.165<br>Timestamp: 08/08/2022 06:37:45 PM EST<br>User Agent: Safari on iPhone |
| Kaitlyn Oelrich | 55 | | Completed | IP Address: 73.153.82.112<br>Timestamp: 08/08/2022 06:40:27 PM EST<br>User Agent: Chrome on Windows |
| Kaitlyn Oelrich | 55 | | Completed | IP Address: 73.153.82.112<br>Timestamp: 08/08/2022 06:40:27 PM EST<br>User Agent: Chrome on Windows |

THIRTY-DAY DEMAND FOR RENT OR POSSESSION

**Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction or call a housing counselor at 800-569-4287.**

DATE FILED: April 27, 2024 10:00 AM
FILING ID: 28C67C8DC6CE6
CASE NUMBER: 2024CV30375

To Kimberely Segura

, and any and all other occupants of the premises described below. You occupy the Premises which are known as  (Street Address)

18201 E. Cottonwood Drive          Apartment #: 11-101          Detached Garage #: _____

in the City of Parker          Zip Code of 80138          County of Douglas          ,

State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord,

demands that you shall within **THIRTY** Days after this demand is served upon you, *either pay to the undersigned* the

total due (listed below) OR *move out and surrender possession of the premises.*

The monthly rent for the premises is $ 1,717.00

**Current Itemization:**     Rent Due Now     $ 1,940.34

Other Describe Late Fees          $ 221.70

*LATE FEES DUE: Per your lease, an initial late fee in the amount of $ 171.70     is owed as of the 4th     day of the

month, in addition, late fees of $ 10.00     per day shall accrue thereafter per your lease until all amounts due are paid.

## TOTAL DUE AS OF THE DATE OF THIS DEMAND   $ 2,162.04

### YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS

The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____          08/10/2021
Landlord / Agent for Landlord                     Date Prepared and Signed

Montane
_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

***THIS DEMAND WAS SERVED ON*** (DATE SERVED) 8/10/20          ,

☐ By handing it to a person identified to me as _____ (Resident Full Name)

☑ I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____          Date signed: 8/10/20

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs 719.227.1181**
Rev 4/30/21

THIRTY-DAY DEMAND FOR RENT OR POSSESSION

**Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under Federal law. Learn the steps you should take now: visit www.cfpb.gov/eviction or call a housing counselor at 800-569-4287**

To Kimberely Segura _____, and any and all other

occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

18201 E. Cottonwood Drive _____ Apartment #: 11-101 _____ Detached Garage #: _____

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____,

State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord,

demands **that you shall within THIRTY Days after this demand is served upon you, _either pay to the undersigned_** the

total due (listed below) OR _move out and surrender possession of the premises._

The monthly rent for the premises is $ 1,717.00 _____

                         _Current Itemization:_    Rent Due Now  $ 1,940.34 _____

         Other Describe Late Fees _____ $ 221.70 _____

*LATE FEES DUE: Per your lease, an initial late fee in the amount of $ 171.70 _____ is owed as of the 4th ___ day of the

month, in addition, late fees of $ 10.00 ___ per day shall accrue thereafter per your lease until all amounts due are paid.

**TOTAL DUE AS OF THE DATE OF THIS DEMAND**   $ 2,162.04 _____

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**

The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____        08/10/2021 _____
Landlord / Agent for Landlord                   Date Prepared and Signed

Montane
_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) 8/10/20 _____,

☐  By handing it to a person identified to me as _____(Resident Full Name)

☑  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____ Date signed: 8/10/20 _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs 719.227.1181**
Rev 4/30/21

# DEMAND FOR RENT OR POSSESSION

To Kimberly Segura _____, and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

18201 E Cottonwood Dr _____ Apartment #: 11-101 _____ Detached Garage #: _____

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____, State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, *either pay to the undersigned* the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR *move out and surrender possession of the premises.*

The base monthly rent for the premises is $ 1717.00

**(A)** *Current Itemization:*  Base Rent Due Now  $ 1717.00

**(B)** Other Fees/Charges (Describe) Utilities, parking, pet rent   $ 163.86
   *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**   $ 1880.86

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ 85.85 ____ is owed as of the 9th ___ day of the month.
                                                    **(D1)**                        **(D2)**          (A+B)

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 288.00 ___ are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)**  *Total Due if paid on/after LATE FEES incurred as set forth above   $ 1966.71
                                                                                        **(C+D1)**

**(G)**  **Total Due if paid after Attorneys' Fees &
          Court Costs are incurred as set forth above       $ 2254.71
                                                                        **(E+F)**

