IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:24-cv-1577

KIMBERLY SEGURA, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

AVENUE5 RESIDENTIAL LLC, A DELAWARE LIMITED LIABILITY COMPANY,

Defendant.

## MOTION TO DISMISS

Defendant Avenue5 Residential LLC ("Defendant" or "Avenue5"), by and through its undersigned counsel, hereby submits this Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) Fed. R. Civ. P.

### CERTIFICATE OF CONFERRAL

Undersigned counsel certifies that they have conferred in good faith with Plaintiff's counsel. Plaintiff opposes the relief requested herein.

### I.      INTRODUCTION

Plaintiff's complaint challenges common fees in Colorado lease agreements, such as the "Valet trash," "Pest Control Fee," and "Territorial" fees. However, these claims lack merit for several reasons. Firstly, Plaintiff signed a Class Action Waiver Addendum, as such, she does not have standing to bring this lawsuit nor participate in another. The Complaint does not assert enough factual allegations to support claims of deceptive trade practices or fraud under the Colorado

1

Consumer Protection Act. There's also no solid proof of Avenue5 being unjustly enriched by the fees or of a breach of contract. It's important to note that Plaintiff lived at the property for over a year, signed a contract with full knowledge of its terms, and didn't raise concerns about the fees until three years after moving out. Additionally, the Complaint doesn't meet the requirements for Class Certification under Rule 23, lacking sufficient evidence of causation, damages, commonality, or typicality.

In light of these deficiencies, Plaintiff's Complaint should be dismissed for its failure to state a valid claim.

## II.     RELEVANT FACTUAL BACKGROUND

1. Between May 7, 2021 to August 31, 2022, Plaintiff leased Apartment 11-101 at East Cottonwood Drive Parker, Colorado 80138 ("The Property").

2. During the time that Plaintiff leased her unit at The Property, Avenue5 was the third- party management company for The Property.

3. Montane, a non-party, owned The Property during Plaintiff's lease.

4. Plaintiff's lease clearly listed specific terms and conditions governing her tenancy.

5. Notably, the lease included a Utility Addendum, an integral component of the lease, which served to explain the extent of the Plaintiff's obligations pertaining to utility services.

6. Page 2 of the lease contains a very visible table stating what Utilities that the lessor was responsible for paying. Lessor specifically marked the "Other" box and typed in "None."

> 7. **UTILITIES.** We'll pay for the following items, if checked:
> ☐ water  ☐ gas  ☐ electricity  ☐ master antenna
> ☐ wastewater  ☐ trash  ☐ cable TV
> ☒ other **None**
>
> You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the Lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

(See Ex. B to Complaint at p. 2).

7. Throughout the Lease, it is made clear that Plaintiff was responsible for the removal of trash or debris from her unit. Page 4 of the Lease states: "The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles and in compliance with all laws. (Ex. B to Complaint at p. 4).

8. The Utility Addendum also outlined the scope of Plaintiff's responsibilities concerning utility services, presenting a detailed breakdown of the utilities necessitating payment and the corresponding expense modalities. Of particular significance, the Addendum conspicuously listed the valet trash fee and the real estate property fee, thus leaving no ambiguity as to Plaintiff's obligations. (Ex. B to Complaint at p. 11).

> j) **Pest Control** service to your apartment will be paid by you either:
> ☐ directly to the utility service provider; or
> ☐ pest control bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
> ☒ If flat rate is selected, the current flat rate is $_____3.00_____ per month.
> ☐ 3rd party billing company if applicable _____
>
> k) **Valet Trash** service to your apartment and costs will be paid by you either:
> ☐ directly to the utility service provider; or
> ☐ bills will be billed by the service provider to us and then charged to you based on the following formula: _____
> ☒ If flat rate is selected, the current flat rate is $_____25.00_____ per month.
> ☐ Additional, replacement, and missing valet trash containers are $_____.
> ☐ 3rd party billing company if applicable _____

9. Plaintiff assumed the obligation to pay Conservice, a third-party vendor, with a fixed monthly payment of $25.00 for valet trash service and an additional flat fee of $3.00 for Pest

3

Control.

> 13. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Addendum and will supersede any conflicting provisions of this printed Addendum and/or the Lease Contract.
>
> An Additional Territorial fee of $33.23 per month will be charged. Studio units in Building 19 are not individually metered and will receive Water/Sewer charges are based on RUBS per Unit method. Common Area Electric will also be billed based on RUBS per unit method. The property's provider bills will be divided equally among occupied units in the building.

