**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01577-NRN

KIMBERLY SEGURA, on behalf of herself and all others similarly situated,

       *Plaintiff,*

v.

AVENUE5 RESIDENTIAL, LLC, a Delaware Limited Liability Company,

       *Defendant.*

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S PARTIAL MOTION TO DISMISS**

---

## I.    INTRODUCTION

This case challenges Defendant Avenue5 Residential's ("Defendant" or "Avenue5") unlawful fees and profit-padding. That is, Avenue5, a Seattle-based landlord operating in Colorado, advertises apartment prices without disclosing additional fees, such as Valet Trash Fees, Pest Control Fees, and Territorial Fees (collectively, the "Challenged Fees"), until after prospective tenants have already expended significant time and money applying for their units. Plaintiff Kimberly Segura ("Plaintiff" or "Segura"), on behalf of herself and all others similarly situated, alleges that the imposition of such fees breached her form lease agreement and violate the Colorado Consumer Protection Act's, § 6-1-101 *et seq.* ("CCPA" or the "Act") prohibition against unfair, deceptive, and unconscionable practices.

Seeking an early exit from the case,[1] Avenue5 raises an assortment of supposed defenses,

---

[1] While Avenue5 requests dismissal of the entire case, its motion fails to raise any arguments with respect to Count III (excessive late fees) or Count IV (challenging eviction practices). (*See* Compl.

none of which has merit. Defendant first asserts that class claims are barred on account of a class action waiver that Segura signed in 2021. But the class waiver is void, both on public policy grounds and due to Segura's lease renewal, which constitutes the complete agreement of the parties and contains no such waiver. Finally, at most the waiver would apply to disputes regarding the *initial* lease; it offers Avenue5 no basis to avoid class claims altogether.

Avenue5 attacks the CCPA claim, asserting that Segura has not satisfied the public impact requirement, alleged a deceptive trade practice, or provided specific details to meet Rule 9(b)'s heightened pleading standard for fraud claims. Such arguments fall flat. The factual allegations plainly meet the required elements for unfair and unconscionable conduct.

Defendant's backup arguments fare no better. Segura alleges two separate breach of contract claims and properly included an alternative claim for unjust enrichment. She also can seek declaratory relief. Finally, Avenue5 fails to demonstrate that class certification would be impossible so as to justify striking the class allegations at the outset. Indeed, Avenue5 takes issue with the scope of the class, a question that can (and should) be resolved at the time of certification.

The Court should deny the Motion to Dismiss accordingly.

## II.     STATEMENT OF FACTS

### *The Problem with Junk Fees*

Over the past several years, landlords have sought to increase their profits by burying misleading, hidden fees—known as "junk fees"—in their form lease agreements. (Compl. ¶ 2.) Getting in on the action, Avenue5 assesses inflated and hidden Valet Trash Fees, Pest Control Fees, and Territorial Fees. (*Id.* ¶¶ 3-9.) First, Avenue5 charges a $25 Valet Trash Fee per month

---

¶¶ 131-160.) As such, Avenue5's motion is actually a partial motion to dismiss.

on top of its $10 trash fee that is already charged. (*Id.* ¶ 32.) The valet trash "service" requires that tenants deposit their trash in the hallways instead of down trash chutes or directly into dumpsters. (*Id.* ¶¶ 58-59.) The service is not optional and contrary to the International Fire Code. (*Id.* ¶ 59.) Second, Avenue5 assesses Pest Control Fees (typically $3-$5 per month), unlawfully shifting its obligations under Colorado's warranty of habitability onto tenants (*Id.* ¶¶ 12, 31.) Third, Avenue5 charges tenants a $33.23 per month Territorial Fee, which is undisclosed and unclear as to what it actually covers. (*Id.* ¶¶ 33, 63-64.)

The Challenged Fees are neither disclosed as part of the advertised rent nor are they based on Avenue5's actual costs. (*Id.* ¶¶ 10-11.) To the extent the fees are disclosed at all, such disclosure does not occur until tenants are finally provided a copy of the lease to sign—after they have already expended considerable sums like "non-refundable application fees, administrative fees, security deposits, pet deposits, and at least the first month's rent." (*Id.* ¶¶ 37-42.)

And though the Motion to Dismiss does not mention it, the Complaint also challenges Avenue5's assessment of Late Fees in excess of the amounts specified in its form leases. (*Id.* ¶¶ 71-72.) Further, Avenue5 subjects tenants who fall behind to eviction proceedings that require the payment of such late fees to cure. (*Id.* ¶ 75.) Such conduct violates Colorado statute, which bars landlords from evicting tenants on the basis they failed to pay one or more late fees. (*Id.*)

### *Segura Leased An Apartment From Avenue5 And Was Subjected To Its Unlawful Practices*

Plaintiff Segura leased an apartment at Avenue5's property, the Montane, from May 7, 2021, through August 6, 2023. (*Id.* ¶¶ 77-79.) She executed an initial lease dated May 3, 2021 (*id.*, Ex. B), and second lease on August 8, 2022 (*id.*, Ex. C). Segura was assessed and paid the Challenged Fees each month during her tenancy to protect her interest in the leasehold. (*Id.* ¶¶ 81-

82.) Avenue's Form Lease agreements are presented take-it-or-leave-it, and Segura had no ability to negotiate any terms (*Id.* ¶¶ 19, 29, 78.)

