IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:24-cv-1577

KIMBERLY SEGURA, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

AVENUE5 RESIDENTIAL LLC, A DELAWARE LIMITED LIABILITY COMPANY,

Defendant.

---

**DEFENDANT AVENUE5 RESIDENTIAL LLC'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

---

## I.   ARGUMENT

### A. Plaintiff's Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction.

Colorado law determines the enforceability of the class action waiver. *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1249 (10th Cir. 2018).

**1. Plaintiff's Class Action Waiver is Enforceable Under Colorado Law.**

Plaintiff urges the Court to ignore settled Colorado law in favor of the law of other states. (Pl.'s Response 5.)   Plaintiff cites to no Colorado case holding that a class action waiver is void as against public policy.  Instead, Plaintiff cites *Rademacher v. Becker,* a case involving a contract to influence a criminal prosecution in exchange for money, for the proposition that class waivers stifle judicial access for plaintiffs with smaller claims and should therefore be struck. 374 P.3d 499, 500 (Colo. App. 2015).

Courts in Colorado "have consistently held that '[i]n general, statutory rights may be waived if the waiver is voluntary." *McCracken v. Progressive Direct Ins. Co.*, 896 F.3d 1166, 1174 (10th Cir. 2018). When a party has waived its right to pursue a claim, that party lacks standing to assert the claim, and the claim must be dismissed for lack of subject matter jurisdiction. *Arline v. Am. Family Mut. Ins. Co.*, 431 P.3d 670, 674 (Colo. App. 2018).

Plaintiff relies on recent legislative amendments to Colo. Rev. Stat. § 38-12-801(3)(a)(III), prohibiting class action waivers in residential leases to support its assertion that class action waivers are against public policy. Plaintiff acknowledges that this amendment was not effective until August 2023 *after* both of Mrs. Segura's leases with Avenue5 had expired. Colorado law dictates that absent legislative intent to the contrary, a statute is presumed to operate prospectively. *Coffman v. State Farm Mut. Auto. Ins. Co.*, 884 P.2d 275, 279 (Colo.1994). The legislative history for Colo. Rev. Stat. § 38-12-801 shows no such intent. To the contrary the Colorado Legislative Service explicitly states, "This act applies to written rental agreements executed on or after the applicable effective date of this act." CO LEGIS 372 (2023), 2023 Colo. Legis. Serv. Ch. 372 (H.B. 23-1095) (WEST).

    **2. The Class Action Waiver in the 2021 Lease Prohibits Any Class Action Lawsuit for Plaintiff's Entire Tenancy Period.**

Plaintiff contention that the class action waiver is "eliminated" by the 2022 Lease is entirely unfounded and runs counter to the plain language of the Lease Agreement. The Court's primary goal in contract interpretation is to determine and give effect to the intent of the parties, which is to be determined primarily from the language of the Lease Agreement itself. *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).

The class action waiver provision executed by Plaintiff is unambiguous and states:  on May

3, 2021, states:

> …**Accordingly, you expressly waive any right and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us or our agents in any forum.**

(Compl. 95) (emphasis in original) (quoting Segura 2021 Lease.) The plain language of the class action waiver clearly prohibits Plaintiff from maintaining a class action against Avenue5 and survives the termination or expiration of [the 2021] lease.

If the Court finds that the class action waiver in the 2021 Lease does not apply to the 2022 Lease, then the Court cannot permit Mrs. Segura's claims based on the 2021 Lease to proceed in a class action proceeding. Nor can the Court permit any claims by potential class members based upon a lease containing a class action waiver, to proceed in a class action against Avenue5.

### B. The CCPA Claims Do Not Survive.

#### 1. Plaintiff has failed to Allege a Significant Public Impact.

Both the Plaintiff's Complaint and Plaintiff's Response fail to assert that Avenue5's alleged conduct meets the "significant public impact" requirement of the CCPA. Plaintiff's Response implies that the Court need not impose the significant public impact requirement here, as it is not expressly included in language of the CCPA but rather comes from the Colorado Supreme Court's decision in *Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998). (Pl.'s Resp. 8). But, in a federal diversity action, like this one, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies. *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668 (10th Cir. 2018). Here, a Colorado State court would be bound by the Colorado Supreme Court decision in *Hall v. Walter* requiring a significant

public impact and thus, the Court is similarly bound in the present matter.