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                     11/08/2021
Landlord / Agent for Landlord                         Date Prepared and Signed

Montane
_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

***THIS DEMAND WAS SERVED ON*** (DATE SERVED) 11/8/21 _____.

☐  By handing it to a person identified to me as _____ (Tenant's Full Name)

☑  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs 719.227.1181
Rev 9/28/21

# DEMAND FOR RENT OR POSSESSION

To Kimberly Segura _____, and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

18201 E Cottonwood Dr _____ Apartment #: 11-101 _____ Detached Garage #: _____

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____,
State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you,** *either pay to the undersigned* the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE **OR** *move out and surrender possession of the premises.*

The base monthly rent for the premises is $ 1717.00 _____
    **(A)** *Current Itemization:*  Base Rent Due Now  $ 1717.00 _____

**(B)** Other Fees/Charges (Describe) Utilities, parking, pet rent _____  $ 163.86 _____
    *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**   $ 1880.86 _____
                                                              (A+B)

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ 85.85 ____ is owed as of the 9th __ day of the month.
                                            (D1)                              (D2)

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 288.00 ___ are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)**   *Total Due if paid on/after LATE FEES incurred as set forth above   $ 1966.71 _____
                                                                                    (C+D1)

**(G)**   **Total Due if paid after Attorneys' Fees &
          Court Costs are incurred as set forth above                        $ 2254.71 _____
                                                                                    (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____               11/08/2021 _____
Landlord / Agent for Landlord                Date Prepared and Signed

Montane _____
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

***THIS DEMAND WAS SERVED ON*** (DATE SERVED) 11/8/21 _____.

☐  By handing it to a person identified to me as _____ (Tenant's Full Name)

☑  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs 719.227.1181**
Rev 9/28/21

# DEMAND FOR RENT OR POSSESSION

DEC 17 2021

To **Kimberely Segura**

occupants of the premises described below.  You occupy the Premises which are known as  (Street Address) _____, and any and all other

**18201 East Cottonwood Drive** _____ Apartment #: **11-101** _____ Detached Garage #: _____

in the City of **Parker** _____ Zip Code of **80138** _____ County of **Douglas** _____,
State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord,
demands that you shall within **Ten Days** after this demand is served upon you, _either pay to the undersigned_ the total due
at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and
surrender possession of the premises._

The base monthly rent for the premises is $ **1,717.00**

        (A) _Current Itemization:_  Base Rent Due Now  $ **1,717.00** _____

(B) Other Fees/Charges (Describe) **Utilities** _____ $ **38.00** _____
    *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**   $ **1755.00**

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ **87.75** ___ is owed as of the **9th** day of the month.   (A+B)
                          (D1)              (D2)

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ **288.00**
are owed as of the date the Landlord files an eviction lawsuit with the court.

(F) *Total Due if paid on/after LATE FEES incurred as set forth above   $ **1842.75**
                                                                      (C+D1)

(G) **Total Due if paid after Attorneys' Fees &
    Court Costs are incurred as set forth above   $ **2130.75**
                                                                 (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and
conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is
without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of
which are waived by virtue of this demand.

_____   **12/06/2021**
Landlord / Agent for Landlord   Date Prepared and Signed

**Montane**
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

_THIS DEMAND WAS SERVED ON_ (DATE SERVED) **12/06/2021** _____.

☐ By handing it to a person identified to me as _____ (Tenant's Full Name)

☑ I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or
Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

COURTESY OF TSCHETTER SULZER P.C.
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs 719.227.1181
Rev 9/28/21
469611

# DEMAND FOR RENT OR POSSESSION

To **Kimberely Segura**_____, and any and all other
occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

**18201 East Cottonwood Drive**_____ Apartment #: **11-101**_____ Detached Garage #: _____

in the City of **Parker**_____ Zip Code of **80138**_____ County of **Douglas**_____,
State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord,
demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due
at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and
surrender possession of the premises._**

The base monthly rent for the premises is $ **1,717.00**

(A) **_Current Itemization:_** Base Rent Due Now  $ **1,717.00**_____

(B) Other Fees/Charges (Describe) **Utilities**_____  $ **38.00**_____
    *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**  $ **1755.00**_____
                                                                            **(A+B)**

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ **87.75**____ is owed as of the **9th**___ day of the month.
                                                               **(D1)**                                         **(D2)**

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ **288.00**____
    are owed as of the date the Landlord files an eviction lawsuit with the court.