    10.    Plaintiff assumed the obligation to pay a territorial fee of $33.23 per month due to the building she was living not being individually metered. (Ex. B to Complaint at p. 89).

    11.    These financial obligations, unambiguously stipulated within the Addendum, were presented in a clear and accessible format, contained within sections for ease of reference and comprehension (See Exhibit B to Complaint at pages 11 and 89).

    12.    Plaintiff also signed the Class Action Waiver Addendum.

> **3. CLASS ACTION WAIVER.** You agree that you hereby waive your ability to participate either as a class representative or member of any class action claim(s) against us or our agents. While you are not waiving any right(s) to pursue claims against us related to your tenancy, you hereby agree to file any claim(s) against us in your individual capacity, and you may not be a class action plaintiff, class representative, or member in any purported class action lawsuit ("Class Action"). Accordingly, **you expressly waive any right and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us or our agents in any forum.**
>
> Any claim that all or any part of this Class Action waiver provision is unenforceable, unconscionable, void, or voidable shall be determined solely by a court of competent jurisdiction.
>
> YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU MAY HAVE POSSESSED THE ABILITY TO BE A PARTY TO A CLASS ACTION LAWSUIT. BY SIGNING THIS AGREEMENT, YOU UNDERSTAND AND CHOOSE TO WAIVE SUCH ABILITY AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THIS CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE CONTRACT.

(See Complaint Ex. B, at p. 69.)

4

### III.      ARGUMENT

#### A.      Legal Standard Rule 12(b)(6)

Rule 12(b)(6) Fed. R. Civ. P. authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Motion to Dismiss under Rule 12(b)(6) Fed. R. Civ. P. tests the legal sufficiency of a claim. See *Straub v. BNSF Ry. Co.,* 909 F.3d 1280, 1287 (10th Cir. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id*. When making this determination, a court accepts all "well-pled factual allegations and views them in the light most favorable to [the non-moving party]." *Butler v. Bd. of County Commissioners for San Miguel County*, 920 F.3d 651, 654 (10th Cir. 2019), cert. denied, 140 S. Ct. 652 (2019). "A complaint need not set forth detailed factual allegations, yet a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient." *Vigil v. Doe*, 405 F. Supp. 3d 1058, 1066 (D.N.M. 2019) (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). If the claim is not plausible based on the facts pled, dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court can properly consider the documents attached to Plaintiff's complaint without converting defendant's motion to dismiss to a motion for summary judgment. See *Hall v. Bellmon,*

5

935 F.2d 1106, 1112 (10th Cir.1991) (written documents attached to the complaint as exhibits are considered part of the complaint for consideration in a Rule 12(b)(6) motion) (citing Fed.R.Civ.P. 10(c)). Here, Plaintiff's Complaint fails to state a claim upon which relief can be granted and Plaintiff can prove no set of facts that would entitle him to relief.

**B.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Class Action Claims Because She Signed A Class Action Waiver Addendum and Therefore Has No Standing**

Plaintiff's class claims should be dismissed because Plaintiff, who has the burden to establish standing, expressly waived any right to pursue such claims and therefore lacks standing.

Plaintiff executed a class action waiver addendum in her Original Lease which provides:

> You agree that you hereby waive your ability to participate either as a class representative or member of any class action claim(s) against us or our agents. While you are not waiving any right(s) to pursue claims against us related to your tenancy, you hereby agree to file any claim(s) against us in your individual capacity, and **you may not be a class action plaintiff, class representative, or member** in any purported class action lawsuit ("Class Action"). Accordingly, you **expressly waive any right and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us or our agents in any forum.**

(See Complaint Ex. B, at p. 69.) (emphasis added). The waiver further provides that it "shall survive the termination or expiration of this lease agreement." (*Id.*) By voluntarily executing this waiver, Plaintiff waived any right to pursue tenancy-related class action claims against the Owner or its agents—including Avenue5. (See Complaint Ex. B, at p. 69.)