## III.   ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has plausibility when the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (a plaintiff need only "nudge [her] claims across the line from conceivable to plausible" to survive a motion to dismiss.).

As explained below, the Court should deny Avenue5's motion to dismiss.

### A.   The Court Has Subject Matter Jurisdiction Over Plaintiff's Class Claims.

Avenue5 first asserts that Segura "expressly waived any right to pursue [class] claims" by signing a class action waiver and that she "therefore lacks standing". (Def. Mot. 6.) But Avenue5's class action waiver is neither enforceable nor preclusive of all the class claims here.

#### 1.   Avenue5's class waiver is void as contrary to public policy.

As an initial matter, because this Court's jurisdiction is based on the diversity of citizenship, Colorado law applies to the question of the enforceability of the class action waiver. *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1249 (10th Cir. 2018) ("Because the district court's jurisdiction was based on diversity of citizenship, Colorado substantive law governs" our analysis of the underlying claims and enforceability of the waivers.").

Under Colorado law, Avenue5's class action waiver is unenforceable as a matter of law. It

deprives Plaintiff and the class members of critical protections to pursue their rights under State law. Indeed, courts nationwide have ruled against such waivers, particularly in situations with an imbalance of power, like with residential leases.[2] As the Massachusetts Supreme Judicial Court explained, such waivers in consumer protection cases conflict with at least three public policies: (1) the ability to pursue claims that are, on their own, too small to pursue on an individual basis; (2) the deterrence effect of class actions to prevent wrongdoing; and (3) the loss of the public rights to participate in a class action by unnamed class members who otherwise may not be able to redress their injuries. *Feeney v. Dell Inc.*, 908 N.E.2d 753, 763-64 (Mass. 2009) (collecting cases).

Colorado adheres to these same principles. The Colorado Supreme Court has explained that class actions: (1) "eliminate the need for repetitious filing of many separate lawsuits involving the interests of large numbers of persons" by providing a "fair and economical method for disposing of a multiplicity of claims in one lawsuit"; (2) "provide plaintiffs with access to judicial relief when they might not otherwise have such access"; and (3) they protect defendants from "inconsistent obligations." *Jackson v. Unocal Corp.*, 262 P.3d 874, 880 (Colo. 2011); *see also Mountain States Tel. & Tel. Co. v. Dist. Ct., City & Cnty. of Denver*, 778 P.2d 667, 671 (Colo. 1989). Given these purposes, Colorado has adopted a "policy of favoring the maintenance of class

---

[2] This includes courts in Alabama, Arizona, California, Florida, Georgia, Illinois, Kentucky, Massachusetts, Michigan, Missouri, New Jersey, New Mexico, Ohio, Oregon, Pennsylvania, Washington, West Virginia, and Wisconsin. *See, e.g., Pace v. Hamilton Cove*, 295 A.3d 1251, 1258 (N.J. App. Div. 2023); *T.S. Kao, Inc. v. N. Am. Bancard, LLC*, 2017 WL 8682258, at *3 (N.D. Ga. Dec. 15, 2017); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010); *Jones v. DirecTV, Inc.*, 381 Fed. Appx. 895 (11th Cir. 2010); *Chalk v. T- Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009) (Or. law); *Lowden v. T-Mobile, USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008); *Davis v. Chase Bank USA*, 299 Fed. Appx. 662 (9th Cir. 2008); *Skirchak v.Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007); *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) (Ga. law); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) (Cal. law).

actions." *Jackson*, 262 P.3d at 880.

The Colorado General Assembly has repeatedly codified this policy. In addition to Colorado Rule 23, the CCPA provides specific remedies for class actions, *see* Colo. Rev. Stat. Ann. § 6-1-113(2.9). And starting with leases executed after August 2023, it is expressly unlawful to include a class waiver in a residential lease. *See* Colo. Rev. Stat. Ann. § 38-12-801(3)(a)(III).[3] All told, because class waivers stifle judicial access for plaintiffs with smaller claims, the Court should strike the waiver here. *See Rademacher v. Becke*r, 374 P.3d 499, 500 (Colo. App. 2015); *Metcalfe v. Grieco Hyundai LLC*, No. CV 22-378-JJM-LDA, 2023 WL 6441945, at *2 (D.R.I. Oct. 3, 2023) (class waiver void where consumer protection statute provides for class actions).

Accordingly, the Court should find that Avenue5's class action waiver—buried on page 70 (out of 77 pages) of Plaintiff's non-negotiable first lease—is void on public policy grounds as its enforcement would prevent Segura and other tenants from obtaining relief.