To constitute the public impact contemplated by the CCPA, the challenged practice must significantly impact the public. *Brodeaur v. Am. Home Assur. Co.*, 169 P.3d 139, 155 (Colo. 2007)." Plaintiff's Complaint highlights that Avenue5's practices "significantly impact how others behave in the market", but under the CCPA, it is not enough that Avenue5's industry affects the public interest. *Id.* Further, merely presuming that additional tenants of Avenue5 were harmed, as plaintiff does in the complaint, is insufficient. *Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1174 (10th Cir. 2008). Plaintiff's Complaint makes the blanket assumption that Avenue5's practices "affected thousands of consumers and that the number continues to increase", based on the assertion that the fees are assessed to every one of Avenue5's tenants. ( Compl. ¶ 113). But as will be established below, there is nothing inherently wrong with the disputed fees and Plaintiff does not provide any evidence that any of Avenue5's tenants were deceived. Plaintiff's allegations in the Complaint regarding the public impact of Avenue5's alleged deceptive conduct are "bare bones" and "only sketch the elements of a CCPA offense" and therefore are insufficient. *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 26, 373 P.3d 603, 609.

### 2. Plaintiff Fails to Allege a Deceptive Trade Practice.

#### a. Plaintiff's Complaint Fails to Plead Deceptive Acts.

Plaintiff's Complaint and Response ignore the plain language of the statute which creates a right of action for "any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article." C.R.S. § 6-1-113(1). The Complaint alleges that Avenue5 violated the following sections of the CCPA:

(1) § 105(1)(i)—advertisement of property with intent not to sell as advertised;
(2) § 105(1)(l)—false or misleading statements concerning the price of property;

> (3) § 105(1)(u)—failure to disclose material information concerning property when such information was known and the failure was intended to induce a transaction; and
> (4) § 105(1)(rrr), which prohibits a defendant from "[e]ither knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice."

Colo. Rev. Stat. § 6-1-105. But each subsection is qualified by the following sentence: "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . ." Colo. Rev. Stat. § 6-1-105(1). Plaintiff alleges Avenue 5 violations of each of these subsections, but each subsection prohibits deceptive conduct—not merely "unfair" or "unconscionable" conduct.

Mrs. Segura must allege facts sufficient to support the inference that Avenue5 knowingly engaged in a deceptive trade practice, which she relied upon. *Crowe v. Tull*, 126 P.3d 196, 211 (Colo. 2006). Therefore, Plaintiff's reliance on *F.T.C. v. Sperry* is misguided and does nothing to defeat the requirement that conduct be "deceptive" and not "unfair." 405 U.S. 233 (1972).

In *F.T.C. v. Sperry*, the Supreme Court assessed the FTC's ability to regulate certain conduct and, in dicta, noted what the FTC has described as "the factors it considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair." 405 U.S. 233, 244 n.5 (1972). While courts in some states have considered these factors in assessing violations of their respective consumer protection acts, no Colorado court has done so. Moreover, even if Washington has served as a model for consumer protection legislation, the CCPA differs from Washington's (and most other states') consumer protection act in many material respects. Compare, e.g., Colo. Rev. Stat. § 6-1-113(1) (a civil action may be brought "against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article.") with RCW § 19.86.090 ("Any person who is injured in his or her business or property by

a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, . . . may bring a civil action in superior court . . .");