(F)  *Total Due if paid on/after LATE FEES incurred as set forth above   $ **1842.75**_____
                                                                                        **(C+D1)**

(G)  **Total Due if paid after Attorneys' Fees &
     Court Costs are incurred as set forth above            $ **2130.75**_____
                                                                          **(E+F)**

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and
conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is
without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of
which are waived by virtue of this demand.

_____        **12/06/2021**_____
Landlord / Agent for Landlord                                      Date Prepared and Signed

**Montane**_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) **12/06/2021**_____.

[ ]   By handing it to a person identified to me as _____(Tenant's Full Name)

[✔]   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or
      Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name_____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs 719.227.1181**
Rev 9/28/21

# DEMAND FOR RENT OR POSSESSION

DEC 17 2021

To Kimberely Segura _____, and any and all other occupants of the premises described below. You occupy the Premises which are known as  (Street Address)

18201 East Cottonwood Drive _____ Apartment #: 11-101 _____ Detached Garage #: _____

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____,
State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, *either pay to the undersigned* the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR *move out and surrender possession of the premises.*

The base monthly rent for the premises is $ 1,717.00

(A) *Current Itemization:* Base Rent Due Now  $ 1,717.00

(B) Other Fees/Charges (Describe) Utilities                    $ 38.00
  *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND** $ 1755.00

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ 87.75 ___(D1)___ is owed as of the 9th day of the month. (A+B)

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 288.00 ___(D2)___ are owed as of the date the Landlord files an eviction lawsuit with the court.

(F)  *Total Due if paid on/after LATE FEES incurred as set forth above    $ 1842.75
                                                                              (C+D1)

(G)  **Total Due if paid after Attorneys' Fees &
     Court Costs are incurred as set forth above          $ 2130.75
                                                              (E+F)

YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS
The demand is made pursuant to § 13-40-104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                    12/06/2021
Landlord / Agent for Landlord                  Date Prepared and Signed

Montane
_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**THIS DEMAND WAS SERVED ON** (DATE SERVED) 12/06/2021 _____.

[ ]  By handing it to a person identified to me as _____(Tenant's Full Name)

[✓]  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

COURTESY OF TSCHETTER SULZER P.C.
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs 719.227.1181
Rev 9/28/21
469611

# DEMAND FOR RENT OR POSSESSION

To Kimberely Segura _____, and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

18201 E. Cottonwood Drive _____ Apartment #: 11-101 ___ Detached Garage #: 11-101

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____,
State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_ the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and surrender possession of the premises._

(1) The base monthly rent for the premises is: $ 1,717.00

**Current Itemization:**

(A) Total Base Rent Due Now: $ 1,717.00

(B) Other Fees/Charges (Describe) Utilities, garage $ 469.35
  *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND** $ 2186.35 _____ (A+B)

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ 109.31 _____ is owed as of the 9th _____ day of the month.
  (D1)    (D2)

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348.00 _____ are owed as of the date the Landlord files an eviction lawsuit with the court.

(F)  *Total Due if paid on/after LATE FEES incurred as set forth above $ 2,404.97 _____ (C+D1)

(G) **Total Due if paid after Attorneys' Fees &
  Court Costs are incurred as set forth above $ 2,752.97 _____ (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____
Landlord / Agent for Landlord

02/04/2022
Date Prepared and Signed

Montane
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

_THIS DEMAND WAS SERVED ON_ (DATE SERVED) 02/04/2022 _____.

[ ] By handing it to a person identified to me as _____ (Tenant's Full Name)

[✓] I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs
719.227.1181
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To **Kimberly Segura** _____, and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

**18201 E. Cottonwood Drive** _____ Apartment #: **11-101** ___ Detached Garage #: **11-101** ___

in the City of **Parker** _____ Zip Code of $ **80138** _____ County of **Douglas** _____,
State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE **OR _move out and surrender possession of the premises._**

**(1)** The base monthly rent for the premises is: $ 1,717.00

**Current Itemization:**

**(A)** Total Base Rent Due Now: $ 1,717.00

**(B)** Other Fees/Charges (Describe) **Utilities, Parking,** $ 315.28
     *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND** $ 2032.28
                                                        **(A+B)**

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ 101.61 is owed as of the 9th day of the month.
                                                 **(D1)**                      **(D2)**

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348.00 are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)  *Total Due if paid on/after LATE FEES incurred as set forth above** $ 2,133.89
                                                                              **(C+D1)**

**(G)  **Total Due if paid after Attorneys' Fees &**
     **Court Costs are incurred as set forth above** $ 2,481.89
                                                           **(E+F)**