Courts in Colorado "have consistently held that '[i]n general, statutory rights may be waived if the waiver is voluntary." *McCracken v. Progressive Direct Ins. Co.*, 896 F.3d 1166, 1174 (10th Cir. 2018) (quoting People ex rel. N.G., 303 P.3d 1207, 1218, (Colo. App. 2012)); *First Interstate Bank of Denver, N.A. v. Cent. Bank & Tr. Co. of Denver*, 937 P.2d 855, 861 (Colo. App. 1996) ("In general, both substantive and procedural statutory rights may be waived so long as the

6

waiver is voluntary."). When a party has waived its right to pursue a claim, that party lacks standing to assert the claim, and the claim must be dismissed for lack of subject matter jurisdiction. *Arline v. Am. Family Mut. Ins. Co.,* 431 P.3d 670, 674 (Colo. App. 2018).

Here, Plaintiff expressly waived her right to pursue such claims as a class action representative or member. She signed the Class Waiver on May 3, 2021. (See Complaint Ex. B, at pages 69, 101, and 104.) Accordingly, because Plaintiff lacks standing to assert class action claims, and Plaintiff's class action allegations should be dismissed pursuant to C.R.C.P. 12(b)(1) or stricken pursuant to C.R.C.P. 12(f) and Rule 23(d)(4).

**C.     Plaintiff Fails to State a Cognizable Claim for Violation of the CCPA**

Plaintiff fails to plausibly allege that Avenue5 violated the CCPA. To prove a private cause of action, Plaintiff must prove: (1) Avenue5 engaged in an unfair or deceptive trade practice; (2) The challenged practice occurred in the course of Avenue5's business, vocation, or occupation; (3) It significantly impacts the public as actual or potential consumers of Avenue5's goods, services, or property; (4) Plaintiff suffered injury in fact to a legally protected interest; and (5) The challenged practice caused Plaintiff's injury. *Crowe v. Tull,* 126 P.3d 196 (Colo. 2006). The crux of a CCPA claim is a deceptive trade practice which, by definition, must be intentionally inflicted on the consumer public. *Id.* To maintain a private CCPA claim, Plaintiff must demonstrate an injury in fact to a legally protected interest caused by the challenged deceptive trade practice. *Id.* Here, Plaintiff cannot prove, nor has she even plausibly alleged, that Avenue5, as the property manager, engaged in a deceptive trade practice.

**1.     Plaintiff Fails to Allege How Avenue5's Alleged Actions Impact the Public**

Plaintiff's CCPA claim further fails to state a claim upon which relief could be granted

7

because Plaintiff does not have standing to pursue a CCPA claim. Standing to bring a CCPA claim requires that a plaintiff suffered injury as a result of an alleged deceptive practice that "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Martinez v. Lewis*, 969 P.2d 213, 221 (Colo. 1998), citing the companion opinion in *Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998) *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 2003 WL 122378, at *5 (Colo. 2003). Even accepting Plaintiff's allegations as true, Plaintiff cannot satisfy the public impact element of the CCPA, and as a result, its CCPA claim should be dismissed.

In determining whether a challenged practice significantly impacts the public as consumers, trial courts should consider: "the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the consumers affected by the challenged practice, and evidence that the challenged practice previously has impacted other consumers or has a significant potential to do so in the future." *Martinez*, 969 P.2d at 222; Rhino Linings, 2003 WL 122378, at *6. In Martinez, the Court found that the public impact requirement had not been met because there was "no allegation that the consumers of [defendant's] services were previously affected by her alleged misrepresentations or likely to be so affected in the future," and therefore, the CCPA was not intended as a remedy for the dispute at issue. *Id*. at 222-23.

Claims that assert a breach of contract or a breach of warranty are inherently private in nature and impact only those parties to the contract. As a result, such claims generally fail to satisfy the public impact element of the CCPA standing requirements. See, e.g., *Rhino Linings,* 2003 WL 122378, at *5 ("a breach of contract claim, without additional conduct, cannot constitute an actionable claim under the CCPA"); *Anson v. Trujillo,* 56 P.3d 114, 117-18 (Colo. App. 2002)

8

(holding that misrepresentations made regarding the sale of several lots of land failed to meet the public impact requirement of the CCPA); *Curraugh Queensland Mining Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 240-41 (Colo. App. 2002) (finding plaintiff in a breach of warranty action did not have standing to seek damages under the CCPA). In *Anson*, the Court noted that the plaintiff had not alleged that other consumers were affected by the defendant's misrepresentations. *See* 56 P.3d 114, 117-18. The *Anson* Court also found that although the defendant sold other property to the public, plaintiff had not alleged that the other transactions also involved deceptive trade practices, and as a result, the court could not conclude that the defendant's alleged conduct significantly impacted the public. *See id*.