> **2.    Segura's Second Lease, which superseded her initial lease, contains no class waiver in any case.**

Even if the Court decides not to strike the class waiver on public policy grounds, it was superseded by Segura's Second Lease. That is, the class waiver was contained in Plaintiff's *initial* lease dated May 3, 2021. (*See* Compl., Ex. B at 70.) But Segura executed a subsequent lease agreement dated August 8, 2022, to renew her tenancy between August 7, 2022, and August 6, 2023 (the "Second Lease"). (*Id.* at Ex. C.) The Second Lease **does not contain** any class action waiver, nor does it make any reference to class actions at all. Instead, the Second Lease, which itself spans more than fifty pages, states twice that it represents the "entire agreement between you

---

[3] While this bar was admittedly not effective until August 2023, the statute is still indicative of Colorado's clear public policy in favor of maintaining class actions in cases like this one.

and us" and the only other documents expressly incorporated are "[a]ny addenda or amendments you sign as a part of executing this Lease Contract". (*Id.* at pgs. 7-8.) The subsequent agreement thus eliminated the class action waiver. *See Metcalfe*, 2023 WL 6441945, at *2 (prior waiver void because "[p]arties can agree to eliminate contract provisions, even arbitration clauses and class waivers, by subsequent agreement covering such issues.") (citing *Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 515 (1st Cir. 2020) *Jaludi v. Citigroup*, 933 F.3d 246, 256 (3d Cir. 2019)). By executing the Second Lease, the parties agreed to eliminate the class waiver.

As a final point, even if the Court were to reject Segura's position, the class waiver would still only governs disputes concerning the *first* lease agreement. The waiver, to the extent it applies at all, governs only the parties' relationship between May 7, 2021 and August 6, 2022. (Compl., Ex. B.) The waiver cannot be applied to the Second Lease because doing so would conflict with the contractual language itself. *See Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995) (refusing to consider evidence outside of a contract with an integration clause, stating such evidence "may not be used to demonstrate an intent that contradicts or adds to the intent expressed in the writing.").

Accordingly, to the extent that the Court finds that the class action waiver is valid and enforceable (it should not), the Court should still decline to dismiss the class at the pleading stage. Indeed, because the applicability of the waiver may be fact-driven, the issue should be resolved at the time of certification. *See Underwood v. Future Income Payments, LLC*, No. SACV171570DOCDFMX, 2018 WL 4964333, at *5 (C.D. Cal. Apr. 26, 2018).

### B.     The CCPA claims also survive: Segura alleges a deceptive trade practice based on Avenue5's unfair and unconscionable charging of unlawful fees.

For its next attack, Avenue5 asserts that the Court should dismiss Segura's CCPA claim because: (1) she supposedly doesn't meet the significant public impact requirement (Def. Mot. 7-

8), (2) she hasn't "alleged that Avenue5 knowingly made any false or misleading statements" (*id.* 10-11); and (3) her allegations lack particularity. (*Id.* 12). These arguments fall apart.

### 1.      Plaintiff alleges a significant public impact.

Avenue5 first claims that Plaintiff "fail[s] to satisfy the public impact element of the CCPA standing requirements." (Def. Mot. at 8.) Though the text of the CCPA contains no such requirement, Plaintiff has pled a significant public impact in any case.

As an initial matter, it is worth noting that the CCPA does not contain an express public impact requirement. Rather, it stems from a case known as *Hall v. Walter*, where the Colorado Supreme Court imported a five-factor test for CCPA violations from the State of Washington. 969 P.2d 224, 234 (Colo. 1998). As for a textual basis, the *Hall* court simply states that a public impact requirement is "consistent with the statute's title." *Id.* at 234. The CCPA's only reference to significant public impact was added in 2019 and states: "An action under this article 1 brought by the attorney general or a district attorney does not require proof that a deceptive trade practice has a significant public impact." Colo. Rev. Stat. § 6-1-103. As such, there is nothing in the actual text of the CCPA (which guides statutory construction) that expressly requires such a showing.

Nevertheless, where courts impose such a requirement they look to whether three considerations are satisfied: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003).[4]

_____

[4] Notably, Washington's test is more lenient, finding the public impact requirement met where two

The allegations of the Complaint meet these considerations. First, Segura pleads that Defendant's unlawful practices affected thousands of consumers and that the number continues to increase. (Compl. ¶ 113.) Indeed, Avenue5 charges the subject unlawful fees to every tenant at each of its "thirty-three properties". (*Id.*) Segura also pleads that the affected consumers "are often substantially less sophisticated" and that "Avenue5 holds all the cards, and all the power in the consumer transaction". (*Id.* ¶ 114.) Again, the leases are "non-negotiable" and are presented on a "take-it-or-leave-it basis." (*Id.* ¶ 109.) Finally, Segura pleads that the problem is "significant and growing" and that Avenue5's practices "significantly impact how others behave in the market". (*Id.* ¶¶ 113, 115.) If proven true, this plausibly shows a significant public impact.

Avenue5 counters that the allegations involve "a single transaction, rather than a course of dealing" (Def. Mot. 9) but that is false: Segura expressly alleges that Avenue5 charged thousands of tenants these unlawful fees in a scheme to enrich itself. (Compl. ¶¶ 23-42; 107-111.) Avenue5's bid to ignore such allegations should be rejected.