With respect to unfair conduct under Section 105(1)(r), Plaintiff asserts that Avenue5 shifts its burden of compliance with the warranty of habitability by charging tenants for valet trash services and that it grossly inflates charges—turning its valet trash and property tax fees into "profit centers." (Compl. ¶ 11). The CCPA qualifies the broader terms "unfair" and "unconscionable" by the remainder of its predominate terms: "deceptive, deliberately misleading, false, or fraudulent." See Colo. Rev. Stat. § 6-1-105(1)(r). In order to demonstrate violations of the CCPA, Plaintiff must plausibly allege that Avenue5 knowingly or recklessly engaged in a deceptive trade practice by: (a) assessing "unlawful" fees; (b) charging tenants more than its actual costs for the Challenged Fees; (c) advertising rent prices lower than the actual monthly rent price; and (d) presenting tenants with a non-negotiable form lease which allows for the assessment of "unlawful" fees that exceed Avenue5's actual costs.  The Complaint fails to do so.

The alleged unlawful fees do not violate the Warranty of Habitability and, as such, are not a deceptive trade practice. Colo. Rev. Stat. §§ 38-12-501, et seq. (the "Habitability Statute") provides that if a landlord receives notice of any habitability issues, then the landlord is responsible to remediate such issues at the landlord's expense. However, the Response does not (and cannot) dispute that the statute does not state that landlords cannot charge tenants fees for services (such as trash removal) intended to prevent habitability issues.

Finally, the fact that Avenue5 allegedly profited from the fees does not make them illegal or otherwise deceptive. The lease clearly includes these fees, and the Plaintiff chose to sign it. Courts must disregard allegations that directly conflict with attached documents. See *Stauffer v.*

*Stegemann*, 165 P.3d 713, 716 (Colo. App. 2006). Moreover, there is no allegation that Avenue5 fraudulently stated or otherwise represented that the amount of the fees was equal to its actual costs and there is no legal basis to argue that Avenue5 should have affirmatively informed Plaintiff of the costs versus the fees. There is also no evidence that Avenue5 actually profited from these fees. The alleged "false advertising" is not in any way "false." All fees were disclosed before Mrs. Segura and all other potential class members signed their lease. Awareness of the fees is also a question that is not possible to determine on a class-wide basis.

      **b. The Disputed Fees Are Not Unconscionable.**

The disputed fees are not "unconscionable" as argued by Plaintiff. Plaintiff's allegations do not meet the seven-factor test established in *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo.1986). Plaintiff executed each individual addendum to the lease that contained the allegedly unconscionable fees. Further, with respect to the 2022 Lease, Plaintiff had been paying the fees for the preceding 15 months under the 2021 Lease. Moreover, Mrs. Segura had a copy of the 2022 Lease for an extended period prior to signing the same. The fact that nearly three years later Plaintiff now disagrees with the fees does not mean that she was unaware that she had to pay them. Moreover, the Complaint provides no evidence that Plaintiff lacked alternative housing options or process of hiring or paying for the move. Plaintiff further makes the baseless assumption that every class member was either unaware of the fees or unable to understand the lease agreement upon execution.

      **3. Plaintiff Is Required to Satisfy Rule 9(b) Particularity Requirement and has Failed to Meet Her Burden.**

Plaintiff's Response argues that she is not required to comply with Rule 9(b)'s particularity requirement with regards to pleading her CCPA claim because it is based on unfair and

unconscionable conduct and not deceptive conduct. (Plaintiff's Response at 14-15). But Plaintiff again fails to appreciate that bringing a claim pursuant to Colo. Rev. Stat. § 6-1-113(1), creates a cause of action against "any person who has engaged in or caused another to engage in any **deceptive** trade practice listed in this article" (emphasis added). Further, numerous decisions hold that to properly assert a claim under the CCPA, a plaintiff must meet the heightened Rule 9(b) pleading standard.  *See e.g.*, *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1267 (D. Colo. 2023).