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                    03/07/2022
Landlord / Agent for Landlord                        Date Prepared and Signed

**Montane** _____
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) 03/07/2022 _____.

[ ]  By handing it to a person identified to me as _____(Tenant's Full Name)

[✓]  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

3/18/22, 5:37 PM                                   image004.jpg

Doug

# DEMAND FOR RENT OR POSSESSION

MAR 1 8 2022

To Kimberly Segura _____, and any and all other occupants of the premises described below. You occupy the Premises which are known as (Street Address)

18201 E. Cottonwood Drive _____ Apartment #: 11-101 ___ Detached Garage #: 11-101 ____

in the City of Parker _____ Zip Code of 80138 ____ County of Douglas _____
State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, *either pay to the undersigned* the total due at the time you pay (listed below) plus any additional **LATE FEES DUE** and ***ATTORNEYS' FEES DUE OR *move out and surrender possession of the premises.*

(1) The base monthly rent for the premises is:                                     $ 1,717.00

Current Itemization:

(A) Total Base Rent Due Now:                                                       $ 1,717.00

(B) Other Fees/Charges (Describe) Utilities, Parking,                              $ 315.28
     *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**                                    $ 2032.28
                                                                                        (A+B)
(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ 101.61  is owed as of the 9th day of the month.
                                                                 (D1)                    (D2)
(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348.00
    are owed as of the date the Landlord files an eviction lawsuit with the court.

(F)   *Total Due if paid on/after LATE FEES incurred as set forth above           $ 2,133.89
                                                                                        (C+D1)
(G)   **Total Due if paid after Attorneys' Fees &
      Court Costs are incurred as set forth above                                 $ 2,481.89
                                                                                        (E+F)
YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                                     03/07/2022
Landlord / Agent for Landlord                               Date Prepared and Signed

Montane
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

*THIS DEMAND WAS SERVED ON* (DATE SERVED) 03/07/2022 _____

☐   By handing it to a person identified to me as _____ (Tenant's Full Name)

☑   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or
    Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

COURTESY OF TSCHETTER SULZER P.C.
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs
719.227.1181
Rev 12/6/21

Ok per MNT

em Mary
acct
84543WC

78138

https://mail.google.com/mail/u/0/?tab=wm&ph=1#inbox/FMfcgzGmvTwMtQxKQzjDNqkZvmSkXwxD?projector=1

1/2

# DEMAND FOR RENT OR POSSESSION

 Paid

To Kimberly Segura _____, and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

18201 E. Cottonwood Drive _____ Apartment #: 11-101 ____ Detached Garage #: 11-101

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____
State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, *either pay to the undersigned* the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR *move out and surrender possession of the premises.*

(1) The base monthly rent for the premises is:                                   $ 1,717.00

**Current Itemization:**

(A)  Total Base Rent Due Now:                                                $ 1,717.00

(B)  Other Fees/Charges (Describe) Utilities, Parking,                       $ 315.28
       *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**   $ 2032.28
                                                                                  **(A+B)**

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ 101.61 is owed as of the 9th day of the month.
                                                       **(D1)**              **(D2)**

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348.00 are owed as of the date the Landlord files an eviction lawsuit with the court.

(F)  **\*Total Due if paid on/after LATE FEES incurred as set forth above**    $ 2,133.89
                                                                                  **(C+D1)**

(G)  **\*\*Total Due if paid after Attorneys' Fees &
     Court Costs are incurred as set forth above**                             $ 2,481.89
                                                                                  **(E+F)**

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                          03/07/2022
Landlord / Agent for Landlord                        Date Prepared and Signed

Montane
_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) 03/07/2022 _____.

☐   By handing it to a person identified to me as _____ (Tenant's Full Name)

☑   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To Kimberly Segura _____, and any and all other occupants of the premises described below. You occupy the Premises which are known as (Street Address)

18201 E. Cottonwood Drive _____ Apartment #: 11-101 _____ Detached Garage #: 11-101

in the City of Parker _____ Zip Code of 80238 _____ County of Douglas _____,
State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_ the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and surrender possession of the premises._

(1) The base monthly rent for the premises is:                                   $1717.00

**Current Itemization:**

(A) Total Base Rent Due Now:                                                     $1717.00

(B) Other Fees/Charges (Describe) utilities, parking                             $304.60
    *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**                                  $2021.60
                                                                                      (A+B)

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ 101.08 is owed as of the 9th day of the month.
                                                              (D1)                (D2)

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348.00 are owed as of the date the Landlord files an eviction lawsuit with the court.