Courts, moreover, are likely to find that the public impact requirement has not been met when a single transaction, rather than a course of dealing, is alleged. For example, in *Callaham v. First American Title Insurance Company,* the Colorado Court of Appeals affirmed a trial court's dismissal of a CCPA claim when the plaintiff alleged that a seller made misrepresentations relating to the sale of real property. See 837 P.2d 769, 772-73 (Colo. App. 1992). The Callaham court found that the CCPA "does not apply to the circumstances here which involve a single transaction, rather than a course of conduct from which a party claims some misrepresentation." *Id*. at 773. This holding has been consistently followed by Colorado courts. See, e.g., *Martinez*, 969 P.2d at 222 (finding no claim for a CCPA violation when only one person was affected by the alleged fraudulent services); *Bidwell v. German Motors, Inc.,* 586 P.2d 1003, 1006 (Colo. App. 1978) (upholding trial court's findings that German Motor's making of unauthorized repairs on single plaintiff's vehicle did not constitute a violation of the CCPA).

### 2. Plaintiff Fails to State a Plausible Claim for Deceptive Trade Practices.

To allege a legally cognizable claim under the CCPA, the Complaint must allege facts that "the defendant engaged in an unfair or deceptive trade practice" *Hall v. Walters*, 969 P.2d 224, 235 (Colo. 1998); *Martinez v. Lewis*, 969 P.2d 213, 221 (Colo 1998). To establish a deceptive trade practice, the plaintiff must allege that a defendant knowingly engaged in common practice within the purview of the CCPA that is false, deceptive or misleading. *Crowe,* 126 P.3d at 204. The Complaint is absent of any factual allegation of intent to deceive, misrepresent or commit any other form of fraud enumerated by the CCPA. Liability, therefore, is dependent upon knowledge or intent existing at the time of the actionable conduct. *General Steel Domestic Sales, LLC v. Hogan & Hartson,* LLP, 230 P.3d 1275, 1282 (Colo. App. 2010). Here, Plaintiff has not alleged that Avenue5 knowingly made any false or misleading statements.

Plaintiff's assertion that Avenue5 engaged in unfair conduct by displacing its obligations under Colorado's Warranty of Habitability Statute and imposing Valet Trash Fees, Pest Control fees and Territorial fees for their tenants, allegedly in contravention of local regulations in certain jurisdictions, is specifically lacking in merit (Compl., at ¶ 107.) Plaintiff's interpretation of the law in making such an allegation deviates significantly from any reasonable understanding of the statute. C.R.S. § 38-12-501, *et seq.*, does not explicitly prohibit landlords from imposing fees for pest control and/or trash services. According to the statute, "[i]n every rental agreement, the landlord is deemed to warrant that the residential premises is fit for human habitation" (C.R.S. § 38-12-503(1)). The Habitability Statute does not state that landlords cannot charge tenants fees for pest control, trash, and/or any other services intended to prevent habitability issues. Furthermore, the statute stipulates that residential premises may be deemed uninhabitable if they substantially

lack essential amenities such as running water, functioning heating, common areas free from garbage accumulation, and appropriate extermination in response to rodent or vermin infestation (C.R.S. § 38-12-505(1)).  Plaintiff's argument appears to conflate basic preventative services or utilities with essential habitability requirements. While the provisions of running water and functioning heat are indeed foundational to habitability, the imposition of fees for these services does not inherently contravene landlord-tenant laws.

Plaintiff has not plausibly or coherently alleged that Avenue5 was acting unfairly or deceptively.  The Complaint alleges that Avenue5 does not disclose the fees in the advertised rental amount (Compl., at ¶ 38). This argument fails because Plaintiff has not (and cannot) allege that she suffered damages as a result of this alleged deceptive trade practice. While Plaintiff's CCPA claim seeks relief on behalf of a purported class, Plaintiff must still plausibly allege that she suffered an actual injury, not an "injury [that] has been suffered by other, unidentified members of the class." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *Daimler Chrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006) (each plaintiff must "demonstrate standing for each claim he seeks to press" and "for each form of relief" sought); *Rector v. City & County of Denver,* 348 F.3d 935, 949 (10th Cir. 2003) (a prerequisite for class certification requires that the class representatives "be a part of the class and possess the same interest and suffer the same injury as class members."). Thus, because Plaintiff has not plausibly alleged (and cannot allege) that she suffered an actual injury as a result of Avenue5's alleged deceptive advertising and failure to disclose the Challenged Fees, Plaintiff does not have standing to allege such injury on behalf of unidentified class members.