As a final point here, several courts have recently held that the systemic charging of unlawful fees satisfies the public impact requirement. *See Alder v. Bridge WF CO Artisan LLC*, Case No. 2023CV32869 (April 2, 2024) (Bailey, J.) (rental application fees); *see also Byjoe v. Apartment Management Consultants, LLC*, Case No. 2023CV33355 (April 17, 2024) (Elliff, J.) (same); *Tilton v. Amen Corner, LLC,* Case No. 2022CV32318, (December 19, 2023) (Henderson IV, T.) (late fees). The *Alder*, *Byjoe*, and *Tilton* Orders are attached hereto as Group Exhibit 1.

---

or more persons have been affected. *See Svendsen v. Stock*, 143 Wn. 2d 546, 559 (Wash. 2001); *see also Bloor v. Fritz*, 143 Wn. App. 718, 736-37 (Wash. Ct. App. 2008). Interestingly, and despite an apparent readiness to adopt Washington law when it is anti-consumer, Colorado Courts have not followed Washington law's development of this more relaxed approach.

Accordingly, the Challenged Fees significantly impact the public.

### 2. Segura alleges a deceptive trade practice.

Avenue5 claims asserts that Segura has not alleged that it "knowingly" engaged in a practice that was "false, deceptive or misleading." (Def. Mot. 12.) This is incorrect. Segura has plausibly alleged that Avenue5 violated four discrete subsections of the CCPA.

The CCPA requires Segura to allege an "unfair or deceptive trade practice" as defined by Colo. Rev. Stat. § 6-1-105(1), *et seq.*, which lays out more than fifty deceptive practices. Segura's Complaint alleges that Avenue5:

> (i) Advertises goods, services, or property with intent not to sell them as advertised;
> (l) Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions;
> (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;
> (rrr) Either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

*See* Compl. ¶ 105 (citing C.R.S. § 6-1-105).

Under §§ 105(1)(i), 105(1)(l), and 105(1)(u), Segura alleges that Avenue5 deceptively marketed lower monthly rents than the actual rents. (Compl. ¶¶ 37-46.) That is, Avenue5 failed to disclose the Challenged Fees until *after* tenants had already been notified of the supposed rental amounts and had already invested time and money to apply, including by paying hundreds of dollars in non-refundable upfront fees and other amounts. (*Id.*) Together, the facts plausibly show that Avenue5 advertised its apartments with an intent not to sell them as advertised (§ 105(1)(i)), that it made false or misleading statements regarding the price of its properties (§ 105(1)(l)), and that it failed to disclose material information with the intent to induce a transaction (§ 105(1)(u)).

Segura also pleads facts to support her claim that Avenue5's practices were deceptive, unfair, and unconscionable under § 105(1)(rrr). While Colorado law does not define an "unfair" or "unconscionable" act or practice for the purposes of section 6-1-105(rrr), other states and federal law are instructive. Many courts continue to follow the factors announced in *Federal Trade Commission v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972) ("*Sperry*"), including: (1) whether the practice, even if not expressly prohibited by law, offends public policy, and is within the "penumbra of some common-law, statutory, or other established concept of unfairness"; (2) whether it is immoral, unethical, oppressive, or unscrupulous"; and "(3) whether it causes substantial injury to consumers." 405 U.S. at 244, n.5.[5]

The factors have been adopted for use in some form by many states, including Hawaii, Florida, Illinois, New Hampshire, Massachusetts, Montana, Vermont, Rhode Island, Alaska, Louisiana, North Carolina, and Connecticut.[6] In particular, Washington—which again supposedly serves as a model for Colorado's consumer protection laws, *see e.g. Hall*, 969 P.2d at 233— expressly looks to *Sperry* factors to determine whether conduct is unfair. *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (2013). Other state appellate courts have held that a practice may be unfair if

---

[5] While the *Sperry* factors have been replaced by 15 U.S.C. § 45(n) for use by the FTC, multiple states still rely on *Sperry*, some adopting them well after the FTC's modifications. *See, e.g., Rohrer v. Knudson*, 203 P.3d 759, 764 ("We join [at least a dozen states] in adopting a version of the *Sperry* standard to define unfairness under the Montana Consumer Protection Act.").

[6] *See, e.g., Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111 (2013); *ASRC Energy Servs. Power & Comm'ns, LLC v. Golden Valley Elec. Ass'n, Inc.*, 267 P.3d 1151 (Alaska 2011); *Balthazar v. Verizon Hawaii, Inc.*, 123 P.3d 194 (Haw. 2005); *Morrison v. Toys "R" Us, Inc.*, 806 N.E.2d 388 (Mass. 2004); *State v. Moran*, 861 A.2d 763 (N.H. 2004); *PNR, Inc. v. Beacon Prop. Mgt., Inc.*, 842 So.2d 773 (Fla. 2003); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002); *Ames v. Oceanside Welding & Towing Co.*, 767 A.2d 677 (R.I. 2001); *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130 (Conn. 1992); *Blake v Federal Way Cycle Ctr.*, 698 P.2d 578 (Wash. App. 1985); *Rohrer*, 203 P.3d at 764; *A&W Sheet Metal, Inc. v. Berg Mech., Inc.*, 653 So. 2d 158 (La. App. 1995); *Marshall v. Miller*, 276 S.E.2d 397 (N.C. 1981).

just one *Sperry* factor is met. *See State ex real. Shikada v. Bristol-Myers Squibb Co.*, 526 P.3d 395,

423 (Haw. 2003); *Robinson*, 775 N.E.2d 951; *Cheshire Mortg. Serv., Inc.*, 223 Conn. 80.