Plaintiff mistakenly asserts that the Complaint pleads false advertising allegations with sufficient particularity. (Pl.'s Resp. 17.) Plaintiff's Complaint alleges that Avenue5 advertises rents "lower than the actual Monthly rent" by failing to disclose the challenged fees in its advertisements and then discloses the fees before Plaintiff or any other tenants sign a lease. (Compl. ¶¶ 108-109, 116.) Plaintiff contends "by that point, it was so late in the process that it was impractical for tenants to find alternative housing." (*Id.* ¶ 108.) Plaintiff would have the Court believe her fiction that the typical tenant arrives at their new apartment with a moving truck and all their worldly belongings ready to move in before they sign their lease. Plaintiff then asks the Court to take the allegations at face value and conclude that Avenue5 intentionally deceived tenants into proceeding through the lease application process with the knowledge that at the point of signing the lease, the tenant would feel an immense sense of sunk cost and pressure, such that they would have no choice but to sign a lease.

C. **Plaintiff's Complaint Sets Forth No Claim for Breach of Contract.**

    1. **The Complaint Fails to Plead a Breach of Contract Claim.**

Plaintiff contends that Avenue5 breached its contract with Plaintiff and other potential class members through charging unauthorized fees. (Compl. ¶¶119-130). But "unauthorized fees" is a wholly inaccurate representation of the challenged fees because the fees were authorized in both the 2021 Lease and 2022 Lease. The leases clearly indicate that Avenue5 will pay for none of the utilities. (Motion to Dismiss ¶ 6). Further the flat fees for the pest control service and the valet trash service were clearly authorized in the lease. (Motion to Dismiss ¶ 8). Plaintiff's contention that she was unaware that she would be responsible for such fees is illogical; there is no other way to interpret the plain language of the challenged provisions. Further, it is well settled that "one cannot avoid [a] contract's obligations by asserting that it was not read, explained or understood." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1258 (10th Cir. 2012). The Tenth Circuit has also held that "a party cannot void a contract by claiming to be ignorant of its contents." *Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994). In addition to paying the challenged fees, Mrs. Segura also received a copy of the 2022 Lease, the plain language of which clearly stated the challenged fees, well in advance of signing the 2022 Lease.

    2. **Plaintiff's Response Sets Forth No Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

The duty of good faith and fair dealing may be relied upon "when the manner of performance under a specific contract term allows for discretion on the part of either party." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), as modified on denial of reh'g (Jan. 16, 1996). Discretion in performance occurs "when the parties, at formation, defer a decision regarding performance terms of the contract"

leaving one party with the power to set or control the terms of performance after formation. *Id; (Citing Amoco Oil Co.*, 908 P.2d at 499).

The Lease Agreement signed by Mrs. Segura did not grant Avenue5 any discretionary authority regarding assessment of fees under the contract. Since Avenue5 lacked discretionary authority over any of the terms of the lease agreements the implied covenant of good faith and fair dealing is not implicated here, and therefore Plaintiff's claim must fail.

### D. Plaintiff Fails to Plead Unjust Enrichment, even in the Alternative.

Even if Plaintiff pleads unjust enrichment or quantum meruit in the alternative, this claim still must fail. As Plaintiff's Response acknowledges, to prevail on an unjust enrichment claim, a party "must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation. *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 2016 CO 64, ¶ 63, 382 P.3d 821, 833. Here, Plaintiff suffered no injustice, rather Plaintiff received the service that she bargained for in exchange for the Challenged Fees, i.e., trash removal, Pest control, and water and sewage services.

### E. Plaintiff's Complaint Sets Forth No Claim for Declaratory Judgement

Plaintiff's declaratory judgment claim is duplicative of all of her other claims and fails for all of the same reasons. Further, there is no need for a declaratory judgment claim that relates to one individual who resided at one of Avenue5's properties nearly two years ago since there is no typicality or commonality among potential class members.

F. **<u>Class Certification is Impossible.</u>**

Plaintiff's Response fails to articulate sufficient facts to demonstrate that Mrs. Segura's experience is sufficiently similar to the experiences of the proposed class members. Assessing her knowledge, awareness, and respective bargaining power prior to or at the signing of her leases is necessarily a fact-specific inquiry. There are numerous variables for each individual tenant, including, but not limited to: when such fees were disclosed, which fees were assessed, whether a tenant was willing to pay these fees, and what amount of relative bargaining power the tenant possessed.