(F)  *Total Due if paid on/after LATE FEES incurred as set forth above          $2122.68
                                                                                      (C+D1)

(G)  **Total Due if paid after Attorneys' Fees &
     Court Costs are incurred as set forth above                                $2470.68
                                                                                      (E+F)

YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS
The demand is made pursuant to § 13-40-104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                        04/06/2022
Landlord / Agent for Landlord                  Date Prepared and Signed

Montane
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

_THIS DEMAND WAS SERVED ON_ (DATE SERVED) 04/06/2022 _____.

[ ]   By handing it to a person identified to me as _____ (Tenant's Full Name)

[✓]   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
479390  **Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To **Kimberly Segura** _____, and any and all other occupants of the premises described below. You occupy the Premises which are known as  (Street Address)

**18201 E. Cottonwood Drive** _____ Apartment #: **11-101** ____ Detached Garage #: **11-101**

in the City of **Parker** _____ Zip Code of **80238** ____ County of **Douglas** _____,

State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, *either pay to the undersigned* the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR *move out and surrender possession of the premises.*

**(1)** The base monthly rent for the premises is:  $ 1717.00

**Current Itemization:**

(A) Total Base Rent Due Now:  $ 1717.00

(B) Other Fees/Charges (Describe) utilities, parking  $ 304.60
  *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**  $ 2021.60  (A+B)

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ 101.08 (D1) is owed as of the 9th (D2) day of the month.

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348.00 are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)** *Total Due if paid on/after LATE FEES incurred as set forth above  $ 2122.68  (C+D1)

**(G)** **Total Due if paid after Attorneys' Fees & Court Costs are incurred as set forth above  $ 2470.68  (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13-40-104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____  04/06/2022
Landlord / Agent for Landlord  Date Prepared and Signed

**Montane** _____
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

***THIS DEMAND WAS SERVED ON*** (DATE SERVED) 04/06/2022 _____

[ ]  By handing it to a person identified to me as _____ (Tenant's Full Name)

[✓]  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs
719.227.1181
Rev 12/6/21

Doug

# DEMAND FOR RENT OR POSSESSION

To **Kimberly Segura** _____, and any and all other
occupants of the premises described below. You occupy the Premises which are known as (Street Address)

**18201 E. Cottonwood Dr.** _____ Apartment #: **11-101** _____ Detached Garage #: **N/A** _____

in the City of **Parker** _____ Zip Code of **80138** _____ County of **Douglas** _____

State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within **Ten Days** after this demand is served upon you, _either pay to the undersigned_ the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out_ and _surrender possession of the premises._

(1) The base monthly rent for the premises is:                                    $ 1892

Current Itemization:

(A) Total Base Rent Due Now:                                                       $ 2091.17

(B) Other Fees/Charges (Describe) **Utilities & fees**                            $ 199.17
   *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**    $ 2091.17
                                                                                        (A+B)

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ **94.60** is owed as of the **8** day of the month.
                                                                       (D1)                        (D2)

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ **348**
   are owed as of the date the Landlord files an eviction lawsuit with the court.

(F) *Total Due if paid on/after LATE FEES incurred as set forth above        $ 2185.77
                                                                                           (C+D1)

(G) **Total Due if paid after Attorneys' Fees &
    Court Costs are incurred as set forth above                                  $ 2533.77
                                                                                           (E+F)

YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS
The demand is made pursuant to § 13-40-104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                    06/08/2022
Landlord / Agent for Landlord                         Date Prepared and Signed

**Montana Apartments**
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address.

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) **06/08/2022**

☐   By handing it to a person identified to me as _____ (Tenant's Full Name)

☑   I have made diligent efforts to personally serve this Demand. I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

COURTESY OF TSCHETTER SULZER P.C.
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs
719.227.1181
Rev 12/6/21

485426

em Kaitlyn
acct
84543 wc

# DEMAND FOR RENT OR POSSESSION

To Kimberly Segura, Sofia Segura _____, and any and all other occupants of the premises described below. You occupy the Premises which are known as (Street Address)

18215 E. Cottonwood Drive _____ Apartment #: 11-101 ____ Detached Garage #: _____

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____,
State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE **OR _move out and surrender possession of the premises._**

**(1)** The base monthly rent for the premises is:                                $ 1,869.42

**Current Itemization:**

**(A)** Total Base Rent Due Now:                                                 $ 1,869.42

**(B)** Other Fees/Charges (Describe) Utilities, Pest Control                     $ 376.79
   *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**                                   $ 2,246.21
                                                                                      (A+B)

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ 93.47 ___ is owed as of the 9th ___ day of the month.
                                                             (D1)                     (D2)

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 388 ___ are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)   *Total Due if paid on/after LATE FEES incurred as set forth above**       $ 2,339.68
                                                                                      (C+D1)

**(G)   **Total Due if paid after Attorneys' Fees &**
**       Court Costs are incurred as set forth above**                            $ 2,727.68
                                                                                      (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13-40-104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                          08/05/2022
Landlord / Agent for Landlord                            Date Prepared and Signed

Montane
_____
Apartment Community Name
_____
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

_THIS DEMAND WAS SERVED ON_ (DATE SERVED) 08/05/2022 _____.