### 3. Plaintiff Fails to Plead Facts with Particularity to Show a Deceptive Trade Practice As Required for a CCPA Claim

Where a CCPA claim is based on misrepresentations, the plaintiff must plead the claim with particularity pursuant to Rule 9(b) or its federal analog. *Gen. Steel Domestic Sales, LLC v. Chumley,* 2011 WL 2415167, at *4 (D. Colo. June 10, 2011); *Cavitat Med. Techs., Inc. v. Aetna, Inc.*, 2006 WL 218018, at *3 (D. Colo. Jan. 27, 2006); see also *Duran v. Clover Club Foods Co.,* 616 F. Supp. 790, 793 (D. Colo. 1985). Plaintiff alleges that Avenue5 violated four subsections of the CCPA's definition of "unfair or deceptive trade practices." (See Compl., at ¶ 105.) All of these subsections are rooted in fraudulent, misleading or otherwise deceitful conduct. The Complaint fails to plead any knowingly false representations required to substantiate a deceptive trace practice under the CCPA. See Colo. Rev. Stat. § 6-1-105(1)(g) (defining deceptive trade practices); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining,* Inc., 62 P.3d 142, 148 (Colo. 2003) ("A breach of contract claim, without additional conduct, cannot constitute an actionable claim under the CCPA.").  Here, Plaintiff fails to specifically state what the alleged false representations were, how they were made, to whom they were made, or what they were. *Zubrin v. Aronoff*, 2019 Colo. Dist. LEXIS 3366, at *6 (Colo. Dist. Ct. Aug. 26, 2019). The Complaint also does not allege any of the essential elements of a claim for fraud—i.e., intentional affirmative misrepresentation or intentional concealment of a material fact, reliance (justifiable or not), and actual damages by Avenue5. *State v. Ctr. of Excellence in Higher Educ., Inc.,* 529 P.3d 599, 609 (Colo. 2023); *Rocky Mt. Expl., Inc. v. Graham,* 420 P.3d 223, 234 (Colo. 2018). The Complaint fails to allege that Avenue5 engaged in any conduct that was unfair, unconscionable, deceitful or deceptive.

D.     **Plaintiff Fails to State a Claim for Breach of Contract**

Plaintiff possessed full awareness of the contractual provisions outlined within the lease and its accompanying Utility Addendum. The box stating what the landlord would pay stated that the landlord would not pay any utilities, meaning that Plaintiff was put on notice that she would be responsible for these fees herself. This box also has broader implications as well. It is also informing Plaintiff that trash is a utility that needs to be paid. As part of Plaintiff's Lease, it states "The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage and other debris." Regardless of any irrelevant notice letter from a city where the apartment complex is not located, Plaintiff knew or should have reasonably known that there would be a fee associated with the disposal of her trash. It is significant to note that all utilities, including those subject to contention, were remitted to the same third-party vendor. Therefore, positing an assertion that such fees were concealed or extraneous holds no merit, particularly in light of Plaintiff's existing payment obligations for the other utilities.

E.     **Plaintiff Fails to State a Claim for Unjust Enrichment**

Unjust enrichment, also called quantum meruit, is a "claim in quasi-contract for money damages based upon principle of restitution." *DCB Constr. Co., Inc. v. Central City Dev. Co.*, 965 P.2d 115, 118 (Colo. 1998). "In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.,* 77 P.3d 814, 816 (Colo. App. 2003); see *Stanford v. Ronald H. Mayer Real Estate, Inc.,* 849 P.2d 921, 923 (Colo. App. 1993) ("unjust enrichment is not a viable theory of recovery" where there is an express contract on point).  It is evident that an enforceable contractual

13

arrangement exists here, as explicitly indicated by the attachment of the contract to the Plaintiff's Complaint. This contractual nexus forms the crux of the present legal dispute, notably revolving around the ""junk" or "hidden" fees defined within the contract's provisions. Central to Plaintiff's allegations are contentions of breach of the covenant of good faith and fair dealing concerning these ""junk" or "hidden" fees," thus necessitating a valid underlying contract. Because express contracts govern any dispute in this case, Plaintiff's unjust enrichment claim against Avenue5 is precluded. See *Law Debenture v. Maverick Tube Corp.,* No. 06 Civ. 14320, 2008 WL 4615896, at *12-13 (S.D.N.Y. Oct. 15, 2008) ("a claim for unjust enrichment, even against a third party, cannot proceed when there is an express agreement between two parties governing the subject matter of the dispute"). Accordingly, Plaintiff's unjust enrichment claim should be dismissed. See *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1243-44 (D. Colo. 2011) (granting motion to dismiss because enforceable contract precluded unjust enrichment claim).