Here, Avenue5's conduct satisfies each of the factors elucidated in *Sperry*. Indeed, the

Challenged Fees plausibly "offend public policy" and fall "within at least the penumbra of some

common-law, statutory, or other established concept of unfairness". The fees, including their

timing, are unscrupulous, oppressive, and unlawful, and they cause significant injury to tenants—

adding thousands of dollars to annual rents above the amounts advertised.

Yet even if the Court were to decline to apply *Sperry*, Avenue5's conduct still rises to the

level of "unfair" as currently defined by the FTC. Under that standard, a practice is unfair when it

causes or is likely to cause: (1) substantial injury to consumers, (2) which is not reasonably

avoidable by consumers themselves, and (3) is not outweighed by countervailing benefits to

consumers or to competition. *See* 15 U.S.C. § 45(n). As Segura has alleged, Avenue5's conduct

has caused and is causing substantial injury to consumers, is unavoidable, and has no benefit but

to pad the profits of large landlords.

Avenue5's practices are also unconscionable. Colorado a non-exclusive seven-factor test

for unconscionability. *See Davis v. M.L.G. Corp.,* 712 P.2d 985, 991 (Colo.1986); *see also*

*Bonanno v. Quizno's Franchise Co., LLC*, No. CIV.A06CV02358CMAKLM, 2009 WL 1068744,

at *17 (D. Colo. Apr. 20, 2009). The factors ask:

> (1) Is the agreement a standardized/form agreement made by parties with unequal
> bargaining power?
> (2) Did the parties have an opportunity read and become familiar with the document
> before signing it?
> (3) Did the document bury the provision in fine print?
> (4) Is the provision commercially reasonable?
> (5) Is the provision substantively unfair?
> (6) What is the relationship between the parties? Was there notice or surprise?

(7) What are the remaining circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect?

*Davis,* 712 P.2d 985 at 991. These considerations support a finding of unconscionability here.

The contracts in question are form lease agreements imposed on tenants by one of the most powerful landlords in the State. There is no opportunity to negotiate—the terms are presented as take-it-or-leave-it by a party with disproportionate bargaining power and concern the basic necessity of housing, a recognized matter of public policy concern. *See Stanley v. Creighton Company*, 911 P.2d 705, 707-8 (Colo. App. 1996) ("the supreme court has recognized a disparity of bargaining power in a residential landlord-tenant relationship."). The Form Leases are over 70 pages long (including addenda) and are filled with dense boilerplate legalese. The Challenged Fees were buried deep in the contracts and are not commercially reasonable—they enable profiteering off trash disposal and pest control. The fees are unfair as they were not disclosed in the advertised rent amounts and add hundreds of dollars annually to rent. Finally, these are fees imposed by a powerful landlord on residential tenants—the facts, if proven true, plausibly suggest the Challenged Fees are unconscionable.

Avenue5's counterarguments are without merit.  Avenue5 claims that "C.R.S. § 38-12-501, *et seq.*, does not explicitly prohibit landlords from imposing fees for pest control." (Def. Mot. 10.) That is incorrect. Rather, where a landlord has notice of a pest control issue at "the tenant's dwelling unit or the residential premises", the landlord "is responsible for remedying and repairing the dwelling unit or residential premises to a habitable standard *at the landlord's expense….*"[7]

---

[7] Colo. Rev. Stat., § 38-12-505(1)(b)(VIII) also requires pest extermination to comply with C.R.S. § 38-12-1001 to § 38-12-1007, which requires, *inter alia*, landlords to bear "all costs associated with an inspection for, and treatment of, bed bugs", *see* Colo. Rev. Stat. Ann. § 38-12-1003(4).

C.R.S. § 38-12-503(7) (emphasis added). More generally, Colorado law prohibits landlords from shifting compliance onto tenants with very limited exceptions (tenant malfeasance[8] and certain single-family home rentals) and provides that tenants who wrongfully are forced to incur expenses that the landlord should have borne are entitled to recover them as damages. C.R.S. § 38-12-504(3), 506, 507(1)(c) and (2)(g)(VII)(A). Segura expressly alleges that Avenue5 unlawfully shifted the burden of compliance to Plaintiff and other tenants. (Compl. ¶¶ 12, 66-70.)

The same is true of the Valet Trash Fee. Colorado law requires landlords to warrant that residential premises are "fit for human habitation," including that common areas are kept clean and free from garbage accumulation. *See* C.R.S. 38-12-501, 503(1)(b)(VI). The form lease also requires that the property be maintained in compliance with all laws governing health and safety. By requiring tenants to use and pay for valet trash service that piles garbage in the common areas, Avenue5 creates a threat to habitability and violates the International Fire Code and then requires tenants to pay for remediation. This constitutes an unfair and unconscionable practice.

When viewed in a light most favorable to Segura, the allegations plausibly allege that Avenue5 violated the CCPA, and the Motion should be denied.