The current matter is presently before the Court on diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Because plaintiff asserts state law claims, the court will interpret and apply Colorado state law to substantive issues. Because the matter is in federal court, the Federal Rules of Procedure will govern the procedural aspects of the case. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

The Court previously addressed Rule 23 class certification in *White v. General Motors, LLC*, 2023 WL 3278460, (D. Colo. May 5, 2023), <u>reconsideration denied,</u> No. 121CV00410CNSMEH, 2023 WL 4628438 (D. Colo. June 30, 2023). A district court must decide that a class is "adequately defined and clearly ascertainable" before it may turn to the enumerated requirements of Rule 23(a). *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021).

Class representatives bear the burden to establish that their proposed class is "adequately defined and clearly ascertainable," and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a). *Id.* (internal quotation marks omitted). There is a split among Circuit Court of Appeals as to what burden of

proof a plaintiff must satisfy to demonstrate class certifiability. Even within the Tenth Circuit, the specific burden of proof plaintiffs must show to certify a class is "ill-defined." *White v. Gen. Motors LLC*, No. 121CV00410CNSMEH, 2023 WL 3278460, at *2 (D. Colo. May 5, 2023), reconsideration denied, No. 121CV00410CNSMEH, 2023 WL 4628438 (D. Colo. June 30, 2023). While the Circuit Courts are split on the standard, the District of Colorado has applied the preponderance of the evidence standard. *White* at *2-3.

Plaintiff bears the burden of proving, by a preponderance of the evidence, that the class certification requirements of F.R.C.P. 23(a) have been met, to include ascertainability. Plaintiff has failed to do so.

To support their assertion that class certification is attainable, Plaintiff points to Colorado state court cases in which class certification was granted. None of the cases cited by Plaintiff provide any binding precedent. Of note, while the court in *Koch v. Griffis Group of Companies, LLC*, which also addressed trash valet fees and certified classes with regards to some breach of contract and breach of the implied covenant of good faith and fair dealing claims, the Court in *Koch* denied certifying a class with respect to other breach of contract claims. The claims that were certified were largely premised on unlawful liquidated damages provisions included in all the class members' contracts. Moreover, with respect to Plaintiff's breach of the implied covenant of good faith and fair dealing claim, Avenue5 is not exercising any discretion.

## II.      Conclusion

Avenue5 respectfully moves that this Court dismiss Plaintiff's Complaint in its entirety, with Prejudice.

Dated:  August 9, 2024                                  Respectfully submitted,


*The original of this pleading is on file at the offices of Winget, Spadafora & Schwartzberg, LLP,*

 */s/ Derek C. Anderson*
Derek C. Anderson, Esq., No. 37727
Jennifer R. O'Shea, Esq., No. 58617
Winget, Spadafora & Schwartzberg, LLP
2440 Junction Place, Suite 101
Boulder, CO 80301
T: (720) 699-1800
F: (720) 699-1801
Email: anderson.d@wssllp.com
*Attorneys for Defendant,*
*Avenue5 Residential, LLC*

## CERTIFICATE OF SERVICE

   I Derek C. Anderson, hereby certify that on this 9th day of August, 2024, the foregoing *Defendant Avenue5 Residential LLC's Reply Memorandum In Further Support of Its Motion to Dismiss* was electronically served via E-Filing CM/ECF on the following:

                    */s/Derek C. Anderson*
                    Derek C. Anderson

Jason Legg, Esq.
Cadiz Law LLC
501 S. Cherry Street, Ste. 1100
Denver, CO 80246
Phone: (720) 330-2800
E-mail: jason@cadizlawfirm.com
Attorney for Plaintiff and the alleged Classes

Steven L. Woodrow, Esq.
Taylor T. Smith, Esq.
Woodrow and Peluso LLC
3900 E Mexico Ave, Suite 300
Denver, CO 80210
Phone: (720) 213-0676
E-mail: swoodrow@woodrowpeluso.com
E-Mail: tsmith@woodrowpeluso.com
Attorneys for Plaintiff and the alleged Classes