[ ]  By handing it to a person identified to me as _____(Tenant's Full Name)

[✓]  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To Kimberly Segura, Sofia Segura _____, and any and all other occupants of the premises described below. You occupy the Premises which are known as (Street Address)

18215 E. Cottonwood Drive _____ Apartment #: 11-101 ____ Detached Garage #: (11-101)

in the City of Parker _____ Zip Code of 80138 ____ County of Douglas _____,
State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and surrender possession of the premises._**

**(1)** The base monthly rent for the premises is:                                            $ 1,906

**Current Itemization:**

**(A)** Total Base Rent Due Now:                                                             $ 1,906

**(B)** Other Fees/Charges (Describe) Utilities, Pest Control, Garage                        $ 401.32
        *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**                                             $ 2,307.32
                                                                                                    (A+B)

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ 95.30 ____ is owed as of the 9th ____ day of the month.
                                                        (D1)                      (D2)

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348 ____
are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)   *Total Due if paid on/after LATE FEES incurred as set forth above**                  $ 2,402.62
                                                                                                    (C+D1)

**(G)   **Total Due if paid after Attorneys' Fees &**
        **Court Costs are incurred as set forth above**                                     $ 2,750.62
                                                                                                    (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13-40-104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

09/06/2022
_____              _____
Landlord / Agent for Landlord                 Date Prepared and Signed

Montane
_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) 09/06/2022 _____,

☐   By handing it to a person identified to me as _____ (Tenant's Full Name)

☑   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To **Kimberly Sequra, Sofia Segura** _____, and any and all other occupants of the premises described below. You occupy the Premises which are known as (Street Address)

**18201 E. Cottonwood Drive** _____ Apartment #: **11-101** _____ Detached Garage #: **(11-101)**

in the City of **Parker** _____ Zip Code of **80138** _____ County of **Douglas** ,
State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and surrender possession of the premises._**

**(1)** The base monthly rent for the premises is: $ **1,906**

**Current Itemization:**

**(A)** Total Base Rent Due Now: $ **1,906**

**(B)** Other Fees/Charges (Describe) **Utilities, Garage** $ **352.90**
   *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND** $ **2,258.90**
   (A+B)

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ **95.30** is owed as of the **9th** day of the month.
   (D1)                                                    (D2)

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ **348.00**
   are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)** *Total Due if paid on/after LATE FEES incurred as set forth above $ **2,354.20**
   (C+D1)

**(G)** **Total Due if paid after Attorneys' Fees &
   Court Costs are incurred as set forth above $ **2,702.20**
   (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____         **10/07/2022**
Landlord / Agent for Landlord              Date Prepared and Signed

**Montane**
_____
Apartment Community Name

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) **10/07/2022** .

[ ]   By handing it to a person identified to me as _____ (Tenant's Full Name)

[✓]   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To Kimberly Segura, Sofia Segura _____, and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

18201 E. Cottonwood Drive _____ Apartment #: 11-101 _____ Detached Garage #: (11-101) ____

in the City of Parker _____ Zip Code of 80138 _____ County of Douglas _____,

State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and surrender possession of the premises._**

**(1)** The base monthly rent for the premises is:                                          $ 1,906 _____

**Current Itemization:**

**(A)** Total Base Rent Due Now:                                                            $ 3,812 _____

**(B)** Other Fees/Charges (Describe) Utilities, Garage, Late Fee, NSF Fee                  $ 980.82 _____
     *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**                                             $ 4,792.82 _____
                                                                                                    (A+B)

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ 95.30 is owed as of the 9th day of the month.
                                                       (D1)                              (D2)

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348.00 _____
_are owed as of the date the Landlord files an eviction lawsuit with the court._

**(F)   *Total Due if paid on/after LATE FEES incurred as set forth above**                 $ 4,888.12 _____
                                                                                                    (C+D1)

**(G)   **Total Due if paid after Attorneys' Fees &**
**Court Costs are incurred as set forth above**                                            $ 5,236.12 _____
                                                                                                    (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13-40-104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____               10/22/2022 _____
Landlord / Agent for Landlord                       Date Prepared and Signed

Montane
_____
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) 10/22/2022 _____.