At best, Plaintiff could assert a breach of contract claim against the Owner, but she cannot simply repackage this claim as an unjust enrichment claim against the Owner's agent. Thus, this claim is subject to dismissal, even if plead in the alternative.

**F.      Plaintiff's Declaratory Judgment Claim Also Fails**

"To have standing to bring a declaratory judgment action, a plaintiff must assert a legal basis on which a claim for relief can be grounded. The plaintiff must allege an injury in fact to a legally protected or cognizable interest." *Farmers Ins. Exch. v. Dist. Court*, 862 P.2d 944, 947 (Colo.1993); accord *GF Gaming Corp. v. Hyatt Gaming Mgmt., Inc.,* 77 P.3d 894, 896 (Colo.App.2003); see *also Colo. Chiropractic Ass'n v. Heuser*, 177 Colo. 434, 438, 494 P.2d 833, 834 (1972) (dismissing declaratory judgment action because the plaintiff lacked standing to

14

challenge statute absent a showing "that it [wa]s an aggrieved party or that it [wa]s a party whose interest the statute was designed to protect"). Under the authority of the Colorado Declaratory Judgment Act, C.R.S. § 13-51-106, and Colorado Rule of Civil Procedure 57, "a judicial tribunal is not required to render a judicial opinion on a matter which has become moot." *Crowe v. Wheeler*, 439 P.2d 50, 53 (Colo. 1968) (en banc) (refusing to grant declaratory judgment on voter qualifications for an election already completed); see also *Giuliani v. Jefferson Cnty. Bd. of County Comm'n*, 303 P.3d 131, 136 (Colo. App. 2012) (claims for prospective declaratory relief interpreting zoning regulations moot in light of new grant of authority to regulate in the future). Courts are not required to issue rulings or judgments on legal matters that have become irrelevant or no longer have practical significance. If the issue in question has already been resolved, or if circumstances have changed in such a way that the legal question is no longer relevant, a court may decline to address it through a declaratory judgment. This helps to ensure that judicial resources are not wasted on matters that no longer have real world consequences or implications.

As Plaintiff lacks standing to pursue declaratory relief individually, this deficiency extends to preclude the Plaintiff from seeking declaratory relief on behalf of the purported class, as delineated in Complaint ¶177(f). Additionally, it is notable that the Plaintiff, no longer a resident of the Property, is no longer subject to the disputed fees. Plaintiff's failure to assert ongoing injury or demonstrate a credible threat of imminent harm in the future further diminishes her standing. Moreover, the mere pursuit of this lawsuit as a putative class action does not salvage the viability of this claim. Declaratory relief is typically granted to resolve disputes between parties to a contract or those with a direct interest in the subject matter. Allowing a party that is a non-party to the contract to seek declaratory relief would expand the scope of such relief beyond its intended

purpose. This ensures that judicial resources are not expended on matters lacking practical significance or real-world consequences, thereby upholding the integrity of the legal process and preserving the efficiency of the judicial system.

### G.     Plaintiff Fails to Assert Cognizable Class Allegations

Here, certifying the proposed classes would be impossible based on the face of the complaint, regardless of the facts the Plaintiff might present. This standard, exemplified by *Francis v. Mead Johnson & Co.,* emphasizes the importance of the complaint itself in assessing class certification viability. 2010 U.S. Dist. LEXIS 105887, at *3 (D. Colo. Sept. 16, 2010). Furthermore, *Ramsay v. Frontier, Inc*., underscores the potential consequences of proceeding with a class action suit that should not be pursued as such, which could result in unnecessary expenses for both parties, only to be dismissed later. WL 4557545 (D. Colo. July 30, Lease).  "It is elementary that, in order to maintain a class action, the class sought to be represented must be adequately defined and reasonably ascertainable." *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970).2 "A class is overbroad if it includes significant numbers of consumers who have not suffered any injury or harm." *Loreto v. Proctor & Gamble Co., Civ. No.* 1:09-815, 2013 WL 6055401, at *4 (S.D. Ohio Nov. 15, 2013). Plaintiff's proposed class definition improperly includes putative members without standing to maintain a claim. Plaintiff's Complaint is very broad as to who constitutes a class member. Plaintiff's putative class necessarily includes potential class members who did not suffer the same alleged injuries as Plaintiff. (Compl., at ¶ 95).  Any putative class member who simply leased an apartment, used a standard lease and was assessed any "junk" or "hidden" fees has not been deceived as a matter of law or had their contract breached, and does not have standing to assert the counts set forth in the Amended Complaint. See *Berger v.*