### 3.    Segura is not required to satisfy Rule 9(b) but does so anyway.

As a final issue here, Avenue5 contends that Segura failed to plead with particularity "any knowingly false representations required to substantiate a deceptive trace [*sic*] practice under the CCPA." (Def. Mot. 11.) This is neither required nor true.

To start, not all CCPA claims must be pled with particularity. While Avenue5 cites a

---

[8] As a court in Ohio held in applying a similar statute, for a landlord to lawfully shift the expense of pest control treatments onto a tenant, the pest control had to have become necessary because of the tenant's misuse. *See Showe Mgmt. Corp. v. Mountjoy*, 154 N.E.3d 141 (Ohio Ct. App. 2020).

handful of federal cases to attempt to support its claim (def. mot. 12), all of those decisions involved claims sounding in fraud. *See Gen. Steel Domestic Sales, LLC v. Chumley*, 2011 WL 2415167, at \*4 (D. Colo. June 10, 2011) (false representations); *Cavitat Med. Techs., Inc. v. Aetna, Inc.*, 2006 WL 218018, at \*3 (D. Colo. Jan. 27, 2006) (same); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (false description of product origins).

On the other hand, Plaintiff is aware of just one Colorado state court that has addressed whether CCPA claims must be pleaded with particularity, and it found that no such requirement applied. *See Tilton v. Amen Corner, LLC*, 2, Case No. 2022CV32318, Group Exhibit 1. The *Tilton* holding rests on solid footing—fraud is not an essential element to a CCPA claim. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("because a private action under [the New York consumer protection act] does not require proof of the same essential elements (such as reliance) as common-law fraud, [it] is not subject to the pleading-with-particularity requirements of Rule 9(b)"). Because Rule 9(b)'s pleading standards do not apply to all CCPA claims, Segura's claims that do not sound in fraud need not be pled with particularity.

Only Segura's claims that the fees were not properly disclosed in the advertised rent arguably raise questions of concealment, and those allegations are sufficiently specific. Rule 9(b) requires that plaintiffs allege "the who, what, when, where, and how of the alleged fraud—in other words, the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Murtagh v. Bed Bath & Beyond Inc.*, No. 19-CV-03487-CMA-NYW, 2020 WL 4195126, at \*11 (D. Colo. July 3, 2020), r*eport and recommendation adopted*, No. 19-CV-03487-CMA-NYW, 2020 WL 4193553 (D. Colo. July 21, 2020) (citation omitted). Segura specifically alleges that Avenue5 advertises rents "lower than the

actual monthly rent" by failing to disclose the Challenged Fees. (Compl. ¶ 108.) The misleading rental prices are falsely advertised "every time Avenue5 lists an apartment or sends a renewal letter". (*Id.* ¶ 116.) The fees were not disclosed until the tenants were presented with their lease agreements for execution—which is shortly before move-in and after tenants have paid significant fees and deposits. (*Id.* ¶¶ 108-109.) By that point, it was so late in the process that it was impractical for tenants to find alternative housing. (*Id.* ¶ 108.) Put simply, Segura alleges the "who" (Avenue5), the "what" (failing to disclose fees to renters), the "where" and the "when" (during the application process), and the "how" (by waiting until it is too late for renters to consider alternatives). Hence, any claims that sound in fraud are set forth with particularity.

### C.    Segura Sufficiently Alleges Her Breach Of Contract Claims.

Avenue5 includes a one-paragraph throwaway argument for dismissal of Plaintiff's breach of contract claim (though there are actually two such claims). (Def Mot. at 13.) Avenue5 asserts that because a box was checked indicating that it "would not pay any utilities," Segura was "on notice that she would be responsible for these fees herself." (*Id.*) This argument fails.

Segura's first breach of contract claim (Count II) is premised on Avenue5's assessment of "Territorial Fees" and "Flat Trash Fees" that were never agreed to in the Form Lease. (Compl. ¶¶ 119-130.) Plaintiff asserts that the "Territorial Fee" was never disclosed in either lease agreement (*id.* ¶ 124; Exs. B-C). As for the "Flat Trash Fees", Avenue5 continued to assess such fees *after* the parties, via the Second Lease, switched to a per-occupancy formula—double-billing for such services for a period of several months. (*Id.* ¶ 125.) Hence, Avenue5 cannot hide behind the checkbox stating it "would not pay any utilities".

Segura's second breach of contract claim (Count V) relies on the covenant of good faith

16

and fair dealing (Compl. ¶¶ 161-168) implied in every Colorado contract. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). The duty applies when a contract gives a party "discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Id.* In other words, when a term is left to one party's discretion, the other party "is left to the good faith of the party in control," and the implied duty of good faith and fair dealing protects from abuses of that discretion. *See id.* at 498–499 (citations omitted).

Applied here, Segura alleges that Avenue5 had discretion to determine which charges get billed in any particular month (Compl. ¶ 164), to set and change the amounts of such charges (*Id.*, Ex. B, 12, ¶ 2-3, and Ex. C, 12, ¶ 2-3), and that Avenue5 abused this discretion by turning these fees, ostensibly assessed to cover "services", into profit centers. (*Id.* ¶ 165.) The Complaint also alleges that Avenue5 breached the implied duty of accurate billing by assessing the fees without a legal basis to do so. (*Id.* ¶ 166.) These allegations support sustaining the claim for violations of the covenant of good faith and fair dealing.