☐   By handing it to a person identified to me as _____ (Tenant's Full Name)

☑   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

Eviction Filed: 11/3/2022
— RW —

Doug
NOV 0 3 2022

# DEMAND FOR RENT OR POSSESSION

To **Kimberly Segura, Sofia Segura**_____, and any and all other occupants of the premises described below. You occupy the Premises which are known as (Street Address)

**18201 E. Cottonwood Drive**_____ Apartment #: **11-101**   Detached Garage #: **(11-101)**

in the City of **Parker**_____ Zip Code of **80138**_____ County of **Douglas**.
State of Colorado, as tenant(s). You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands that you shall within Ten Days after this demand is served upon you, *either pay to the undersigned* the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR *move out and surrender possession of the premises.*

(1) The base monthly rent for the premises is:                                    $ **1,906**

**Current Itemization:**

(A) Total Base Rent Due Now:                                                     $ **3,812**

(B) Other Fees/Charges (Describe) **Utilities, Garage, Late Fee, NSF Fee**        $ **980.82**
        *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**   $ **4,792.82**
                                                                                              **(A+B)**

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $**95.30** is owed as of the **9th** day of the month.
                                                                 **(D1)**                                    **(D2)**

(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ **348.00** are owed as of the date the Landlord files an eviction lawsuit with the court.

(F) *Total Due if paid on/after LATE FEES incurred as set forth above    $ **4,888.12**
                                                                                              **(C+D1)**

(G) **Total Due if paid after Attorneys' Fees &
     Court Costs are incurred as set forth above    $ **5,236.12**
                                                                                              **(E+F)**

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease. You are further advised that the Landlord does not elect to terminate the Lease. This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____                          **10/22/2022**
Landlord / Agent for Landlord                           Date Prepared and Signed

**Montane**_____
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address.

***THIS DEMAND WAS SERVED ON*** (DATE SERVED) **10/22/2022**

☐   By handing it to a person identified to me as_____(Tenant's Full Name)

☑   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name_____

COURTESY OF TSCHETTER SULZER P.C.
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs
719.227.1181
498402
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To **Kimberly Segura** _____, and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

**18201 E. Cottonwood Drive** _____ Apartment #: **11-101** _____ Detached Garage #: **(#11-101)** _____

in the City of **Parker** _____ Zip Code of **80138** _____ County of **Douglas** _____,

State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and surrender possession of the premises._**

**(1)** The base monthly rent for the premises is:                    $ **1906** _____

**Current Itemization:**

**(A)** Total Base Rent Due Now:                        $ **1906** _____

**(B)** Other Fees/Charges (Describe) **Utilities, Garage** _____ $ **405.92** _____
       *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**    $ **2311.91** _____
                                                            **(A+B)**

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ **95.30** is owed as of the **9th** day of the month.
                                           **(D1)**                  **(D2)**

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ **348** _____
   are owed as of the date the Landlord files an eviction lawsuit with the court.

**(F)**   *Total Due if paid on/after LATE FEES incurred as set forth above    $ **2407.21** _____
                                                             **(C+D1)**

**(G)**   **Total Due if paid after Attorneys' Fees &**
      **Court Costs are incurred as set forth above**      $ **2755.21** _____
                                                             **(E+F)**

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____      **02/06/2023** _____
Landlord / Agent for Landlord                                  Date Prepared and Signed

**Montane** _____
Apartment Community Name
_____

RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) **02/06/2023** _____.

☐   By handing it to a person identified to me as _____ (Tenant's Full Name)

☑   I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

To **Kimberly Segura**                                                              , and any and all other occupants of the premises described below.  You occupy the Premises which are known as  (Street Address)

**18201 E. Cottonwood Drive**         Apartment #: **11-101**     Detached Garage #: **(11-101)**

in the City of **Parker**         Zip Code of **80138**     County of **Douglas**                          , State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord, demands **that you shall within Ten Days after this demand is served upon you, _either pay to the undersigned_** the total due at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR _move out and surrender possession of the premises._**

**(1)** The base monthly rent for the premises is:                                $ **1,906**

**Current Itemization:**

**(A)** Total Base Rent Due Now:                                          $ **3,812**

**(B)** Other Fees/Charges (Describe) **Utilities, legal fee, late fee's, Garage**    $ **1,395.81**
      *Note: Current month's late fees go at Line D1