16

*Home Depot USA, Inc*., 741 F.3d 1061, 1068 (9th Cir. 2014) (affirming denial of class certification in case where putative class members may or may not have been exposed to potentially actionable representations, finding that "it was 'unreasonable to presume' that all class members were exposed to [the defendant's] misleading statements, and that without such exposure, consumers were not likely to be deceived.") (internal citations omitted).

Ascertainment of membership in Plaintiff's putative class is impossible without individual fact-finding that is inherently inconsistent with class treatment. See *Carrera v. Bayer Corp.,* 727 F.3d 300, 305 (3d Cir. 2013) ("'If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate'" (citation omitted)); *Helmer v. The Goodyear Tire & Rubber Co.,* Civ. No. 12-00685, 2014 WL 1133299, at *3 (D. Colo. Mar. 21, 2014) (explaining that "the members of the class [must] be ascertainable with the use of objective criteria" (citation omitted)) The proposed class, even if it were currently ascertainable, encompasses an overly broad spectrum of individuals who leased residential units in Colorado from the Defendants within the applicable statute of limitations. This broadness introduces significant challenges in identifying and defining class members, particularly considering the potential inclusion of future leaseholders whose status would constantly fluctuate.

In addition, Plaintiff's focus on seeking redress for the "territorial fees" underscores a crucial point. These fees are uniquely imposed on residents within a specific building, indicating a narrow scope of applicability. As a result, not all members of the proposed class share the same grievance or experience the same financial burden. This lack of universality within the proposed class undermines Plaintiff's assertion of representing the collective interests of all affected parties. Instead, it suggests that the proposed class may not adequately capture the full spectrum of

17

individuals impacted by the defendant's actions. The inclusion of specific grievances, such as the "territorial fees," within Plaintiff's complaint introduces complexities in defining the class boundaries and determining the appropriate scope of relief. Addressing issues that are unique to certain subsets of the proposed class may necessitate separate legal considerations and remedies, complicating the class action process.

Given these complexities, it's evident that Plaintiff's proposed class lacks the necessary clarity and definition required for effective class action litigation. Allowing such a broad class to proceed could lead to confusion, inefficiencies, and increased litigation costs for all parties involved. Therefore, it is within the court's discretion to consider striking or amending the class action allegations to ensure the integrity of the legal process and to prevent unnecessary burdens on the judicial system.

## IV.     CONCLUSION

Based on all of the above arguments, Avenue5 respectfully moves that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted on June 13, 2024.

*The original of this pleading is on file at the offices of Winget, Spadafora & Schwartzberg, LLP*

*/s/Derek C. Anderson*_____
Derek C. Anderson, Esq., No. 37727
Winget, Spadafora & Schwartzberg, LLP
2440 Junction Place, Suite 102
Boulder, CO 80301
T: (720) 699-1800
F: (720) 699-1801
E-mail: anderson.d@wssllp.com
*Attorney for Defendant Avenue5 Residential LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2024, I electronically filed the foregoing MOTION TO DISMISS with the Court using the CM/ECF system, and I further herby certify that I caused a true and correct copy of the same to be sent via United States Mail, postage prepaid thereon, and email to the following:

/s/*Jessica Esposito*
Jessica Esposito

Jason Legg, Esq.
Cadiz Law LLC
501 S. Cherry Street, Ste. 1100
Denver, CO 80246
Phone: (720) 330-2800
E-mail: jason@cadizlawfirm.com
Attorney for Plaintiff and the alleged Classes

Steven L. Woodrow, Esq.
Taylor T. Smith, Esq.
Woodrow and Peluso LLC
3900 E Mexico Ave, Suite 300
Denver, CO 80210
Phone: (720) 213-0676
E-mail: swoodrow@woodrowpeluso.com
E-Mail: tsmith@woodrowpeluso.com
Attorneys for Plaintiff and the alleged Classes