Avenue5's assertion that the checkbox disclaiming its obligation to pay for utilities put Segura "on notice that she would be responsible for these fees herself" (Def. Mot. 13)—misses the point. First, these are not utilities. Further, Avenue5 abused the discretion afforded to it under the contract by *overcharging* for trash services[9], pest control, and related fees. Further, Avenue5's claim that Segura should have assumed a valet trash fee would be charged because the lease states that the apartment "must be kept clean and free of trash" (*id.*) is illogical. Again, this does not give Avenue5 license to profit off the fees for those services.

---

[9] It is again worth noting that Avenue5 assessed the $25 valet trash fee **in addition to** a mandatory $10 trash service fee. (Compl. ¶ 32.)

For these reasons, the breach of contract claims should survive.

**D.     Plaintiff's Alternative Claim For Unjust Enrichment Should Survive As Well.**

Avenue5 then asserts that Plaintiff's unjust enrichment claim must be dismissed because an "express contract[] governs any dispute in this case" and therefore, the claim is "precluded." (Def. Mot. 14.) This argument is premature.

To prevail on a claim for unjust enrichment, a party "must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Pulte Home Corp., Inc.*, 382 P.3d at 833. As Avenue5 points out, Plaintiff cannot recover for unjust enrichment where an express contract covers the same issue, however, Colorado courts recognize two exceptions to this rule: (1) where "the express contract fails or is rescinded" or (2) "the claim covers matters that are outside of or arose after the contract." *Id.* at 833 (citations omitted).

As Avenue5 concedes, Plaintiff pleads unjust enrichment in the alternative. Indeed, the relief is only sought "[i]n the event the Form Lease is found unenforceable or otherwise fails, or that the Challenged Fees or Unauthorized Fees fall outside the contract". (*See* Compl. ¶ 170.) While it is true that Segura's unjust enrichment claim could be mooted if she prevails on her CCPA or breach of contract claims, Avenue5's attempt to dismiss the claims on the pleadings is improper. Rather, parties are "encouraged to plead alternative theories." *Super Valu Stores, Inc. v. Dist. Ct. In & For Weld Cnty.*, 906 P.2d 72, 80 (Colo. 1995). Unjust enrichment is an equitable remedy, appropriate when legal remedies are not available.

**E.     Avenue5 Ignores That Segura Seeks Declaratory Judgment With Respect To Her Existing Rights Under the Lease Agreements.**

Avenue5 next claims that Segura lacks standing to pursue declaratory relief because she is "no longer a resident" and is "no longer subject to the disputed fees." (Def. Mot. 15.) Avenue5 ignores that Segura seeks a declaration regarding her *existing* rights and that her dispute is ongoing.

Standing for a declaratory judgment claim requires "an existing legal controversy that can be effectively resolved by a declaratory judgment, and not a mere possibility of a future legal dispute over some issue." *Bd. of Cnty. Comm'rs, La Plata Cnty. v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1053 (Colo. 1992); *see also Farmers Ins. Exch. v. Dist. Ct. for Fourth Jud. Dist.*, 862 P.2d 944, 947 (Colo. 1993). Indeed, as a matter of Colorado statute:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

C.R.S. § 13-51-106; *Rector v. City & County of Denver*, 122 P.3d 1010, 1017 (Colo. App. 2005). The statute gives parties judicial relief from uncertainty in legal relations, and it is to be liberally construed. *Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 240 (Colo. 1984).

Here, Segura seeks a determination of her rights under the Form Lease. She does not seek a declaration, for example, as to a future lease renewal. Moreover, Segura's dispute with Avenue5 is ongoing. Indeed, after refusing to pay at least some of the unlawfully accessed fees, Avenue5 sent her outstanding balance to collections. (*See* Exhibit 2, Segura Decl. ¶ 4.) Because this is an existing legal controversy, Plaintiff seeks the adjudication of present rights upon established facts, as is the nature of declaratory judgment. *See Farmers Ins.*, 862 P.2d at 947.

As an additional point here, it is well-settled that claims for declaratory judgment may be brought on a class basis. *See LaBerenz v. Am. Fam. Mut. Ins. Co.*, 181 P.3d 328, 336 (Colo. App.

2007); *People ex rel. Inter-Church Temperance Movement of Colo. v. Baker*, 133 Colo. 398, 408 (1956). A declaration of rights here may ultimately be necessary for Segura and class members to receive complete relief, and Segura has standing to pursue such relief.

### F. Avenue5 Fails To Carry Its Burden To Demonstrate That Certification Would Be Impossible On The Pleadings Alone.

For its final attack, Avenue5 asks that the class allegations be stricken. (Def. Mot. 16-18.) Avenue5 fails to show that certification would be impossible here.