**(C) TOTAL DUE AS OF THE DATE OF THIS DEMAND**             $ **5,207.81**
                                                                        **(A+B)**

**(D)** *LATE FEES DUE: Per your lease, a late fee in the amount of $ _____ is owed as of the **9th** day of the month.
                                    **(D1)**                          **(D2)**

**(E)** **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ **348** _are owed as of the date the Landlord files an eviction lawsuit with the court._

**(F)**  *Total Due if paid on/after LATE FEES incurred as set forth above      $ **5,207.81**
                                                                        **(C+D1)**

**(G)** **Total Due if paid after Attorneys' Fees &
      Court Costs are incurred as set forth above           $ **5,555.81**
                                                                        **(E+F)**

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of which are waived by virtue of this demand.

_____        **03/29/2023**
Landlord / Agent for Landlord                    Date Prepared and Signed

**Montane**
Apartment Community Name
RETURN OF SERVICE :

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**_THIS DEMAND WAS SERVED ON_** (DATE SERVED) **03/29/2023**                          .

☐    By handing it to a person identified to me as _____(Tenant's Full Name)

☑    I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____

**COURTESY OF TSCHETTER SULZER P.C.**
**Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs**
**719.227.1181**
Rev 12/6/21

# DEMAND FOR RENT OR POSSESSION

Doug
APR 1 1 2023

To Kimberly Segura _____ , and any and all other
occupants of the premises described below.  You occupy the Premises which are known as (Street Address)

18201 E. Cottonwood Drive _____ Apartment #: 11-101 ____ Detached Garage #: (11-101)

in the City of Parker _____ Zip Code of 80138 ____ County of Douglas _____ ,
State of Colorado, as tenant(s).  You are hereby notified that the undersigned Landlord of the Premises, or Agent for Landlord,
demands that you shall within Ten Days after this demand is served upon you, *either pay to the undersigned* the total due
at the time you pay (listed below) plus any additional *LATE FEES DUE and **ATTORNEYS' FEES DUE OR *move out and
surrender possession of the premises.*

(1) The base monthly rent for the premises is:                                    $ 1,906

Current Itemization:

(A) Total Base Rent Due Now:                                                      $ 3,812

(B) Other Fees/Charges (Describe) Utilities, legal fee, late fee's, Garage        $ 1,395.81
   *Note: Current month's late fees go at Line D1

(C) **TOTAL DUE AS OF THE DATE OF THIS DEMAND**                                   $ 5,207.81
                                                                                  (A+B)

(D) *LATE FEES DUE: Per your lease, a late fee in the amount of $ _____ is owed as of the 9th day of the month.
                                                               (D1)              (D2)
(E) **ATTORNEYS' FEES DUE: Per the terms of your lease, attorneys' fees and court costs in the amount of $ 348
   are owed as of the date the Landlord files an eviction lawsuit with the court.

(F)  *Total Due if paid on/after LATE FEES incurred as set forth above           $ 5,207.81
                                                                                  (C+D1)

(G)  **Total Due if paid after Attorneys' Fees &
     Court Costs are incurred as set forth above                                 $ 5,555.81
                                                                                  (E+F)

**YOUR LEASE MAY REQUIRE THAT THIS PAYMENT BE MADE IN CERTIFIED FUNDS**
The demand is made pursuant to § 13–40–104(1)(d), C.R.S., as a result of your breach of the above described covenants and
conditions of the Lease.  You are further advised that the Landlord does not elect to terminate the Lease.  This demand is
without prejudice to the Landlord's rights and privileges under the Lease, and under the laws of the state of Colorado, none of
which are waived by virtue of this demand.

_____                    03/29/2023
Landlord / Agent for Landlord                        Date Prepared and Signed

Montane
_____
Apartment Community Name
RETURN OF SERVICE :
_____

I declare I served the foregoing Demand for Rent or Possession on the above listed Tenant(s) at the above listed address,

**THIS DEMAND WAS SERVED ON** (DATE SERVED) 03/29/2023 _____ .

☐  By handing it to a person identified to me as _____ (Tenant's Full Name)

☑  I have made diligent efforts to personally serve this Demand, I have made service of the foregoing Demand for Rent or
   Possession by posting a copy of it in a conspicuous place upon the premises described therein.

Sign Name _____              23C 3I5I5   cace #

516412

COURTESY OF TSCHETTER SULZER P.C.
Fax completed form to 303.766.1181 or 303.766.1819 or Colorado Springs
719.227.1181
Rev 12/6/21

CM Ruth
acct
84543ux