Striking class allegations "is in fact rare…in advance of a motion for class certification." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases). Striking class allegations before discovery is only appropriate "when it is clear from the face of the complaint that no class can be certified." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016) (citation omitted); *see also Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (citations omitted); *Bombin v. Sw. Airlines, Co.*, 529 F. Supp. 3d 411, 423 (E.D. Pa. 2021). A defendant "bears the burden of demonstrating that on the face of the complaint, class certification is impossible." *Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 613 (W.D. Wis. 2003) (quoting 2 Newburg & Conte, *Newburg on Class Actions*, § 7.22 (3d ed. 1992*)); see also Bryant v. Food Lion, Inc.*, 774 F.Supp. 1484, 1495 (D.S.C. 1991); *Steele-Warrick v. Microgenics Corp.*, 2023 WL 3959100, at *7 (E.D.N.Y. June 12, 2023).

Indeed, if the "dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *see also Khorrami v. Lexmark Int'l Inc.*, No. CV 07-01671 DDP RCX, 2007 WL 8031909, at *2 (C.D. Cal. Sept. 13, 2007). In such a case, the better course of

action is "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *Nickerson v. Goodyear Tire & Rubber Corp.*, No. 820CV00060JLSJDE, 2020 WL 4937561, at *11 (C.D. Cal. June 3, 2020); *National Organization for Women v. Sperry Rand Corp.,* 88 F.R.D. 272, 276 (D. Conn. 1980); *Phillips v. Philip Morris Companies, Inc.*, No. 5:10CV1741, 2013 WL 3291516, at *3 (N.D. Ohio June 28, 2013). "Generally, 'a district court should defer decision on class certification issues and allow discovery 'if the existing record is inadequate for resolving the relevant issues.'" *Mod. Holdings, LLC v. Corning Inc.*, No. CIV. 13-405-GFVT, 2015 WL 1481459, at *2 (E.D. Ky. Mar. 31, 2015); *In re Am. Med. Sys.,* 75 F.3d at 1086; *In re Allstate Ins. Co. Underwriting & Rating Practices Litig.,* 917 F.Supp.2d 740, 751 (M.D. Tenn. 2008).

Avenue5 fails to demonstrate that certification would be impossible here. Instead, it makes generalized assertions that the class definitions may be overbroad. (Def. Mot. at 16.) For example, it asserts, absent explanation, that a class member who was subjected to the same lease and the same hidden junk fees has supposedly not "been deceived as a matter of law or had their contract breached". (*Id.*) This is an improper, premature attempt to raise a merits issue. Here, Plaintiff alleges that Avenue5 subjected class members to a common course of conduct whereby it failed to disclose the junk fees prior to presenting tenants with their leases for execution. (*See* Compl. ¶¶ 3, 8, 10, 101, 108, 111.) These fees were material, and all class members will have been subjected to the same deceptions. Whether that conduct violates Colorado law is a question that relates to liability, not certification. *See In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 636 (D. Kan. 2008), *aff'd*, 768 F.3d 1245 (10th Cir. 2014) ("[t]he operative question here is not whether the plaintiffs can establish class-wide impact, but whether class-wide impact may be proven by evidence

common to all class members.").

Avenue5 also holds up the "territorial fees" as an example of how the class is supposedly overbroad by claiming that the fees are "uniquely imposed on residents within a specific building." (Def. Mot at 17.) While it cites to no support for this conclusion, this is not a reason to strike the class allegations. In the course of litigation, class definitions are regularly modified based on the evidence produced. *See Waterbury v. A1 Solar Power Inc.*, No. 15CV2374-MMA (WVG), 2016 WL 3166910, at *4 (S.D. Cal. June 7, 2016) ("most courts decline to grant motions to strike class allegations prior to motions for class certification because 'the shape and form of a class action evolve[ ] only through the process of discovery.'"); *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2019 WL 4849613, at *5 (D. Ariz. Sept. 30, 2019) ("the Court 'may construct a definition of the class or may modify a proposed definition where the original is inadequate'"); *Campbell v. PricewaterhouseCoopers LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008); *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1196 (N.D. Cal. 2023).

In short, contrary to Avenue5's claim, class certification is attainable here. Indeed, certification was recently granted in a case challenging valet trash fees charged by one of Avenue5's competitors. *See Koch v. Griffis Group of Companies, LLC*, Case No. 2021CV30718 (February 2, 2024) (attached as Exhibit 3). Thus, far from presenting an impossibility, the recent trend has weighed in favor of class certification in landlord-tenant cases challenging the uniform assessment of allegedly unlawful fees. The Court should, therefore, deny Avenue5's motion.

## IV.   CONCLUSION

For the reasons set forth above, the Court should deny Avenue5's motion and order such additional relief that it deems necessary, reasonable, and just.

**KIMBERLY SEGURA**, individually and on behalf of all others similarly situated,

Date: July 19, 2024

 */s/ Taylor T. Smith*

Steven L. Woodrow (CO Bar No. 43140)
swoodrow@woodrowpeluso.com
Taylor T. Smith (CO Bar No. 51162)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675

Jason M. Legg
Cadiz Law, LLC
501 South Cherry Street, Suite 1100
Denver, CO 80246
Telephone: 720-767-2036
Email: jason@cadizlawfirm.com

*Counsel for Plaintiff and the alleged Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Taylor T. Smith*